UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

## DOCKETING STATEMENT

Case Name: _____ Greer v. Herbert et al. _____

Appeal No. (if available) : _____ 18-4075 _____

Court/Agency Appealing From: _____ Utah District Court _____

Court/Agency Docket No.: ___2:16-cv-01067___ District Judge: ___Dustin Pead___

Party or Parties Filing Notice of Appeal/Petition: __ Russell Greer, Plaintiff _____

_____

**I.**     TIMELINESS OF APPEAL OR PETITION FOR REVIEW

   A.     **APPEAL FROM DISTRICT COURT**

      1.     Date notice of appeal filed: _____ 05/22/2018 _____

         a.     Was a motion filed for an extension of time to file the notice
                of appeal? If so, give the filing date of the motion, the date of
                any order disposing of the motion, and the deadline for filing
                notice of appeal:
                _____ No _____
                _____

         b.     Is the United States or an officer or an agency of the United
                States a party to this appeal? _____ No _____

2. Authority fixing time limit for filing notice of appeal:

Fed. R. App. 4 (a)(1)(A) ✗   Fed. R. App. 4(a)(6) ____
Fed. R. App. 4 (a)(1)(B) ____   Fed. R. App. 4(b)(1) ____
Fed. R. App. 4 (a)(2) ____   Fed. R. App. 4(b)(3) ____
Fed. R. App. 4 (a)(3) ____   Fed. R. App. 4(b)(4) ____
Fed. R. App. 4 (a)(4) ____   Fed. R. App. 4(c) ____
Fed. R. App. 4 (a)(5) ____
Other: _____

3. Date final judgment or order to be reviewed was **entered** on the district court docket: _____ 05/08/2018 _____

4. Does the judgment or order to be reviewed dispose of **all** claims by and against **all** parties? *See* Fed. R. Civ. P. 54(b).
_____ Yes _____

**(If your answer to Question 4 above is no, please answer the following questions in this section.)**

    a. If not, did district court direct entry of judgment in accordance with Fed. R. Civ. P. 54(b)? When was this done?
_____ N/A _____

    b. If the judgment or order is not a final disposition, is it appealable under 28 U.S.C. § 1292(a)? _____ N/A _____

    c. If none of the above applies, what is the **specific** statutory basis for determining that the judgment or order is appealable? _____ N/A _____

5. Tolling Motions. *See* Fed. R. App. P. 4(a)(4)(A); 4(b)(3)(A).

    a. Give the filing date of any motion that tolls the time to appeal

N/A

pursuant to Fed. R. App. P. 4(a)(4)(A) or 4(b)(3)(A):

_____

b.     Has an order been entered by the district court disposing of any such motion, and, if so, when?_____

_____  N/A

6.     Cross Appeals.

a.     If this is a cross appeal, what relief do you seek beyond preserving the judgment below? *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 958 (10th Cir. 2011)(addressing jurisdictional validity of conditional cross appeals).

_____ N/A _____

b.     If you do not seek relief beyond an alternative basis for affirmance, what is the jurisdictional basis for your appeal? *See Breakthrough Mgt. Group, Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1196-98 and n. 18 (10th Cir. 2010)(discussing protective or conditional cross appeals).

_____ N/A _____

B.   **REVIEW OF AGENCY ORDER**  (To be completed only in connection with petitions for review or applications for enforcement filed directly with the court of appeals.)

1.     Date petition for review was filed:     N/A _____

2.     Date of the order to be reviewed: _____ N/A ____

3.     Specify the statute or other authority granting the court of appeals jurisdiction to review the order: _____ N/A _____

4. Specify the time limit for filing the petition (cite specific statutory section or other authority): _____

_____ N/A _____

## C. APPEAL OF TAX COURT DECISION

1. Date notice of appeal was filed: _____ N/A _____
   (If notice was filed by mail, attach proof of postmark.)

2. Time limit for filing notice of appeal: _____ N/A _____

3. Date of entry of decision appealed: _____ N/A _____

4. Was a timely motion to vacate or revise a decision made under the Tax Court's Rules of Practice, and if so, when? *See* Fed. R. App. P. 13(a) _____ N/A _____

## II. LIST ALL RELATED OR PRIOR RELATED APPEALS IN THIS COURT WITH APPROPRIATE CITATION(S). If none, please so state.

No prior related appeals.

## III. GIVE A BRIEF DESCRIPTION OF THE NATURE OF THE UNDERLYING CASE AND RESULT BELOW.

Plaintiff challenged the As-Applied prostitution laws solely pertaining to brothels, claiming violations of his 14th amwndment rights of equal protection and sexual prvacy, and that such laws lack a rational basis. Judge Pead erroneously ruled that there was no violation and that such matters, "no matter how unpopular they may be", should be dealt with through the legislature.

**IV. IDENTIFY TO THE BEST OF YOUR ABILITY AT THIS STAGE OF THE PROCEEDINGS, THE ISSUES TO BE RAISED IN THIS APPEAL.**

1. Judge Pead should have recused himself due to extrajudicial source bias, as he has previously mentioned in publications his Mormon religion as a guiding tool for him becoming a legal professional. His religious beliefs tainted the case.

2. Pead failed to analyze the challenge As-Applied. He analyzed it "facially".

3. Pead failed to look towards a robust consensus of persuasive authority, as outlined by the Supreme Court.

4. Pead failed to use "rational basis with bite", as Greer is among a protected class.

5. Pead failed to see that Greer has already gone to the legislature.

**V. ADDITIONAL INFORMATION IN CRIMINAL APPEALS.**

A.  Does this appeal involve review under 18 U.S.C. § 3742(a) or (b) of the sentence imposed? _____ N/A _____

B.  If the answer to A (immediately above) is yes, does the defendant also challenge the judgment of conviction? _____ N/A _____

C.  Describe the sentence imposed. _____ N/A _____

_____

D.  Was the sentence imposed after a plea of guilty? _____ N/A _____

E.  If the answer to D (immediately above) is yes, did the plea agreement include a waiver of appeal and/or collateral challenges?

_____ N/A _____

F.   Is defendant on probation or at liberty pending appeal? _____ N/A

G.   If the defendant is incarcerated, what is the anticipated release date if the judgment of conviction is fully executed?

_____ N/A _____

H.   Does this appeal involve the November 1, 2014 retroactive amendments to §§ 2D1.1 and 2D1.11 of the U.S. Sentencing Commission's Guidelines Manual, which reduced offense levels for certain drug trafficking offenses?

_____ N/A _____

**NOTE:**   In the event expedited review is requested and a motion to that effect is filed, the defendant shall consider whether a transcript of any portion of the trial court proceedings is necessary for the appeal. Necessary transcripts must be ordered by completing and delivering the transcript order form to the Clerk of the district court with a copy filed in the court of appeals.

## VI.   ATTORNEY FILING DOCKETING STATEMENT:

Name: Russell Greer, Pro Se Litigant   Telephone: (801) 895-3501

Firm: _____ Pro Se Litigant _____

Email Address: _____ russmark@gmail.com _____

Address: _____ 3068 West Mark Ave, West Valley City, Utah 84119

_____

_____

**PLEASE IDENTIFY ON WHOSE BEHALF THE DOCKETING STATEMENT IS FILED:**

A.  ☒  Appellant

     ☐  Petitioner

     ☐  Cross-Appellant

B.  **PLEASE IDENTIFY WHETHER THE FILING COUNSEL IS**

     ☐  Retained Attorney

     ☐  Court-Appointed     Pro Se Litigant

     ☐  Employed by a government entity

          (please specify_____)

     ☐  Employed by the Office of the Federal Public Defender.

_____     ___05/24/2018___

Signature                 Date

**NOTE:** A copy of the final judgment or order appealed from, any pertinent findings and conclusions, opinions, or orders, any tolling motion listed in Fed. R. App. P. 4(a)(4)(A) or 4(b)(3)(A) and the dispositive order(s), any motion for extension of time to file notice of appeal and the dispositive order **must be submitted with the Docketing Statement.**

The Docketing Statement must be filed with the Clerk via the court's Electronic Case Filing System (ECF). Instructions and information regarding ECF can be found on the court's website, www.ca10.uscourts.gov .

This Docketing Statement must be accompanied by proof of service.

The following Certificate of Service may be used.

## CERTIFICATE OF SERVICE

I, _____Russell Greer_____ hereby certify that on

[appellant/petitioner or attorney therefor]

___05/24/2018___ I served a copy of the foregoing **Docketing Statement,**

[date]

to:

David Wolf, Jackie Ramos and Catherine Brabson          Catherine.brabson@slcgov.com

_____, at _____

[counsel for/or appellee/respondent]          Dnwolf@agutah.gov,

_____

_____ jmramos@slco.org _____ , the last known

address/email address, by _____ electronic mail _____ .

[state method of service]

_____
Signature

____ 05/24/2018 _____

Date

____ Russell Greer, Pro Se Litigant _____

____ 3068 West Mark Ave, West Valley City, Utah 84119 _____

_____

_____

[Full name and address of attorney]

# EXHIBIT A

**Greer v. Herbert (Dist. UT 2018). Final Judgement**

IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>     **Plaintiffs,**<br><br>v.<br><br>GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIMS S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the County of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for, the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,<br><br>     **Defendants.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 2:16-cv-01067**<br><br>**Magistrate Judge Dustin Pead** |

## TABLE OF CONTENTS

Introduction ................................................................................ 3

Factual Background ....................................................................... 3

Utah's Prostitution & Brothel Laws................................................ . 6

Discussion

I.      Standing…………………………………………………….......8

        1.      Standard of Review…………………………………….. ..8

        2.      No Standing To Enforce The Rights Of Others…………….…...10

        3.      No Standing For Claims Against Biskupski, Allred, McAdams
                and Yoshinaga…………………………………………….......11

                        a. Biskupsk and McAdams………………………………11
                        b. Allred and Yoshinaga……………………………......12

        4.      Standing For Claims Against Gill and State Defendants…………13

                        a.      Pre-Enforcement Challenge………………………13
                        b.      Gill……………………………………………………14
                        c.      Herbert, Reyes and Berg…………………………......15

II.     42 U.S.C. §1983……………………………………………………16

III.    Utah's Laws Are Constiutional……………………………………..17

        1.      Facial And As-Applied Challenges. …………………………18
        2.      Right To Sexual Privacy………………………………………19

                        a.      No Fundamental Right ……………………………......20
                        b.      Rationally Related To Legitimate Interest………......21

        3.      Equal Protection For Same End Goal Of Intimacy………………23
        4.      Right To Engage In Illegal Employment……………………….24
        5.      First Amendment Free Association……………………………......25
        6.      Article 1 Section 7 of Utah Constitution……………………......26
        7.      Vagueness……………………………………………………….... 27

IV.     Ruling & Order……………………………………………………..29

# INTRODUCTION[1]

Russell Godfrey Greer wants to provide everyone with safe and legal "access to intimacy." In order to do so, he seeks to open a Utah brothel called The Mile High Neon. Under Utah's current laws, however, he is prohibited from doing so.[2] Consequently, Greer filed his federal declaratory action challenging the constitutionality of portions of Utah's laws criminalizing prostitution, solicitation and the operation of brothels.

# FACTUAL BACKGROUND

The following facts are taken from Plaintiff Russell Greer's (Plaintiff or Greer) amended complaint and viewed in a light most favorable to him.[3]

Plaintiff is a well-educated,[4] twenty-five year old man currently residing in Murray, Utah.[5] He was born with Mobius Syndrome, a neurological condition that causes facial paralysis and prohibits him from closing his lips or moving his eyes sideways.[6] Greer's disability causes

---

[1] All parties in this case have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. Dkt. No. 24. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] *See* Utah Code Ann. §§ 76-10-1302 through 1305 (criminalizing prostitution and solicitation), §47-1-1 (declaring brothels a nuisance).

[3] *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs.,* 633 F.3d 1022, 1025 (10th Cir. 2011) (when considering a motion to dismiss, the court "accepts all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff."); *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002) (the court "must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed") (*citing Swanson v. Bixler,* 750 F.2d 810, 813) (10th Cir. 1984).

[4] In the summer of 2015, Plaintiff graduated from LDS Business College. Prior to graduation, Greer completed an internship in the Litigation Division of the Utah Attorney General's Office. Dkt. No. 55, ¶¶46-48.

[5] Dkt. No. 55, ¶8.

[6] *Id.*

significant physical and social challenges for him. Consequently, in order to "feel loved", Greer solicits sex workers[7] at brothels in Nevada, where prostitution is legal, and in Utah, where prostitution is criminalized.[8]

In April of 2013, Greer started visiting brothels in Nevada.[9] He describes his experiences as "magical" and claims that his time there helped him to "cope with his disability and [ ] depression."[10] Over time, frequent travel to Nevada became financially prohibitive[11] and Greer was "forced" to seek companionship in Utah.[12] Prostitution is illegal in Utah and Plaintiff lived in fear of being victimized, [13] criminally prosecuted and of contracting a sexually transmitted disease.

Determined to provide everyone with the opportunity for safe and legal "access to intimacy," Greer decided to open a brothel in Utah called "The Mile High Neon" (TMHN).[14] Plaintiff outlines TMHN's business plan, design, layout and operational procedures in copious

---

[7] Greer refers to "prostitutes," "escorts," and "sex workers" interchangeably throughout his pleading. While there are subtle nuances that differentiate these terms, for purposes of this opinion, the court broadly defines all prostitutes, escorts and sex workers as individuals "who engages, offers, or agrees to engage in any sexual activity with another individual for a fee, or the functional equivalent of a fee." Utah Code Ann. §76-10-1302(1)(a).

[8] Dkt. No. 55, ¶¶8, 20, 25, 34-36.

[9] Greer visited brothels in or near Elko and Reno, Nevada. Dkt. No. 55, ¶¶36-37.

[10] Dkt. No. 55, ¶¶35, 39.

[11] Greer estimates he spent up to $14,000 at brothels in Nevada. Dkt. No. 55, ¶¶39-40.

[12] Additional reasons for Greer's decision to stop traveling to brothels in Nevada include, a falling out with brothel owner Dennis Hoff and becoming the victim of a $4,000.00 theft. Dkt. No. 55, ¶¶41-44.

[13] Plaintiff claims he has been the victim of fraud when escorts post "fake pictures to lure Greer in and upon meeting, . . . [hold him] under duress to give them the money. Others have been the same girl as advertised, but they do not provide the services they promise." Dkt. No. 55, ¶42.

[14] The name "Mile High Neon" is a combination of "the mile-high club" and the Greek word "porneon," meaning brothel. Dkt. No. 55, ¶¶ 47, 50-52.

detail.[15] In order to obtain a license, Greer submitted his licensing paperwork online with the State of Utah. On December 29, 2015, Plaintiff's paperwork was approved and he was given "numbers for his business registration and the appropriate document to file."[16] On January 14, 2016, Greer received notice from Kathy Berg, Director of Utah's Division of Commerce, that his registration was for "an illegal business purpose" and immediately revoked.[17]

On October 18, 2016, Greer filed his initial complaint.[18] Later, he sought to incorporate relevant statutory amendments and the court granted Plaintiff leave to amend.[19] Greer filed an

---

[15] Greer explains that the structure will resemble a Greek temple with large columns, marble floors and a wooden front door similar to that found at a "luxury mansion." Dkt. No. 55, ¶¶ 66, 67. A fountain will decorate the main room along with couches, televisions and a non-alcoholic bar. *Id.,* ¶ 67. An electronic business directory is located near the front of the building where clients can "click" on the girls' pictures if they are interested in meeting them. *Id.,* ¶69. Past the office where financial transactions are conducted, there are approximately ten employee rooms. *Id.,* ¶71. Each room contains a window, bed, television and panic alarm. *Id.* TMHN also has a kitchen area where employees can cook their own meals. *Id.,* ¶73.

Plaintiff proposes "innovative" operational procedures for TMHN's employees: weekly sexually transmitted disease inspections, self-defense training, financial planning, and training related to understanding the disabled. *Id.,* ¶¶76-79, 82. All workers are licensed through the sheriff's office and TMHN will pay taxes and donate to local charities. *Id.,* ¶¶83- 84. Potential employees may apply online and TMHN will hire only "the classiest and most beautiful people that have extraordinary personalities and who are not judgmental." *Id.,*¶80. Employees are encouraged to set goals, and every two years Greer will check to see if they are achieving their goals. *Id.* Greer will encourage employees to "go after their dreams," and put them in touch with "talent agents" who can help find other "non-sexual jobs." *Id.* Greer will act as TMHN's legal assistant, but will not own or run the brothel. *Id.,*¶86. Instead, he intends to give his business license to "an educated, beautiful woman in her mid-thirties to forties who has higher education and experience in business." *Id.*

[16] Dkt. No. 55, ¶¶51, 54.

[17] Dkt. No. 55, ¶55.

[18] *See* Dkt No. 1, Dkt. No. 2. Greer's initial pleading also listed Tricia Christie as a plaintiff. Christie did not sign the pleading, or provide a physical address, email, or telephone number. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number . . . ."). Further, as a non-attorney Greer is prohibited from representing Christie in any case. *See* DUCivR 83-1.3(c); *Perry v. Stout,* 20 F. App'x. 780, 782 (10th Cir. 2001) (non-attorney cannot represent a pro se litigant).

amended complaint on September 12, 2017, seeking declaratory and injunctive relief against

Defendants Governor Gary Herbert (Herbert), Utah Attorney General Sean Reyes (Reyes) and

Utah's Director of the Division of Corporations and Commercial Code Kathy Berg (Berg)

(collectively "State Defendants"), Salt Lake District Attorney Sim Gill (Gill), Salt Lake County

Mayor Ben McAdams (McAdams) and Salt Lake Director of Planning Rolen Yoshinaga

(Yoshinaga) (collectively "County Defendants") and Salt Lake City Mayor Jackie Biskupski

(Biskupski) and Salt Lake City Business Licensing Manager James Allred (Allred) (collectively

"City Defendants").[20]

Currently pending before the court are the City, State and County Defendants' motions to

dismiss Greer's amended complaint for failure to demonstrate standing, state a claim or establish

a constitutional violation.[21] Greer did not oppose the City or County Defendants' motions to

dismiss, and the time within which to do so has expired.[22]

## UTAH'S PROSTIUTION & BROTHEL LAWS

Greer seeks a declaration that the following portions of Utah's statutes are

unconstitutional (Utah's Prostitution and Brothel Laws).

---

[19] Dkt. No. 47.

[20] Greer's claims against individual City, County and State Defendants are brought solely in their official capacities. In addition, Greer's amended pleading does not name Christie as a Plaintiff, and therefore she is no longer a party to this action. *See* Dkt. No. 55.

[21] Dkt. No. 56, Dkt. No. 57, Dkt. No. 60.

[22] *See* DUCivR 7-1(b)(3)(A), *see also* DUCivR 7-1(d) ("[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."); *Masero v. Mortgage Elec. Registration Sys.,* 2010 U.S. Dist. LEXIS 128564 * 1 (D. Utah Dec. 2, 2010) (granting motion to dismiss as unopposed pursuant to DUCivR 7-1(d)).

Utah Code Ann. §76-10-1302, Prostitution.
(1) An individual is guilty of prostitution when the individual:
      (b)     takes steps in arranging a meeting through any form
            of advertising, agreeing to meet, and meeting at an
            arranged place for the purpose of sexual activity in exchange
            for a fee or the functional equivalent of a fee;
UCA §76-10-1302(b)


Utah Code Ann. 76-10-1303, Patronizing a prostitute.
(1) An individual is guilty of patronizing a prostitute when the individual:
      (b)     enters or remains in a place of prostitution for the purpose
            of engaging in sexual activity.
UCA §76-10-1303(b).


Utah Code Ann. 76-10-1304, Aiding prostitution.
(1) A person is guilty of aiding prostitution if the person:
      (iii)    leases, operates, or otherwise permits a place controlled
            by the actor, alone of in association with another, to be used
            for prostitution or the promotion of prostitution;
UCA §76-10-1304(1)(iii)


Utah Code Ann. 76-10-1305, Exploiting prostitution.
(1) An individual is guilty of exploiting prostitution if the individual:
      (a)     procures an individual for a place of prostitution; or
      (e)     owns, controls, manages, supervises, or otherwise keeps,
            alone or in association with another, a place of
            prostitution or a business where prostitution occurs
            or is arranged, encouraged, supported, or promoted.
UCA §76-10-1305(1)(a)(e).


Utah Code Ann. 47-1-1, Declared a nuisance—Abatement.
Whoever shall erect, establish, maintain, use, own or lease any building,
structure or place, for the purpose of lewdness, assignation or prostitution
is guilty of nuisance, and such building, structure or place, and the ground
itself, in or upon which such lewdness, assignation or prostitution is
conducted, permitted or carried on, and the furniture, fixtures and musical
instruments therein and the contents thereof are declared a nuisance, and
shall be enjoined and abated as hereinafter provided.
UCA §47-1-1.

## DISCUSSION

### I.   STANDING

#### 1.   Standard of Review.

A threshold issue is whether Greer has standing to bring his claims against Defendants. Standing ensures that federal courts only issue judgments in "cases" and "controversies" in which they have jurisdiction to do so.[23] The burden is on plaintiff to clearly demonstrate the elements of standing for each cause of action,[24] and the court has an "independent obligation" to raise the standing issue "regardless of whether it is challenged by any of the parties."[25] When considering dismissal, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[26]

---

[23] U.S. Const. art. III, §2.

[24] *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *Bronson v. Swensen,* 500 F.3d 1099, 1106 (10th Cir. 2007); *Utah v. Babbitt,* 137 F.3d 1193, 1202 (10th Cir. 1998) (burden is on plaintiff "clearly to allege fact demonstrating" standing).

[25] *Summers v. Earth Island Inst.,* 555 U.S. 488, 499, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (citations omitted). The court previously issued an Order requesting supplemental briefing on standing, ripeness and the proper analysis for facial versus as-applied challenges. *See* Dkt. No. 34.

[26] *See* Fed. R. Civ. P. 12(b)(1); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed.2d 343 (1975). In general, Rule 12(b)(1) motions for dismissal take two forms:
> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.

*Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).

Article III standing requires a plaintiff to meet the following elements:

> First, the plaintiff must have suffered an invasion of a
> legally-protected interest which is (1) concrete and
> particularized, and (b) actual or imminent, not
> conjectural or hypothetical. Second, there must be a
> causal connection between the injury and conduct
> complaint of---the injury has to be fairly traceable to
> the challenged action of the defendant, and not the result
> of the independent action of some third party not before
> the court. Third, it must be "likely" as opposed to merely
> "speculative," that the injury will be redressed by a
> favorable decision.[27]

In addition to constitutional standing, a plaintiff must also establish prudential standing.

Prudential standing places limits on who may invoke the courts' powers and requires:

> (1) the plaintiff generally must assert his or her own legal
> rights; (2) the court must refrain from adjudicating
> "generalized grievances" most appropriately addressed by
> one of the other branches of government; and (3) the
> plaintiff's complaint must fall within the zone of interests to
> be protected or regulated by the statute or constitutional
> guarantee in question.[28]

When mounting a pre-enforcement claim, plaintiff is not required to "await and undergo

a criminal prosecution" before challenging the statute on constitutional grounds.[29]  Rather, a

plaintiff may establish standing prior to enforcement by showing both a future intention to

engage in conduct that is "arguably affected with a constitutional interest, but proscribed by a

statute" and a credible threat of prosecution.[30]

---

[27] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351
(1992) (citations and quotations omitted); *see also Gilbert v. Shalala,* 45 F.3d 1391, 1393-94 (10th Cir.
1995), *cert. denied,* 133 L. Ed. 2d 14, 116 S. Ct. 49 (1995).

[28] *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450-51 (10th Cir. 1994) (citations omitted).

[29] *Babbitt v. United Farm Workers Nat'l. Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct.
2301 (1979) (*quoting Doe v. Bolton*, 410 U.S. 179, 188, 35 L. Ed. 2d 201, 93 S. Ct. 739) (1973).

[30] *Id., see also Brown v. Herbert*, 850 F. Supp. 2d 1240, 1246 (D. Utah 2012).

## 2.   Greer Does Not Have Standing To Enforce The Rights Of Individuals Who Choose To Work In Prostitution.

As a preliminary matter, Greer cannot establish standing to bring his equal protection challenge on behalf of individuals who "choose to work in prostitution."[31] Under the doctrine of prudential standing, Greer cannot bring suit to enforce the rights of others.[32] Moreover, while an association may bring suit on behalf of its members, it can only do so if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit."[33] As an unestablished business owner, Greer does not identify any discernable "association" or "members" who otherwise have standing to sue in their own right.[34] At best, Plaintiff attempts to bring an equal protection claim as a future brothel owner on behalf of future brothel employees.[35] Yet, any currently unknown or potential future relationships are too tenuous to support representational standing and Greer's equal protection claim brought on behalf of unidentified others is dismissed.

---

[31] Dkt. No. 55, ¶¶106-108; *See* Claim 2(B) "Denial of Equal Protection for Those Who Choose to Work In Prostitution."

[32] *See VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 (10th Cir. 2017).

[33] *Thiebaut v. Colo. Springs Utils.*, 455 Fed. Appx. 795, 801 (10th Cir. 2011); *see also Summers* 555 U.S. at 498-99; *S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement*, 620 F.3d 1227, 1246 (10th Cir. 2010).

[34] *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1397-98 (10th Cir. 1992) (citation omitted).

[35] *See* Dkt. No. 55, ¶108 ("The As-Applied challenged laws must be struck down to allow women the right to work in brothels."). Tricia Christie is no longer a party to this lawsuit and Greer may not assert a claim on her behalf.

### 3. **Greer Does Not Have Standing To Assert Claims Against City Defendant Biskupski and Allred and County Defendants McAdams and Yoshinaga.**

Greer does not demonstrate standing to bring claims against Defendants Salt Lake

City Mayor Jackie Biskupski, City Business Licensing Manager James Allred, Salt Lake County

Mayor Ben McAdams and County Director of Planning and Development Rolen Yoshinaga.

### a. **Biskupski and McAdams**

The only allegation raised against City Mayor Jackie Biskupski is set forth at paragraph

twelve (12) of the amended pleading and states:

> Defendant Biskupski is the Mayor for the City of Salt Lake
> ("Biskupski"). She is sued in her official capacity only.
> Biskupski, an elected official, exercise the executive and
> administrative powers of the municipality. *Utah Code
> 10-3b-202(1)(b).*[36]

Likewise, the only mention of Salt Lake County Mayor Ben McAdams is at paragraph

thirteen (13):

> Defendant Ben McAdams is the Mayor for the County of Salt
> Lake ("McAdams"). He is sued in his official capacity only,
> McAdams, an elected official, exercises the executive and
> administrative powers of the municipalities of the County.
> *Utah Code 10-3b-202(1)(b).*[37]

Plaintiff does not raise any substantive claims or assert an injury-in-fact. Absent a

traceable injury, causation and redressability,[38] Plaintiff lacks standing and Biskupski and

Allred's motions to dismiss are granted.

---

[36] Dkt. No. 55, ¶12.

[37] Dkt. No. 55, ¶13. Utah Code §10-3b-202(1)(b) sets forth the general powers of mayors of cities, towns and metro townships, but not for counties.

[38] *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

### b.    Allred and Yoshinaga

The limited allegations raised against City Business Licensing Manager James Allred and

County Development Director Rolen Yoshinaga are found at paragraphs fifteen (15) and sixteen

(16) of the amended pleading:

> Defendant James Allred is the Business Licensing Manager
> for the City of Salt Lake ("Allred"). He is sued in his official
> capacity only. Allred is responsible for overseeing the business
> licensing in Salt Lake City which includes Sexual Oriented
> Businesses (SOBs). *Salt Lake City Code* 5.02.020;
> *Utah Code 10-8-41.5.*

> County of Salt Lake ("Yoshinaga"). He is sued in his official
> capacity only. Yoshinaga is responsible for overseeing the
> business licensing in Salt Lake County which includes Sexual
> Oriented Businesses (SOBs). *Salt Lake County Code 5.01.030;
> Utah Code 10-8-41.*[39]

And, additionally at paragraph thirty-three (33):

> Berg, Allred, and Yoshinaga are compelled to not issue business
> licenses for those businesses deemed "illegal" and therefore
> hinders Plaintiff's attempts from obtaining a license to try to
> amend State, County, and City laws surrounding houses of
> prostitution.[40]

Together, these allegations are insufficient to establish standing. In their official

capacities, Allred and Yoshinaga oversee aspects of business licensing for Salt Lake City and

Salt Lake County. Greer, however, does not allege that he applied for, or was denied, a business

license by either. No substantive allegations are raised and there is no concrete or particularized

---

[39] Dkt. No. 55, ¶¶ 15, 16.

[40] Dkt. No. 55, ¶33.

injury alleged.[41] Without an injury, causal connection[42] or redressability, Greer cannot demonstrate standing and Allred and Yoshinaga's motions to dismiss are granted.

### 4. Greer Has Standing To Bring Claims Against County Defendant Gill and State Defendants Herbert, Reyes and Berg.

Greer demonstrates standing to bring claims against Defendant Salt Lake County District Attorney Sim Gill and State Defendants Governor Gary Herbert, Attorney General Sean Reyes and Director of the Division of Commerce, Kathy Berg.

#### a. Pre-Enforcement Challenge

As discussed, Article III standing limits federal court jurisdiction to clearly defined cases and controversies where a plaintiff's injury is "actual or imminent, not conjectural or hypothetical."[43] That said, a plaintiff is not required to "await the consummation of threatened injury to obtain preventive relief."[44] Indeed, in order to establish injury under a pre-enforcement challenge to the constitutionality of a criminal statute, a plaintiff must show: "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute, and (2) [the existence of] a credible threat of prosecution thereunder."[45] A credible threat of prosecution exists when the challenged statute prohibits conduct that

---

[41] *Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

[42] *Id.* 137 F.3d at 1202 (standing doctrine requires a "causal connection between the injury and the conduct complaint of" that is "fairly traceable to the actions of the defendant.").

[43] *Lujan,* 504 U.S. at 560.

[44] *Babbit v. UFW Nat'l. Union,* 442 U.S. at 298 (*citing Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S. Ct. 658, 67 L. Ed. 1117 (1923).

[45] *Colo. Outfitters Ass'n. v. Hickenlopper,* 823 F.3d 537, 545 (10th Cir. 2016); *United States v. Supreme Court,* 839 F.3d 888, 901 (10th Cir. 2016) (pet. for cert. filed June 6, 2017) (*citing D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004) (requiring an "objectively justified fear of real consequences").

plaintiff "wishes to engage [in], and the state has not disavowed any intention of invoking the . . .

provision" against plaintiff.[46]

      **b.     Gill**[47]

County District Attorney Sim Gill does not dispute that he possess authority to enforce

Utah's criminal prostitution laws,[48] and he provides no assurances that Greer will not be

prosecuted thereunder.[49] Rather, the thrust of Gill's argument is that any felony prosecution is

too speculative to support standing since it would require two prior prostitution convictions,

solicitation of a child, or solicitation in unincorporated Salt Lake.[50]

Greer has not been threatened with arrest or prosecution under Utah's Prostitution and

Brothel laws. Nonetheless, he asserts an objective fear of prosecution "if he continues to engage

in sexual activity for hire."[51] The court lacks information on the regularity of the statutes'

enforcement. However, any assertion that enforcement is too speculative is undermined by the

---

[46] *Supreme Court*, 839 F.3d at 901 (*citing Babbitt* 442 U.S. at 298).

[47] *See* Dkt. No. 43 (conceding "Plaintiff may have standing to pursue claims against [Gill] based on fear of arrest and prosecution for soliciting prostitution . . . .").

[48] *See e.g., Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1248 (11th Cir. 1998) ("where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.").

[49]*See Babbitt*, 442 U.S. at 302 (threat of prosecution credible where the state "has not disavowed any intention of invoking the. . . provision" against plaintiff.).

[50] Patronizing a prostitute is a misdemeanor offense prosecuted by the City. UCA §§76-10-1303, 76-10-1308, 10-03-928(2). However, patronizing a prostitute is charged as a felony, and prosecuted by the County District Attorney's Office, if it is a third offense or the prostitute is a minor. *Id.* In addition, the County District Attorney's Office is charged with prosecuting felonies within the county as well as misdemeanors that occur within the unincorporated county. *See* UCA §17-18a-401.

[51] Dkt. No. 55, ¶¶8, 58. Even though Greer has "gone a year" without intimacy, standing can still be established based on a credible threat that "such behavior, if taken in the future, would be prosecuted." *Bronson v. Swenson*, 500 F.3d 1099, 1108 (10th Cir. 2007) (*referencing Medimmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 772-76 , 166 L. Ed. 2d 604 (2007).

absence of any geographical limits on Greer's future "engagements" or solicitations. Absent parameters, it is possible that Greer's engagements will occur in unincorporated Salt Lake, an area where the District Attorney is charged with prosecuting felony and misdemeanor crimes.[52] Accordingly, under the somewhat loosened pre-enforcement requirements Gill has authority to enforce the laws and a credible threat of prosecution exists that is sufficient to support standing.[53]

### c.   Herbert, Reyes and Berg

State Defendants Herbert, Reyes and Berg concede that Greer has standing to bring his claims against them. Berg denied Greer's business registration for TMHN,[54] and Herbert and Reyes are responsible for promulgating and enforcing Utah's Prostitution and Brothel laws. Given the possibility that Greer may engage in the proscribed conduct in the future, a credible threat of enforcement and prosecution exist.

---

[52] *See* UCA §17-18a-401.

[53] In so ruling, the court declines to adopt the State's argument that Greer's case is only "a challenge to the ability to open a brothel and not a challenge to the legality of being able to solicit prostitutes more generally, . . ."(Dkt. No. 60 at 9.) Indeed, Plaintiff challenges the constitutionality of Utah Code Ann. §76-10-1302(b) which criminalizes "the generalized legality of prostitution" when meeting at "an arranged place" for the purpose of sexual activity in exchange for a fee or the functional equivalent of a fee. UCA §76-10-1302(b).

Additionally, the court finds Gill's ripeness argument unpersuasive, noting that contingent future events are always at issue in a pre-enforcement matter. *See Thomas v. Anchorage Equal Rights Comm'n.,* 220 F.3d 1134, 1138-39 (9th Cir. 2000) (*stating "*[t]he overlap between [ripeness and standing] has led some legal commentators to suggest that the doctrines are often indistinguishable") (*citing* Erwin Chemerinsky, *A Unified Approach to Justiciability,* 22 Conn. L. Rev. 677, 681 (1990); *see also Awad v. Ziriax,* 670 F.3d 1111, 1124 (10th Cir. 2012) (*quoting Am. Civil Liberties Union v. Johnson,* 194 F.3d 1149, 1154 (10th Cir. 1999) ("If a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.").

[54] *See Kitchen v. Herbert,* 775 F.3d 1193, 1201 (10th Cir. 2014) (holding plaintiffs possessed standing after being denied a license because, in part, the plaintiffs "identified several harms that flow[ed] from th[at] denial."); *see also* Utah Code Ann. §42-2-5.

## II.   42 U.S.C. § 1983

Section 1983 creates a federal cause of action to vindicate violations of constitutional law

by individuals acting "under color of state law."[55] Specifically, §1983 provides a remedy against:

> Every person who, under color of any statute, ordinance, regulations,
> custom, or usage, of any State . . . subjects or causes to be subjected
> . . . to the deprivation of any rights, privileges or immunities secured
> by the Constitution and Laws . . . .[56]

Standing alone, the statute does not create substantive civil rights. Instead, the statute serves as a

procedural mechanism for enforcement of existing federal and constitutional rights.[57]

In the context of a civil rights action against multiple governmental actors, liability is

predicated on each defendant's personal involvement in the constitutional violation.[58] It is of

particular importance "that the complaint make clear exactly who is alleged to have done what to

whom, [in order] to provide each individual with fair notice as to the basis of the claims against

him or her."[59] Specifically,

> When various officials have taken different actions with respect to a
> plaintiff, the plaintiff's facile, passive-voice showing that his rights
> "were violated" will not suffice. Likewise insufficient is a plaintiff's
> more active-voice yet undifferentiated contention that "defendants"
> infringed his rights.[60]

---

[55] *See* 42 U.S.C. §1983.

[56] *Id.*; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).

[57] *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992) ("The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

[58] *See Pahls v. Thoms,* 718 F. 3d 1210, 1225-56 (10th Cir. 2013).

[59] *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (*citing Robbins v Oklahoma,* 519 F.3d 1242, 1250 ) (10th Cir. 2008).

[60] *Pahls,* 718 F.3d at 1225-26 (*citing Tomkovich v. Kan. B. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998).

To survive dismissal for failure to state a claim, a §1983 plaintiff must allege a: "(1) violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."[61]

As set forth herein, Plaintiff does not assert violations of constitutional rights secured under the First, Fifth and Fourteenth Amendments.[62] Because Utah's Prostitution and Brothel laws are constitutional sound, they cannot serve as the grounds for redress of Greer's §1983 claims.[63]

## III.   UTAH'S STATUTES ARE CONSTITUTIONAL

Greer mounts several constitutional challenges to Utah's Prostitution and Brothel laws claiming violations of (1) the right to sexual privacy, (2) equal protection of the laws, (3) the right to earn a living, (4) freedom of association, (5) Article 1, Section 7 of the Utah Constitution, and (6) prohibitions on vagueness. [64]

As explained herein, the challenged provisions are constitutionally sound and Defendants Gill, Herbert, Reyes and Berg's motions to dismiss for failure to state a claim are granted.  In addition, Greer's failure to establish a violation of rights protected under the

---

[61] *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (*citing Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted).

[62] Dkt. No. 55.

[63] *Auvaa v. City of Taylorsville,* 506 F. Supp. 3d 903, 909-10 (D. Utah 2007) (*quoting Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1157) (10th Cir. 2001) (a §1983 plaintiff must "show an affirmative link between a defendant's conduct and a constitutional violation, and that affirmative link must be alleged in the complaint as well as proven at trial.").

[64] *See* Utah Code Ann. §§76-10-1302(1)(b), 76-10-1303(1)(b), 76-10-1304(1)(iii), 76-10-1305(a)(e) and  47-1-1.

Constitution also serves as an alternative holding for granting Defendants Biskupski, McAdams, Allred and Yoshinaga's motions to dismiss.[65]

### 1.    **Facial And As-Applied Challenges.**

A party may challenge the constitutionality of a statute under a facial challenge, an as-applied challenge or both.[66] More specifically,

> [a] facial challenge is a head-on attack [on a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications.
>
> In contrast, an as applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case.[67]

The distinction between facial and as-applied challenges is murky. One is not always categorically distinct from the other and the line of demarcation may be fluid.[68] At first blush, Greer's claims exhibit characteristics of both facial and as-applied challenges; Plaintiff titles his challenges "As Applied,"[69] yet the body of the claims reference application to "many persons in Utah."[70]

---

[65] *See supra,* pg. 10-12.

[66] *See Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008).

[67] *United States v. Supreme Court*, 839 F.3d 888, 907 (10th Cir. 2016) (internal citation and quotation omitted); *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n. 5 (10th Cir. 2010) ("[An] 'as applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitution as applied to [particular parties]."); *United States v. Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

[68] *See Am. Fed'n. of State, Cty. & Mun. Emps. Council 79 v. Scott,* 717 F.3d 851, 865 (11th Cir. 2013).

[69] Dkt. No. 55, ¶¶ 90, 96, 98, 103, 105.

[70] Dkt No. 55, ¶¶111, 117.

When characteristics of both challenges are present, the court may consider other guiding tenets.[71] First, labels that "the parties attach to claims are not determinative."[72] Thus, Greer's "as applied" designations are not dispositive of the inquiry. Second, "the court must focus on whether the claim *and the relief therein* extend beyond the plaintiffs' particular circumstances"[73] Third, if the claim and relief extend beyond the plaintiff, "facial standards are applied but only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision."[74]

As set forth below, the court applies the appropriate "analytical construct" in conjunction with its consideration of Greer's constitutional challenges to Utah's Prostitution and Brothel laws.

### 2.    Plaintiff's Fourteenth Amendment Substantive Due Process Claim For The Right To Sexual Privacy.

While labeled "[a]s [a]pplied," Plaintiff actually asserts a violation of "'many individuals'" substantive due process rights and raises a facial objection.[75]

The Due Process Clause extends constitutional protections to fundamental rights and freedoms protected under the Bill of Rights.[76] Fundamental rights are "deeply rooted in this

---

[71] *Supreme Court,* 839 F.3d at 914 (10th Cir. 2016).

[72] *Id.* at 914. *See also Doe v. Reed,* 561 U.S. 186, 194, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010) ("The label is not what matters.").

[73] *Id.* (Emphasis added).

[74] *Id.*

[75] Dkt. No. 55, ¶96. *See Discount Tobacco City & Lottery, Inc. v. United States,* 674 F.3d 509, 522 (6th Cir. 2012) (*quoting Reed,* 561 U.S. at 194).

[76] *Kitchen v. Herbert,* 755 F.3d 1193, 1208 (10th Cir. 2014) (*quoting Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal quotations omitted).

Nation's history and tradition . . . , such that neither liberty nor justice would exist if [the liberties] were sacrificed."[77]

### a.   The Relationship Between Prostitute And Client Is Not A Fundamental Right Protected By The Due Process Clause.

Any fundamental rights analysis involves consideration of plaintiff's "careful description of the asserted fundamental liberty interest" along with its historical roots.[78] Fundamental constitutional protections have been afforded to personal decisions and relationships such as "marriage, procreation, contraception, family relationships, child rearing, and education." [79] Similar protections have not been extended to the relationship between a prostitute and client.

In support of his claim, Greer asserts sex in brothels is deeply rooted in this nation's history.[80] Additionally, Plaintiff points to the "ambiguity" surrounding the Supreme Court's ruling in *Lawrence v. Texas*, striking down Texas' law prohibiting homosexual sodomy.[81] Admittedly, the nature of rights protected under *Lawrence* is imprecise. Nonetheless, the *Lawrence* court acknowledged the case "does not involve . . . prostitution."[82] Further, the Supreme Court's holding has not been interpreted as creating "a liberty interest that invalidates

---

[77] *Id.* 755 at 1208-09 (*citing Glucksberg*, 521 U.S. at 720-21) (quotations omitted).

[78] *Chavez v. Martinez,* 538 U.S. 760, 775-76, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2002).

[79] *Carey v. Population Services International,* 431 U.S. 678, 684-686, 52 L. Ed. 2d 675, 97 S. Ct. 2010 (1977).

[80] Dkt. No. 55, ¶91.

[81] Dkt. No. 61 at 19; *See Lawrence v. Texas,* 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003).

[82] *Lawrence,* 539 U.S. 558 at 578 .

laws criminalizing prostitution."[83] Without a fundamental liberty interest, rational-basis review applies.[84]

> **b.      Utah's Laws Criminalizing Prostitution Are Rationally Related To Legitimate Government Interests.**

Under rational review a statute must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[85] Review is highly deferential to state action and the burden is on plaintiff "to negate every conceivable basis which might support" the legislation.[86]

Utah's Prostitution and Brothel laws rationally relate to legitimate governmental interests. In reaching this conclusion, the court takes judicial notice of the harms of prostitution as determined by other federal courts.[87] Legitimate harms of prostitution include an interest in

---

[83] *See Erotic Service Provider Legal Education & Research Project v. Gascon,* 880 F.3d 450, 456 (9th Cir. 2018); *See e.g. Doe v. Jindal,* 851 F. Supp. 2d 995, 1000 n. 11 (E.D. La. 2012) ("*Lawrence* does not speak to the solicitation of sex for money, and has little precedential force here."); *United States v. Thompson,* 458 F. Supp. 2d 730, 732 (N. D. Ind. 2006) ("it would be an untenable stretch to find that *Lawrence* necessarily renders (or even implies) law prohibiting prostitution . . . unconstitutional"); *State v. Thomas,* 891 So. 1223, 1236 (La. 2005) ("[T]he majority opinion in *Lawrence* specifically states the court's decision does not disturb state statutes prohibiting public sexual conduct or prostitution.").

[84] *FCC v. Beach Commc'ns.,* 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (upholding statute under rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *see also Teigen v. Renfrow,* 511 F.3d 1072, 1083 (10th Cir. 2007) (upholding statute that is "rationally related to a legitimate government purpose or end."). If a fundamental liberty interest is involved, strict scrutiny applies; *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

[85] *Beach Commc'ns, Inc.,* 508 U.S. at 313 (1993); *see also Allright Colorado, Inc. v. City & Cty. Of Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted).

[86] *Heller v. Doe,* 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (internal quotation marks omitted).

[87] A court is required to convert a motion to dismiss to a motion for summary judgment if it considers matters that are outside the scope of the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But, a court is not required to convert a motion to summary judgment based upon its consideration of public records for which the court takes judicial notice. *See Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) ("facts subject to

deterring the commodification of sex,[88] along with findings that support a connection between prostitution and trafficking in women and children,[89] violence against women,[90] illegal drug use[91] and sexually transmitted diseases.[92]

Greer maintains criminalizing prostitution actually places individuals at greater risk of contracting a sexually transmitted disease or becoming the victim of a crime, and therefore no rational basis exists.[93] The issue, however, is not whether Greer's basis or the basis offered by the State is more rational. Rather, the question is whether Utah's Prostitution and Brothel laws further a legitimate purpose.[94] Here, they do. Commercial sex is not a fundamental right and

---

judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.); *see also St Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue.").

The State also asks the court to take judicial notice of the fact that forty-nine (49) of the fifty (50) states in the United States have chosen to criminalize prostitution, with only Nevada leaving that decision to the counties to decide.

[88] *See Coyote Publ. Inc. v. Mille,* 598 F.3d 592, 603 (9th Cir. 2010) (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and restrictions on prostitution stem from "an objection to their inherent commodifying tendencies—to the buying and selling of things and activities integral to a robust conception of personhood.").

[89] *See Erotic Serv. Provider,* 880 F.3d at 457 (*citing Coyote Publ'g Inc.,* 598 F.3d at 600 (9th Cir. 2010) and Bureau of Justice Statistics, U.S. Dep't. of Justice, *Characteristics of Suspected Human Trafficking Incidents,* 2008-2010 1, 3 (April 2011).

[90] *See Id.* at 457-58 (*citing United States v. Carter,* 266 F.3d 1089, 1091 (9th Cir. 2001) and *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 n. 47-48 (2000).

[91] *See Id.* at 458 *(citing Colacurio v. City of Kent,* 163 F.3d 545, 554, 556 (9th Cir. 1998) and Amy M. Young, et al., *Prostitution, Drug Use, and Coping with Psychological Distress,* J. Drug issues 30(4), 789-800 (2000).

[92] *Id.* at 458.

[93] Dkt. No. 55, ¶92; Dkt. No. 61 at 10.

[94] *Allright Colorado, Inc.,v. Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991).

Utah's laws prohibiting prostitution and the operation of brothels are supported by a rational basis.

### 3.     Claim Two: Plaintiff's Fourteenth Amendment Equal Protection Claim For Same End Goal of Intimacy.

The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[95] Equal protection requires the laws to afford similarly situated people like treatment.[96]

Greer concedes Utah's Prostitution and Brothel laws are neutral and apply to "all persons who engage in prostitution."[97] He argues, however, that the laws have a disparate impact on individuals with physical disabilities in violation of equal protection. Greer asserts disabled people "comprise a higher percentage of patrons who pay for [prostitution] services" and are therefore at a higher risk of being arrested for soliciting prostitutes.[98] As an individual with a disability, Plaintiff's claim contains aspects of both facial and as-applied challenges.[99] Yet, the relief requested affects the statute's application to the physically disabled. Accordingly, facial standards apply but only "to the universe of applications contemplated by plaintiff's claim."[100]

---

[95] U.S. Cons. Amend. XIV.

[96] *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). A statute violates the equal protection clause "if it makes distinctions between the disabled and nondisabled without a rational justification."); *see also Thompson v. Colorado,* 278 F.3d 1020 (10th Cir. 2001) (*citing United States Dep't. of Agric. v. Moreno,* 413 U.S. 528, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973).

[97] Dkt. No. 55, ¶102.

[98] Dkt. No. 55, ¶¶ 102, 105.

[99]*Cmpr.* Dkt. No. 55, ¶103 ("The As Applied sections") *with* Dkt. No. 55, ¶ 102 ("discrimination against disabled people").

[100] *Supreme Court,* 839 F.3d at 913 (10th Cir. 2016).

Assuming, as Greer has alleged, that Utah's Prostitution and Brothel laws have a disproportional effect on the disabled, "a neutral law that disproportionately impacts [a group] does not violate equal protection, . . . , unless that impact can be traced to a discriminatory purpose."[101] Greer does not allege any discriminatory purpose and therefore fails to raise an equal protection violation. And, even if alleged, any discriminatory purpose would need to support the unlikely contention that Utah's legislature enacted statutes prohibiting prostitution and brothels "because of, not merely in spite of" the laws' adverse effects on the disabled."[102] There is no fundamental right to solicit sexual services and Utah's Prostitution and Brothel laws bear a rational relation to legitimate government interests.[103]

### 4. **Claim Three: Violation of Plaintiff's Fourteenth Amendment Substantive Due Process Right To Earn A Living.**

Greer's third constitutional challenge alleges Utah's Prostitution and Brothel laws violate the Fourteenth Amendment right to "earn a living through one's chosen livelihood or profession" and to "follow any of the ordinary callings of life; to live and work where one will; and for that purpose enter into all contracts which may be necessary and essential to carrying out these pursuits."[104] Greer mounts a facial challenge on behalf of the "many persons" who seek to earn a living by engaging in the commercial exchange of sex.[105]

---

[101] *United States v. Williams,* 45 F.3d 1481, 1486 (10th Cir. 1995) (*citing United States v. Thurmond,* 7 F.3d 947, 953 (10th Cir. 1993).

[102] *See Thurmond,* 7 F.3d 947, 952 (10th Cir. 1993) (citing *Personnel Adm'r. v. Feeney,* 442 U.S. 256, 272, 99 S. Ct. 2282, 60 L. Ed. 2d 870) (1979).

[103] *Romer v. Evans,* 517 U.S. 620, 631, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996).

[104] Dkt. No. 55, ¶112.

[105] Dkt. No. 55, ¶111.

The language of Plaintiff's challenge is identical to that raised by plaintiffs in the Ninth

Circuit case *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, challenging the

constitutionality of a California statute criminalizing prostitution.[106] While recognizing a

fundamental right to make contracts and earn a living, the Ninth Circuit ultimately concluded

"there is no constitutional right to engage in illegal employment, namely, prostitution" and

Plaintiff's claim fails.[107] Consistent therewith, Greer fails to state a claim for a violation of a

Fourteenth Amendment substantive due process right to earn a living through illegal

employment---prostitution.

### Claim Four: Violation of Plaintiff's First Amendment Right To Free Association.

Next, Greer raises a facial attack on Utah's Prostitution and Brothel laws, claiming the

statutes violate "many persons" rights to the freedom of association as secured under the First

Amendment.[108]

"There are two distinct forms of freedom of association: (1) freedom of intimate

association, protected under the Substantive Due Process Clause of the Fourteenth Amendment;

and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the

First Amendment."[109] As an initial matter, Greer does not assert that the association between a

prostitute and client is expressive. Further, Utah's Prostitution and Brothel laws do not

---

[106] *Erotic Service Provider,* 880 F.3d at 454 (*citing* Cal. Penal Code §647(b)).

[107] *Id. at* 459; *see Lowe v. S.E.C.,* 472 U.S. 181, 228, 105 S. Ct. 2557, 86 L. Ed 2d 130 (1985) ("It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose." (internal quotation and citation omitted).

[108] Dkt. No. 55, ¶117. Plaintiff mounts a facial challenge based on his objection to the laws on behalf of "many persons" and not just himself.

[109] *Erotic Service Provider*, (2018) (*citing Roberts v. U.S. Jaycees,* 468 U.S. 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

criminalize associating or meeting with a prostitute; they criminalize paying a prostitute for sex. This association is not protected. Thus, even though Greer frames his claim as a First Amendment issue, his allegations are actually rooted in a claim for violation of the substantive due process clause protecting "intimate" and highly personal associations.[110] As discussed, Greer's substantive due process claim fails because Utah's Prostitution and Brothel laws do not burden a fundamental right and are supported by a rational basis.[111]

### Claim Five: Violation Of Article I Section 7 Of The Utah Constitution

Plaintiff argues the statutes violate Article 1 Section 7 of the Utah Constitution by depriving him of his due process rights.[112]

Like its federal counterpart, Utah's due process clause provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."[113] The Utah Supreme Court interprets the state due process clause consistent with Supreme Court case law interpreting the federal due process clause.[114] Accordingly, this court's analysis of Greer's "federal substantive

---

[110] *See* Dkt. No. 55, ¶116 ("the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships."); *see also* Dkt. No. 55, ¶117 (challenging Utah's Prostitution and Brothel statutes as prohibiting the ability of "many persons in the State of Utah, . . . to enter into and maintain certain intimate and private relationships.").

*See also IDK Inc. v. County of Clark,* 836 F.2d 1185, 1192 (9th Cir. 1988) (noting the Supreme Court typically identifies the source of protection for highly personal relationships as the fourteenth amendment due process clause and not the first amendment freedom to assemble.).

[111] *See IDK,* 836 F.2d at 1193 (holding duration of relationship between prostitute and client does not support an intimate relationship).

[112] Dkt. No. 55, ¶121.

[113] Utah Const. Art. I, §7, *Jensen v. Cunningham,* 2011 UT 17, ¶71, 250 P.3d 465, 483.

[114] *Disability Law Ctr. v. Utah,* 180 F. Supp.3d 998, 1013 (D. Utah 2016) (*citing Terra Utils. v. Public Serv. Comm'n.,* 575 P.3d 1029 (Utah 1978) ("Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the

due process claim applies with equal force to Plaintiffs' due process claim under the Utah Constitution" and, as a result, Greer fails to state a claim for relief under Article I Section 7. [115]

### Claim Six: Violation Of Constitutional Prohibition On Vagueness

In 2017, the Utah legislature changed the term "house of prostitution" to "place of prostitution," which it defines as:

> a place or business where prostitution or promotion of prostitution is arranged, regularly carried on, or attempted by one or more persons under the control, management, or supervision of another. [116]

Greer asserts the term "place of prostitution" is unconstitutionally vague because it[117] arbitrarily allows law enforcement "to go after obvious brothels, but not go after legal places that may be practicing prostitution [i.e. strip clubs, massage parlors etc.] . . . ."[118] Utah Code Ann. §76-10-1304(1)(iii) is the only criminal statute challenged by Plaintiff that is applicable to operation of a brothel.[119]

Greer raises his challenge to the constitutionality of the statute in the context of a pre-enforcement review. Pre-enforcement review amounts to a facial challenge since "no one has been charged so the court cannot evaluate the statute as applied."[120] Moreover, because

---

federal Constitution, the decisions of the Supreme Court of the United States on the federal due process clauses are highly persuasive as to the application of that clause of our state Constitution.").

[115] *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d at 1013.

[116] Dkt. No. 55, Utah Code Ann. §76-10-1301(3).

[117] Dkt. No. 55, ¶117.

[118] Dkt. No. 55, ¶127.

[119] The other Utah Prostitution and Brothel statutes pertain to personal solicitation or exploitation of prostitutes and are not encompassed within Greer's vagueness challenge. *See* UCA §76-13-1302(1)(b), UCA §76-10-1303(1)(b) and UCA §76-10-1305(1)(a)(e). Moreover, the "definitions" referred to in Title 76 of Utah's Criminal Code do not have any application to Title 47 Nuisances or UCA §41-1-1.

[120] *United States v. Gaudreau,* 860 F.2d 357, 360 (10th Cir. 1988).

Greer's challenge does not implicate any conduct protected under the First Amendment,[121] the statute is reviewed "on its face as unduly vague in violation of due process."[122] To demonstrate that the law is impermissibly vague, it must be "vague in all of its applications."[123]

Vagueness is rooted in the due process clause of the Fifth Amendment which guarantees that "[n]o person shall . . . be deprived of life, liberty or property without due process of law."[124] A statute is impermissibly vague if "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement."[125] When reviewing a statute for vagueness, "courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution"[126]

---

[121] *See Gaudreau*, at 361 ("[A] statute may be challenged on its face when it threatens to chill constitutionally protected conduct, especially conduct protected by the First Amendment.").

[122] *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L.Ed.2d 362, (1982).

[123] *Id.* at 495; *see Free Speech Coalition v. Gonzales,* 483 F. Supp. 2d 1069, 1078 (D. Colo. 2007) (holding that because the "regulation does not implicate a substantial amount of constitutionally protected conduct, and since it comes in a pre—enforcement context" the *Hoffman Estates* analysis applied); *But see United States v. Moesser,* 2010 U.S. Dist. LEXIS 123271 *33-34 (10th Cir. 2010) ("while the Supreme Court has not expressly overturned its prior rule permitting facial vagueness claims outside of a First Amendment context, it is clear that since Justice Scalia's in-depth discussion of the issue, . . . , the Court has shifted away from allowing such challenges and now favors only permitting facial vagueness challenges when First Amendment protections are involved.")

[124] U.S. Cons. Amend. V.

[125] *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir 2005); *see also United States v. Corrow*, 119 F.3d 796, 802 (10th Cir. 1997).

[126] *United States v. Day,* 223 F. 3d 1225, 1228 (10th Cir. 2000) (*citing Brecheisen v. Mondragon*, 833 F.2d 238, 241 (10th Cir. 1987).

Upon review, the statute is clearly designed to regulate prostitution and includes a specific standard for enforcement; namely, whether the "place" in question is "used for prostitution or the promotion of prostitution."[127] The law provides fair warning of what is proscribed, and in the pre-enforcement context there is no allegation that the statute has been enforced in a discriminatory manner. Further, while a business that holds itself out as a "brothel" may be a more obvious target for prosecution, the statute provides a clear enforcement standard that does not encompass otherwise legal businesses. Consequently, the language of the statute "is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness."[128]

## IV.    RULING & ORDER

At its core, Greer's action stems from an impassioned belief that Nevada's system of regulating prostitution and brothels is superior to Utah's laws criminalizing prostitution. While engaging, Greer's policy based claims do not control and it is not the role of this court "to weigh the wisdom of the legislation."[129] Utah's Prostitution and Brothel laws are rationally related to legitimate governmental interests, and any claim that the laws are antiquated and out of line with popular convictions is a policy based argument that is appropriate for consideration by the legislature, not the courts.

For the reasons set forth in this decision, the City, County and State Defendants' motions are granted, and Greer's amended complaint is dismissed with prejudice.

---

[127] Utah Code Ann. §76-10-1304(1)(iii).

[128] *Hoffman Estates*, 455 U.S. at 503.

[129] *Bensing v. United States,* 551 F.2d 262, 265 (10th Cir. 1977).

**DATED**:  May 8th , 2018.

**BY THE COURT:**

Dustin B. Pead
U.S. Magistrate Judge