APPEAL,CLOSED,CONMAGTRL,LODGE_DOC,OPEN_MJ,PROSE

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: <u>2:16−cv−01067−DBP</u>

Greer et al v. Herbert et al                          Date Filed: 10/18/2016
Assigned to: Magistrate Judge Dustin B. Pead          Date Terminated: 05/08/2018
 Case in other court:  Tenth Circuit, 18−04075        Jury Demand: None
Cause: 28:2201 Constitutionality of State Statute(s)  Nature of Suit: 950 Constitutional − State
                                                      Statute
                                                      Jurisdiction: Federal Question

**Plaintiff**

**Russell G. Greer**                    represented by   **Russell G. Greer**
                                                         3306 E DEL VERDE AVE
                                                         SALT LAKE CITY, UT 84109
                                                         (801)895−3501
                                                         PRO SE

V.

**Defendant**

**Gary R. Herbert**                     represented by   **David N. Wolf**
*in his official capacity as Governor of the*           UTAH ATTORNEY GENERAL'S
*State of Utah*                                          OFFICE (160−6−140856)
                                                         LITIGATION UNIT
                                                         160 E 300 S 6TH FL
                                                         PO BOX 140856
                                                         SALT LAKE CITY, UT 84114−0856
                                                         (801)366−0100
                                                         Email: <u>dnwolf@agutah.gov</u>
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory M. Soderberg**
                                                         LITCHFIELD CAVO
                                                         420 E SOUTH TEMPLE STE 510
                                                         SALT LAKE CITY, UT 84111
                                                         (801)410−4982
                                                         Email: <u>soderberg@litchfieldcavo.com</u>
                                                         *TERMINATED: 03/16/2018*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Sean D. Reyes**                       represented by   **David N. Wolf**
*in his official capacity as Attorney*                   (See above for address)
*General of the State of Utah*                           *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Gregory M. Soderberg**
(See above for address)
*TERMINATED: 03/16/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sim S. Gill**                    represented by   **David M. Quealy**
*in his official capacity as District*              WEST JORDAN CITY ATTORNEY'S
*Attorney of the City and County of Salt*           OFFICE
*Lake*                                              8000 S REDWOOD RD
                                                    WEST JORDAN, UT 84088
                                                    (801)569–5042
                                                    Email: dquealy@slco.org
                                                    *TERMINATED: 02/21/2018*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jacque M. Ramos**
                                                    SALT LAKE COUNTY DISTRICT
                                                    ATTORNEY'S OFFICE
                                                    35 E 500 S
                                                    SALT LAKE CITY, UT 84111
                                                    (385)468–7785
                                                    Email: jmramos@slco.org
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jennifer Bailey**
                                                    SALT LAKE COUNTY DISTRICT
                                                    ATTORNEY'S OFFICE
                                                    35 E 500 S
                                                    SALT LAKE CITY, UT 84111
                                                    (385)468–7817
                                                    Email: jenbailey@slco.org
                                                    *TERMINATED: 02/21/2018*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Neil R. Sarin**
                                                    SALT LAKE COUNTY DISTRICT
                                                    ATTORNEY'S OFFICE
                                                    35 E 500 S
                                                    SALT LAKE CITY, UT 84111
                                                    (385)468–7785
                                                    *TERMINATED: 08/11/2017*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Jackie Biskupski**
*in her official capacity as Mayor of the
City of Salt Lake*

represented by **Catherine L. Brabson**
SALT LAKE CITY ATTORNEYS
OFFICE
PO BOX 145478
451 S STATE ST STE 505
SALT LAKE CITY, UT 84114–5478
(801)535–7788
Email: Catherine.Brabson@slcgov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ben McAdams**
*in his official capacity as Mayor of the
County of Salt Lake*

represented by **David M. Quealy**
(See above for address)
*TERMINATED: 02/21/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacque M. Ramos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Bailey**
(See above for address)
*TERMINATED: 02/21/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Neil R. Sarin**
(See above for address)
*TERMINATED: 08/11/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kathy Berg**
*in her official capacity as Director of the
Division of Commerce*

represented by **David N. Wolf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory M. Soderberg**
(See above for address)
*TERMINATED: 03/16/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Allred**
*in his official capacity as Business
Licensing Manager for the City of Salt*

represented by **Catherine L. Brabson**
(See above for address)
*LEAD ATTORNEY*

*Lake*                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Rolen Yoshinaga**                    represented by    **David M. Quealy**
*in his official capacity as Director of*                (See above for address)
*Planning and Development for the*                       *TERMINATED: 02/21/2018*
*County of Salt Lake*                                    *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jacque M. Ramos**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jennifer Bailey**
                                                          (See above for address)
                                                          *TERMINATED: 02/21/2018*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Neil R. Sarin**
                                                          (See above for address)
                                                          *TERMINATED: 08/11/2017*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/18/2016 | 1 | 12 | COMPLAINT against James Allred, Kathy Berg, Jackie Biskupski, Sim S. Gill, Gary R. Herbert, Ben McAdams, Sean D. Reyes, Rolen Yoshinaga (Filing fee $ 400, receipt number 4681074304) (Fee Status: Paid) filed by Russell G. Greer. (Attachments: # 1 Civil Cover Sheet 1) Assigned to Magistrate Judge Dustin B. Pead (mms) (Entered: 10/18/2016) |
| 12/01/2016 | 2 | | MOTION to allow proof of service to be filed with the court without original summons pursuant to FRCP 4 filed by Plaintiff Russell G. Greer. (kpf) (Entered: 12/01/2016) |
| 12/01/2016 | 3 | | NOTICE of Appearance by David N. Wolf on behalf of Kathy Berg, Gary R. Herbert, Sean D. Reyes (Wolf, David) (Entered: 12/01/2016) |
| 12/01/2016 | 4 | | NOTICE of Appearance by Gregory M. Soderberg on behalf of Kathy Berg, Gary R. Herbert, Sean D. Reyes (Soderberg, Gregory) (Entered: 12/01/2016) |
| 12/01/2016 | 5 | | NOTICE of Appearance by Neil R. Sarin on behalf of Sim S. Gill, Ben McAdams, Rolen Yoshinaga (Sarin, Neil) (Entered: 12/01/2016) |
| 12/01/2016 | 6 | | MOTION for Extension of Time to File Answer re 1 Complaint, filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Attachments: # 1 Text of Proposed Order Order Granting Extension of Time to Respond to Plaintiffs' Complaint)(Sarin, Neil) (Entered: 12/01/2016) |
| 12/01/2016 | 7 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Jennifer Bailey on behalf of Sim S. Gill, Ben McAdams, Rolen Yoshinaga (Bailey, Jennifer) (Entered: 12/01/2016) |
| 12/01/2016 | 8 | | Defendant's MOTION for Extension of Time to respond to Plaintiff's Complaint filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Text of Proposed Order)(Wolf, David) Modified on 12/2/2016 by changing motion type to Motion for Extension of time to File Answer (las). (Entered: 12/01/2016) |
| 12/02/2016 | 9 | | ORDER granting 6 Motion for Extension of Time to Answer re 1 Complaint,. Answer deadline updated for Sim S. Gill answer due 12/7/2016; Ben McAdams answer due 12/7/2016; Rolen Yoshinaga answer due 12/7/2016. Signed by Magistrate Judge Dustin B. Pead on 12/1/2016. (las) (Entered: 12/02/2016) |
| 12/02/2016 | 10 | | ORDER granting 8 Motion for Extension of Time to Answer re 1 Complaint,. Answer deadline updated for Kathy Berg answer due 12/27/2016; Gary R. Herbert answer due 12/27/2016; Sean D. Reyes answer due 12/27/2016. Signed by Magistrate Judge Dustin B. Pead on 12/2/2016. (las) (Entered: 12/02/2016) |
| 12/12/2016 | 11 | 50 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants James Allred, Jackie Biskupski. Attorney Catherine L. Brabson added to party James Allred(pty:dft), Attorney Catherine L. Brabson added to party Jackie Biskupski(pty:dft)(Brabson, Catherine) (Entered: 12/12/2016) |
| 12/12/2016 | 12 | | NOTICE – This case is assigned to a magistrate judge. To consent or request reassignment, use  the form on this link  or use the included form for non–efilers and send it to consents@utd.uscourts.gov within 15 days or mail to the court with *Attention: Consent Clerk* on the envelope. Notice e–mailed or mailed to Defendants James Allred, Kathy Berg, Jackie Biskupski, Sim S. Gill, Gary R. Herbert, Ben McAdams, Sean D. Reyes, Rolen Yoshinaga, Plaintiff Russell G. Greer. Form due by 12/27/2016. (las) (Entered: 12/12/2016) |
| 12/12/2016 | 13 | | NOTICE OF ADR, e–mailed or mailed to Defendants James Allred, Kathy Berg, Jackie Biskupski, Sim S. Gill, Gary R. Herbert, Ben McAdams, Sean D. Reyes, Rolen Yoshinaga, Plaintiff Russell G. Greer. (las) (Entered: 12/12/2016) |
| 12/12/2016 | 14 | | NOTICE FROM THE COURT re: Initial Scheduling The court's IPT Clerk will now set the case for the Initial Pretrial Scheduling Conference (las) (Entered: 12/12/2016) |
| 12/14/2016 | 15 | | RECEIVED Consent/Reassignment Form from Defendants James Allred, Jackie Biskupski. (las) (Entered: 12/14/2016) |
| 12/19/2016 | 16 | | RECEIVED Consent/Reassignment Form from Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (las) (Entered: 12/19/2016) |
| 12/23/2016 | 17 | 56 | Defendant's MOTION to Dismiss and Memorandum in Support filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 12/23/2016) |
| 12/27/2016 | 18 | 76 | MOTION to Dismiss and Memorandum in Support *Plaintiffs' Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Sarin, Neil) (Entered: 12/27/2016) |

| 12/28/2016 | 19 |    | NOTICE REMINDER – All parties are requested to respond within the time frame set forth in the 12 Notice of Presiding Magistrate Assignment,, pursuant to General Order 07–001. If you have already consented/objected, please disregard this notice. No judge will be informed of a party's response unless all parties have consented to the assignment of the matter to a U.S. Magistrate Judge. Unless consents from all parties are received within fifteen(15) days, the case will be randomly re–assigned to a U.S. District Judge without further notice.<br>Link to Magistrate Consent Objection form (blh) (Entered: 12/28/2016) |
| 12/28/2016 | 20 |    | RECEIVED Consent/Reassignment Form from Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga (blh) (Entered: 12/28/2016) |
| 12/28/2016 | 21 | 85 | Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants James Allred, Jackie Biskupski. (Brabson, Catherine) (Entered: 12/28/2016) |
| 12/28/2016 | 22 |    | **NOTICE OF INITIAL PRETRIAL CONFERENCE:** (Notice generated by IPT Clerk)<br>The **Attorneys Planning Meeting Report** and **Proposed Scheduling Order** forms, available on the court web site at http://www.utd.uscourts.gov/documents/formpage.html, should be prepared 21 days before the Initial Pretrial Conference hearing date.<br><br>**NOTICE TO COUNSEL,** The Court *may* enter a scheduling order and vacate the hearing *if* counsel<br>(a) file a stipulated **Attorneys Planning Meeting Report**; and<br>(b) e–mail a **Proposed Scheduling Order** to ipt@utd.uscourts.gov<br>21 days before the scheduled hearing. See instructions at http://www.utd.uscourts.gov/documents/ipt.html<br><br>If counsel or the parties would like to participate by phone they must contact the IPT Clerk at least two days in advance at ipt@utd.uscourts.gov to make arrangements.<br><br>**Initial Pretrial Conference set for 2/8/2017 at 11:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse.** (jds) (Entered: 12/28/2016) |
| 12/30/2016 | 23 |    | RECEIVED Consent/Reassignment Form from Plaintiff Russell G. Greer. (las) (Entered: 12/30/2016) |
| 12/30/2016 | 24 |    | JOINT STATEMENT OF PARTIES/ CONSENT to Jurisdiction by US Magistrate Judge under 28 U.S.C. 636(c) by Defendants James Allred, Kathy Berg, Jackie Biskupski, Sim S. Gill, Gary R. Herbert, Ben McAdams, Sean D. Reyes, Rolen Yoshinaga, Plaintiff Russell G. Greer. (Attachments: # 1 Consent, # 2 Consent, # 3 Consent)(las) (Additional attachment(s) added on 1/5/2017: # 4 Signed Herbert, Reyes and Berg Consent) (las). (Entered: 12/30/2016) |
| 01/09/2017 | 25 | 89 | MEMORANDUM in Opposition re 17 Defendant's MOTION to Dismiss and Memorandum in Support filed by Plaintiff Russell G. Greer. (rks) (Entered: 01/11/2017) |
| 01/13/2017 | 26 |    | REPORT OF ATTORNEY PLANNING MEETING. (Attachments: # 1 Text of Proposed Order [Proposed] Scheduling Order)(Soderberg, Gregory) (Entered: |

|  |  |  | 01/13/2017) |
|---|---|---|---|
| 01/20/2017 | 27 |  | SCHEDULING ORDER: Initial Pretrial Hearing vacated. Amended Pleadings due by 8/31/2017. Joinder of Parties due by 9/29/2017. Fact Discovery due by 9/30/2017. Expert Discovery due by 1/15/2018. Motions due by 2/15/2018. Status Conference set for 2/22/2018 at 02:00 PM in Rm 7.100 before Magistrate Judge Dustin B. Pead. Signed by Magistrate Judge Dustin B. Pead on 1/9/2017. (las) (Entered: 01/20/2017) |
| 01/23/2017 | 28 | 136 | REPLY to Response to Motion re 17 Defendant's MOTION to Dismiss and Memorandum in Support *of State Defendants' Motion to Dismiss* filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 01/23/2017) |
| 01/27/2017 | 29 | 139 | RESPONSE to Motion re 21 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support , 11 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support , 17 Defendant's MOTION to Dismiss and Memorandum in Support , 18 MOTION to Dismiss and Memorandum in Support *Plaintiffs' Complaint for Declaratory and Injunctive Relief* filed by Plaintiff Russell G. Greer. (las) (Entered: 01/30/2017) |
| 02/17/2017 | 30 | 143 | REPLY to Response to Motion re 18 MOTION to Dismiss and Memorandum in Support *Plaintiffs' Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Sarin, Neil) (Entered: 02/17/2017) |
| 02/24/2017 | 31 |  | DOCUMENT LODGED from plaintiff consisting of pleading incorrectly styled as a combined surreply and 'amended complaint' (no leave appears to have been granted to file either per FRCivP 15 or DUCivR 7−1(b)(2)(A)) (alt) (Entered: 02/28/2017) |
| 03/06/2017 | 32 |  | REQUEST to Submit for Decision re 18 MOTION to Dismiss and Memorandum in Support *Plaintiffs' Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Sarin, Neil) (Entered: 03/06/2017) |
| 04/19/2017 | 33 |  | DOCKET TEXT ORDER finding as moot Plaintiff's Motion To Allow Proof Of Service 2 . All Defendants have filed a responsive pleading [11, 17, 18, 21], and there has been no challenge to the sufficiency of service. Signed by Magistrate Judge Dustin B. Pead on 04/19/2017. (Entered: 04/19/2017) |
| 04/21/2017 | 34 |  | RULING AND ORDER – The court requests additional briefing on several issues. Consistent therewith, the Court Orders the following briefing schedule: Briefing On Plaintiffs Standing And The Ripeness Of The Claims *Plaintiffs Initial Brief Due: May 5, 2017. *Defendants Responsive Briefs Due: May 19, 2017.<br>Briefing On Facial vs. As−Applied Challenges *Defendants Initial Briefs Due: May 5, 2017. *Plaintiffs Responsive Brief Due: May 19, 2017. Signed by Magistrate Judge Dustin B. Pead on 4/21/2017. (las) (Entered: 04/21/2017) |
| 05/05/2017 | 35 | 147 | Supplemental BRIEF In Support of Plaintiff's Standing and the Ripeness of the Claims filed by Plaintiff Russell G. Greer. (las) (Entered: 05/05/2017) |
| 05/05/2017 | 36 | 158 |  |

| | | | |
|---|---|---|---|
| | | | Supplemental Memorandum Regarding Facial and As–Applied Challenges BRIEF re 34 Order,, filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 05/05/2017) |
| 05/05/2017 | 37 | 169 | Supplemental BRIEF re 36 Brief, 34 Order,, *Re Facial vs. As–Applied Constitutional Challenges and Joinder in State Defendants' Supplemental Brief* filed by Defendants James Allred, Jackie Biskupski. (Brabson, Catherine) (Entered: 05/05/2017) |
| 05/05/2017 | 38 | 172 | Supplemental BRIEF *regarding Facial vs. As–Applied Constitutional Challenges and Joinder in State's Supplemental Memorandum* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Sarin, Neil) (Entered: 05/05/2017) |
| 05/19/2017 | 39 | 175 | RESPONSIVE SUPPLEMENTAL BRIEF re 35 Brief, 34 Order,, filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Attachments: # 1 Exhibit 1– Plaintiff's DBA registration)(Soderberg, Gregory) (Entered: 05/19/2017) |
| 05/19/2017 | 40 | 185 | ERRATA to 39 Brief filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes . (Attachments: # 1 Exhibit 1– Plaintiff's DBA registration)(Soderberg, Gregory) (Entered: 05/19/2017) |
| 05/19/2017 | 41 | 190 | Defendant's RESPONSE re 35 Brief, 34 Order,,,*RE Standing and Ripeness* filed by James Allred, Jackie Biskupski. (Brabson, Catherine) (Entered: 05/19/2017) |
| 05/19/2017 | 42 | 195 | Plaintiff's RESPONSE to Defendant's 36 Supplemental Memorandum Regarding Facial and As–Applied Challenges Brief per 34 Order, filed by Russell G. Greer. (jwt) (Entered: 05/19/2017) |
| 05/19/2017 | 43 | 200 | RESPONSIVE SUPPLEMENTAL BRIEF re 35 Brief filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Sarin, Neil) (Entered: 05/19/2017) |
| 05/23/2017 | 44 | | MOTION to Amend Complaint filed by Plaintiff Russell G. Greer. (las) (Entered: 05/23/2017) |
| 06/02/2017 | 45 | | RESPONSE to Motion re 44 MOTION to Amend/Correct *Plaintiff's Motion for Leave to File Supplemental Complaint* filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 06/02/2017) |
| 06/28/2017 | 46 | | <span style="color:red">RULING & ORDER –1. Within ten (10) days from the date of this Order, Plaintiff shall file a copy of his proposed amended complaint on the court docket as an Exhibit to his pending motion to amend; and2. Defendants shall have an additional ten (10) days after Plaintiff files a copy of his proposed pleading to respond and/or supplement their response (ECF No. 45) to Greers motion to amend. (ECF No. 44.) Signed by Magistrate Judge Dustin B. Pead on 6/28/2017. (las) (Entered: 06/28/2017)</span> |
| 07/10/2017 | 47 | | MOTION for Leave to File Supplemental Complaint filed by Plaintiff Russell G. Greer. (las) (Entered: 07/11/2017) |
| 07/19/2017 | 48 | | Supplemental RESPONSE re 47 MOTION for Leave to File Supplemental Complaint, filed by Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 07/19/2017) |
| 08/11/2017 | 49 | | |

| | | | SUBSTITUTION OF COUNSEL Jacque M. Ramos replacing Neil R. Sarin as counsel on behalf of Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Ramos, Jacque) (Entered: 08/11/2017) |
|---|---|---|---|
| 08/15/2017 | 50 | | SUBSTITUTION OF COUNSEL David M. Quealy replacing Jacque M. Ramos as counsel on behalf of Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Quealy, David) (Entered: 08/15/2017) |
| 08/17/2017 | 51 | | DOCKET TEXT ORDER. Plaintiff's motion for leave to supplement complaint along with Exhibits at 47 moots Plaintiff's same motion filed at 44 . Signed by Magistrate Judge Dustin B. Pead on 08/17/2017. No attached document. (amn) (Entered: 08/17/2017) |
| 08/29/2017 | 52 | | RESPONSE to Motion re 47 MOTION for Leave to File Supplemental Complaint filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Quealy, David) (Entered: 08/29/2017) |
| 08/30/2017 | 53 | | ORDER granting in part and denying in part 47 Motion for Leave to File Supplemental Complaint; denying without prejudice as Moot 17 Motion to Dismiss ; denying without prejudice as Moot 18 Motion to Dismiss ; denying without prejudice as Moot 21 Motion to Dismiss for Failure to State a Claim. See Order for Details. Signed by Magistrate Judge Dustin B. Pead on 8/30/2017. (las) (Entered: 08/30/2017) |
| 08/31/2017 | 54 | | DOCKET TEXT ORDER. Pursuant to the court's order 53 , City Defendants' motion to dismiss 11 is denied without prejudice as moot. Signed by Magistrate Judge Dustin B. Pead on 08/31/2017. No attached document. (amn) (Entered: 08/31/2017) |
| 09/12/2017 | 55 | 207 | AMENDED COMPLAINT against James Allred, Kathy Berg, Jackie Biskupski, Sim S. Gill, Gary R. Herbert, Ben McAdams, Sean D. Reyes, Rolen Yoshinaga. filed by Russell G. Greer. (las) (Entered: 09/12/2017) |
| 09/26/2017 | 56 | 246 | Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants James Allred, Jackie Biskupski. (Brabson, Catherine) (Entered: 09/26/2017) |
| 10/03/2017 | 57 | 255 | Defendant's MOTION to Dismiss *Supplemental Complaint* filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 10/03/2017) |
| 10/03/2017 | 58 | | ENTRY ERROR– ~~MOTION to Dismiss and Memorandum in Support *Plaintiff's suppl* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Quealy, David)~~ Modified on 10/3/2017 added error text.(las). (Entered: 10/03/2017) |
| 10/03/2017 | 59 | | Modification of Docket: re 58 MOTION to Dismiss and Memorandum in Support *Plaintiff's suppl*. Document filed in error. Motion has been terminated. (las) (Entered: 10/03/2017) |
| 10/03/2017 | 60 | 288 | MOTION to Dismiss and Memorandum in Support *Plaintiffs' Supplemental Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Quealy, David) (Entered: 10/03/2017) |
| 10/24/2017 | 61 | 306 | MEMORANDUM in Opposition re 57 Defendant's MOTION to Dismiss *Supplemental Complaint* filed by Plaintiff Russell G. Greer. (jwt) (Entered: |

| | | | |
|---|---|---|---|
| | | | 10/25/2017) |
| 11/07/2017 | 62 | 344 | REPLY to Response to Motion re 57 Defendant's MOTION to Dismiss *Supplemental Complaint* filed by Defendants Kathy Berg, Gary R. Herbert, Sean D. Reyes. (Soderberg, Gregory) (Entered: 11/07/2017) |
| 11/07/2017 | 63 | 348 | REPLY to Response to Motion re 60 MOTION to Dismiss and Memorandum in Support *Plaintiffs' Supplemental Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Quealy, David) (Entered: 11/07/2017) |
| 11/07/2017 | 64 | | REQUEST to Submit for Decision re 56 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants James Allred, Jackie Biskupski. (Brabson, Catherine) (Entered: 11/07/2017) |
| 11/08/2017 | 65 | 352 | RESPONSE and Memorandum in Opposition re 62 Reply Memorandum/Reply to Response to Motion. And Request for Hearing. filed by Russell G. Greer. (las) (Entered: 11/09/2017) |
| 01/22/2018 | 66 | | NOTICE of SUPPLEMENTAL AUTHORITY by Kathy Berg, Gary R. Herbert, Sean D. Reyes re 57 Defendant's MOTION to Dismiss *Supplemental Complaint* (Attachments: # 1 Exhibit Exhibit A –– Erotic Service Provider Legal Education and Research Project v Gascon) (Soderberg, Gregory) (Entered: 01/22/2018) |
| 01/23/2018 | 67 | | RESPONSE re 66 Notice of Supplemental Authority filed by Russell G. Greer. (las) (Entered: 01/23/2018) |
| 02/21/2018 | 68 | | SUBSTITUTION OF COUNSEL Jacque M. Ramos replacing Jennifer Bailey and David M. Quealy as counsel on behalf of Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Ramos, Jacque) (Entered: 02/21/2018) |
| 02/23/2018 | 69 | | NOTICE OF WITHDRAWAL OF COUNSEL of Greg Soderberg filed by David N. Wolf on behalf of Kathy Berg, Gary R. Herbert, Sean D. Reyes (Wolf, David) (Entered: 02/23/2018) |
| 03/19/2018 | 70 | | NOTICE of Change of Address by Jacque M. Ramos (Ramos, Jacque) (Entered: 03/19/2018) |
| 04/09/2018 | 71 | | NOTICE of SUPPLEMENTAL AUTHORITY by Russell G. Greer (las) (Entered: 04/10/2018) |
| 04/13/2018 | 72 | 356 | REQUEST to Submit for Decision re 60 MOTION to Dismiss and Memorandum in Support *Plaintiffs' Supplemental Complaint for Declaratory and Injunctive Relief* filed by Defendants Sim S. Gill, Ben McAdams, Rolen Yoshinaga. (Ramos, Jacque) (Entered: 04/13/2018) |
| 05/08/2018 | 73 | 359 | MEMORANDUM DECISION AND ORDER granting 56 Motion to Dismiss for Failure to State a Claim ; granting 57 Motion to Dismiss ; granting 60 Motion to Dismiss. Signed by Magistrate Judge Dustin B. Pead on 5/8/2018. (las) (Entered: 05/08/2018) |
| 05/08/2018 | 74 | 389 | JUDGMENT – It is Ordered that Plaintiff's Amended Complaint is dismissed with Prejudice. Case Closed. Signed by Magistrate Judge Dustin B. Pead on 5/8/2018. (las) (Entered: 05/08/2018) |

| 05/22/2018 | 75 | 390 | NOTICE OF APPEAL as to 74 Judgment filed by Russell G. Greer. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505. (las) (Entered: 05/23/2018) |
|---|---|---|---|
| 05/23/2018 | 76 | | **SEALED DOCUMENT** MOTION for Leave to Appeal in forma pauperis filed by Plaintiff Russell G. Greer. (las) (Entered: 05/23/2018) |
| 05/23/2018 | 77 | | Transmission of Preliminary Record to USCA re 75 Notice of Appeal (Attachments: # 1 Appendix)(las) (Entered: 05/23/2018) |
| 05/23/2018 | 78 | | USCA Case Number Case Appealed to Tenth Circuit Case Number 18–4075 for 75 Notice of Appeal filed by Russell G. Greer. (las) (Entered: 05/23/2018) |
| 06/26/2018 | 79 | | DOCKET TEXT ORDER granting 76 Motion for Leave to Appeal in forma pauperis. Signed by Magistrate Judge Dustin B. Pead on 6/26/2018. No attached document. (las) (Entered: 06/26/2018) |

Russell Greer
689 Vine Street
Murray, UT 84107
801-616-1067
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2016 OCT 18  P 12: 44

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER** and **TRICIA CHRISTIE**, <br><br> Plaintiffs <br><br> v. <br><br> **GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake, <br><br> Defendants | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br><br> Case: 2:16cv01067 <br> Assigned To : Pead, Dustin B. <br> Assign. Date : 10/18/2016 <br> Description: Greer et al v. Herbert et al |

1

The Plaintiffs, Russell Godfrey Greer and Tricia Christie, complain of Defendants and allege:

## INTRODUCTION

1.      American courts continue to recognize that private sexual activity is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. Yet, when the private, consensual sexual activity occurs as part of a voluntary commercial exchange between adults, the State prohibits the activity and deprives those adults of their constitutional rights.

2.      To allow certain forms of Sexually Oriented Businesses, but to ban others creates not only a hypocritical moral law – but also a dangerous law where only certain due process and protection rights are granted to those who engage in conduct deemed permissible by the state while others are robbed of the same protections engaging in conduct that has been proven to be a "secondary effect" from the protected Sexually Oriented Businesses. To ensure that all people are protected, we must regulate all Sexually Oriented Businesses – including prostitution – or we must abolish it all.

3.      There are those who are unable to find partners their entire lives due to things beyond their control and therefore live in loneliness and never experience intimacy. Outlawing prostitution is implicit discrimination against the disabled and other lonely people, and is controlling their destinies and the self-determination of those who want to work in it and controlling of how they choose to use their bodies. They are not afforded the same protections as

2

those who engage in "hookups" or whom give their partners gifts with the expectation of receiving sexual favors of which is defined in state law as prostitution.

4.      Nevada is the only state in the nation to allow legalized prostitution. To travel there is an undue burden for those who are afraid of flying in airplanes or who cannot afford to travel there; for those who do not have cars; and for those who get sick during long periods of travel. The brothels are also too expensive for the average blue collar worker, due to greed from owners and workers, which causes undue burdens. Also, the cigarette smoke that fills up the brothels, allowed by the *Nevada Clean Indoor Act*, is harmful to the health of the non-smoking customer and worker and creates an undue burden.

5.      By this complaint, Plaintiffs challenge the constitutionality of the statutes (on their face and as they may be applied to Plaintiffs) criminalizing the commercial exchange of consensual, adult sexual activity inside houses of prostitution.  Plaintiffs seek a declaration that the laws themselves are unconstitutional, as well as preliminary and permanent injunctive relief prohibiting their enforcement and the allowance of receiving a license to be recognized just like every other Sexually Oriented Business.

### JURISDICTION AND VENUE

6.      The case raises questions under the Constitution of the United States and *42 U.S.C. § 1983* and this Court therefore has jurisdiction under *28 U.S.C. §§ 1331, 1343, 2201,* and *2202*.  This Court has supplemental jurisdiction over the Plaintiffs' state law claims under *28 U.S.C. § 1367*.

7.      Venue in this Court is proper pursuant to *28 U.S.C. § 1391(b)* because all Plaintiffs and Defendants either reside in or do business within this judicial district.  In addition,

venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

8.      Plaintiff Russell Godfrey Greer ("Greer") resides in the City of Murray and the County of Salt Lake in the District of Utah. He is 25 years old and has his paralegal degree. Greer was born with a facial paralysis medically termed *Mobius Syndrome* which means he can't close his lips or move his eyes sideways. His disability has made his life difficult physically, socially, and also with finding a job in his field. He solicits escorts and sex workers in Nevada's legal brothels and in the City and County of Salt Lake as a means of coping with his disability and therefore faces a reasonable threat of prosecution for engaging in said conduct as he is in violation of *Utah Code 76-10-1302*. In his years of patronizing sex workers, he has seen that brothels work the best, in terms of safety for both parties, and so he tried to obtain a business license to open a brothel in Utah, which he would had then taken to the state legislature, county and city councils and had the laws surrounding brothels amended, but was denied by the Utah Department of Corporations and Commercial Code. He therefore seeks to have the laws surrounding brothels found unconstitutional and seeks that the law should be amended to only allow licensed brothels.

9.      Plaintiff Tricia Christie resides in the District of Utah and is currently a licensed sex worker in a Nevada legal brothel and also practices prostitution in the City and County of Salt Lake and therefore faces a reasonable threat of prosecution.

4

10.     Defendant Gary R. Herbert is the Governor of the State of Utah ("Herbert"). He is sued in his official capacity only. Herbert, an elected official, oversees that the laws are faithfully executed. *Utah Const. Art. 7, § 5(1).*

11.     Defendant Sean D. Reyes is the Attorney General of the State of Utah ("Reyes"). He is sued in his official capacity only. Reyes, an elected official, has the duty of representing the State as prescribed and carrying out the laws. *Utah Const. Art 7, § 16.*

12.     Defendant Sim S. Gill is the District Attorney for the City and County of Salt Lake ("Gill"). He is sued in his official capacity only. Gill, an elected official, is the County of Salt Lake's public prosecutor and counsel in civil matters. *Utah Code 17-18a-202.*

13.     Defendant Jackie Biskupski is the Mayor for the City of Salt Lake ("Biskupski"). She is sued in her official capacity only. Biskupski, an elected official, exercises the executive and administrative powers of the municipality.  *Utah Code 10-3b-202(1)(b).*

14.     Defendant Ben McAdams is the Mayor for the County of Salt Lake ("McAdams"). He is sued in his official capacity only. McAdams, an elected official, exercises the executive and administrative powers of the municipalities of the County. *Utah Code 10-3b-202(1)(b).*

15.     Defendant Kathy Berg is the Director of the Division of Corporations and Commercial Code for the State of Utah ("Berg"). She is sued in her official capacity only. Berg is responsible for supervising corporation and commercial code filings in the State. *Utah Code 13-1a-2.*

16.     Defendant James Allred is the Business Licensing Manager for the City of Salt Lake ("Allred"). He is sued in his official capacity only. Allred is responsible for overseeing the

5

business licensing in Salt Lake City which includes Sexual Oriented Businesses (SOBs). *Salt Lake City Code 5.02.020; Utah Code 10-8-41.5.*

17.     Defendant Rolen Yoshinaga is the Director of Planning for the County of Salt Lake ("Yoshinaga"). He is sued in his official capacity only. Yoshinaga is responsible for overseeing the business licensing in Salt Lake County which includes Sexual Oriented Businesses (SOBs). *Salt Lake County Code 5.01.030; Utah Code 10-8-41.5.*

## STATEMENT OF THE FACTS

### THE HISTORY OF THE UNITED STATES' AND UTAH'S CRIMINALIZATION OF PROSTITUTION AND SOLICITATION

18.     Historically, there has been a lack of rigorous and systematic punishment of the commercial exchange of consensual, adult sexual activity within our nation.  For much of our nation's history, the commercial exchange of private sexual activity – at least where its solicitation and consummation was conducted discreetly and not on the public streets – was widely accepted, was not illegal, and was, in fact, integral to our development. It has existed ever since the country consisted of just 13 colonies, though, the demand for it was not high as the majority of the populace lived in rural areas. During the Revolutionary War, prostitutes would accompany the troops; lifting their morale. Prostitution became more accepted in the 1800s. See, e.g., Beverly Balos & Mary Louise Fellows, *A Matter of Prostitution:  Becoming Respectable, 74 N.Y.U. L. REV. 1220, 1283* (1999) (noting that in the nineteenth century, prostitution was "an essential component of industrialization"); *Prostitution and Sex Work, 14 GEO. J. GENDER &*

6

*L. 553, 554* (Tom DeFranco & Rebecca Stellato, eds., 2013) (describing how "[u]ntil the

nineteenth century, prostitution was generally legal in the United States and flourished in large

cities" until "groups concerned with social morality * * * crusaded against prostitution"); Gail

M. Deady, Note, *The Girl Next Door: A Comparative Approach to Prostitution Laws and Sex

Trafficking Victim Identification Within the Prostitution Industry*, 17 WASH. & LEE J. CIVIL

RTS. & SOC. JUST. 515 (2011).

19.    Even though all forms of prostitution flourished since the nation's conception

from the Colonial Era, brothels were seen as the safest way of regulating prostitution and as one

of the most lucrative ways as well. *A Renegade History of the United States.* Thaddeus Russell.

(2010).  One of the most respected and successful brothels in the Industrial Age was the

Everleigh Club. The "club" was ran by two sisters, Ada and Minna Everleigh, in Chicago from

1900 to 1911. In stark contrast from other brothels at the time, the Everleigh Club was upscale

and catered to the finest gentlemen. The brothel was also different because it had set standards

that the workers had to live by or else they were terminated. *The Everleigh Club.* The Chicago

Tribune. Louise Kiernan. (2016) (http://www.chicagotribune.com/news/nationworld/politics/chi-

chicagodays-everleighclub-story-story.html). Though only a handful of states legalized brothels,

(Arkansas, Kentucky, Louisiana, New Mexico, and South Carolina), the rest of the country

prohibited them yet illegal brothels were tolerated because the brothels paid fees and bribes to

the police to stay in business. *The Lost Sisterhood: Prostitution in America: 1900-1918.* Ruth

Rosen. (1982).

20.    On July 5th, 1870, St. Louis, Missouri created the *Social Evil Ordinance* which

recognized brothels as a legitimate enterprise and required prostitutes and the brothels to register

with the police and to pay operating fees. *The Social Evil Ordinance.* (1982)

(http://www.americanheritage.com/content/social-evil-ordinance).   What started out as a good

plan to regulate prostitution soon became an overbroad mess: more brothels opened than could

be managed; the girls in the brothels soon began running their own businesses inside of the

brothels; the doctors (there was only six of them) were in charge of checking the girls for

diseases and collecting the fees from the girls and the brothels proved to be too much for the

doctors to juggle. The police also abused their power and began harassing the prostitutes. By

1874, the Ordinance was repealed and prostitution in all aspects was made illegal on a state level.

*Id.*

21.     In 1897, Alderman Sidney Story, a New Orleans City Councilman, saw how

prostitution was inevitable to happen so he created a red-light district to control all forms of vice.

Thus was the creation of Storyville: a 38 block "district" that was the home to brothels and all of

the "taboo" things to the "respectable" person. *"1903: Storyville, New Orleans' Red-Light*

*District".* The Times-Picayune. (2016).  Storyville was ordered shutdown November 14th, 1917

after four U.S. Navy men were killed in separate weeks within the District (though they were

advised by their superiors to not solicit). Secretary of the Navy Josephus Daniels said that

Storyville was a "bad influence" to those who went there. Before closing it, New Orleans Mayor

Martin Berhman quipped, "You can make it illegal, but you can't make it unpopular." *"An Old*

*House in the Quarter: Vice in the Vieux Carré of the 1930s"* (1996).

22.     The only state that has legalized prostitution is Nevada. When Nevada became a

state, in 1864, its legislature allowed incorporated cities the right to regulate prostitution. *The*

*Mississippi of the West?,* 5 NEV. L.J. 57, 58 (2004). In 1881, the Nevada Legislature passed the

*Town Board Act* which allowed county commissioners the right to regulate prostitution in unincorporated areas. *Presentation by Nevada State Archivist of the History of Prostitution in Nevada (1999)(* http://www.nvbrothels.net/infoHistory.shtml). Such legislation left the legality of brothels in the hands of the counties and not part of the state's affairs therefore each county had different regulations for their brothels. There was a few state imposed laws that affected all of the counties that are still on the books today such as laws against pandering (*NRS 201.300-60*); prohibiting a person from living off the earnings of a prostitute (*NRS 201.320*) (law is hardly enforced); brothels cannot be within 400 yards of a school or a church (*NRS 201.380, 201.390*). In 1937, Nevada's State Board of Health mandated weekly checks for gonorrhea and monthly blood tests for syphilis *(Nevada Admin. Code chp. 441A, 800*). When the AIDS epidemic hit America, the Board of Health added codes to check for HIV/AIDS *(NAC 441A010-A325; NAC 441A775-A815*).

23.     Clark and Washoe Counties (Las Vegas; Reno) used to have brothels – in the early 1900s, but the County Commissioners voted to shut down the red-light districts in those cities citing them as nuisances. *The Best Little Whorehouse…* Snadowsky (2005). Two cases followed, seven years apart, *Kelley v. Clark County* (Nev. 1942) and *Cunningham v. Washoe County* (Nev. 1949), in which the Nevada Supreme Court ruled in favor of Clark County citing county supremacy. *Kelley v. Clark County* (Nev. 1942). To avoid further cases of being shut down for being a nuisance, brothel owner Joe Conforte successfully petitioned for a brothel to be licensed to avoid being a public nuisance in which the legislature made a brothel legal in a county that had less than 200,000 residents (the number has since been risen to 400,000) (*NRS 244.345*). Soon after, almost every county in Nevada voted to allow legalized brothels.

9

24.     Nevada has repeatedly refused to make brothels a state issue or issue a state

official ruling and thus leaving it to the counties and cities to decide therefore running the risk of

being voted to be closed down by city councils or the voters. (The mayor of Ely vetoed the city

council in Ely, Nevada to shutdown brothels in that county in 1999 saying that they had the

moral "responsibility" to keep brothels legal to fight the AIDS epidemic; Churchill County voted

in 2004 to keep brothels legal; Nye County voted the same in 2004). *Brothels in Nye County to

Stay Legal.* Las Vegas Sun. (2004).

25.     While prostitution has always occurred in Utah since Brigham Young settled

Deseret, it reached its peak of "ill fame" in the late 1800s when a prominent brothel was

established on the West Side of Salt Lake City located on 1st South and 500 West. *Living

History: Utah Had Its Own Share of Ladies of the Night.* The Salt Lake Tribune. (2012). The

brothel was known as "The Stockade". It was considered a nuisance and the brothel was

frequently raided by police. Belle London, whose real name was Dora Topham, was the Madam

who ran the brothel. It achieved all kinds of notoriety that followed the Mormon missionaries in

Europe which many Europeans thought the missionaries were trying to take their daughters to

"The Stockade". *The Oldest Profession's Sordid Past in Utah.* The Salt Lake Tribune. (2016).

(http://historytogo.utah.gov/salt_lake_tribune/in_another_time/theoldestprofessionssordidpastinu

tah.html).

## THE CURRENT LAW OF THE STATE OF UTAH

26.     As it stands now, Chapter 10, Part 13, sections 1301-1308 in Title 76 of the

Criminal Code of Utah, criminalizes all acts of prostitution, defined as any person who "engages

in any sexual activity with another individual for a fee, or the functional equivalent of a fee", as

Class B Misdemeanors. *Utah Code 76-10-1302(1)(a)*. It also pertains to those who are "inmates" in a house of prostitution and those who own, lease, enter, solicit, patronize or remain in a house of prostitution. *Utah Code 76-10-1303(1)(b)*.

27. "Sexual activity", as defined by the Utah Code, means acts of masturbation, sexual intercourse, or any sexual act involving the genitals of one person and the mouth or anus of another person, regardless of the sex of either participant. *Utah Code 76-10-1301(5)*.

28. Title 47, Chapter 1, Section 1, of the Utah Code declares that whomever seeks to "erect, establish, maintain, use, own or lease any building, structure or place, for the purpose of lewdness, assignation or prostitution is guilty of nuisance, and such building, structure or place, and the ground itself, in or upon which such lewdness, assignation or prostitution is conducted, permitted or carried on, and the furniture, fixtures and musical instruments therein and the contents thereof are declared a nuisance, and shall be enjoined and abated as hereinafter provided." *Utah Code 47-1-1; Utah Code 78B-6-1101(2)(g)*. A nuisance is a Class B Misdemeanor. *Utah Code 76-10-801*.

29. Furthermore, the Utah Code allows for the municipalities and the counties of the State to enact laws to suppress and prohibit prostitution and brothels. *Utah Code 10-8-41(1)*.

30. Plaintiffs, having experience soliciting and working in brothels, seek to have a brothel erected in the District of Utah where not just prostitution occurs, but other adult activity that includes escorting, nude dancing, and other activities which are sexual and non-sexual and are currently regulated by the State. They seek to have the brothel licensed like other Sexually Oriented Businesses in the State. *Utah Code 10-8-41.5(3)*. Having a licensed brothel in Utah would protect them from prosecution; give them equal protection and due process under the law;

11

and not create an undue burden by having to travel to a different state where it's legal. They seek to have unlicensed brothels be a crime. Additionally, they seek to have all other statutes criminalizing prostitution, not occurring inside brothels, remain enforced and intact. If brothels become legalized, they would seek to have all other forms of prostitution be a felony and a sex offense and the offenders be registered as sex offenders in order to deter it and keep it regulated.

31.    Because Utah's statutes make it a misdemeanor for a house of prostitution to be erected, leased, or controlled; for one to enter or remain in a house of prostitution, and for one to engage in sexual activity in a house of prostitution (*Utah Code 76-10-1302(2)(b); 76-10-1303(1)(b); 76-10-1304(1)(a)(iii); 76-10-1305(1)(a)(e))*, the District Attorney, the Attorney General, and their respective offices are charged with the duty of enforcing the statutes in the County and State.  Compelled by this duty, the District Attorney and the Attorney General are presently enforcing this state law in contravention of Plaintiffs' constitutional rights.

32.    Governor Gary Herbert, as executive leader of the State, oversees all legislation and therefore is acting in color of authority by ensuring that these laws stay intact and hinders Plaintiffs' constitutional rights.

33.    Berg, Allred, and Yoshinaga are compelled to not issue business licenses for those businesses deemed "illegal" and therefore hinders Plaintiffs' attempts from obtaining a license to try to amend State, County, and City laws surrounding houses of prostitution.

### THE EFFECT OF UTAH'S LAWS ON PLAINTIFFS

34.    Due to Plaintiff Greer's disability, he has struggled to find a partner despite having a college education; having served an LDS mission; being an Eagle Scout; having worked

12

at various businesses and firms located in downtown Salt Lake and being friendly and sociable; maintaining a good appearance and being physically fit; and trying all forms of dating: online dating, in-person dating, mutual friend set ups, church social events, etc. The current materialistic world has made dating difficult for Greer.

35.     Greer first decided to solicit prostitutes after a failed suicide attempt in January 2013 after being disowned by his birth family and his twin sister. He felt that paying for intimacy would help him feel loved and help him cope with his disability and his depression after counseling and medicine proved to not be effective.

36.     Because prostitution is illegal in Utah, Plaintiff Greer has had to travel long distances to where it's legal. The closest legal brothel to Salt Lake City is located in Elko, Nevada which is four hours away. Greer does not own a car so he has had to take an Amtrak to a legal brothel eight hours away near Reno, Nevada as the Amtrak goes to and leaves Elko at unreasonable hours of the early morning.

37.     Greer's first encounter with a prostitute was at Dennis Hof's Love Ranch North brothel near Reno, Nevada in April 2013. Greer saved for months on end to afford the encounter as he had heard that it wasn't cheap. After eight hours on a train, he met Jade, a licensed sex worker. The moment with Jade was magical. He never felt so alive before. For the first time in his life, he felt accepted by a woman. He felt cared about. And even though it was paid for, it was something – because something means everything when you have nothing.

38.     Greer has treated the working girls as if they were his girlfriends: dressed in suits to look nice for them; gave them flowers; bought them dinner; engaged in polite, clean conversations with them.

39.     Greer has continued to make continuous travel to Reno for the past three years and has spent $14,000.00 at the brothels in total. It has meant so much to him, and being with caring, affectionate women has boosted his self-esteem and confidence.

40.     The travel, though, has been laborious, as Greer spends 16 hours roundtrip on a train and is only in the brothel for up to two hours which departs and arrives in Salt Lake City at very late hours. To make matters worse, the brothels, though ventilated with air vents, are filled with smoke and the smoke chokes Greer, as he is a non-smoker, and smells up his clothes. In addition, the prices of the brothels are too expensive for a recent college graduate like Greer.

41.     These undue burdens have forced Greer to engage in prostitution with prostitutes in Salt Lake City illegally, as they are cheaper and don't smell of smoke. He has engaged in oral and vaginal sex with several local prostitutes.

42.     Engaging with prostitutes in Salt Lake City has not only put Greer under threat of prosecution, but has put him at a threat of catching a venereal disease as the girls have no way of being verified if they are free of a sexually transmitted disease. Greer has also been defrauded by several local escorts who have posted fake pictures to lure Greer in and upon meeting, he is then held under duress to give them the money. Others have been the same girl as advertised, but they do not provide the services they promise.

43.     Several local prostitutes have told Greer that local men have robbed, raped, and beaten them and they have been too afraid to go to the authorities in fear of prosecution.

44.     After a licensed sex worker at the Bunny Ranch brothel, near Reno, Nevada, stole $4,000.00 from Greer through fraudulent inducement and he had a falling out with the owner, in late 2014, Greer decided he had had enough of going to the Nevada brothels.

14

45.     Greer went to an Elko brothel and the feel was just not the same as the Reno brothels: no connection or anything intimate.

46.     Greer continued to solicit escorts and prostitutes in Salt Lake City for sexual, but mostly non-sexual services while going to college and doing an internship at the Attorney General's Office in the Litigation Division.

47.     *Obergefell v. Hodges* was decided in the Summer of 2015 and after studying it for a college research legal paper on whether polygamy could be legalized, the words of the ruling inspired Greer and he felt it applied to him and prostitution.

48.     Greer graduated from the LDS Business College in the Summer of 2015 and was hired on with his first firm, an intellectual property law firm, two months later.

49.     A month later, at the end of November 2015, Greer was brought into the firm manager's office and was laid off after the manager said that there had been rumors about Greer and that they were "extremely disturbing". Greer felt these rumors had to do with his experiences with prostitutes as his college had had similar rumors about him encountering prostitutes.

50.     Seeing that his interest in prostitution had caused him financial harm, Greer decided that he was going to apply the wording of *Obergefell* and make prostitution legal so that everybody could have access to intimacy. Greer was tired of doing things illegally and really had no brothel to go to since his falling out with Dennis Hof.

51.     Towards the end of December 2015, Greer filled out the business licensing paperwork on Utah.gov to try gaining a brothel license – the same way one obtains a Sexual Oriented Business License. Once obtained, Greer would go to the state legislature and try to amend the laws. Greer even obtained an IRS EIN for his proposed business.

15

52.     Greer named his proposed brothel, "The Mile High Neon" which is a take on "the mile-high club" and the Greek word for brothel, "porneon".

53.     Greer believes that he is of the moral character to run a safe, legal brothel. He is an Eagle Scout for the Boy Scouts of America; he served an LDS Mission; has paralegal training to ensure that the brothel would follow regulations and has a business plan to "expedite" the prostitution process by empowering the sex workers and to protect adults.

54.     Greer submitted his paperwork online and it was approved on December 29, 2015. The State gave him numbers for his business registration and the appropriate documents to file at the Salt Lake City and County Building.

55.     Greer received a notice from Berg, on January 14, 2016, that his registration had been cancelled "effective immediately" because it had been for "an illegal business purpose" thus resulting in harm to Greer. Greer decided to sue the state and gave notice to the Attorney General through electronic mail in accordance to *Federal Rules of Civil Procedure 5.1.*

56.     Greer, being low on cash and not being able to secure a grant to put down on an attorney retainer fee, decided on April 12, 2016, to represent himself Pro Se, as he felt he could do just as good as a job in arguing and presenting the case.

57.     Greer met Plaintiff Tricia Christie, sometime in 2016, at her apartment in downtown Salt Lake City near the Gateway Mall and they engaged in sexual intercourse in exchange for $500.00 thus committing the act of prostitution as defined by *Utah Code 76-10-1302.*

58.     Plaintiff Tricia Christie has been an escort and a prostitute for several years and has worked in California, Chicago, several legal brothels in Nevada, and in Utah. She also travels abroad as an escort and engages in sexual intercourse with foreign men.

59.     Christie enjoys her work and likes making people happy and the income that it provides and is why she does it. She spends nearly a thousand dollars on beauty products and gym memberships every few months to stay fit and attractive.

60.     Christie is not being forced to engage in sexual activity. She engages in it freely. Besides engaging in prostitution, Christie also works as an adult film star and a model and finds clients in all industries *which proves that the sex industry is all connected and is thus hypocritical and dangerous to allow one form of business be legal, but other forms be illegal.* Christie hopes one day to afford to buy a house.

61.     Plaintiffs both fear that they may be prosecuted by the District Attorney and the Attorney General under Utah's prostitution laws if they do engage in sexual activity for hire, particularly in light of their participation in this lawsuit.

62.     This is difficult for both Christie and Greer who have both solicited and engaged in prostitution in Nevada brothels and were not subject to prosecution. They both see hardships by soliciting and working in the Nevada brothels: owner greed, strict working hours, expensive prices, second-hand smoke filled rooms. They both affirm that if there were a legal brothel in Salt Lake City and County, they would follow the law and solicit and work in such a brothel, but there is not.

63.     Plaintiffs' fears of arrest and prosecution, if they choose to continue in prostitution, are reasonable and grounded in actual enforcement activities throughout the State of

Utah.  Without the legalization of a brothel, the laws threaten to impact the sexual privacy rights

of Plaintiffs and countless others who desire to sell or purchase sexual services.

64.     Additionally, the criminalization of brothels under *Utah Code 76-10-1302* harms

Plaintiffs because criminalization serves to discourage safe sex practices whereas legalization

and regulation would mandate condom use as seen with Nevada.  For example, when prosecuting

cases under the Utah Code, the Defendants can use the fact of condom possession as evidence of

prostitution-related offenses.  By doing so, the Defendants discourage condom use and thwart

safe sex practices.  See generally SEX WORKERS AT RISK:  CONDOMS AS EVIDENCE OF

PROSTITUTION IN FOUR US CITIES (HUMAN RIGHTS WATCH 2012). Nevada laws and

regulation mandate that condoms be worn in every sexual act.

65.     Plaintiff Greer has laid out the business plan for the Mile High Neon which would

balance state interest in protecting the morals of the State, County, and City; control the spread

of sexual disease; and would protect those who wish to engage in prostitution or other sexually

oriented business activities.


## THE BUSINESS PLAN OF THE MILE HIGH NEON BROTHEL

## THE DESIGN AND LAYOUT

66.     To avoid public nuisance laws, plaintiff seeks to build his brothel in a rural part of

Salt Lake City and County so that the location is away from the general public and is not near

any freeways or highways (*Restatement[Second] of Torts 821B [1];* take into consideration: *NRS*

*[Nevada Revised Statutes] 201:380,201:390).* Plaintiff also seeks to legally have transportation

that takes patrons to the brothel just like the Bunny Ranch brothel in Nevada does.

67.     The design of the Mile High Neon will resemble a Greek temple hence the last word of the brothel name.

68.     The building will be gated and will consist of elegant walls meant to keep trespassers out. The front of the building is held up by Greek columns. A little past the columns is a large wooden door that resembles the front door to a luxury mansion. A door man will stand at the door and will not only greet, but will also act as a bouncer.

69.     Inside, will be a pristine, marble floor, and chandeliers that hang from the ceiling. Music plays, creating a lively atmosphere. In the center of the room is a fountain with water that runs soothingly. Couches for guests and the workers to sit on will be located in a corner. Hanging on the walls near the couches are TVs that play the news and other channels for guests to enjoy.

70.     A non-alcoholic bar will serve beverages to customers and visitors.

71.     A business directory will be located at the front of the brothel which will feature a touch screen where clients can click on the girls they want and call them to meet them which is no different from how other businesses let their clients meet their professionals. This will differ greatly from the Nevada brothel system where the girls are summoned to the door by the sound of a buzzer and are forced to line at attention for customers that walk in. Many, including columnist Bob Herbert, have criticized this form of system as being degrading. *Politics and Misogyny.* (http://www.nytimes.com/2008/01/15/opinion/15herbert.html?_r=2). Plaintiff Greer disagrees with this system.

72.     A cash office will be located in the brothel to conduct the transactions.

73.     Past the cash office is a hallway that has all of the different rooms of the working girls. Each room has a window and a king sized bed. There is also a shower and a bathroom in the room. On the wall is a TV hooked up with Dish Network. Next to the bed is the panic alarm and a speaker for the office to communicate with the girl. There will be about ten rooms.

74.     In a different hallway, that is adjacent to the hallway that has the girls' rooms, is a hallway that has two suites meant for bi-sexual or gay male sex workers who service LGBT clients.

75.     In the middle of the hallway would be an exercise room. Next to it, would be a Jacuzzi room.

76.     Once the patron pays the negotiated amount of time with the sex worker, the cashier sets a timer of the amount paid for.

77.     There will also be a kitchen in the Neon to allow the workers to cook their own meals.

**POLICY/PROCEDURES OF THE MILE HIGH NEON**

78.     The policy and the procedure of the Mile High Neon will follow similar policies and laws of the Nevada brothels. Greer, though, proposes additional innovative policies that correct the flaws of the Nevada brothels.

79.     The girls will be inspected weekly for STDs and tested biweekly for HIV (*NAC chap. 441A010-A325; 441A775-A815; NRS 201.356-58*). Once a week, a doctor will come and teach the girls on how to check for STDs and about safe sex practices. Condoms are mandatory. Contracts will be written to make sure the girls agree to these terms. Any breach of the contracts will lead to fines and/or termination of the girls.

20

80.     Unlike the brothels in Nevada, the Mile High Neon will be smoke free and will prohibit smoking. If working girls are smokers, they will be given the opportunity of being given resources to overcome the addiction. If not, they will not be allowed to smoke on the premises.

81.     The Mile High Neon will not serve alcoholic beverages -- given the current state of rules with Sexually Oriented Businesses and drinking, and observing from Nevada brothels how drunk men and naked girls do not create a safe environment. Greer also doesn't want to be held liable for drunk driving aka *dram shop laws.*

82.     The workers will be able to apply online. While not procuring, the brothel will sort its applicants for the classiest and most beautiful people that have extraordinary personalities and who are not judgmental. The brothel also wants to choose workers who have life goals ahead of them and -- realizing this is a lucrative job -- help them achieve their goals. Plaintiff wants the workers employed for a maximum of two years and each year he wants to see how they are coming about reaching their goals. For instance, if a worker needs money for college, she would be encouraged to set a goal of $50,000.00 for tuition and expenses (that would be an example). Since the workers would be independent contractors, they would be responsible for how often they worked and how fast they reached their goal in a two-year period. Once they reached their goal, the brothel would encourage the workers to go after their dreams thus "expediting" the prostitution process. He would put them in touch with talent agents to work non-sexual jobs.  He feels this will resonate well with the public as it shows he values women and isn't an "evil person" as often associated with prostitution.

83.     For the workers who apply, but don't meet the criteria of a sex worker, whether they be too old, not attractive, they have STDs, etc, the brothel would refer them to talent

21

agencies as many people want in prostitution for the money. Referring people to talent agencies

and getting them in good jobs would stop the "circulation" of the adult entertainment industry:

going from brothel to strip club to porn star. This is backed up by the City of South Salt Lake's

findings that strip clubs have secondary effects. *An Ordinance Of The City Of South Salt Lake*

*City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning*

*Licensing Requirements And Regulations For Sexually Oriented Businesses.*

(2012.09.21_South_Salt_Lake_SOB-Ord-final-mr.pdf). It's a giant connected ring of

entertainment that women can be stuck in for years. While Greer isn't against adult

entertainment, he believes that women can be so much more than cover girls and hookers and he

doesn't think criminalization is the answer. Greer believes that encouragement and regulation is

the answer.

84.     For the girls that are contracted as independent workers, they would be given

trainings on self-defense; checking for STDs; understanding the disabled; how to politely turn

down a customer; how to balance a budget; how to be empowered.

85.     The girls will be licensed through the sheriff's office in order to make sure they are

of legal age and are not criminals. The sheriff's office will conduct an STD test on them when

they are first hired.

86.     The brothel will also pay state taxes and make charitable donations to the

communities that surround it.

87.     The Mile High Neon will implement the regulatory system established in the

Nevada brothels and will aim to be a safe place for consenting adults. Barbara G. Brents &

Kathryn Hausbeck, *State-Sanctioned Sex: Negotiating Formal and Informal Regulatory*

22

*Practices in Nevada Brothels* (2001). The brothel will promote the Public Health, Safety, Welfare and Morals of Utah by allowing an alternative to arrest and encourage those in it to reach whatever financial goal they have and then help them adjust out of it to a better life to avoid physical and emotional "Russian roulette". Jeffrey R. Holland, *Personal Purity* (1998) https://www.lds.org/general-conference/1998/10/personal-purity?lang=eng).

88.     The most important thing is that Greer does not seek to own or run the brothel. If the laws were found to be unconstitutional and the legislature created laws to allow it, Greer would give the business license to an educated, classy, beautiful woman in her mid thirties to forties who has higher education and experience in business; somebody who could align with the policies of Greer's proposed brothel and help women in them. Greer's role would be that of a legal assistant to ensure all regulations were followed and to follow up on any complaints.

89.     With all of the policies, procedures, and history of the plaintiffs' backgrounds explained, the enforcement of Utah's brothel laws violates the First Amendment rights of Plaintiffs and others similarly situated by making pure speech a criminal activity and by defining a crime based solely on the speaker's message and the content of his or her speech.

90.     It also violates the Fourteenth Amendment rights of Plaintiffs.

## CLAIMS FOR RELIEF
## CLAIM ONE:
### Section 1983 Claim for Violation of Fourteenth Amendment
### Substantive Due Process Right to Sexual Privacy

91.     Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

23

92. As Applied sections of Title 76, Chapter 10, Sections 1302-1308, concerning

houses of prostitution (*Utah Code 76-10-1302(2)(b); 76-10-1303(1)(b); 76-10-1304(1)(a)(iii);*

*76-10-1305(1)(a)(e))*),, and As Applied sections of Title 47, Chapter 1, concerning brothels

being nuisances, violate the right to substantive due process as guaranteed by the Fourteenth

Amendment to the United States Constitution in that the As Applied sections of the statutes, as

would be applied to Plaintiffs, impinges upon the fundamental liberty interests in one's own

private sexual conduct recognized by various courts throughout the United States. *See Lawrence*

*v. Texas*, 539 U.S. 558 (2003); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008);

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) (Berzon, J., concurring) ("More recently, *Lawrence*

clarified that licit, consensual sexual behavior is no longer confined to marriage, but is protected

when it occurs, in private, between two consenting adults…")

93. The rights of adults to engage in consensual, private sexual activity (even for

compensation) is a right with no rational basis in being kept banned -- if not a fundamental

liberty interest. That right is one that is, objectively speaking, deeply rooted in this nation's

history and tradition and one that is implicit in the concept of ordered liberty. *Seegmiller v.*

*Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008) (See also: *Washington v. Glucksberg,* 521

U.S. 702, 719 (1997) which laid out the criteria for evaluating a claim for a fundamental right by

looking at historical value of declared right and whether that right fits under a pre-existing right).

*Seegmiller* established that for guiding rational basis review, *Lawrence v. Texas* was to be

followed. There seems to be conflicting conclusions as to whether sexual privacy is a

fundamental right (as determined with *Obergefell v. Hodges*) or if it's evaluated for rational basis

review as found in *Lawrence.* But like with *Roe v. Wade*, though, the right to privacy can be

24

balanced to meet both state interests and individuals' liberties. *Roe* paves the way for the

legalization of prostitution, as abortion clinics are like brothels in many instances as they protect

the worker and the client. *Roe* establishes the right to commercial privacy and that right should

be extended to brothels. That is why brothels are important so that they can balance both state

interests and personal rights. The 9th Circuit in *Coyote Publishing*, when evaluating the

constitutionality of prohibiting legal brothels from advertising in Nevada counties in which

prostitution is banned, called the Nevada brothel system "unique" and that it is able to balance

state interest with personal freedom. *Coyote Publishing Inc. v. Miller* (9th Cir. 2010). Nevada has

proven that this can be done. Therefore, any regulation regarding the commercial exchange of

private sexual activity is subject to strict scrutiny. But if a fundamental liberty right cannot be

declared, there is no rational basis to banning brothels.

94.     While there is a legitimate governmental interest in controlling prostitution and

keeping the face of most of the criminal statutes on the books such as prostitution occurring in an

open, public area, there is no compelling reason to not allow licensed, regulated brothels to

function. Unlicensed brothels would still remain illegal so the house of prostitution sections

would remain on the books. The wording, though, is hoped to be changed to reflect this

challenge to allow licensed brothels. The government actually has an interest in regulating

prostitution and controlling its activity to take part in one place for a number of reasons: (1) to

protect its citizens from scams that pose on adult websites offering services, but turn out to be

fraudulent which are often seen on the escort section of *BackPage*; (2) protecting its citizens

from sexual diseases; (3) and to protect its citizens from human trafficking. All three of these are

goals of the State of Utah. *Priorities, Attorney General of Utah* (Priorities listed on AG's website

include "protecting citizens from violent crime....and consumers from fraud").

(http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health,*

which lists a mission statement of preventing illness amongst other ailments. The site also has

charts and data reports on sexually transmitted disease rates with focuses on *Chlamydia*

*trachomatis* and *gonorrhea*, the two most communicable STDs in Utah. Data charts show that

both diseases had a 48% growth rate in Utah from 2004-2014.)

(http://ibis.health.utah.gov/phom/UDOH.html).

95.     Any concerns of establishing a brothel for fear of disease is misguided as the

state already has an STD problem. If anything, brothels would help control diseases through

mandatory safe sex as observed in many studies of Nevada brothels. Barbara G. Brents &

Kathryn Hausbeck, *Violence and Legalized Brothel Prostitution In Nevada: Examining Safety,*

*Risk, and Prostitution Policy,* University of Las Vegas (2005). In 2012, it was found that the

Nevada brothels were more safe than the California porn industry. Ken Miller, *Study Says*

*Nevada Brothel Workers Have A Lower STD Rate Than LA County Porn Actors.* Las Vegas

Weekly. (2012). A regulated brothel can solve and prevent all of the problems listed in point 94.

Several local government officials even agree that a brothel could do this if established in Salt

Lake County. Stephen Dark, *Only the Lonely,* Salt Lake City Weekly (2016)

(http://www.cityweekly.net/utah/ohhoney/Content?oid=3168969&storyPage=4).

96.     Furthermore, the fact that the governing majority in a state has traditionally

viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting

its practice. *See, e.g., Baskin v. Bogan*, 766 F.3d 648, 669-70 (7th Cir. 2014) (Posner, J.) (citing

*Loving v. Virginia*, 388 U.S. 1 (1967); *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012); and

*Lawrence v. Texas*, 539 U.S. 558 (2003)).

97.     Utah's prohibition against the commercial exchange of private sexual activity in

brothels is not narrowly tailored, nor is it the least restrictive means for advancing whatever

governmental interest that the Defendants may claim the law advances.

98.     By prohibiting licensed brothels, the As Applied statutes precludes many

individuals, including both those who want to sell their sexual services and those who want to

buy them, from deciding how to conduct their private lives in matters pertaining to sex. This law

also significantly hinders, if not deprives, many individuals from their ability and right to engage

in sexual intimacy.

99.     Insofar as they are enforcing Utah's brothel laws, the Governor, District Attorney,

members of local and state commerce, and the Attorney General, acting under color of state law,

are depriving and will continue to deprive Plaintiffs of rights secured by the Fourteenth

Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

100.     Plaintiffs are therefore entitled to a declaration of unconstitutionality and

injunctive relief prohibiting the enforcement of As Applied sections of Title 76, Chapter 10,

Sections 1302-1308 and As Applied sections of Title 47, Chapter 1.


### CLAIM TWO:
### Section 1983 Claim for Violation of Fourteenth Amendment
### Equal Protection Rights

#### A.  Denial of Equal Protection of the Same End Goal of Intimacy


101.     Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully

27

set forth herein.

102.    To reiterate, Plaintiff Greer has a physical disability termed "Mobius Syndrome". A disability is defined by the ADA as an impairment – physical or mental – that impedes one or more of life's daily activities. *What Is the Definition of a Disability Under the ADA?* (https://adata.org/faq/what-definition-disability-under-ada). His disability has hindered his dating life in all aspects and he has not been able to meet a non-commercial partner due to it even when he has given his all and pursued all kinds of women online and in-person. While realizing that he is perfectly free to approach anybody and ask them out, that is not what Greer is arguing for. He wants to have the same end result of dating as non-disabled people freely get i.e. kissing and other intimacy which includes sex. He feels that not being able to pay a woman in Salt Lake denies him of his equal protection rights as found in the 14th amendment. There are escort companies in Salt Lake that are licensed, but they upsell their customers and usually do not offer much more than a strip tease.

103.    The guarantees of the 14th amendment apply to all citizens of the United States with equal opportunity of pertaining available rights. They are personal rights. *Shelley v. Kraemer* (1948). In her concurring opinion, Justice O'Connor determined that the State of Texas could not "control" the destinies of homosexuals from engaging in sexual privacy rights. *Lawrence v. Texas* (2003). People with disabilities, such as Greer, face the same problem of having their destinies being controlled by the State of Utah. The plight of people with disabilities to live their lives freely has been an ongoing struggle due to discrimination. The discrimination was particularly brought to light with the case of *Buck v. Bell* (1927) when Justice Holmes said that forced sterilizations of people with disabilities was constitutional because "three generations

of imbeciles are enough". It wasn't even until the late 90s that federal law was signed to protect people with disabilities.

104.     Though the law may apply to all persons who engage in prostitution in a house of prostitution in Utah regardless of difference in class, it is actually implicit discrimination against disabled people. The law has a disparate impact on disabled people or those who are in other circumstances because they comprise a higher percentage of patrons who pay for those kinds of services. *Texas Department of Housing v. Inclusive Communities Project* (2015) (Disparate impact litigants could cite statistical data to show discrimination, though, their claims would fail if they could not show how the policies are discriminative).

105.     The As Applied sections of Utah's brothel laws are discriminative because they are controlling of how one decides how to conduct their private lives. They force plaintiff and others similarly situated to plaintiff to travel long distances to Nevada, basically being forced to flee their homes to engage in legal conduct in another State, risking the perils that long distance travel brings. But for those who cannot afford to travel or are afraid to travel or who have no car or get sick travelling long distances, the law forces them to remain "unintimate" or to go into criminal activity. There is no alternative for these people if they desire to have sex, but are unable to get it because of the materialistic world and the judgement of people. It invades their personal liberty choices. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 847 (1992). It is also an undue burden to plaintiff. It places a hardship on him due to the cost of the brothels and the travel. *Id.* The brothels also allow smoking and the smoking is hazardous to Greer's health as he is a non-smoker. When he usually returns from his trips, his suits reek of cigarette smoke. Being forced to engage in a brothel where smoking is allowed in the open, places terrible

29

burdens on Greer and is a contributing factor as to why he has solicited in Salt Lake because he wishes to not be around that atmosphere. *Id.*

106.    With hook up apps and dating apps available for download, consensual sex is happening 24/7. If a person wants to pay for sex in a safe, regulated place then he or she shouldn't be condemned for it because non-commercial sex is already happening. In fact, intimacy has been shown to have many healthy effects for a person from increasing the immune system to lowering the risk of heart disease. *The Top 11 Benefits of Sex* (2013). (http://articles.mercola.com/sites/articles/archive/2013/11/18/11-sex-health-benefits.aspx) *Lawrence* has truly opened the doors for the legalization of prostitution. To put it more precisely, *Bowers v. Hardwick* (1986) said that if homosexual conduct was legalized, other "sexual crimes" would follow, with Justice White concluding, "We are unwilling to start down that road." *Lawrence* invalidated *Bowers* and Justice Scalia gave the same reasoning, as Justice White did, in his dissent. The toothpaste can't be put back into the tube now, so to speak. The can of worms have been opened up, and it would be unconstitutional to say that some sexual conduct has rights while other conduct does not. *Id.*

107.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) are implicitly discriminatory in that disabled people have a higher risk of being arrested for soliciting for sexual services than non-disabled people. It is honestly hard to gather statistics on patrons of prostitutes due to the illegal nature of the business. The arrest statistics that are available do not focus on disabilities or characteristic traits. They only focus on age range, ethnicity, marital status, and education. Charlotte Alter. *Cops Arrest 500 Johns in Sex Trade Crackdown*. Time. (August 5, 2014). But if one uses logic,

they can turn to already legalized areas of prostitution and see that disabled people do comprise a large aspect of consumers: the Bunny Ranch; countries in Europe with legalized prostitution; etc. With reasonable presumption, disabled people here in Utah and elsewhere are engaging in it illegally. Marguerite Ward. *The Surprising Way the Netherlands is Helping Its Disabled Have Sex.* Mic.com. (March 13, 2014). Disability Studies Quarterly has established that sex and sex access is a right and obtaining the expression of that right does not matter whether it be commercial or non-commercial. Holly Anne Wade. *Discrimination, Sexuality and People with Significant Disabilities: Issues of Access and The Right to Sexual Expression in the United States.* Disability Studies Quarterly. (2002). Whether that right is a fundamental right or a right proven under rational basis review does not matter. Both reviews and tests have been previously established in this legal brief. The brothel laws in the state of Utah are implicitly discriminative and must be struck down to allow legalization to allow access to sex for the disabled.

**B. Denial of Equal Protection for Those Who Choose to Work in Prostitution**

108.     Sexually Oriented Businesses are regulated by the counties of Utah. *Utah Code 17-50-331.* These type of businesses include strip clubs, escort services, adult toy stores, and pornographic book stores. They do not include prostitution. In fact, when one goes to register for a Sexually Oriented Business, they are asked how they will stop prostitution from happening. In many cases, prostitution is still happening even after these businesses declare that they will not engage in prostitution.

109.     Plaintiffs see the sexually oriented business laws of allowing some sexually oriented businesses and outlawing other sexually oriented businesses as a hypocritical form of

31

law. In the City of South Salt Lake's Ordinance on Sexual Orientated Businesses, it even

acknowledges that one of the secondary effects stemming from such businesses is prostitution.

*An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The*

*South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For*

*Sexually Oriented Businesses.* (2012). An infamous study backs this up by saying that bikinis

cause men to see women as objects and that action impulses can trigger the brain when looking

at women. *Bikinis Make Men See Women As Objects, Scans Confirm.* National Geographic.

(2009). Therefore, hypothetically speaking, if a stripper or an escort knows that they can make

more money by working in prostitution by knowing that is what men want upon seeing their

nakedness, then it puts the stripper or escort at risk of arrest of engaging in paid sexual

intercourse.

110.    The reasonable thing to do would be to outlaw all sexually oriented businesses in

the State, as seen with the State's declaration that porn is a health crisis. *Utah Declares*

*Pornography a Public Health Crisis.* CBS News. (2016). Iceland did this years ago because they

found that stripping fueled the sex trade. *Legislation Bans Stripping In Iceland.* Iceland Review.

(2010). But the legislatures can't make stripping or escorting illegal due to the previous Supreme

Court rulings that make that conduct protected under the 1st amendment. *Erie v. Pap's A.M.*

(2000). Therefore, all sexually oriented businesses must be legalized to not deny workers and

customers the right of equal protection. They are participants in the adult entertainment business

and deserve that protection. The As-Applied challenged laws must be struck down to allow

women the right to work in brothels. They have that right as much as stripping or being an

escort.

**CLAIM THREE:**
**Section 1983 Claim for Violation of Fourteenth Amendment Substantive Due Process Right**
**to Earn a Living**

111.    Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

112.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) makes the act of running, erecting, owning, working in a brothel (a house of prostitution) a crime in the State of Utah.

113.    Many persons in the State of Utah, including Plaintiff Christie herein, desire to engage in the commercial exchange of sex, but refrain from doing so for fear of being arrested and prosecuted. Alternatively, many persons, including Christie, have in the past engaged in the commercial exchange of sex despite the threats of criminal prosecution because this profession provides them with a livelihood and the ability to support themselves and/or their families. They would like to do so in the future in a safe, legal place, but for Utah's prohibition of brothels, they can't.

114.    Because these statutes severely infringe on the ability to earn a living through one's chosen livelihood or profession, it unconstitutionally burdens the right to follow any of the ordinary callings of life; to live and work where one will; and for that purpose to enter into all contracts which may be necessary and essential to carrying out these pursuits, all liberty interests protected by the Fourteenth Amendment right to substantive due process. *See e.g., Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Allgeyer v. Louisiana*, 165 U.S. 578, 589-90 (1897).

33

115.     Insofar as they are enforcing Utah's brothel laws, the District Attorney and the Attorney General, acting under color of state law, have deprived, are depriving, and will continue to deprive Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

116.     Plaintiffs are therefore entitled to a declaration that As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) violate the substantive due process right to earn a living, and injunctive relief prohibiting the enforcement of the As Applied statutes as violative of the Fourteenth Amendment to the United States Constitution.

## CLAIM FOUR:
### Section 1983 Claim for Violation of First Amendment
### Freedom of Association

117.     Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

118.     The First Amendment to the United States Constitution affords constitutional protection to the freedom of association. Construing this constitutional protection, the Supreme Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. *Board of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987). Indeed, "the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Id*. at 545. "Such relationships may take various forms, including the most intimate." *Id*.

34

119.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) severely infringe on the rights to freedom of association of many persons in the State of Utah, including Plaintiffs herein. By prohibiting the commercial exchange of private sexual activity, many persons in the State of Utah, including Plaintiffs herein, are unable to enter into and maintain certain intimate and private relationships.

120.    Insofar as they are enforcing Utah's prostitution laws, the District Attorney and the Attorney General, acting under color of state law, are depriving and will continue to deprive Plaintiffs of rights secured by the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

121.    Plaintiffs are therefore entitled to a declaration that The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) violate freedom of association, and injunctive relief prohibiting the enforcement of said laws as violative of the First Amendment to the United States Constitution.

**CLAIM FIVE:**
**Violations of the Utah Constitution**

122.    Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

123.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) violates Article I, Section 7 of the Utah Constitution by depriving Plaintiffs and all others similarly situated the right to substantive and procedural due process. In the manner set forth in Claims One and Three

35

above, the statutes impinge upon the fundamental rights to sexual privacy, to live and work

where one will, to pursue any livelihood or vocation, and to associate.

124.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-

1304(iii); 76-10-1305(a)(e); As Applied 47-1) also violate the Utah Constitution's Free Market

Clause found in Article 12, Section 20. As set forth in Claims Two and Three, the statutes

prohibit the running of a legalized business that has a business plan which is in violation of the

Utah Constitution.

## IRREPARABLE INJURY

125.    Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully

set forth herein.

126.    Plaintiffs are now severely and irreparably injured by the As Applied brothel laws

of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1, state

laws that violate the Due Process Clause of the Fourteenth Amendment. By way of example

only, Plaintiffs' injuries include the deprivation of rights guaranteed by the Fourteenth

Amendment and the severe humiliation, emotional distress, pain, suffering, psychological harm,

and stigma caused by the State of Utah's restrictions on Plaintiffs' ability to decide how to

conduct their private lives in matters pertaining to sex. Plaintiffs' injuries will be redressed only

if this Court declares the As Applied Challenged laws unconstitutional and enjoins the Governor,

District Attorney and the Attorney General from enforcing the laws and allowing plaintiffs to

apply for a business license to start the Mile High Neon brothel.

127.    An actual and judicially cognizable controversy exists between Plaintiffs and

Defendants regarding whether the As Applied Challenged brothel laws violate the

federal and state constitutions with questions raised as to whether the above laws violate

plaintiffs' equal protection and due process rights and their rights to associate with whom they

want by starting a business.


## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment as follows:

1.      A declaration that Utah's brothel statutes, As Applied brothel laws of Utah (76-10-

1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1), are

unconstitutional;

2.       Preliminary and permanent injunctive relief prohibiting Defendants from enforcing

mentioned statutes of the Utah Code, and allowing plaintiffs to obtain a business

registration and to work with the Utah legislature to create laws for allowance of a legal

brothel.

3.      An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

4.      Any other such award or relief that the Court finds justified under the circumstances.


Dated: October 16, 2016


                                RUSSELL G. GREER
                                PRO SE LITIGANT

                                By: /s/  Russell G. Greer
                                Russell G. Greer

10/18/2016

48

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Russell Greer & Tricia Christie

**DEFENDANTS**

Gary R. Herbert, Sean D. Reyes, Sim S. Gill, Jackie Biskupski, Ben McAdams, James Allred, Kathy Berg, Rolen Yoshinaga

FILED
U.S. DISTRICT
2016 OCT 18
DISTRICT OF UTAH
DEPUTY CLERK

**(b)** County of Residence of First Listed Plaintiff  **Salt Lake County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Salt Lake County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☒ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*  42 U.S.C. 1983
Brief description of cause:
The statutes pertaining to brothels of the Utah Code violate the 1st and 14th amendments rights of plaintiffs.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

None  *(See instructions):*

JUDGE

DOCKET NUMBER

DATE  10/18/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP

Case: 2:16cv01067
Assigned To : Pead, Dustin B.
Assign. Date : 10/18/2016
Description: Greer et al v. Herbert, et al

49

Catherine L. Brabson (#6500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone: (801) 535-7788
Facsimile: (801) 535-7640
Catherine.Brabson@slcgov.com

*Attorney for Defendants Jackie Biskupski and James Allred*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER and TRICIA CHRISTIE,<br><br>      Plaintiffs,<br><br>    vs.<br><br>GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the Count of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,<br><br>      Defendants. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br><br>Case No. 2:16-cv-01067<br><br>Judge Dustin B. Pead |

Defendants Jackie Biskupski and James Allred in their official capacity (collectively the "City Defendants"), by and through counsel of record, and pursuant to Federal Rules of Civil Procedure 12(b)(6) and DUCivR 7-1**Error! Bookmark not defined.**, move to dismiss Plaintiff's Complaint for failure to state a claim for relief.

## STATEMENT OF RELIEF SOUGHT

The City Defendants seek dismissal of the four causes of action asserted under 42 U.S.C. § 1983 on the grounds that under the standard of Rule 12(b)(6), the factual allegations do not state federal constitutional violations by the City Defendants, nor do Plaintiffs appear to seek redress from the City Defendants.   Plaintiffs' claims under the Utah Constitution should be dismissed on the same grounds.   Alternatively, Plaintiffs' state law claims should be dismissed without prejudice for lack of subject matter jurisdiction.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs seek to challenge the constitutionality of certain criminal and civil laws enacted by the State of Utah.   Specifically, Plaintiffs challenge Utah Code §§ 76-10-1302, -1303, -1304, -1305 and § 47-1-1 et seq.   *See* Complaint, ¶¶ 26-31.   Plaintiffs claim that enforcement of these state laws by the Governor, the Utah Attorney General and the Salt Lake County District Attorney violate their federal and state constitutional rights to due process, equal protection and freedom of speech and association.   *See* Complaint, ¶¶ 31, 89-90, 99, 110, 115-16, 120, 123-24.

Page 2

With respect to the City Defendants, Plaintiffs assert that Defendant Biskupski is the
Mayor and Defendant Allred is the Business Licensing Manager.   Both Biskupski and Allred are
named in their official capacity.   *See* Complaint, ¶¶ 13, 16.

## ARGUMENT

I.      **Rule 12(b)(6) Standard of Review.**

Federal Rule of Civil Procedure 12(b)(6) provides that the Court may dismiss any claim
that "fail[s] to state a claim upon which relief can be granted."   When considering a motion to
dismiss, the Court views the complaint in a light most favorable to the plaintiff.   *See Moore v.
Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).   Nevertheless, a claim must be dismissed if the
complaint does not contain enough facts to make the claim "plausible on its face."   *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

II.     **Plaintiffs Fail to State a Factual Basis for Claims Asserted Against the City.**

Plaintiffs do not allege any factual basis for their claims against the City Defendants, nor
appear to seek redress against the City Defendants.   Thus, Plaintiffs state no claim for municipal
liability under 42 U.S.C. § 1983.

Section 1983 provides a remedy against "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected . . . to
the deprivation of any rights, privileges or immunities secured by the Constitution and Laws . . ."
42 U.S.C. § 1983.   Section 1983 creates a federal cause of action for damages to vindicate
alleged violations of the Constitution and federal laws by individuals acting "under color of state

Page 3

law." 42 U.S.C. § 1983; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).   The statute does not create any substantive civil rights, but is only a procedural mechanism for enforcing existing rights.   *Gallegos v. City & County of Denver*, 984 F.2d 358, 362 (10th Cir. 1993).

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.   *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005).   Plaintiffs fail to plead these elements with respect to the City Defendants.   The Complaint includes almost no facts about the City Defendants.   At most, Plaintiffs identify Ms. Biskupski as the Mayor and James Allred as the Business License Manager.   (*See* Complaint, ¶¶ 13, 16).   The laws challenged by Plaintiffs are state laws passed by the Utah Legislature.   Plaintiffs do not allege any conduct of the City Defendants with respect to these state laws, nor are they challenging City ordinances. Curiously, Plaintiff Greer acknowledges that he does not intend to own or operate a brothel. (*See* Complaint, ¶ 88).   Thus, there is no basis for him to seek a business license from the City or Mr. Allred.   Accordingly, Plaintiffs cannot state a claim for relief against the City Defendants under § 1983.

**III. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.**

Similarly, Plaintiffs fail to allege any facts against the City Defendants that would state a claim for relief under the Utah Constitution. The Fifth Cause of Action should therefore be dismissed as well.

Alternatively, the Court should dismiss Plaintiffs supplemental state law claims without prejudice as there is no basis for federal court jurisdiction given the Plaintiffs' failure to state a valid federal constitutional claim. A court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction," and is advised to do so "'absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir.2010) (citations omitted). No compelling reasons exist that warrant this court's retention over these state law claims with respect to the City Defendants.

<u>CONCLUSION</u>

The Complaint should be dismissed against the Defendants Biskupski and Allred with prejudice.

DATED this 12th day of December, 2016.

　　/s/　Catherine L. Brabson　　　　　　
CATHERINE L. BRABSON
Attorney for Plaintiff

Page 5

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on 12th day of December, 2016, a true and correct copy of the **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was electronically filed with the Court using the CM/ECF system, which sent notice to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
dnwold@utah.gov
gmsoderberg@utah.gov
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Jennifer Bailey
Neil R. Sarin
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
2001 South State Street, Suite S3-600
Salt Lake City, UT 84190
jenbailey@slco.gov
nsarin@slco.org
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

was sent via first class mail, postage prepaid, to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
russmark@gmail.com
*Plaintiff pro se*

Tricia Christie
*Plaintiff pro se*
*[no contact information provided]*

                                                     /s/   Lindsay Ross

HB #57494

Page 6

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov
E-mail: gmsoderberg@utah.gov

*Counsel for State Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER; and TRICIA CHRISTIE,<br><br>            Plaintiffs,<br><br>v.<br><br>GARY R. HERBERT, in his official capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake; BEN McADAMS, in his official capacity as Mayor of the County of Salt Lake; KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>            Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS**<br><br><br><br>Case No. 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

MOTION..................................................................................................................... vi

INTRODUCTION ...................................................................................................... vii

LEGAL STANDARD.................................................................................................. 1

ARGUMENT .............................................................................................................. 1

1.  PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL.................................... 1

    A.  The Relationship Between Prostitute And Client Is Not Protected By The Due Process Clause................................................................................................ 2

    B.  Utah's Laws Criminalizing Prostitution Are Rationally Related To Legitimate Government Interests. ................................................................................. 5

2.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE THE ACTS ARE NEUTRAL AND THERE IS NO DISCRIMINATORY PURPOSE TOWARD PEOPLE WITH DISABILITIES. ................................................................................................ 8

3.  PLAINTIFF'S DUE PROCESS CLAIM TO A RIGHT TO EARN A LIVING AS A PROSTITUTE FAILS BECAUSE PROSTITUTION IS ILLEGAL................................... 9

4.  THERE IS NO ASSOCIATIONAL RIGHT BETWEEN PROSTITUTE AND CLIENT.10

5.  PLAINTIFFS' CLAIMS UNDER THE UTAH CONSTITUTION SHOULD BE DISMISSED. ........................................................................................................... 11

CONCLUSION....................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.,* 771 F.3d 697 (10th Cir. 2014) .......................... 1

*Allright Colorado, Inc. v. City & Cty. of Denver,* 937 F.2d 1502 (10th Cir. 1991).................. 5, 7

*Am. Bush v. City of S. Salt Lake,* 2006 UT 40, 140 P.3d 1235 ................................. 11, 12

*Arcara v. Cloud Books, Inc.,* 478 U.S. 697 (1986) .................................................. vii, 10

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......................................................................... 1

*Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972) ................................. vii, 9

*Bishop v. Wood,* 426 U.S. 341 (1976)........................................................................... 9

*Blackburn v. City of Marshall,* 42 F.3d 925 (5th Cir. 1995)........................................ 10

*Burnett v. Mortg. Elec. Registration Sys., Inc.,* 706 F.3d 1231 (10th Cir. 2013) .......................... 1

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004)........................ 10

*Conn v. Gabbert,* 526 U.S. 286 (1992) ......................................................................... 9

*Copelin-Brown v. New Mexico State Pers. Office,* 399 F.3d 1248 (10th Cir. 2005)..................... 9

*Coyote Publ'g, Inc. v. Miller,* 598 F.3d ................................................................. 5, 7

*Does v. Munoz,* 507 F.3d 961 (6th Cir. 2007)................................................................. 2

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal.
   Mar. 31, 2016) ......................................................................................... 3, 4

*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307 (1993) .................................................. 2

*FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990)................................................. 10

*Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276 (10th Cir.2004) ..................... 5

*IDK, Inc. v. County of Clark,* 836 F.2d 1185 (9th Cir. 1988)............................... vii, 4, 10

iii

*Lawrence v. Texas,* 539 U.S. 558 (2003) ..................................................... vii, 3, 4, 5

*Love v. Superior Court,* 226 Cal. App. 3d 736 (1990) ...................................................... 6

*Miller v. Glanz,* 948 F.2d 1562 (10th Cir. 1991) ...................................................... 1

*Muth v. Frank,* 412 F.3d 808 (7th Cir. 2005) ...................................................... 4

*Northern Mariana Islands v. Taman,* 2014 WL 4050021 (N. Mar. I. 2014) ...................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) ...................................................... 1, 11

*People v. Grant,* 195 Cal. App. 4th (2011) ...................................................... 7

*Pers. Adm'r of Massachusetts v. Feeney,* 442 U.S. 256 (1979) ...................................................... 8

*Petrella v. Brownback,* 787 F.3d 1242 (10th Cir. 2015) ...................................................... 2

*Powers v. Harris,* 379 F.3d 1208 (10th Cir. 2004) ...................................................... 5

*Roberts v. U.S. Jaycees,* 468 U.S. 609 (1984) ...................................................... 2, 4

*Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221 (10th Cir. 1997) ...................................................... 11

*Seegmiller v. LaVerkin City,* 528 F.3d 762 (10th Cir. 2008) ...................................................... 3, 5, 9

*Slater v. A.G. Edwards & Sons, Inc.,* 719 F.3d 1190 (10th Cir. 2013) ...................................................... 1

*State v. Hernandez,* 2011 UT 70, 268 P.3d 822 ...................................................... 11

*Summit Water Distribution Co. v. Summit Cty.,* 2005 UT 73, 123 P.3d 437 ...................................................... 12

*Sutton v. Utah Sch. for the Deaf & Blind,* 173 F.3d 1226 (10th Cir. 1999) ...................................................... 1

*Teigen v. Renfrow,* 511 F.3d 1072 (10th Cir. 2007) ...................................................... 2

*United States v. Carter,* 266 F.3d 1089 (9th Cir. 2001) ...................................................... 6

*Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) ...................................................... 2, 3

*West v. Thomson Newspapers,* 872 P.2d 999 (Utah 1994) ...................................................... 11

*Williams v. Attorney General of Ala.,* 378 F.3d at 1236 (2004) ...................................................... 3

iv

*Williamson v. Lee Optical of,* 348 U.S. 483 (1955) ...................................................... 10

**Statutes**

Article 12 section 20 of the Utah Constitution ........................................................... 12

Utah Code Ann. §§ 76-10-1302 ........................................................................... vi, vii

**Rules**

Fed. R. Evid. 201 ................................................................................................... 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................ vi

**Other Authorities**

*Commercial Sex: Beyond Decriminalization,* 73 S. Cal. L.Rev. 523 (2000) ................. 6

*Prostitution Trafficking, and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly,* 18 Yale J.L. & Feminism 109 (2006) ....... 6

# MOTION

Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy

Berg, Division Director of the Division of Corporations and Commercial Code ("State

Defendants"), through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and

District of Utah Local Rule 7-1, submit this Motion to Dismiss and Supporting Memorandum.

Plaintiffs' Complaint should be dismissed primarily because the Due Process Clause has never

been found to protect the relationship between a prostitute and a solicitor or client.

Plaintiffs challenge Utah laws that make prostitution and brothels illegal. Compl. p. 12

doc.1; Utah Code Ann. §§ 76-10-1302–1305 (criminalizing prostitution and solicitation, § 47-1-1

(declaring brothels nuisances). Plaintiffs argue, *inter alia*, that private consensual sexual activity

between adults is a protected liberty interest. Compl. p. 2 doc. 1.

Plaintiffs' claims should be dismissed because the liberty interests protected under the

Due Process Clause do not in any way cover the relationship between prostitute and solicitor, the

laws in question are neutral and do not discriminate against persons with disabilities, there is no

Substantive Due Process right to earn a living as a prostitute, the First Amendment protection of

freedom of association does not protect the relationships at stake in the context of prostitution,

and similarly, the relationship or conduct at issue is not protected by analogous provisions of the

Utah Constitution.

The State Defendants ask the Court to find that the statutes are constitutional and dismiss

Plaintiffs' Complaint.

# MEMORANDUM

## INTRODUCTION

Prostitution and the solicitation of prostitutes are crimes in Utah, punishable as misdemeanors, or in some cases as felonies. *See* Utah Code Ann. §§ 76-10-1302–1305 (criminalizing prostitution and solicitation), § 47-1-1 (declaring brothels nuisances). Plaintiffs ask this Court to strike down Utah laws that criminalize prostitution and brothels ("Acts"), claiming that the Acts, as applied to Plaintiffs, violates their Fourteenth Amendment right to substantive due process, their Fourteenth Amendment right to equal protection, their First Amendment right to freedom of association, and analogous provisions of the Utah Constitution. *See* Compl. pp. 23–36 doc. 1.

The Court should dismiss Plaintiffs' Complaint as a matter of law. The standard for review of the Acts are rational basis, not heightened or strict scrutiny, because the Due Process Clause has never been found to protect the relationship between a prostitute and a solicitor. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (distinguishing its holding from application in the context of prostitution). There is no fundamental right to engage in prostitution or to solicit prostitution. Prostitution and solicitation are not expressive conduct protected by the First Amendment. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704–05, 707 (1986). And the relationship between prostitute and client is not an expressive association protected by the First Amendment. *See IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1195–96 (9th Cir. 1988). Courts have uniformly concluded that there is no substantive due process right to work as a prostitute. *See e.g., Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

Plaintiffs' analogous claims under the Utah Constitution also fail. They are barred by the Eleventh Amendment, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), and are foreclosed by multiple Utah decisions holding that the Utah Constitution provides less protection to the relationship and conduct at issue here than the United States Constitution.

## LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs' Complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). The court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ARGUMENT

1. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL.

A statute that does not burden a fundamental right is upheld under rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the

1

classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Teigen v. Renfrow*, 511

F.3d 1072, 1083 (10th Cir. 2007) (statute upheld "if it is rationally related to a legitimate

government purpose or end."). Here, the Act is constitutional because it does not burden a

fundamental right and is supported by a rational basis.

### A. The Relationship Between Prostitute And Client Is Not Protected By The Due Process Clause.

Substantive due process, in addition to the freedoms protected by the Bill of Rights,

extends protections to fundamental rights. *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir.

2015), *cert. denied*, 136 S. Ct. 588 (2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720

(1997)). "To qualify as 'fundamental,' a right must be 'objectively, deeply rooted in this Nation's

history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty

nor justice would exist if [it] were sacrificed.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 720–21).

Additionally, the Due Process Clause has been the source of protection for "certain kinds

of highly personal relationships" and "certain kinds of personal bonds." *Roberts v. U.S. Jaycees*,

468 U.S. 609, 618 (1984). The relationships and bonds that have been protected are characterized

by how they "have played a critical role in the culture and traditions of the Nation by cultivating

and transmitting shared ideals and beliefs." *Id.*  But the Tenth Circuit has been unequivocally

clear regarding the fact that the Due Process Clause protects no free-floating right to sexual

intimacy; it notes the exact opposite is the law:

> "[I]dentifying a new fundamental right subject to the protections of substantive
> due process is often an uphill battle, as the list of fundamental rights is short."
> *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quotations omitted). The Court
> thus far has recognized fundamental liberty interests to consist primarily of those
> relating to marriage, family life, child rearing, and reproductive choices. These
> liberty interests include the right to marry, to have children, to direct the
> education and raising of one's own children, to marital privacy, to use

2

contraception and obtain abortion, and to bodily integrity. *Id.* However, as the Court made clear in *Glucksberg*, "[not] all important, intimate, and personal decisions are ... protected [by substantive due process]." *Id.*

One of the Court's most recent opinions concerning substantive due process also counsels against finding a broad-based fundamental right to engage in private sexual conduct. In *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court struck down a Texas law that criminalized homosexual sodomy. But nowhere in *Lawrence* does the Court describe the right at issue in that case as a fundamental right or a fundamental liberty interest. It instead applied rational basis review to the law and found it lacking. *Lawrence*, 539 U.S. at 578. . . . As one recent decision aptly noted, the Court declined "to recognize a fundamental right to sexual privacy ... where petitioners and amici expressly invited the [C]ourt to do so." *Williams*, 378 F.3d at 1236. . . .   Nor did the *Lawrence* Court conclude that an even more general right to engage in private sexual conduct would be a fundamental right. *See id.*

*Seegmiller v. LaVerkin City*, 528 F.3d 762, 770-71 (10th Cir. 2008) (parallel cites and parentheticals omitted).

Plaintiffs have sought to define prostitution as "the fundamental liberty interest in one's own private sexual conduct . . . ." Compl. p. 24 ¶ 92 doc. 1. As just noted, the Tenth Circuit has foreclosed such a free-floating claim.  Another court, when faced with a similar case, determined that describing prostitution as a fundamental liberty interest in sex was too broad, and instead defined the right in terms of the relationship sought to be protected, stating that "this case challenges particular intimate conduct within a specific context . . . ." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, No. C 15-01007 JSW, 2016 WL 1258638, at *4 (N.D. Cal. Mar. 31, 2016); *see also Lawrence*, 539 U.S. at 567 ("[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring."). The interest at issue here is not the physical act of sexual intercourse, rather, the relationship between one person paying another person for sex. *Glucksberg*, 521 U.S. at 722 ("we have a tradition of carefully formulating the interest at stake in

substantive-due-process cases."). A relationship premised on purchasing sexual conduct has never been protected, and is actually the opposite of the types of relationships that have been recognized as worthy of protection under the Due Process Clause. *See, e.g., Lawrence*, 539 U.S. at 578 (distinguishing its holding from application in the context of public conduct or prostitution); *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir. 2005) (holding that, pursuant to *Lawrence*, there is no cognizable fundamental right to private consensual sexual conduct); *Erotic Serv. Provider Legal Educ. & Research Project*, No. C 15-01007 JSW, 2016 WL 1258638, at *4.

The relationship between a prostitute and client possesses few, if any, of the aspects of the "highly personal relationships" or "personal bonds" referenced by the Court in *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), that are protected by the Due Process Clause. The relationship between prostitute and client lasts a short time, and only as long as the client is willing to pay the fee. *See IDK, Inc.*, 836 F.2d at 1193 (involving challenges to county regulations by escort services). A prostitute has little choice as to the identity and personal preferences of the client that solicits sex. Prostitutes and clients are not involved in procreation, raising and educating children, cohabiting with relatives, or other family activities. *See id.* A prostitute may be involved with a large number of clients. "While we may assume that the relationship between [prostitute and client] is cordial and that they share conversation, companionship, and the other activities of leisure, we do not believe that a day, an evening, or even a weekend is sufficient time to develop deep attachments or commitments." *Id.* The relationship between prostitute and client is in fact the opposite of the types of relationships

4

protected by the Fourteenth Amendment, and the Court should refuse to extend such protection in this case.[1]

### B. Utah's Laws Criminalizing Prostitution Are Rationally Related To Legitimate Government Interests.

To satisfy the rational basis test, the Act "need only be rationally related to a legitimate government purpose." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted). "[R]ational basis review is highly deferential toward the government's actions." *Seegmiller*, 528 F.3d at 772. "Governmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted). The Court "need not satisfy [itself] that the challenged rules will in fact further their articulated purposes; it is sufficient if the legislature could rationally have concluded that the purposes would be achieved." *Id.* (quotation omitted).

Utah's ban on prostitution is rationally related to legitimate government interests. Prostitution is linked to trafficking in women and children. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d at 600; *see* U.S. Dep't of State, The Link Between Prostitution and Sex Trafficking (Nov. 24, 2004), https://2001-2009.state.gov/r/pa/ei/rls/38790.htm;[2] Bureau of Justice Statistics, U.S. Dep't of Justice, Characteristics of Suspected Human Trafficking Incidents, 2008-2010 1, 3

---

[1] The Supreme Court has specifically excluded prostitution when expanding the scope of relationships protected by the Due Process Clause. *Lawrence*, 539 U.S. at 560 ("This case does not involve minors, persons who might be injured or coerced, those who might not easily refuse consent, or public conduct or prostitution.")

[2] The facts in this section relating to the negative effects of prostitution may be judicially noticed, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir.2004) (Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.).

5

(April 2011) (reporting that 82% of suspected incidents of human trafficking were characterized as sex trafficking, and more than 40% of sex trafficking involved sexual exploitation or prostitution of a child) https://www.bjs.gov/content/pub/pdf/cshti0810.pdf.

Prostitution creates a climate conducive to violence against women. *See United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001); Melissa Farley, *Prostitution Trafficking, and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 Yale J.L. & Feminism 109, 111 & *passim* (2006) (addressing pervasive violence in prostitution and concluding that "[r]egardless of prostitution's status (legal, illegal, zoned or decriminalized) or its physical location (strip club, massage parlor, street, escort/home/hotel), prostitution is extremely dangerous for women."); Sylvia A. Law, *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L.Rev. 523, 533 nn. 47–48 (2000) (reporting that a "study of 130 prostitutes in San Francisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes," and that another study "demonstrate[ed] that violence is pervasive in the lives of all categories of women who sell sex for money").

Prostitution is linked to the transmission of AIDS and sexually transmitted diseases. *See, e.g., Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (upholding mandatory AIDS testing and counseling for person convicted of soliciting where the Legislature "has determined that those who engage in prostitution activities represent a high-risk group in terms of their own health, in contracting AIDS, and in terms of the health of others, in spreading the virus"); *Northern Mariana Islands v. Taman*, 2014 WL 4050021, at *3 (N. Mar. I. 2014) (prostitutes pose a health risk for sexually transmitted diseases).

6

Utah also has a legitimate interest in deterring the commodification of sex. *See Coyote Publ'g, Inc.*, 598 F.3d at 603 (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and that restrictions on prostitution are driven by "an objection to their inherent commodifying tendencies – to the buying and selling of things and activities integral to a robust conception of personhood."); *People v. Grant*, 195 Cal. App. 4th at 113-15 (holding that anti-pimping statute bore a rational relationship to the proper legislative goal of suppressing prostitution). The Acts are rationally related to legitimate government interests and does not violate Plaintiffs' substantive due process rights.

Plaintiffs' Complaint alleges that there is no rational basis in prohibiting prostitution or brothels. Compl. p. 25 ¶ 94 doc. 1. Plaintiffs argue that the State has an interest in regulating, rather than prohibiting, prostitution because it would protect citizens from scams, sexual diseases, and human trafficking. *Id.* Plaintiffs argue that the State already has an STD problem, so that allowing brothels might actually help control the spread of disease. *Id.* p. 26 ¶ 94.

However, under rational basis review, even if Plaintiffs' allegations are true, the question before the Court is not whether Plaintiffs' or the State's basis is more rational, or whether the Acts are narrowly tailored, and not even whether "the challenged rules will in fact further their articulated purposes . . . ," the question for the Court to decide is whether "the legislature could rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937 F.2d at 1512.[3] Decreasing human trafficking, violence against women, the spread of STDs, and deterring the commodification of sex are all rational bases that support prohibiting prostitution and brothels in Utah.

---

[3] The Court may take judicial notice of the fact that 49 of the 50 states in the Union have chosen to criminalize prostitution, with only Nevada leaving that decision to its counties to decide.

2.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE THE ACTS ARE
    NEUTRAL AND THERE IS NO DISCRIMINATORY PURPOSE TOWARD PEOPLE
    WITH DISABILITIES.

Even if the Acts have a disproportional effect on disabled persons, as argued by

Plaintiffs, the Acts do not violate the Equal Protection Clause because that alleged impact cannot

be traced to a discriminatory purpose. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256,

272 (1979) (discussing classifications based on gender and race). Because Plaintiffs do not allege

that the Act was intended to discriminate against disabled persons, and because no such

discriminatory intent exists, Plaintiffs' equal protection claim based on the Acts' alleged

"implicit discrimination," Compl. p. 31 ¶ 107 doc. 1, against disabled persons fails as a matter of

law.

Second, Plaintiffs' equal protection argument that the State cannot allow some sexually

oriented businesses but prohibit prostitution, *id.* p. 32 ¶ 110, or that women have a right to work

in brothels, *id.*, fails as a matter of law. Plaintiffs' argument that women have a right to work as

prostitutes is properly analyzed under the Due Process Clause, and is done so below.

Plaintiffs' argument that the State has no rational basis for treating one class of

businesses (brothels) differently than another class of similarly situated businesses (sexually

oriented businesses such as strip clubs, escort services, and adult businesses), fails because, as

described above, a great number of rational bases exist for the State to prohibit prostitution and

brothels, and classifying businesses based on whether sexual intimacy is sold is not a suspect

classification. *Feeney*, 442 U.S. at 272 ("When the basic classification is rationally based,

uneven effects upon particular groups within a class are ordinarily of no constitutional

concern."). Nor is a fundamental right at issue, such that heightened scrutiny is warranted.

8

*Seegmiller*, 528 F.3d at 770 ("the Court has never endorsed an all-encompassing right to sexual

privacy . . ."). Accordingly, Plaintiffs' equal protection claims fail as a matter of law.

3.   PLAINTIFF'S DUE PROCESS CLAIM TO A RIGHT TO EARN A LIVING AS A
     PROSTITUTE FAILS BECAUSE PROSTITUTION IS ILLEGAL.

Plaintiff Tricia Christie's claim that she has a right to earn a living as a prostitute fails

because there is no state-law property interest in working as a prostitute.[4]

The Fourteenth Amendment establishes the right of an individual "to contract, to engage

in any of the common occupations of life." *Bd. of Regents of State Colleges v. Roth*, 408 U.S.

564, 572 (1972). However, "[a] threshold requirement to a substantive or procedural due process

claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Id.*

at 569.

Whether a property interest in employment exists is a matter of state law. *Bishop v.*

*Wood*, 426 U.S. 341, 344 (1976). Utah law does not recognize a property interest in working as a

prostitute, and the Acts at issue here do not recognize any such interest.

Nor is there a protectable liberty interest in employment as a prostitute. "[T]he liberty

component of the Fourteenth Amendment's Due Process Clause includes some generalized due

process right to choose one's field of private employment, but a right which is nonetheless

subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1992).

A protectable liberty interest in employment arises only "where not affirmatively

---

[4] Plaintiff Russell Greer stated to counsel for the State Defendants that Ms. Christie does not
intend to participate in this lawsuit, and that Mr. Greer attempted to remove her name from the
case. Accordingly, it is the State Defendants' understanding that Plaintiffs will not move forward
with claims particular to Ms. Christie, such as a due process claim to work as a prostitute. A
claim for which Mr. Greer lacks standing to bring. *See Copelin-Brown v. New Mexico State Pers.*
*Office*, 399 F.3d 1248, 1253 (10th Cir. 2005) (discussing elements of standing).

9

restricted by reasonable laws or regulations of general application." *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995). A law placing restrictions on employment will be upheld so long as there is a legitimate state interest in regulating the trade or profession. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483 (1955). As discussed in Section 1. B. above, Utah has such an interest.

4.   THERE IS NO ASSOCIATIONAL RIGHT BETWEEN PROSTITUTE AND CLIENT.

Association for the purpose of sex is not protected by the First Amendment. *Arcara*, 478 U.S. at 704–05, 707; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990) (concluding that a 10-hour limitation on motel room rentals did not burden or "have any discernible effect on the sorts of traditional personal bonds" that the Court has protected), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). Prostitutes are not hired for their conversational skills; they are hired for sex, and the Acts do not criminalize meeting with a prostitute.  They criminalize paying a prostitute for sex. *See IDK, Inc.*, 836 F.2d at 1195 ("the escort services make no claim that expression is a significant or necessary component of their activities. The services' advertisements included in the record do not tout their employees' skills in conversation, advocacy, teaching, or community service, and thus we assume that clients select their companions on the basis of other criteria.")

Because the association between a prostitute and a client is not expressive or protected by the First Amendment, Plaintiffs' First Amendment freedom of association claim fails as a matter of law and should be dismissed with prejudice.

5.   PLAINTIFFS' CLAIMS UNDER THE UTAH CONSTITUTION SHOULD BE
DISMISSED.

Plaintiffs' state constitutional challenges likewise fail. The Eleventh Amendment bars

these claims. "[A] federal suit against state officials on the basis of state law contravenes the

Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State

itself." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 117. Here, the State is the real, substantial

party in interest to plaintiff's challenge to the Acts. *See id.* at 92, 101. This Court's pendent

jurisdiction does not extend to Plaintiffs' state law claims. *Id.* at 118.

Alternatively, if the Court dismisses Plaintiffs' federal claims, the Court should dismiss

Plaintiffs' state constitutional claims for lack of subject matter jurisdiction. *Roe v. Cheyenne*

*Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

If the Court reaches the merits of Plaintiffs' Utah constitutional claims, those claims are

barred because in relation to prostitution, the Utah Constitution provides less protection than the

United States Constitution. The Utah Supreme Court analyzes state constitutional issues under

the primacy model, which analyzes issues under the state constitution before resorting to the

federal constitution. *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 7, 140 P.3d 1235 (citing

*West v. Thomson Newspapers*, 872 P.2d 999, 1004–07 (Utah 1994)). In interpreting the Utah

Constitution, the Utah Supreme Court has stated that the drafters' intent must be ascertained.

*State v. Hernandez*, 2011 UT 70, ¶ 8, 268 P.3d 822 (citing *American Bush*, 2006 UT 40 ¶ 12, 140

P.3d 1235). Because the best evidence of the drafters' intent is the constitutional text, analysis

begins with the text itself. *Id.* (citations omitted).

Plaintiffs' Complaint fails to explain how the Utah Constitution provides more protection

than the federal constitution, and Utah state court decisions support the conclusion that the

relationship between prostitute and client, the right to earn a living as a prostitute, or the

association between a prostitute and a client would be less protected by the Utah Constitution

than the United States Constitution. *See e.g.*, *American Bush*, 2006 UT 40 ¶ 2, 140 P.3d 1235

(nude dancing not protected by the Utah Constitution).[5]   They have thus failed to state a claim

under the Utah Constitution.

## CONCLUSION

Plaintiffs' Complaint fails as a matter of law, because the United States and Utah

Constitutions have never been found to protect consensual sex between two adults as a

standalone right, or prostitution as a profession, or a person's right, disabled or not, to pay

another person for sex. Neither should the Court extend protection to the relationship between

prostitute and client because that relationship is antithetical to the highly personal relationships

and personal bonds that are protected by the Due Process Clause. The State Defendants ask the

Court to find that the Act is constitutional and dismiss Plaintiffs' Complaint, with prejudice.

DATED: December 23, 2016.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

---

[5] Plaintiff also references Article 12 section 20 of the Utah Constitution, the "Free Market
Clause." Compl. p. 36 ¶ 124 doc. 1. However, the Free Market Clause prohibits monopolies, and
does not relate to one individual's attempt to obtain a business license. Utah Const. Art. 12 § 20;
*Summit Water Distribution Co. v. Summit Cty.*, 2005 UT 73, ¶ 50, 123 P.3d 437 (declining to
analyze whether Article 12 section 20 is self-executing).

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 23, 2016, a true and correct copy of the foregoing **STATE STATE DEFENDANTS' MOTION TO DISMISS** was mailed via First Class Mail and by email to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
E-mail: russmark@gmail.com
*Pro Se Litigant*


/s/ Valerie Valencia

13

Sim Gill (USB #6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Neil S. Sarin (USB #9248) nsarin@slco.org
Jennifer Bailey (USB #14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Russell G. Greer, et al. | SALT LAKE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Plaintiffs, | |
| v. | |
| Gary R. Herbert, et al. | Case No. 2:16-cv-01067 |
| Defendants. | Magistrate Judge:  Dustin B. Pead |

Defendants, SIM GILL ("Gill"), BEN MCADAMS ("McAdams") and ROLEN

YOSHINAGA ("Yoshinaga") in their official capacity (collectively the "County Defendants"),

by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure

12(b)(6), move to dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief

("Complaint") for failure to state a claim for relief for the reasons set forth herein.  Furthermore,

County Defendants incorporate and adopt the legal arguments set forth in Salt Lake City

Defendants' Motion to Dismiss (Doc. 11) ("City's Motion") and State Defendants' Motion to

Dismiss (Doc. 17) ("State's Motion") as if set forth fully herein.

## INTRODUCTION

This matter involves alleged civil rights violations by state, county, and city officials, including County Defendants, against plaintiffs Russell Greer ("Greer") and Tricia Christie ("Christie"). The Plaintiffs' claims for relief request the Court to find several sections of Utah Code § 76-10-1301, *et seq*. relating to prostitution and brothels unconstitutional, so that Plaintiff Greer can establish a brothel named "Mile High Neon" in Salt Lake County.

## STATEMENT OF RELEVANT FACTS

The County Defendants deny any wrongdoing in the Complaint. While the County Defendants dispute at least some of the allegations in the Complaint, the following facts are relevant to, and admitted, as they must be for, the limited purpose of this motion to dismiss under Rule 12(b)(6):

1.      Plaintiffs commenced this action by filing a Complaint on October 18, 2016 (Doc. 1).

2.      The Complaint names defendants from the State of Utah, Salt Lake County, and City of Salt Lake.

3.      The Complaint asserts five claims for relief against all defendants: (1) Section 1983 Claim for Violation of Fourteenth Amendment, Substantive Due Process Right to Sexual Privacy; (2) Section 1983 Claim for Violation of Fourteenth Amendment, Equal Protection Rights; (3) Section 1983 Claim for Violation of Fourteenth Amendment, Substantive Due Process Right to Earn Living; (4) Section 1983 Claim for Violation of First Amendment, Freedom of Association; and (5) Violations of the Utah Constitution. The County Defendants named in the Complaint are Sim Gill, the District Attorney for Salt Lake County; Ben McAdams, the Mayor of

2

Salt Lake County; and Rolen Yoshinaga, the Director of Salt Lake County Planning and

Development.  The County Defendants are named in their official capacity, only.

     5.     Plaintiffs have not alleged that they have been arrested or prosecuted for violation

of Utah Code § 76-1-1302.

     6.     Plaintiffs have not alleged that they have filed any application for a business license

with Salt Lake County Planning and Development nor that any such application was denied.

<u>**LEGAL STANDARD FOR MOTION TO DISMISS**</u>

     Under Rule 12(b)(6), a motion to dismiss should be granted where "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss, all

well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as

true and viewed in the light most favorable to the non-movant.  *GFF Corp. v. Associated*

*Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  "The court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to

assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief

may be granted."  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

     To survive a motion to dismiss, a plaintiff's complaint must allege enough facts, taken as

true, to make his claim for relief "plausible on its face.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 547 (2007).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original); *see also Southern Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (holding the court "need not accept conclusory allegations without supporting factual averments").  Although all well-pleaded facts in the complaint are presumed true, conclusory allegations—allegations that "do not allege the factual basis" for the claim—will not be considered.  *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995).

## ARGUMENT

**I.**    **Plaintiffs Fail to State a Factual Basis for Claims Asserted Against the County Defendants.**

Plaintiffs do not allege any factual basis for their claims against the County Defendants. While briefly identifying the County Defendants in the Complaint, the Plaintiffs fail to provide specific facts as to how the County Defendants have violated their constitutional rights.  There is no allegation that Gill has investigated or filed criminal charges against Plaintiffs.  There is no allegation that Yoshinaga reviewed and denied any business license application nor that the Plaintiffs even submitted a business license application.  Finally, there is no allegation that McAdams acted or failed to act, resulting in any constitutional violation against the Plaintiffs.

**II.**   **Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1983**

In order for County Defendants to be held liable under § 1983, Plaintiffs must show County Defendants "subjected or causes [Plaintiffs] to be subjected….to a deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  In the context of a civil rights action against multiple individual governmental actors, liability must be predicated on an individual defendant's personal involvement in the constitutional violation.  *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).  "It is particularly important . . . that

the complaint make clear exactly who is alleged to have done what to whom, to provide each

individual with fair notice as to the basis of the claims against him or her." *Wilson v. Montano*,

715 F.3d 847, 852 (10th Cir. 2013) (emphases in original) (citing *Robbins v. Oklahoma*, 519

F.3d 1242, 1250 (10th Cir. 2008)); see also *Auvaa v. City of Taylorsville*, 506 F. Supp. 2d 903,

909 (D. Utah 2007) quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1155 (10th Cir. 2006)

("In any § 1983 action, the plaintiff must demonstrate the liability of each . . . official against

whom a claim is made," and "the burden is on the plaintiff to develop facts that show the

defendant's responsibility for a constitutional violation.").  The Tenth Circuit recently found:

> When various officials have taken different actions with respect to a
> plaintiff, the plaintiff's facile, passive-voice showing that his rights "were
> violated" will not suffice. Likewise insufficient is a plaintiff's more active-
> voice yet undifferentiated contention that "defendants" infringed his
> rights.

*Pahls*, 718 F.3d at 1225-26 (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th

Cir.1998); *see also Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir.2011)).  "Rather, it is

incumbent upon a plaintiff to 'identify specific actions taken by particular defendants' in order to

make out a viable § 1983 or *Bivens* claim.  *Tonkovich*, 159 F.3d at 532 (emphasis added); *see*

*also Glaser v. City & County of Denver*, 557 F. App'x 689, 702 (10th Cir. 2014) (finding that the

plaintiff's "undifferentiated contentions" failed to specify what each of the individual defendants

named in his claim specifically did or said).

　　In their Complaint, Plaintiffs fail to make specific allegations as to what County

Defendants did to deprive them of their constitutional rights.  "A § 1983 plaintiff must show an

affirmative link between a defendant's conduct and a constitutional violation, and that affirmative

link must be alleged in the complaint as well as proven at trial." *Auvaa v. City of Taylorsville*, 506

F. Supp. 2d 903, 909-10 (D. Utah 2007) quoting *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).  Plaintiffs have failed to make the necessary affirmative link between the County Defendants' conduct and a constitutional violation.  There are no allegations: 1) Gill has investigated or filed criminal charges against Plaintiffs; 2) Yoshinaga reviewed and denied Plaintiffs' business license application; and 3) McAdams acted or failed to act, resulting in any constitutional violation against the Plaintiffs.  Absent an affirmative link in the Complaint between County Defendants' conduct and a constitutional violation, the Section 1983 claims in the Complaint (Claims 1-4) must be dismissed.[1]

### III.    Plaintiffs Fail to State a Claim under Article 1, Section 7 of the Utah Constitution.

Claim Five of Plaintiffs' Complaint alleges a violation of Article I, Section 7 of the Utah Constitution in that the County Defendants have deprived Plaintiffs of their rights to substantive and procedural due process.  (Compl. ¶ 123).  Article 1, Section 7 is the State constitution's "due process clause."  Like its federal counterpart, Article I, Section 7 provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."  Utah Const. Art. I, § 7. *Jensen v. Cunningham*, 2011 UT 17, ¶ 71, 250 P.3d 465, 483.

"The Utah Supreme Court has stated: Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the federal Constitution, the decisions of the Supreme Court of the United States on the federal due process clauses are highly persuasive as to the application of that clause of our state Constitution." *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d 998, 1013 (D. Utah 2016) citing *Terra Utils. v. Public Serv. Comm'n,* 575 P.2d 1029 (Utah 1978).  County Defendants encourage the Court to find "that

---

[1] See also City's Motion at 3-4 and State's Motion at 1-10.

its analysis of Plaintiffs' federal substantive due process claim applies with equal force to

Plaintiffs' due process claim under the Utah Constitution." *Id.*  Incorporating the federal due

process analysis necessary to dismiss the Plaintiffs' federal claims, the County Defendants urge the

Court to conclude that Plaintiffs have not stated a plausible claim for relief under Article I, Section

7 of the Utah Constitution and to dismiss Plaintiffs' state claim with prejudice.[2]

## IV.   Plaintiff Tricia Christie Has Not Complied with FRCP 11(a) and Christie should be Stricken as a Plaintiff

Federal Rule of Civil Procedure 11(a) requires as follows:

> Every pleading, written motion, and other paper must be signed by at least
> one attorney of record in the attorney's name---or by a party personally if
> the party is unrepresented.  The paper must state the signer's address, e-mail
> address, and telephone number….The court must strike an unsigned paper
> unless the omission is promptly corrected after being called to the attorney's
> or party's attention.

Here, Christie is included as a named plaintiff in the caption of the Complaint.  Within the

Complaint, Christie purports to assert allegations of constitutional violations.  See Compl. ¶¶ 9 and

57-64.  However, Christie did not sign the Complaint.  Further, Christie has not provided an

address, e-mail and telephone number anywhere on the face of the Complaint nor during the course

of this lawsuit.  While Greer is representing himself *pro se*, he is not an attorney and is unable to

represent her.  *See Perry v. Stout*, 20 F. App'x 780, 782 (10th Cir. 2001) (a non-attorney cannot

represent another pro se litigant).  In light of Christie's failure to comply with Rule 11(a), Christie

should be stricken as a Plaintiff.  See *Davidson v. Duncan Reg'l Hosp.*, 2010 U.S. Dist. LEXIS

10740, at *1-2 (W.D. Okla. 2010).[3]

---

[2] See also City's Motion at 5 and State's Motion at 11-12.
[3] See State's Motion at 9, n.4 (raising doubts whether Christie intends to participate in this lawsuit).

## **CONCLUSION**

Wherefore, for the reasons stated herein, as well as for the reasons set forth in the City's Motion and the State's Motion, County Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, enter an order dismissing with prejudice all claims and causes of action asserted by Plaintiffs against them, and award County Defendants any other relief to which they may appear entitled.

Respectfully submitted this 27th day of December 2016.

SIM GILL
Salt Lake County District Attorney

/s/ NEIL R. SARIN
NEIL R. SARIN
JENNIFER BAILEY
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

## CERTIFICATE OF SERVICE

I certify that on this 27th day of December, 2016 a true and correct copy of the foregoing

SALT LAKE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF was electronically filed

with the Clerk of Court using the CM/ECF system, which sent notice to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
*Attorney for Defendants Jackie Biskupski and James Allred*

was sent via first class mail, postage prepaid, to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
*Pro Se*

/s/ Iris Pittman
Paralegal

9

Catherine L. Brabson (#6500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone: (801) 535-7788
Facsimile: (801) 535-7640
Catherine.Brabson@slcgov.com

*Attorney for Defendants Jackie Biskupski and James Allred*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER and TRICIA CHRISTIE, <br><br> Plaintiffs, <br><br> vs. <br><br> GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the Count of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake, <br><br> Defendants. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** <br><br><br> Case No. 2:16-cv-01067 <br><br> Judge Dustin B. Pead |

Defendants Jackie Biskupski and James Allred in their official capacity (collectively the "City Defendants"), by and through counsel of record, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR 7-1(a)(4), move to dismiss Plaintiff's Complaint for failure to state a claim for relief.

The grounds for this motion are set forth in the motion to dismiss filed by Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Division of Corporations and Commercial Code (collectively, the "State Defendants") (Dkt. #17), and the motion to dismiss filed by defendants Sim Gill, Ben McAdams and Rolen Yoshinaga (collectively, the "County Defendants") (Dkt. #18).   The arguments advanced in the motions to dismiss filed by the State Defendants and the County Defendants concerning the constitutionality (state and federal) of Utah's laws criminalizing prostitution, and the arguments with respect to plaintiff Tricia Christie, apply equally to the claims asserted against the City Defendants.   The City Defendants hereby adopt these arguments as their own and join in the points and authorities advanced in support of the State Defendants' motion and the County Defendants' motion.   *See* DUCivR 7-1(a)(4) (permitting joinder in motions filed by other parties via filing of separate motion and adoption by reference); Fed. R. Civ. P. 10(c) (permitting adoption by reference).

Accordingly, Plaintiffs' complaint should be dismissed as against the City Defendants as a matter of law.

Page 2

DATED this 28th day of December, 2016.

_/s/   Catherine L. Brabson_____

CATHERINE L. BRABSON
*Attorney for Defendants Jackie Biskupski*
*and James Allred*

Page 3

## CERTIFICATE OF SERVICE

I hereby certify that on 28th day of December, 2016, a true and correct copy of the **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was electronically filed with the Court using the CM/ECF system, which sent notice to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
dnwold@utah.gov
gmsoderberg@utah.gov
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Jennifer Bailey
Neil R. Sarin
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
2001 South State Street, Suite S3-600
Salt Lake City, UT 84190
jenbailey@slco.gov
nsarin@slco.org
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

And was sent via first class mail, postage prepaid, to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
russmark@gmail.com
*Plaintiff pro se*

Tricia Christie
*Plaintiff pro se*
*[no contact information provided]*

/s/   Lindsay Ross

HB #58162

Page 4

Russell Greer
689 Vine Street
Murray, Utah 84103
801-616-1067
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 JAN -9 ⊃ 12: 19

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER** and **TRICIA CHRISTIE**,<br><br>        Plaintiffs<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>        Defendants | **OPPOSITION MOTION TO STATE DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No.: 2:16-cv-01067-DBP<br><br><br>Magistrate Judge Dustin B. Pead |

1

# TABLE OF CONTENTS

OPPOSITION MOTION……………………………………………………………7

SURVIVING A MOTION TO DISMISS………………………………………..9

STATE DEFENDANTS ACTED UNDER COLOR OF AUTHORITY…………………..9

STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S………………………………10

ALL PROSTITUTION DOES NOT CORRELATE……………………………………...11

PLAINITFF HAS PURSUED NON-JUDICIAL RELIEF…………………………………13

THE STATE DID NOT CITE HONEST FINDINGS……………………………………13

LACK OF WITNESSES…………………………………………………………16

OUTDATED LAWS………………………………………………………………...17

STATE AGs BOTH KNOW PLAINTIFF GREER……………………………………17

GUIDING CASE LAW……………………………………………………………18

TWO ANYALYSIS APPROACH……………………………………………………21

   Fundamental Liberty Interest Analysis……………………………………21

   Rational Basis Test………………………………………………………24

     A. The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses…………….28

     B. Moral Legislation is Not a Basis for Outlawing Brothels…………………………………….32

     C. The State Has Promised to Protect Against Fraud, STDs and Violence…………………………33

     D. The State Laws Do Not Achieve Their End Purpose………………………………………………34

CONCLUSION……………………………………………………………………36
Exhibit A………………………………………………………………………39
Exhibit B………………………………………………………………………...40
Exhibit C………………………………………………………………………41
Exhibit D………………………………………………………………………42
Exhibit E………………………………………………………………………45

2

# TABLE OF AUTHORITIES

## STATUTES of STATES and COUNTIES

*An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.*

Lyon County Brothel Ordinance

*Nevada Administrative Code 441A010-A325; NAC 441A775-A815.*

Utah Code 76-10-1302(1)(b); 47-1-1; 76-10-1303(1)(b); 76-10-1304(1)(a)(iii); 76-10-1305(1)(a)(e):

## MANDATORY AND PERSUASIVE CASE LAW

*Agency For International Development v. Alliance For Open Society International (2013)*

*Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D. Mass 2007)

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

*Attorney General of Canada v. Bedford* (Canadian Supreme Court 2013)

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991)

*Bowers v. Hardwick,* 478 US 186 (1986)

*Brown v. Board of Education of Topeka.* (1954).

*Celotex Corp. v. Catrett*, 477 US 317 (1986)

*Coyote Publishing Inc. v. Miller,* 598 F. 3d 592 (9th Circuit Court of Appeals 2010)

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal. Mar. 31, 2016)

*FCC v. Beach Communications Inc,* 508 US 307, 315 (1993)
*Griffin v. Illinois,* 351 US 12 (1956).

*Griswold v. Connecticut* (1965)

*Lawrence v. Texas* (2003)

3

*Love v. Superior Court*, 226 Cal. App. 3d 736 (1990)

*Loving v. Virginia* (1967)

*Obergefell v. Hodges* (2015)

*Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973)

*Reliable Consultants v. Earle* (2008)

*Roe v. Wade* (1973)

*Sandquist v. United States,* 115 F.2d 510 (10th Circuit Court 1940).

*Seegmiller v. Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008)

*Washington v. Glucksberg* (1997)

*Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004)

*Williams v. Morgan* (11th Cir. 2007)

**LAW REVIEWS/ARTICLES**

*100 Countries and Their Prostitution Policies.* ProCon.org.
(http://prostitution.procon.org/view.resource.php?resourceID=000772).

*13th Amendment to the U.S. Constitution.* Library of Congress website.

*7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013).
(http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11)

*A Comparison of United States and Canadian Approaches to the Rights of Privacy and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989).

*America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein, Ph.D., (2012).

*Applying Lawrence: Teenagers and Crime Against Nature*, 58 Duke L.J. 1825, 1835 (2009).

*Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*

4

*Consolidated Guidelines on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/)

*Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005).

*Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law. (2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp)

*Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You Pick from Menus and Can Stay for Up to Four Days.* Mirror. (2016). (http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466)

*Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University Press. (2012).
*Marketing Sex: US Legal Brothels and Late Capitalist Consumption.* Barbara G. Brents.

(2007).

*Paying for Pleasure: Men Who Buy Sex.* Teela Sanders. (2012).

*Pick Up a Penguin.* BBC News. (http://news.bbc.co.uk/2/hi/asia-pacific/60302.stm). (1998).
*Priorities, Attorney General of Utah.* (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health).*

*Reason and the Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139, 139 (1998)

*Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011).

*Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes".* Belkys Garcia. New York School of Law. (2006)

*Satisfying Lawrence: The Fifth Circuit Strikes Ban on Sex Toy Sales.* Jamie Iguchi. UC Davis School of Law. (2010)

*Strip Club Testimony.* Kelly Holsopple. The Freedom and Justice Center for Prostitution Resources. (2016). (http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf).
*Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish Games.* Fox 13 News. (2016). (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-assaulted-escort-who-refused-to-engage-in-fetish-games/).

5

*The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004)

*The Government's Moral Crusade: America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May. Liberty University. (2015).

*The Many Faces of Sex Work.* Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005).

*The Price of Intimacy.* Stephen P. Dark. Salt Lake City Weekly. (2016). (http://www.cityweekly.net/utah/the-price-of-intimacy/Content?oid=3566816)

*The Viability of Nevada 's Legal Brothels as Models for Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010)

*U.N. Commission Calls for Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012) (http://www.hivlawcommission.org/resources/report/FinalReport-Risks,Rights&Health-EN.pdf)

*What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw

6

## OPPOSITION MOTION

Plaintiff Russell Greer files this Opposition Motion and Supporting Memorandum to

State Defendants' Motion to Dismiss which the State filed December 23, 2016. This Opposition

Motion should be taken into consideration and the State's Motion should be set aside because:

(1) the State fails to cite any case precedent that is identical to Plaintiff's case; (2) their Motion is

based on conjecture and no legal findings; (3) the brothel laws in Utah have seen "No Change

Since 1953" (according to the legislative enactment date on the Utah Code website) and

therefore a more modern review is needed as a lot has happened socially since 1953; and (4)

Plaintiff feels that for a fair determination of whether the As-Applied challenged laws are

constitutional or not, a trial should be held for witnesses and evidence to show how the laws are

unconstitutional.

Also, it appears that the State Defendants are confused as to what Plaintiff is challenging.

To reiterate, the Complaint of Plaintiff clearly challenges As-Applied sections of the statutes of

the Utah Code – not all of the statutes which would constitute a facial challenge.  Plaintiff only

wishes for houses of prostitution to be legal and therefore is only challenging the following As-

Applied laws:

76-10-1302(1)(b):

(1) An individual is guilty of prostitution when the individual:
(b) is an inmate of a house of prostitution;

76-10-1303(1)(b):

(1) A person is guilty of patronizing a prostitute when the person:
(b) enters or remains in a house of prostitution for the purpose of engaging in sexual
activity.

7

76-10-1304(1)(a)(iii):

(1) A person is guilty of aiding prostitution if the person:
(iii) leases or otherwise permits a place controlled by the actor, alone or in association with
    another, to be used for prostitution or the promotion of prostitution.


76-10-1305(1)(a)(e):

A person is guilty of exploiting prostitution if he:
(e) owns, controls, manages, supervises, or otherwise keeps, alone or in association with
    another, a house of prostitution or a prostitution business.

47-1-1:

  Whoever shall erect, establish, maintain, use, own or lease any building, structure or place,
  for the purpose of lewdness, assignation or prostitution is guilty of nuisance, and such
  building, structure or place, and the ground itself, in or upon which such lewdness,
  assignation or prostitution is conducted, permitted or carried on, and the furniture, fixtures
  and musical instruments therein and the contents thereof are declared a nuisance, and shall
  be enjoined and abated as hereinafter provided.

     Plaintiff can challenge the As-Applied laws by themselves and not the entire statutes

because of the way the statute is written. For example, if one examines the statutes, prostitution

is criminalized either in generalized prostitution or in a house of prostitution. The statutes use the

word "or" or a semi-colon to distinguish the different sections of prostitution. They also use

letters, numbers and Roman numerals to classify each section of the law and therefore gives

Plaintiff the ability to challenge the laws As-Applied. This differs greatly from the case of *Erotic*

*Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal. Mar.

31, 2016) which sought to strike down all laws surrounding prostitution – a facial challenge --

which is not what Plaintiff is arguing for. The judge in that case called their challenge "broad".

*Id.* "Especially in light of the fact that this is a facial challenge, we are unable to strike down

these regulations." *Coyote Publishing Inc. v. Miller,* 598 F. 3d 592 (9th Circuit Court of Appeals

2010) (Appeals Court reversed decision on brothel advertising in light of it being a facial

8

challenge). Plaintiff does not seek such a broad challenge. His challenge is simple and direct with a straightforward constitutional, federal question: is there either constitutional protection in legalizing brothels or a lack of a rational basis (no compelling governmental interest) in prohibiting brothels?

## SURVIVING A MOTION TO DISMISS

As State Defendants argued, a complaint must contain "sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' *Id.,* at 570, <u>127 S.Ct. 1955</u>. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, <u>127 S.Ct. 1955</u>." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiff, as shown in his Complaint, and will show in this Opposition Motion, established that the named State Defendants (Herbert, Reyes & Berg) acted under color of authority by enforcing the As Applied laws. Furthermore, Plaintiff argued two different approaches for why the laws were unconstitutional: (1) he argued the Fundamental Liberty Interest argument approach, considering *Obergefell v. Hodges,* and (2) he also argued the rational basis approach which *Lawrence v. Texas* used. Thus, he survives a Motion to Dismiss because he has allowed the Court to draw a reasonable interference that the State Defendants acted under color of authority and that the laws are unconstitutional by using two different analysis to find the laws unconstitutional.

## STATE DEFENDANTS ACTED UNDER COLOR OF AUTHORITY

The State Defendants acted under color of authority in this case and have denied Greer of multiple rights: the right to run a business; the right of privacy; the right to associate; equal protection. Even those all aside, the laws that they enforce have no rational basis and do not further a compelling state interest. Instead, their laws cause irreproachable harm. To be more

9

specific, Defendant Herbert is in charge of overseeing the legislation of this state and ensures

that unconstitutional laws stay intact. He fails to see or turns a blind eye to the fact that

prostitution still flourishes in the State. Because of his failure to act on laws, he has instructed

State employees like Defendant Berg to not act and observe these laws. Defendant Berg

approved Greer's business license for a brothel in December 2015, but either due to

administrative laziness or a change of thought, realized what her office had approved and

rescinded the brothel license in January of 2016. That hurt Greer so much and denied him a right

to open a business that he had a business plan for. That is the biggest argument Greer has and the

biggest injury he has to show. He has been tempted to engage in illegal activity, but if he did

that, Defendant Reyes would prosecute Greer under the laws Reyes has sworn to uphold.

## STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S

Plaintiff also feels that this case should overcome a Motion to Dismiss because State

Defendants failed to cite any legal case like Plaintiff's. *Celotex Corp. v. Catrett*, 477 US 317

(1986) (Respondent had the burden to show that Petitioner lacked any legal claims to bring forth

a case). The State cited many cases, yes, but all had to do with prostitution occurring with clients

in their homes or in public. None of the cases cited, except one, had to do with brothels or

establishing a brothel or trying to go the legal way. All of the cases, except *Coyote Publishing,*

dealt with prostitutes appealing their criminal convictions; cases involving people who willfully

broke the law instead of petitioning the court with a constitutional challenge. Even in the

ESPLER case, the Plaintiffs hide their identities to avoid prosecution because they continue to

engage in criminal activity. Plaintiff has followed the law to the best of his ability and legally

tried going through the legislative route to make this legal. He has since refrained from engaging

in any illegal activity and has been giving his all to make this legal. But he has gone almost a

year without sex – that is the troubling part. Plaintiff's challenge is not a broad constitutional challenge, either, but a simple, straightforward challenge. Affirmatively, *Coyote Publ'g, Inc. v. Miller,* 598 F.3d (2010) was the only case that the State cited that had to do with brothels. But even in that regard, the 9th Circuit Court, in *Coyote,* did not determine whether brothels should be legalized in counties that did not allow brothels. Rather, the Court determined whether prohibiting the advertising of brothels was a violation of the First Amendment. Therefore, no case is like plaintiff's and his case should be heard.

### ALL PROSTITUTION DOES NOT CORRELATE

Objectively speaking, upon looking at the statutes of the Utah Code, the Code – as discussed earlier – separates different areas of prostitution, primarily: brothels and non-brothel prostitution. The legislature obviously intended to separate prostitution into these two categories because they knew that prostitution was a broad concept. If they thought prostitution was all inclusive, then they should have formed the statute without any caveat letters. All of the cases that the State cited had to do with the category of non-brothel prostitution which is generally uncontrolled and has more violence in it. Brothel prostitution follows some kind of control, whether legal or illegal, and has very little, if any, violence attached to it than compared to prostitution that occurs outdoors. *The Viability of Nevada 's Legal Brothels as Models for Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010) (In-depth study shows how legalized brothels were safe for both worker and customer. Study even showed that when illegal, prostitution that occurs inside, is far more safe than outdoor prostitution. The study cites from highly reviewed researchers and draws analysis from more than twenty countries). It would be unfair and quite unlawful for cases that have nothing to do with brothels to be applied to the laws the Plaintiff is arguing based on the fact that the Utah

11

Code separates brothels as a separate criminal act than other acts of prostitution. In fact, the case of *Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (mandatory AIDS testing of those arrested for prostitution was constitutional), which the State cited, supports what plaintiff is arguing. With legalization and regulation of prostitution, AIDS testing would be mandatory, as seen with Nevada's brothels. See, *Nevada Administrative Code 441A010-A325; NAC 441A775-A815.*

Prostitution is so broad that researchers have identified 25 different types of prostitution: indirect and direct forms of prostitution. *The Many Faces of Sex Work*. Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005). Amongst the many types of sex work they list are direct forms such as brothels, street, escort, and in-direct forms such as Bondage Domination Slave Master (more commonly known as BDSM), lap dancing and massage parlors. *Id.* Many of these in-direct forms of prostitution occur within the State of Utah as the genitals of either participant is touched and are not prosecuted. Even escort companies in Utah (The Doll House, Utah Party Girls, Escort Companions, etc), which escorting is listed as a direct form of prostitution, freely flourishes in the State without prosecution. Even buying a non-prostitute partner (a girlfriend; a first date; or even a spouse) dinner with the expectation of sex is technically prostitution (*Utah Code 76-10-1302(1)(a): engages in sex with another for the functional equivalent of a fee.)* If the State is going to use cases that have nothing to do with brothels as a form of legal precedent to dismiss Plaintiff's case, then shouldn't their cited cases be used to shut down the direct and in-direct forms of prostitution and arrest consenting non-commercial partners? "Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would...be meaningless..." *Griffin v. Illinois,* 351 US 12 (1956). Indeed, a trial is

12

warranted to determine whether there is more constitutional protection or rational basis in
brothels than in non-brothel prostitution, as it would be unfair to cite non-brothel prostitution as
binding precedent to not allow plaintiff to have a trial.

## PLAINTIFF HAS PURSUED NON-JUDICIAL RELIEF

Another reason that Plaintiff pleads for the case to not be dismissed is because he has
sought non-judicial relief. In fact, when he first came out about his intentions of challenging the
laws, he reached out to State representatives to help him. He reached out many times to try
setting up a meeting in hopes of possibly starting a lobby to overturn the laws and he got no
response from his representatives. Next, he started a petition on change.org to overturn the laws
and his petition saw very little movement. Plaintiff has not found the trick at "trending". He tried
going the legislative route by getting a business license to open a brothel and that was shut down
by the State (which is what started this entire cause of action). He can't even get the news to
carry his sincere stories about challenging these laws to bring public attention to it. It's as if
every opportunity has been closed on him. He was left with filing this constitutional challenge
not as the "easy way" to overturn the laws, but as the only way he had left. He asks that he is
given the chance to present his arguments at trial with expert witnesses and business models of
the brothel he would like opened.

## THE STATE DID NOT CITE HONEST FINDINGS

The State of Utah claimed that no good comes from prostitution. *State Defendants'*
*Motion to Dismiss, Page 14*. In arguing for dismissal in their Motion to Dismiss, they cite half-
truths and bald faced lies. They do not cite neutral findings. They quote from Melissa Farley,
who is a staunch anti-adult entertainment researcher and whose zealousness caused her to go into
an adult book store and light several pornographic magazines on fire. In fact, she was arrested 13

13

different times in 9 different states for these continuous same actions. *America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein, Ph.D., (2012). It really helps to know whose sources are cited. A common complaint about Ms. Farley is that none of her work has been peer-reviewed and that her non-profit organization, *Prostitution Research and Education*, creates a conflict of interest for her because she founded it. A fellow researcher says this about Melissa Farley: "Moreover, most of the empirical studies she cites are deeply flawed methodologically. Sampling biases and other procedural problems, in greater or lesser degree, pervade her literature, yet Farley never addresses this problem because that might undermine her sweeping claims." *Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005). Who's to say that the State has presented much more skewed research? In fact, they have.

The State also seems to ignore the complete regulation process of the Nevada brothels. For each county in Nevada that has legalized prostitution, they have a county ordinance that the worker and brothel owner have to abide by just like any occupation has ordinances (see Lyon County's, where the Bunny Ranch is incorporated, Brothel Ordinance as example: http://prostitution.procon.org/sourcefiles/LyonCountyTitle5Chap3Prostitution.pdf). The broad claims the State presents that all women are victims and that children are trafficked into prostitution, while may be true in illegal in situations, is false in legalized situations. In fact, each prostitute wanting to work at a Nevada brothel is given a work card by the local sheriff. *Lyon County Brothel Ord. 336, 2-2-90.* All prostitutes, who wish to work in a brothel, must: (1) give their real names and alias; (2) their age, address, physical description; (3) a recent photo and full set of fingerprints; (4) employment history; (5) address history; (6) complete record of criminal history; (7) a 50.00 fee deposit; (8) a medical release form for the issuance of STD test results.

14

*Lyon County Brothel Ord. 5.03.14(A)(1)(a).* The same is true for other employees that are not

prostitutes such as bartenders, door greeters, cashiers: they all must be licensed. The brothels

take regulation seriously. In fact, it makes it hard for unlicensed people to be in the brothels. In

addition to regulations on county and state level, the brothels have guards; security cameras; and

panic buttons in the girls' rooms. They appeal to the communities that they are in. *Marketing*

*Sex: US Legal Brothels and Late Capitalist Consumption.* Barbara G. Brents. (2007).

Therefore, the State has completely ignored the legalization process of Nevada and has

ignored the fact that several times the legislature of Nevada has been given the chance to abolish

brothels, but has declined to do so each time because they know it will cause more harm than

good. *Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011). If

prostitution was truly as evil as the State wants the Court to believe, then the legislature would

have repealed the law by now. Or the federal government would have stepped in if it truly was a

13th Amendment violation which Plaintiff cannot believe that the State even used that argument

since the 13th Amendment applies to slavery and not consenting adults. *13th Amendment to the*

*U.S. Constitution.* Library of Congress website.

(https://www.loc.gov/rr/program/bib/ourdocs/13thamendment.html). The State doesn't even

attempt to explain why legalization does not work nor does the State try to show any flaws with

Nevada's system – the system Greer is basing his model off of. Instead, they cover all

prostitution (legal, illegal, etc) with a broad blanket and skew results. Defendants have a footnote

on the bottom of page 14 in their Motion and use the fact that 49 out of 50 states have banned

prostitution, though, they ignore the fact that brothels were generally legal before the turn of the

twentieth century due to a moral crusade led by religionists which the same crusade prohibited

alcohol for the first twenty years of the twentieth century. *The Government's Moral Crusade:*

15

*America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May.
Liberty University. (2015).
(http://digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=1001&context=ljh). (Argues that
banning prostitution did more harm than good). *Lawrence* argued that basing legislation off of
moral welfare is not a sufficient basis to outlaw conduct. See *Lawrence v. Texas* (2003). The
State's arguments should not even be considered because it appears they found what sounded
best to them and randomly placed the arguments in their Motion. Their arguments are all based
on conjecture and second hand results and therefore should be barred from having a Motion to
Dismiss let alone a Summary Judgement.

Plaintiff is offended by the State because they have slandered his friends. He knows
many prostitutes who are in it freely and many brothel owners who legally operate brothels. The
State has never stepped a foot in a brothel; their sources they cite from have never stepped a foot
in a brothel either. Therefore, their arguments are of little value.

## LACK OF WITNESSES

As far as Plaintiff is aware, the State has no witnesses or credible evidence to back up
their claims. To the contrary, Plaintiff has many expert witnesses who want to testify at the trial.

Amongst his witnesses are Dennis Hof, the famed owner of seven legal brothels in Nevada
which have all boosted the Nevada economy and has used the funds of his brothels to donate to
local schools and hospitals. Plaintiff also seeks to call upon current legal prostitutes in Nevada
who come from all over the country and have different stories for why they have chosen to enter
prostitution and how legalized brothels could benefit Utah. Plaintiff also seeks to have a former
street worker testify about the dangers of the streets. This former street worker was a witness to
the brutal torture of a sex worker and testifies that that wouldn't have happened in a legal

16

brothel. Plaintiff also seeks to call upon law professors who have studied prostitution. Greer also

will call upon a Lyon County administrative member to testify how they keep people from being

trafficked into the brothels. The State of Utah, on the other hand, has no witnesses to counter

Greer's witnesses therefore they have no standing to file a Motion to Dismiss.

## OUTDATED LAWS

The brothel laws, particularly those found in 47-1-1 of the Utah Code, are outdated. The

Code itself says that the laws have had "No Change Since 1953". Morally, a lot has happened

since 1953. Racial segregation was found unconstitutional. *Brown v. Board of Education of

Topeka.* (1954). Interracial marriages became legal in 1967 with *Loving v. Virginia.* Using the

penumbras of the Constitution, abortion was legalized in 1973 with *Roe v. Wade.* That case

established that there was indeed a right to privacy. In 2003, in strongest support to Plaintiff's

case, *Lawrence v. Texas* (2003), the Court held that one had the liberty to choose how to conduct

their private sex life. While a fundamental right was not entirely argued, a rational basis test was

established with ambiguity allowing other cases to draw upon *Lawrence.* While the Court held

that their ruling did not apply to prostitution and gay marriage, 12 years later, gay marriage was

legalized in *Obergefell v. Hodges* (2015) with the Court relying heavily on *Lawrence.* These

three major cases (Roe, Obergefell & Lawrence) pave the way for Plaintiff, and also put the law

at the need for review, as the concept of privacy was not established when the laws were enacted.

## STATE ASSISTANT AGs BOTH KNOW GREER AND HIS STURGGLES

Plaintiff finds the State's lack of empathy towards his plight demeaning. Both Wolf and

Soderberg know Plaintiff Greer from when he interned in their division in the Summer of 2015

as part of his paralegal degree requirement. During his time interning at the Litigation Division,

he confided in Soderberg and told Soderberg the discrimination he faces in his day to day

17

activities and how finding a job in a law firm was difficult due to discrimination. He also told

Wolf about discrimination in an email. So, it is surprising that they would be so callous to his

plight and dismiss this case that involves not just physical harm, but also emotional harm and

damages. *Paying for Pleasure: Men Who Buy Sex.* Teela Sanders. (2012). (In-depth researcher

conducted, over a ten-year period, a review of the different men who pay sex workers and their

motivations for buying such services. The review is fair, balanced, and proves the thesis of the

book: that men pay for sex to fill the gap in their lives whether it be emotional or physical).

## GUIDING CASE LAW

Besides the guiding ambiguity of *Lawrence* (which will be touched upon in the rational

basis review analysis), there is both mandatory and persuasive Supreme Court case law that

gives Plaintiff standing to overcome the State's Motion to Dismiss. In *Agency For International*

*Development v. Alliance For Open Society International (2013)*, the United States Supreme

Court ruled that prohibiting NGOs (Nongovernmental Organizations) from receiving

Governmental aid for not avowing an Anti-prostitution stance was a violation of their 1st

amendment right to freedom of speech. *Agency* created a precedent for plaintiff's case. It allowed

for another option to be opened up aside from the Government's beliefs and laws. If a person can

freely choose to give money to condone and help those in prostitution (or take a neutral stance),

then why can't a person believe that regulated prostitution can help protect those wanting to be in

it and implement a U.S. based model that helps contain prostitution and that has demonstrated an

incredibly great safety record? Ignoring a problem does not make it go away nor does arresting

persons involved in it or imposing laws that try to deter those who want to pay or sell. Brothels

can help curb many of the ills facing prostitution whether the "morally upright" wish to

18

acknowledge such a fact. This is where the rational basis test would come in to see if Greer's plans for the *Mile High Neon* could be utilized.

The second case that guides Plaintiff's case was decided by the Canadian Supreme Court in 2013. In *Attorney General of Canada v. Bedford* (2013), the Canadian Supreme Court ruled that the country's laws against brothels were unconstitutional. While the ruling comes from a high court in another country, it is a persuasive ruling because their legal system is not too different than the American system. They are a Common-Law country like the United States which relies on case law as precedent. The Court argues that banning brothels violates the amendment in the Canadian Constitution that is similar to the United States' 14th amendment. *Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*; Jennifer Coates, *A Comparison of United States and Canadian Approaches to the Rights of Privacy and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989). The Court, in deciding the case, wrote: "The focus [of the case] is on security of the person, not liberty…It seems…that the real gravamen of the complaint is not that breaking the law engages the applicants' liberty, but rather that compliance with the laws infringes the applicants' security of the person." *Id at footnote rationale*.  The unanimous Court ruling made a point of saying: "Parliament has the power to regulate against nuisances, but not at the cost of the health, safety and lives of prostitutes." *Id.* This can be applied to the State legislature. The State can enforce and create laws, but they cannot do so when it robs the citizens of this State of security. This case is quite guiding because Courts often turn to see how similar countries have acted in similar matters when there is no guiding case law in the jurisdiction. Seeing that no case is like Plaintiff's in this jurisdiction, *Bedford* should be guiding authority for this Court to act upon.

19

Another guiding legal authority is the United Nations. Several sub-groups of the United Nations support the legalization of prostitution and the implementation of brothels such as the World Health Organization (WHO), the leading authority in the United Nations for health-related matters, which argues that legalizing brothels will help prevent HIV with mandatory condom use and policies that protect sex workers and their customers. *Consolidated Guidelines on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/). It should be noted that WHO was instrumental in the eradication of smallpox and handling the Ebola crisis so therefore their judgement should be given significant authority. The Supreme Court has turned to the United Nations in the past to help guide them in decisions (see *Lawrence at 574*). Another UN commission that supports legalization of brothels is UNAIDS which says: "Laws that criminalize and dehumanize populations at the highest risk of HIV--including men who have sex with men, sex workers, transgender people and injecting drug users--drive people underground, away from essential health services and heighten their risk of HIV." *U.N. Commission Calls for Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012). (See the commission's full report here: http://www.hivlawcommission.org/resources/report/FinalReport-Risks,Rights&Health-EN.pdf). Accordingly, while the State can argue that sex workers have high rates of AIDS, it really is the State's own fault for the epidemic and their flawed laws that do not work in preventing the disease or stopping the conduct, per the report. Criminalization does not work. *7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013). (http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11) (Skeptical news reporters visit a Nevada brothel and have their expectations broken from being against prostitution to supporting legalization). Each listed case and policy from established legal cases

20

should act as guidance for this case to overcome a Motion to Dismiss and be allowed a trial as it shows that Plaintiff has stated claims for which relief can be sought.

## TWO ANALYSIS APPROACH

As stated in Plaintiff's complaint, either analysis ("fundamental liberty" review or "rational basis" review) can be found to overturn the As Applied laws that Plaintiff is challenging.

### Fundamental Liberty Interest Analysis

The Supreme Court has outlined the framework for evaluating a claim to the existence of a fundamental right. This "established method of substantive-due-process analysis has two primary features." *Glucksberg,* 521 U.S. at 720. First, the asserted "fundamental right" (or "fundamental liberty") must be "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal citations and quotations omitted). Second, the analysis requires "a careful description' of the asserted fundamental liberty interest." (The 10th Circuit applies this *Glucksberg* framework by addressing the second prong first to narrow the inquiry: "a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty." *Seegmiller v. Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008); *cf. Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004) ("First, in analyzing a request for recognition of a new fundamental right, or extension of an existing one, we must begin with a careful description of the asserted right.") (internal quotation marks and citation omitted). As shown in Plaintiff's complaint, he has demonstrated that commercial sex that takes place in brothels is deeply rooted in this nation's history. It wasn't until the early 1900s that prostitution

21

became outlawed in part because it was "immoral" which goes against *Lawrence* and other cases that says immorality is not a basis to outlaw rights. This is presumed to be a reason for the State enacting the brothel bans. *Reliable Consultants v. Earle* (2008) ("Just as in *Lawrence*, the State here wants to use its laws to enforce a public moral code by restricting private intimate conduct...because the State is morally opposed to a certain type of consensual private intimate conduct. This is an insufficient justification for the statute after *Lawrence*." When a right isn't as obvious a right such as marriage or procreation, previous existing rights such as procreation are extended to see if a new right can be created. *Griswold v. Connecticut* (1965) (The Court in this case agreed that the right to marry could be extended to include the right to contraceptive use since apart of marriage is deciding whether to have children). This was again the case in *Roe v. Wade* (1973) when the Court determined that the right to privacy was a right under the penumbras of constitution.

To satisfy the second part of the test, a careful description of the asserted right must be shown. Plaintiff believes that the right to abortion and the right to marriage can be extended to commercial sex. The reason he believes that marriage and abortion can be extended to commercial sex is that a person can already make decisions with two intimate life choices. Both choices include sex. The Court must reasonably understand that Plaintiff, and people similarly situated as Plaintiff, cannot find partners to marry; to procreate with; to rear a family with; so that they must have a legal place to go to pay somebody to be their partner for an agreed upon time. While no Court – yet – has deemed the right to sex a fundamental right, the dissenting view in *Bowers* supports that determining intimate life choices should be a fundamental right: "This case is no more about "a fundamental right to engage in homosexual sodomy," as the Court purports to declare, *ante*, at 191, than <u>*Stanley* v. *Georgia,* 394 U. S. 557 (1969),</u> was about a

22

fundamental right to watch obscene movies, or *Katz* v. *United States,* 389 U. S. 347 (1967), was

about a fundamental right to place interstate bets from a telephone booth. Rather, this case is

about "the most comprehensive of rights and the right most valued by civilized men," namely,

"the right to be let alone." *Olmstead* v. *United States,* 277 U. S. 438, 478 (1928) (Brandeis, J.,

dissenting)." *Bowers v. Hardwick,* 478 US 186 (1986) (Dissent at 199). The dissent in *Bowers*

goes onto further write: "The Court has referred to such decisions as implicating `basic values,'

as being `fundamental,' and as being dignified by history and tradition. The character of the

Court's language in these cases brings to mind the origins of the American heritage of freedom."

*Id at 217.* The recent Supreme Court ruling in *Obergefell* supports the dissent in *Bowers* and

Plaintiff's argument that the right to privacy found in marriage and abortion can be extended to

brothels. "In addition, these liberties extend to certain personal choices central to individual

dignity and autonomy, including intimate choices that define personal identity and beliefs."

*Obergefell v. Hodeges* (2015). Being with sex workers is central to Plaintiff's well being. As

stated in his Complaint, Plaintiff went to a Nevada brothel and had a complete change in his

thoughts and feelings; he went from being sad to happy. He has invested so much in being with

sex workers because they have boosted his self-esteem. Not being allowed to have the freedom

to pay another adult for sex in a safe, legal place "would disparage [plaintiff's] choices and

diminish [his] personhood to deny [him] this right." *Id.* But Plaintiff believes that commercial

sex must be limited to brothels -- just as abortion was limited to meet state safety interests. *Roe*

*at 154* (ruled that the right to privacy was not "absolute", but still allowed abortion under the

right to privacy). As will be shown in the rational basis arguments, there is no compelling state

interest in keeping brothels banned namely because of the hypocrisy of other sexually oriented

businesses being operated; the state's interest in protecting against fraud, STDs and human

23

trafficking which brothels can prevent; the distance to where other brothels are; and the simple

fact that the state's law does not achieve its purpose. But Plaintiff believes that the bulk of his

argument is in the rational basis test and that his case hinges on that because that is more well-

defined than the fundamental interest test. He shows the first test to add support to his arguments.

### Rational Basis test

If the asserted right does not qualify as "fundamental" under the fundamental analysis,

"rational basis review" applies. For rational basis review, *Lawrence v. Texas* is the guiding

standard for such review. Plaintiff, the challenging party, realizes that he bears the burden to

negate "every conceivable basis" for why the State laws are unconstitutional. *FCC v. Beach*

*Communications Inc,* 508 US 307, 315 (1993). The standard for rational basis review is to find

whether challenged laws further a governmental purpose. The ambiguity of *Lawrence* guides

Plaintiff with the words of Justice Kennedy saying: "As the Constitution endures, persons in

every generation can invoke its principles in their own search for greater freedom." *Lawrence v.*

*Texas*, 539 US 579 (2003). While the Court in Lawrence does say that the ruling does not apply

to prostitution, the Court of Plaintiff's case must keep in mind that prostitution is vague and

therefore must be analyzed to see if rights can extend to brothels than to other forms of

prostitution, and also to keep in mind that *Lawrence* specifically stated that it did not apply to

gay marriage as well ("The present case does not involve minors. It does not involve persons

who might be injured or coerced or who are situated in relationships where consent might not

easily be refused. It does not involve public conduct or prostitution. *It does not involve whether*

*the government must give formal recognition to any relationship that homosexual persons seek*

*to enter."* [Emphasis added]. *Obergefell*, though, relies heavily on *Lawrence*, citing it 7 times.

24

Thus, the words of Justice Kennedy ring true that every generation can use the constitution to find liberty for themselves. The majority's strongest argument for Plaintiff is when they write that there is "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in *matters pertaining to sex." Id at 572.* (Read, *"Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes".* Belkys Garcia. New York School of Law. (2006) Study gives in-depth analysis of the *Lawrence* decision and argues that the ambiguity of *Lawrence* legalizes prostitution).

Further, Justice Scalia's dissent also paves the way for Plaintiff's case, as Scalia cautions that the majority's opinion causes a "a massive disruption of the current social order" and "calls into question [every other morality based law]". *Lawrence v. Texas*, 539 US 591 (2003). (See *The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004). The author argues that *Lawrence* "may very well have left all moral-based legislation vulnerable to constitutional attack." Scalia specifically argues that *Lawrence* calls into question prostitution laws because of the impossibility of differentiating between sodomy and other moral laws. *Id at 590.* Despite opposition from defendants, *Lawrence* failed to limit its holding to just homosexual sex and has thus given rights to many who have used the case law for their own from fornication and same-sex marriage to sex toys. *Applying Lawrence: Teenagers and Crime Against Nature,* 58 Duke L.J. 1825, 1835 (2009). The Fifth Circuit in *Reliable Consultants* held that *Lawrence* gives "precise instructions" that morality is an insufficient state interest to sustain laws affecting sexual privacy. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746-47 (5th Cir. 2008). Realizing that *Reliable Consultants* conflicts with the 11th Circuit's ruling on sex toys (*Williams v. Morgan* (11th Cir. 2007) which upheld bans on sex toys, the Fifth Circuit's application of *Lawrence* to a

25

sexual device statute should be superior to that of the Eleventh Circuit for three reasons,

according to *Satisfying Lawrence: The Fifth Circuit Strikes Ban on Sex Toy Sales.* Jamie Iguchi.

UC Davis School of Law. (2010). The three reasons are: (1) In *Williams,* the Eleventh Circuit

mistakenly interpreted *Lawrence* as a rational basis case, though, the lack of using the

*Glucksberg* analysis made it not a fundamental review. So, the analysis is unclear, something

Justice Scalia criticized. Conversely*, Reliable Consultants* correctly applied *Lawrence* as

establishing due process protection for the use of sex toys. (2) Principles from contraception

cases like *Roe* show that restricting sales of sexual devices unnecessarily and impermissibly

restricts their use because the majority in *Lawrence* cited the same rationale as contraceptive

cases. (3) Public health considerations support *Reliable Consultants. Id.* The Supreme Court

would uphold *Reliable Consultants* over *Williams* if the two were to reach the Supreme Court for

review. With this analysis, the State cannot use *Williams* to suppress Plaintiff's case. *State*

*Defendant's Motion to Dismiss, Page 10. Reliable Consultants* boosts Plaintiff's case, as it dealt

with commercial sex. See *Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D. Mass

2007) (Explained that a "sister court's", different jurisdiction, ruling can be followed when there

is a similar fact pattern). The fact pattern in *Reliable Consultants* is similar to Plaintiff's because

there is commercial activity taking place with the involvement of sex.

In regards to commercial sex, *Lawrence* did not distinguish commercial and non-

commercial; public or private. The *Lawrence Court* only referred to "particular practices" and

morality not being a basis for banning those ambiguous practices. *Lawrence at 577-578* which

has left them open for interpretation as shown with *Reliable Consultants.* See *Reason and the*

*Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government*

*Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139,

26

139 (1998) (arguing bare assertion of public morality cannot serve as legitimate governmental interest). Whether one has sex in a brothel or sex with a sex toy is of little difference because in the end, it's "commercial sex". It's all inclusive. *What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw) (Argues that the term "commercial sex worker" is broad because it can encompass not just prostitutes, but those who work in the sex entertainment business which can be those who sell sex toys or they can be escorts or strippers). *Lawrence* must be read "broadly" to find that it encompasses *commercial* sex, something *Lawrence* criticized the *Bowers* court for failing to do with sodomy before *Bowers* was turned over. *Lawrence at 566-567.* The notion that sexual interactions under 10 hours are not protected is absurd, as the State argues. That's what *Lawrence* was all about -- protecting one night stands. Not only were bans on homosexual sodomy rendered unconstitutional; heterosexual bans were rendered invalid as well, as were fornication laws. There is no difference between buying dinner for a partner with the expectation of sex than paying a consenting adult for sex. The State has failed to distinguish the difference between "Tinder hook ups" and "brothel hook ups". The State doesn't prosecute hook up apps yet brothels and prostitution is prosecuted. It is a hypocritical, absurd law. With that said, the objective is to find that the State does not have a compelling reason for keeping brothel laws such as was the holding in *Lawrence*: the state of Texas did not have a legitimate interest in keeping sodomy laws.

Plaintiff now presents his arguments for rational basis review for why the As Applied brothel laws of the Utah Code are unconstitutional: the hypocrisy of other sexually oriented businesses being operated; the state's interest in protecting against fraud, STDs and human

27

trafficking which brothels can prevent; the distance to where other brothels are; and the simple

fact that the state's law does not achieve its purpose.

## A. The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses

As Plaintiff stated in his Complaint, the State does not have a basis to ban brothels

because it is hypocritical since other commercial sex operations are in full, legal operation within

the State. Refer to cited link to *Kinkly* about Commercial Sex being a broad, inclusive term. In

2012, the County of Salt Lake conducted a study and found that sexually oriented businesses

have secondary effects that lead to prostitution. *An Ordinance Of The City Of South Salt Lake*

*City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning*

*Licensing Requirements And Regulations For Sexually Oriented Businesses.*

(2012.09.21_South_Salt_Lake_SOB-Ord-final-mr.pdf). ("Based on evidence of the adverse

secondary effects of adult uses presented in hearings and in reports made available to the City

Council, and on findings, interpretations, and narrowing constructions incorporated in the cases

[cites over 50 different cases associated with adult conduct], Sexually oriented businesses, as a

category of commercial uses, are associated with a wide variety of adverse secondary effects

including, but not limited to, personal and property crimes, prostitution, potential spread of

disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative

impacts on surrounding properties, urban blight, noise, traffic, litter, and sexual assault and

exploitation. Alcohol consumption impairs judgment and lowers inhibitions, thereby increasing

the risk of adverse secondary effects.... Each of the foregoing negative secondary effects

constitutes a harm which the City has a substantial government interest in preventing and/or

abating. This substantial government interest in preventing secondary effects, which is the City's

28

rationale for this chapter, exists independent of any comparative analysis between sexually

oriented and nonsexually oriented businesses. Additionally, the City's interest in regulating

sexually oriented businesses extends to preventing future secondary effects of either current or

future sexually oriented businesses that may locate in the City. The City finds that the cases and

documentation relied on in this chapter are reasonably believed to be relevant to said secondary

effects.") *Id.*

Surely, the State would outlaw sexually oriented businesses based upon the in-depth

research into finding harmful secondary effects. Courts, in the past, have upheld bans on sexually

oriented businesses due to fear of secondary effects. See: *Barnes v. Glen Theatre, Inc.*, 501 U.S.

560, 582 (1991) (Souter, J., concurring) (concurring with plurality to uphold Indiana's public

nudity statute, but on grounds of preventing secondary effects of adult entertainment

establishments); *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973) (upholding Georgia

obscenity statute). But the State upholds laws that allows sexually oriented businesses such as

strip clubs, sex toy stores, and escort services. These businesses can function, in the midst of

secondary effects, due to having licenses and following regulations. *City of South Salt Lake*

*Ordinance on Sexually Oriented Businesses 5.56.030.* Ironically, the Nevada brothels are able to

function the same way: having licenses and following regulations. Therefore, with the previously

established fact that Nevada brothels run on regulations and the current fact that Utah's sexually

oriented businesses have secondary effects, but are still able to operate, Plaintiff finds this to be

hypocritical and it gives the State zero standing to withhold a business license to Plaintiff based

on the fact that a secondary effect of strip clubs is prostitution, according to the City's findings.

It would be safe and business-wise to either ban all sexually oriented businesses or allow a place

for where prostitution can legally occur. See Complaint and *Exhibit A* where State Defendant

29

Berg withdrew Greer's business registration after it was approved. The State argued in their

Motion to Dismiss that brothels lead to violence against women and trafficking. See page 12.

Those are the secondary effects of *illegal* prostitution, as the State failed to cite those findings in

legal brothels which is another dishonest statistic the State cited in their link on Page 12:

(https://2001-2009.state.gov/r/pa/ei/rls/38790.htm). The link they use for their trafficking statistic

deals with illegal prostitution and nowhere mentions trafficking inside legal brothels. In fact,

their link specifically states that criminals "do not register with the government" which doesn't

prove how legalization doesn't work. If anything, it bolsters Plaintiff's argument that people

wanting to follow the law, like Dennis Hof, register with the government and that criminals will

continue to not follow the law. Again, the State fails to cite how the legalized systems of

Nevada; parts of Mexico; parts of South America; the Netherlands; Greece; Australia; Thailand;

New Zealand do not work. *100 Countries and Their Prostitution Policies.* ProCon.org.

(http://prostitution.procon.org/view.resource.php?resourceID=000772). Out of 100 countries

with laws towards prostitution, including the U.S., over 50% of them have some legalized form

of prostitution. *Id.* The State has not gone through and discredited the systems; they have not

gone through and discredited Plaintiff's witness Dennis Hof, a licensed brothel owner. In a

Nevada study, there was zero prostitution arrests in the Nevada counties where prostitution is

legal. *Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State

University (2010). Instead, the State has tried to mislead the Court of this case by bunching

together flawed statistics. This would be intolerable if somebody cited bad law or skewed facts in

any other situation. The Court would not allow that. The Court should not allow the State's

misleading findings. The only way to know which statistics are true is for both sides to present

expert witnesses at trial. Therefore, based on the fact that other sexually oriented businesses are

30

able to operate with licenses, there is no reason Plaintiff can't obtain a license for a brothel and

prevent the secondary effects that illegal prostitution has (trafficking, violence, etc) which

Nevada and other legal systems easily prevent. Either the State needs to be serious with

themselves and outlaw all sexually oriented businesses to prevent secondary effects or they need

to allow legalization to prevent some of the secondary effects.

Also, the State can't honestly argue that prostitution "commodifies" (See *Motion to*

*Dismiss, Page* 14) women and not acknowledge that other sexually oriented businesses do the

same thing: "exploit" women. *Strip Club Testimony*. Kelly Holsopple. The Freedom and Justice

Center for Prostitution Resources. (2016).

(http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf). (Study finds that

strip clubs to be hostile work environments where women are harassed and objectified). Talking

to local licensed escorts and strippers, Plaintiff has learned that they have suffered harassment

and violence at the hands of customers, but the State keeps these establishments legal because

they tolerate it. *Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish*

*Games.* Fox 13 News. (2016).  (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-

assaulted-escort-who-refused-to-engage-in-fetish-games/). Plaintiff believes brothels are more

safe because the prostitutes in brothels can be selective of clientele whereas strippers in strip

clubs must be naked in front of "all eyes" to make their incomes. To Plaintiff, that is pure

commodification. *Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You*

*Pick from Menus and Can Stay for Up to Four Days.* Mirror. (2016).

(http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466). (Investigative

look into the Bunny Ranch brothel and finds that the women are treated fairly and work for

themselves). The State has yet to explain why they can allow these businesses and not allow

31

Plaintiff's brothel. Simply "not wanting to" is not a logical argument. In fact, on page 8 in their

Motion, they talk about other businesses, but fail to explain why when those same businesses

have shown to have harmful secondary effects.

### B. Moral Legislation is Not a Basis for Outlawing Brothels

Plaintiff has earlier presented guiding and binding case law that moral legislation is not a

basis for enacting laws. See: *Lawrence v. Texas* (2003); *Reliable Consultants Inc. v. Earle*

(2008); Plaintiff establishes that the brothel laws were enacted based on moral legislation

because of a previous 10th Circuit Court ruling regarding brothels: "People engaged in…keeping

houses of prostitution, we have found as a result of observation in this world and association

with people, are not of that character that can be relied on to that extent that people of high

character and good reputation may be relied upon." *Sandquist v. United States,* 115 F.2d 510

(10th Circuit Court 1940). This ruling slanders Plaintiff, as Plaintiff is a returned missionary for

the LDS church ("RM") where he baptized at least 30 people in Arizona; he is an Eagle Scout;

he has his paralegal degree; he interned with the Attorney General's Office and at the Matheson

Courthouse helping domestic violence victims. Plaintiff does not smoke or drink. If anything, his

moral character is manifested with him trying to legally pursue establishing a brothel. He has not

hid his name or his face. *The Price of Intimacy.* Stephen P. Dark. Salt Lake City Weekly. (2016).

(http://www.cityweekly.net/utah/the-price-of-intimacy/Content?oid=3566816) (First published

article to talk about Plaintiff's lawsuit). He has faced scoffing and threats for challenging these

laws. Many legal prostitutes that Plaintiff knows and many illegal prostitutes are normal people

trying to get from Point A to Point B in their lives and need quick money – no different than the

32

girls who strip or escort. In return for his efforts, the Court should allow Plaintiff to argue his case at trial and let his witnesses testify.

## C. The State Has Promised to Protect Against Fraud, STDs and Violence

The State, as mentioned in Plaintiff's Complaint, has already promised to protect its citizens from fraud, STDs, and violence, as seen on the Attorney General's website. *Priorities, Attorney General of Utah* (Priorities listed on AG's website include "protecting citizens from violent crime….and consumers from fraud"). (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health).* If not protected by the equal protection clause of the 14th amendment, there is no rational basis to deny protection – in the form of regulation – to brothels, as similar protection is granted to other adult establishments. *Bedford* is the strongest argument for this. The legislature has the power to prevent nuisances, but not at the safety and welfare of those who engage in prostitution. Groups within the United Nations agree with the court in *Bedford.* With the regulation implemented by Nevada and elsewhere, the citizens of this State will have the chance of being protected. And with proper regulation and zoning, no nuisances will be created, as seen with Nevada. The people who engage in prostitution can be our family members; our friends; our neighbors; our co-workers; and while it can be sad when people do things that we disagree with, it is harder when they are hurt because they had no safety for engaging in their conduct. Prostitution is referred to as "the world's oldest profession" for a reason. It won't ever end, but it can be regulated, as Plaintiff has shown in this Opposition Motion. Plaintiff has already showed the Court his business plan and policies which would empower women and help those

33

who wouldn't flourish in brothels. The closest brothel is four hours away. It causes an

undue burden to travel there. Along with the travel, the prices are too expensive; the

brothels are filled with cigarette smoke; not a variety of selection; etc. The citizens of

Utah deserve to have the chance of protection that the State is already offering. And

whether that protection is determined under equal protection or rational basis review does

not matter.

## D.  The State Laws Do Not Achieve Their End Purpose

The question the State Defendants pose to the Court is whether "the legislature could

rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937

F.2d at 1512. *Defendants' Motion to Dismiss, Page 14.* As shown in Plaintiff's previous

arguments, the statutes do not achieve their purpose (to stop prostitution). The sexual oriented

businesses of the State create the demand for prostitution which contradicts the purpose of the

statute. *Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University

Press. (2012). (Peer-reviewed, well-written research study shows that pornography and stripping

fuels the demand for prostitution and is thus hypocritical, as Plaintiff is arguing). Plaintiff likens

this situation to a free-flowing faucet (sexually oriented businesses that relate to non-prostitution)

that flows to a weak wall (anti-brothel laws) which the wall is meant to be a dam to the water.

But eventually, the wall breaks because it's so weak; the dam is breached; its purpose is broken.

The same with these laws. These laws were meant to prevent prostitution and hold in any

prostitution that happened. But sexually oriented businesses have now merged to interloop and

interconnect all of it together, making it indistinguishable. The State now has three options: (1)

contradict its findings and show that strip clubs and other licensed establishments aren't linked;

34

(2) do the *Iceland Approach* and outlaw all adult entertainment; or (3) the State can work with Greer to legalize, regulate and save lives. *Exhibit D* shows laws that Greer has drafted to pitch to the legislature once the laws are found unconstitutional and to immediately start working with the State. Also, *Exhibit E* shows the fiscal note for how much the legalization would cost. The State is gambling with the lives of its citizens; with the nearly 100 people who post to the Escort section of Backpage daily and engage in prostitution activities even though they pose under the guise of being legal. The laws of this State fail to stop the free flow of people engaging in it or the unknown numbers of STDs associated with it. Because of the illegality of it, the numbers and the people and the harm are all unaccounted for. Who is to say at this very moment as Plaintiff writes this rebuttal that an escort in Salt Lake is not being victimized; being raped; being coerced; whose screams and wails are not being heard; though she found herself in this situation because Salt Lake legally allows escorts, but the escorts take advantage of that legality and do illegal things. We have already seen this happen in this state last year. How many more of our women must be strangled? Plaintiff affirms under penalty of perjury that many women have told him about being raped and robbed and beaten within this state; within this city while escorting. Any blood or bruises that she (or a male escort) receives are on the hands of the State for their willful stubbornness; their haughty morality; their blindness to the problems that they create. This would not happen with a brothel that was licensed and that worked with the sheriff's office. Plaintiff has the business plan and model to help free-thinking, free adults who wish to engage in this and to help those who don't qualify as a sex worker. Plaintiff begs the Court to allow him to proceed to a trial.

Criminalization does not work, as has been established time and time again. *Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law.

35

(2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp). (Peer-

reviewed study shows that the best approach to combating the ill effects of prostitution is to have

strict regulations: allowing brothels, but criminalizing everything unlicensed). As *Roe* argued,

the right to privacy is not "absolute" and therefore rights should be given, but regulated. The

rational basis is the best route to do this, as every objection the State has given has been defeated

and the State's statutes have not achieved their goal because people are still engaging in sex

work.

### CONCLUSION

As has been established, the State cites flawed arguments and did not adequately explain

why every sexually oriented business except brothels can be allowed in the State of Utah – those

businesses are plagued with secondary effects, too. They can't explain why the secondary effects

of strip clubs are OK to have, but potential effects of brothels aren't. They ignore that trafficking

and violence can occur in strip clubs and escorting, both legal in Utah, as well. Plaintiff has

rebuffed their citations and studies with a vast amount of his own. The important thing about

Plaintiff's citations is that they are neutral studies. They aren't a part of an agenda like feminism

(the State relies heavily on feministic studies) which is hell-bent on destroying prostitution. The

studies that Plaintiff cites are peer-reviewed and fair. Plaintiff has also listed the expert witnesses

he seeks to call to trial to testify how the laws do not work. The State has failed to explain why

legalization does not work and has instead given vague, blanketed, robotic, sterile case law and

broad statistics which they no doubt found by typing in keywords on Google and WestLaw

without thinking about what they were writing because when their citations and paragraphs are

analyzed, they are incoherent and do not flow. They cite prostitution cases, but fail to cite brothel

36

laws. The state statutes clearly distinguish the two therefore making an As Applied challenge possible.

More disturbingly, the State has only given conjecture. They have not stepped a foot in a brothel; they have not talked to people who have worked in legal brothels. But Plaintiff has. Plaintiff has a plan to help people. The State does not help the people they arrest. In fact, they only destroy lives with their laws. Running a brothel where consenting adults interact produces no victims, and the activity therein is regulated. The notion that sexual interactions under 10 hours long are not protected is absurd. That's what *Lawrence* was all about – protecting one night stands. Not only were bans on homosexual sodomy rendered unconstitutional; heterosexual bans were rendered invalid as well, as were fornication laws. There is no difference between buying dinner for a partner with the expectation of sex than paying a consenting adult for sex. The State has failed to distinguish the difference between "Tinder hook ups" and "brothel hook ups". The State doesn't prosecute hook up apps yet brothels and prostitution is prosecuted. It is a hypocritical, absurd law.

Plaintiff is in close contact with Dennis Hof, who owns seven brothels and must follow the law to a "T" to keep his licenses. Plaintiff has cited mandatory and persuasive case law – many from sister courts – and has cited well regarded health groups that support Plaintiff's cause. As a point to ponder, prostitution has been seen to occur in the animal kingdom (apes trading bananas for sex; penguins giving pebbles for intercourse; etc) therefore making the want for sex in consideration of something of value a natural thing. *Pick Up a Penguin.* BBC News. (http://news.bbc.co.uk/2/hi/asia-pacific/60302.stm). (1998). Lawrence truly sets up the legalization of brothels, as Justice Kennedy allowed for his ruling to be given to generations to come, as was seen in Obergefell. Keep in mind, though, that privacy is not absolute and must be

37

regulated. But the point is clear: the State laws fail to prevent the conduct. As Bedford says, the

legislature has the right to keep out nuisances, but not at the life and safety of those who engage

in prostitution. The State does not even attempt to argue why Canada, whose legal system is

similar to ours, can overturn their laws, but Utah can't. Greer has clearly shown, though, why the

laws do not work.

Greer asks for the Court to WITHOLD issuing a ruling and accept that Plaintiff has stated

a claim (several claims stated, in fact) of the State lacking a rational basis, or that it may lack a

rational basis, and allow the case to proceed to trial so that Plaintiff may show with expert

witnesses how the laws do not work. Simple citations on paper do not achieve that effectiveness.

This is the Plaintiff's Opposition and plea.

Russell Greer
Pro Se Litigant
/rgreer/
01/05/17

38

## EXHIBIT A

Brothel Business Registration that Berg and the Utah Business Licensing Approved before being revoked. Because it was approved initially, Greer began working on a sexually oriented license to register at the city.



**SALT LAKE CITY CORPORATION**
451 South State Street, Room 225
Salt Lake City, Utah 84111
(801) 535-6644

License # _____

### SEXUALLY ORIENTED BUSINESS - LICENSE APPLICATION

**Ownership Type** (Check one):

| Corporation | Limited Partnership | Partnership | Sole Proprietorship (Individual) |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☒ |

**Type of Business** (Check one):

| Adult Bookstore / Video Store | Adult Motion Picture Theater | Adult Theater | Nude Dancing Agency | Outcall Agency | Other - Licensed Brothel |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | | ☒ |

Person signing this application on behalf of applicant business:
  Full and correct legal name:   Russell Godfrey Greer
  Residence address: 851 Edison St Apt A          Salt Lake City   UT      84111

39

**EXHIBIT B**

Blueprint for the Mile High Neon with clear description of rooms and facilities.



40

**EXHIBIT C**

Pictures of Plaintiff Tricia Christie and Greer. Also, a picture of a manifestation of Greer's inability to get dates. Tinder shows that Greer was passed up 285 times.



41

It is Plaintiff's hope that once the laws are found unconstitutional, that Governor Herbert would hold a special legislative session and that the following proposed laws will be incorporated into the Utah Code to protect adults.

## EXHIBIT D

PROPOSED AMENDED LAWS TO THE UTAH CODE

**76-10-1301 – Definitions**

**Licensed House of Prostitution – A legal establishment that has been licensed by the State and allowed to function.**

**Licensed Sex Worker – A sex worker can be male or female and is licensed to work in a licensed house of prostitution.**

**76-10-1308 – Prosecution – Prosecution for unlicensed prostitution would be felonies**

1. **A. Any prostitution that occurs outside of a licensed house of prostitution is a third degree felony and a sex offense with both parties, prostitute and john, being registered on the sex offender registry.**
   **B. Anyone that places an ad online, through print, or any other means, offering prostitution services outside of an unlicensed house of prostitution, shall be guilty of a third degree felony.**
   **C. Anyone that places an ad offering escort, massage, or dancing services, with the intent to engage in prostitution, shall be guilty of a third degree felony.**
   **D. Anyone that shall have a profile linked to websites known for harboring and running illegal prostitution shall be guilty of a third degree felony.**

2. **A. Anyone that shall attempt to run, operate, own or lease an unlicensed house of prostitution is guilty of a third degree felony.**
   **B. Anyone that attempts to or patronizes or solicits or works inside of an unlicensed house of prostitution is guilty of a third degree felony and shall be put on the sex offender registry.**

**76-10-1311 – Penalties on Licensed House of Prostitution Owners/Workers**

1. **A. Any licensed house of prostitution owner who breaks the conditions of his or her license (see section on granting licenses) shall be guilty of a third degree felony.**
   **B. Any licensed house of prostitution owner who traffics another against his or her will into a licensed house of prostitution shall be guilty of a second degree felony.**
   **C. Any licensed house of prostitution owner who knowingly employs a minor shall be guilty of a second degree felony.**

42

**D. Any licensed house of prostitution owner who knowingly employs a licensed sex worker who has a Sexually Transmitted Disease shall be guilty of a third degree felony.**

2. **A. Any licensed sex worker who breaks the conditions of his or her employment license shall be guilty of a third degree felony.**
   **B. Any licensed sex worker who helps traffick another against his or her will into a licensed house of prostitution shall be guilty of a third degree felony.**
   **C. Any licensed sex worker who helps or encourages a minor to work in a licensed house of prostitution shall be guilty of a third degree felony.**
   **D. Any licensed sex worker who knowingly has a sexually transmitted disease and continues to work as a sex worker shall be guilty of a third degree felony.**

**76-10-1312 – Assault on a Sex Worker**

1. **Given the vulnerable positon that sex workers are in, anyone that shall assault or batter a sex worker shall be guilty of a third degree felony.**
2. **It does not matter how the sex worker was assaulted or what state of mind the assaulter was in, the assaulter shall be guilty of a third degree felony. There will be a zero tolerance policy for violence on sex workers.**

**Added Section to the Utah Code Concerning Legalizing and Regulating Brothels. A brief summary is given for each proposed section (See Utah Code 76-7-3 concerning the regulation of abortion clinics for similar guidance; See also Lyon County Brothel Ordinance on how they regulate and zone brothels):**

1. **Granting the powers for a commission to be created to scope a location in Salt Lake County for brothels to be created. The commission shall also be made to work with Greer in the planning process. Two brothels shall be allowed in the county. On opposite sides of the county to provide easy access for interested parties.**
2. **State law shall make prostitution a state matter and shall determine how many counties besides Salt Lake County can have a brothel.**
3. **State law shall set out regulations and the background checks for those who wish to work in brothels and those who wish to own and run a brothel. Regulations will include:**
   a. **An organized and detailed list of keeping track of prostitutes and owners such as finger printing; file keeping of information concerning owners and workers; recent photos of workers and owners; background information; financial and medical disclosures.**
   b. **A plan on how to STD test the workers weekly and give them shots.**
   c. **A plan on how to treat workers that do obtain a STDs.**

4. **Have a watch dog/open door policy to allow those who have evidence of criminal wrong doing taking place to come forward and report it.**
5. **State law to require mandatory condom use in all sex acts.**

43

**EXHIBIT E**

44

**Dynamic Fiscal Note shows the benefits the State earns by enacting this bill.**

**SHORT BILL TITLE:** Utah Brothel Legalization
**Bill Sponsor:** R. Greer
Note: Estimates subject to change during actual fiscal noting process.



Note: In 2016, there was an estimated prostitution arrest rate of 400 arrestees.*
The State/Local Communities spent about 1,000,000 dollars on fighting prostitution. **
The State legislature spent very little itself doing anything new than doing the same old.
They didn't see any benefits from enforcing these laws.

In 2017, if the laws were found unconstitutional and Gov. Herbert was thus forced to hold
a special legislative session to legalize brothels, the State would spend anywhere from
spending 500,000.00 to 1,000,000.00 dollars enacting the Brothel Bill sponsored by Greer.
Immediate effects would not be seen until the next fiscal year.

In 2018, the arrests of prostitution would drop three-fourths because everybody would see
how beneficial legal brothels are. Thus, the time and money fighting it would drop as well.
And the tax revenue from the brothel(s) would be about 4 million dollars that would go
back into the state's pocket***.

In the following fiscal years, the harmful effects would decrease and the benefits would
only increase because people would see the benefits. Thus, the Mile High Neon is truly that:
a mile high light that would serve as a light unto the world.

*Prostitution statistics from years ago coupled with recent news reports of arrests in Utah. *US and State Prostitution Arrests, 2001-2010.* ProCon.org. (http://prostitution.procon.org/view.resource.php?resourceID=000120).

**The Costs of Keeping Prostitution Illegal.* Moneycation: Money Management and Information News. (2014). (http://www.moneycation.com/2014/03/the-cost-of-keeping-prostitution-illegal.html).

***Simple math. If brothels become legal, let's suppose that one brothel makes up to $160,000.00 in one day (10 sex workers would make up that much) and it makes up to this for one year (365 days in a year). Multiply $160,000.00 by 365 and you get: $58,400,000.00. Ten percent of that tax is going back to the State. The legalization benefits are tremendous. But money isn't the essence of the argument: saving lives and protecting people is. The money only comes along with that protection.

46

## CERTIFICATE OF SERVICE:

I certify that on January 8, 2017, a true and correct copy of PLAINTIFF'S OPPOSITION
MOTION AND MEMORANDUM IN SUPPORT was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg,
Herbert & Reyes.
Gmsoderberg@utah.gov

Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
Nsarin@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com

47

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov
E-mail: gmsoderberg@utah.gov

*Counsel for State Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| RUSSELL G. GREER, et al., | **REPLY MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | **AND REQUEST FOR HEARING** |
| GARY R. HERBERT, et al., | |
| Defendants. | Case No. 2:16-cv-01067-DBP |
| | Magistrate Judge Dustin B. Pead |

Governor Herbert, Attorney General Reyes, and Kathy Berg (the "State Defendants"),

through counsel and pursuant to District of Utah Local Rule 7-1(b), submit this Reply

Memorandum in Support of Motion to Dismiss. Plaintiffs' Complaint should be dismissed with

prejudice because the Utah laws in question that prohibit prostitution and brothels do not violate

Plaintiffs' constitutional rights. Contrary to Plaintiffs' arguments, the State Defendants are not

required to justify the laws in question by "explain[ing] why legalization does not work . . . " or

"show[ing] any flaws with Nevada's system . . . ." Plts.' Opp. Mem. p. 15 doc. 25. Rather, "a law

will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Whether prohibition or legalization is a better policy in regard to prostitution or brothels is not the question the Court must answer. Instead, the Court must determine whether Plaintiffs have "overcome the presumption of rationality," *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007), by negating "every conceivable basis which might support it . . . ", *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citation omitted). Plaintiffs have argued that legalization is a better policy, but that is not the question before the Court. Plaintiffs have failed to negate the rational bases presented by the State Defendants in their Motion to Dismiss, and other conceivable bases that support prohibiting brothels and prostitution. Accordingly, Plaintiffs' arguments regarding the rational basis of the statutes at issue fail as a matter of law.

Additionally, Plaintiffs have failed to respond at all to the State Defendants' arguments that the relationship between prostitute and client is not protected by the Due Process Clause, that there is no discriminatory purpose toward disabled persons in the statutes at issue, that there is no due process right to earn a living as a prostitute, that there is no associational right between prostitute and client, or that Plaintiffs' claims under the Utah Constitution fail. State Defs.' Mot. to Dismiss pp. 2–5, 8–12 doc. 17. For the reasons stated in the Stated Defendants' Motion to Dismiss and Supporting Memorandum, doc. 17, and because Plaintiffs have failed to negate the rational bases supporting Utah's prohibitions on prostitution and brothels, Plaintiffs' claims should be dismissed with prejudice.

DATED:  January 23, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

Russell Greer
689 Vine Street
Murray, Utah 84103
801-616-1067
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 JAN 27 ⊃ 12: 32

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER** and **TRICIA CHRISTIE,**<br><br>Plaintiffs<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>Defendants | **PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' REPLY MEMORANDUM**<br><br>**AND REQUEST FOR HEARING**<br><br>Case No.: 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to *Utah Rules of Civil Procedure 7(b)(1)*, Plaintiff Greer files this Response to

Defendant's Reply Memorandum. In regards to all of the defendants' motions: "Threadbare

1

recitals...supported by mere conclusionary statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 173 L. Ed. 2d 868 (2009). In every motion the State defendants have filed, they have

only cited skewed research – most of it unrelated to the Utah laws. They have not stated clearly

how the Utah laws, themselves, deter prostitution or achieve their designed purposes. In fact,

their laws work exactly the opposite of how they were designed. The State's arguments are not

grounded in reality. In fact, hundreds of prostitutes post to Utah websites daily (p411.com,

theeroticreview.com, eccie.com, backpage.com, craigslist.org) and engage in sex for hire.

Therefore, the laws do not reach their purpose to stop prostitution or control it. Furthermore, the

laws do not protect those who choose to engage in prostitution, as several prostitutes have told

Greer about being gang raped in Utah; being beaten; robbed; intimidated into sex; being stabbed

and other horrible atrocities that illegality brings.

As stated in earlier complaints and motions, the State has a duty to protect its citizens –

via the fourteenth amendment – and legalizing an act between two consenting adults in a safe,

regulated place can be achieved to meet the state interest in protecting its citizens. This was the

rationale in *Bedford* with the Canadian Supreme Court arguing that the anti-brothel laws denied

prostitutes, and their customers, the right to protection. *Attorney General of Canada v. Bedford*

(2013). That is what is in enshrined in the Due Process Clause of the 14th amendment: giving

somebody the right to choose how to conduct their private life. And while that right has been

ruled to be restricted to certain places, the right has still been given and has encompassed

everything from sex to marriage to contraceptives. Plaintiff, as stated in his opposition motion,

only hammers on the equal protection clause and the rational basis test because they are his

strongest arguments. He isn't required to rebut everything the State disagrees with.

2

Contrary to what the State believes with their citation of *Romer*, the State cannot "demean or control the destinies" of certain groups. *Lawrence at 577* (Lawrence trumps Romer, as it is a later case). This was upheld again in *Obergefell* with the Court railing against laws that "diminish the personhood" of groups seeking liberty and intimacy. "It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." *Casey at 847*. The Utah brothel laws are so broad, though written to criminalize everybody, that they criminalize the disabled; criminalize those who have never known love or affection; and they criminalize providers who want to give passion to these people for money. And even if paying somebody isn't "true love", it is sometimes the only thing some people will ever know. *Lawrence* essentially legalized lust. And *The City of Erie v. Pap's A.M.* (2000) upheld that adult entertainment was protected by the constitution. Those both pave the way for brothels. While there is a stigma that surrounds prostitution, that the Honorable Judge Pead may have seen in his previous professions, the Court's duty is to "define the liberty of all, not to mandate [his or the State's] own moral code." Casey *at 850*. If Plaintiff was seeking to strike down all of the laws surrounding prostitution, then maybe his claims would fail under morality and all of the objections the State has listed. But Plaintiff only seeks to legalize brothels which fits into the State's agenda of protecting its citizens and which the rational basis test even fails to outlaw brothels because of their aim to help protect consenting adults and to protect the city and State from disease.

Based on these points, Plaintiff asks the court to allow the case to continue through its scheduling order to allow expert reports and witnesses to back up what Greer is saying. Citations on paper do not fairly determine a summary judgement or a motion to dismiss.    /rgreer/

Russell Greer
1/26/17

3

## CERTIFICATE OF SERVICE:

I certify that on January 26, 2017, a true and correct copy of PLAINTIFF'S OPPOSITION RESPONSE was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
Gmsoderberg@utah.gov

Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
Nsarin@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com

4

Sim Gill (USB# 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Neil S. Sarin (USB # 9248) nsarin@slco.org
Jennifer Bailey (USB # 14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Russell G. Greer, et al. | SALT LAKE COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
|            Plaintiffs, | |
| v. | |
| Gary R. Herbert, et al. | |
|        Defendants. | Case No. 2:16-cv-01067 |
| | Magistrate Judge:  Dustin B. Pead |

Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga (collectively "County

Defendants"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, hereby submit this Reply in Support of Salt Lake County

Defendants' Motion to Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief

("County Defendants' Reply").  On December 27, 2016, County Defendants filed their Motion to

Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief ("County Defendants'

Motion to Dismiss") (Docket No. 18).  On January 27, 2017, Plaintiff filed Plaintiff's Response

and Memorandum in Opposition to Defendants' Reply Memorandum and Request for Hearing ("Plaintiffs' Response") (Docket No. 29).

County Defendants raised the following legal arguments in their Motion to Dismiss:

I.     Plaintiffs fail to state a factual basis for claims asserted against the County Defendants.  *See* Docket No. 18 at 4.

II.    Plaintiffs fail to state a claim under 42 U.S.C. 1983.  *See Id*. at 4-6.

III.   Plaintiffs fail to state a claim under Article 1, Section 7 of the Utah Constitution. *See Id*. at 6-7.

IV.    Plaintiff Tricia Christie has not complied with FRCP 11(a) and Christie should be stricken as Plaintiff.  *See Id*. at 7.

As far as County Defendants can ascertain from their review of Plaintiffs' Response, Plaintiffs' have failed to address or challenge any of the County Defendants' dispositive legal arguments.  Because Section I and II of the arguments raised in County Defendants' Motion to Dismiss entitles County Defendants to dismissal with prejudice *(See Id*. at 4-6) and Plaintiffs fail to rebut (or even address) those arguments in Plaintiffs' Response, the Court should enter an order dismissing Plaintiffs' claims against the County Defendants.  Should the Court decline to dismiss Plaintiffs' Complaint based on Section I or II, Section III of the argument raised in the County Defendants' Motion to Dismiss entitles County Defendants to dismissal with prejudice of the Plaintiffs' Claim 5 of the Plaintiffs' Complaint (*See Id*. at 6-7).  If the Court declines to dismiss Plaintiffs' Complaint based on Section I or II, Section IV of the argument raised in County Defendants' Motion to Dismiss entitled County Defendants to dismissal with prejudice of Tricia Christie as a plaintiff.  (*See Id.* at 7).

2

## **CONCLUSION**

Based on the foregoing reasons, County Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and enter an order dismissing with prejudice all claims and causes of action asserted by Plaintiffs against them and awarding County Defendants any and other relief to which they may appear entitled.

Respectfully submitted this 17th day of February 2016.

SIM GILL
Salt Lake County District Attorney


/s/ NEIL R. SARIN
NEIL R. SARIN
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

3

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of February, 2017 a true and correct copy of the foregoing Salt

Lake County Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint for

Declaratory and Injunctive Relief was electronically filed with the Clerk of Court using the

CM/ECF system and mailed to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
*Attorney for Defendants Jackie Biskupski and James Allred*

Was sent by e-mail and first class mail, postage prepaid to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
russmark@gmail.com
*Pro Se*

                                        /s/ Iris Pittman
                                        Paralegal

4

Russell Greer
1450 South West Temple
Apt D206
Salt Lake City, Utah 84115
949-397-7312
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 MAY -5 P 12: 22

DISTRICT OF UTAH

PUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER**.<br><br>    Plaintiff,<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>    Defendants | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S STANDING AND THE RIPENESS OF THE CLAIMS**<br><br>Case No.: 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to *Utah Rules of Civil Procedure 7 b(1)*, Plaintiff Russell Greer respectfully

submits this Brief in response to the Court's order on 04/21/2017, directing parties to file briefs.

1

## I.     INTRODUCTION

Utah's brothel laws which outlaw brothels are causing chaos and harm to Plaintiff,

Plaintiff's commercial sex partners and people similarly situated to Plaintiff and his commercial

sex partners. The laws cause Plaintiff and his partners to meet up in secret without telling their

loved ones or friends what they are doing, leading them into situations of gang rape, threats of

violence and instances of actual violence, robbery and fraudulent inducement. When the situation

isn't an "ambush", both partners are panicky and sometimes don't practice proper safe sex

because of the very real imminent fear of a police raid. To avoid prosecution, Plaintiff, his

partners and those similarly situated, have travelled undue distances and have made economic

and financial difficulties to travel to a different State to have legal protection, only to suffer harm

from cigarette smoke and the occasional person who misuses legality. Plaintiff has found himself

in these situations in which he will expound upon further in this Brief which gives him standing.

Furthermore, Plaintiff tried going the legislative route to fix these wrongs and applied for a

brothel license, in which he was briefly given approval for a brothel, only to have Defendant

Berg revoke his license. The harm Plaintiff has suffered has been "particularized" and

"concrete". *Lujan v. Defenders of Wildlife* (1992).

While the Court has noted in the Ruling and Order of 04/21/2017 that Greer, a Pro Se

litigant, can't represent other Pro Se litigants, it is settled law that organizations and corporations

can represent the harms of its members or those that are associated with the organization, or in

this case: those that would have been and want to be associated with the Mile High Neon brothel,

if it had been allowed to keep its business registration and license. *Central Telecommunications

v. TCI Cablevision* (8th Cir. 1986) (including District Courts in this 10th Circuit) held that

"unestablished businesses" can bring suit based on the degree of "affirmative action" the plaintiff

2

148

had for his business he tried starting. *Id* at 729. With that established, *Warth v. Seldin* (1975) laid out what gives an association standing:

"Whether an association has standing to invoke the court's remedial powers on behalf of its members, depends…on the relief sought. If [an] association seeks a declaration….it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." *Id.* This is elaborated on in *Hunt v. Washington State Apple Advertising Commission* (1977), with the Supreme Court saying:

"An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

With that said, even though Tricia Christie may be stricken from the Challenge, the business that Greer was briefly granted State legal recognition, can represent her claims and the claims of those similarly situated to Greer and Christie, per federal rulings, as Greer mentions several times the unequal protection of not allowing a business license in his Complaint and Motion, the people he wishes to protect and he talks in his Complaint and Motion about the good his brothel would do. Since he has actually met real people who want to work in the brothel, but are afraid to join the case due to stigma and prosecution, their claims are not hypothetical, but are imminent which imminent threat allows standing. *Summers v. Earth Island Institute* (2009) ("injury-in-fact" can either be particularized and concrete or it can be actual and imminent). Therefore, the business has standing under Article III of the Constitution, along with a host of

3

supporting federal legal precedent, as does Greer himself. Lastly, this case has ripeness to allow

to be heard.

## II.   ARGUMENT

### A. PLAINTIFF GREER HAS STANDING BASED ON MULTIPLE CLAIMS

#### Claim 1: Plaintiff has Standing in Being Denied a License:

Greer's most obvious and damaging "injury-in-fact" was being granted a business

license, only to have it revoked three weeks later by Defendant Kathy Berg. Greer went through

the proper procedures of gaining a registration and license during December of 2015. He wanted

to try getting a business license to open a brothel after seeing guiding case law that made

prostitution socially acceptable. He developed a plan (such as how he could protect workers) and

even clearly explained on the paperwork what he was trying to open and explained his case law

for why it should be opened. If he was granted one, Greer prepared himself to go to the

legislature to try showing what he had been given to try overturning the laws. Greer submitted

his application for a business registration and license, and two days later, Greer was given a

business registration with a registration number and the proper paper work to file with the county

and city. Approximately three weeks later, in early January of 2016, Greer received a Notice

from Berg, informing Greer that his business registration had been revoked "effective

immediately" for illegal business purposes. Berg cited Utah statute 47-1-1 as the basis for

revoking his registration. Thus, this establishes the "casual connection between the injury and

conduct complained of", as Greer is complaining that Berg's revocation of the brothel

registration caused him harm of not operating a legal business that he had every intention of

setting up. He even had plans to receive donations to build the structure and have a well-known

business man be the proprietor of the brothel. Berg cited Utah code which Herbert is in charge of

4

overseeing and therefore he acted in color of authority by making sure all of the departments beneath him acted according to the law. Greer has suffered anguish knowing that he can help people, but with all efforts thwarted, he can't do anything; knowing that there are girls who want protection, but are not being afforded it.

It has been established in this District and in this Circuit, that merely being denied a license establishes standing to challenge laws and regulations. *Kitchen v. Herbert* (D. Utah 2013). (Derek Kitchen and his partner applied for a gay marriage license, when they knew that the court clerk didn't offer gay marriage licenses, but they still had standing to challenge the Utah Constitution). Several Supreme Court cases have found that Plaintiffs lacked standing to challenge laws because they *didn't apply for a license or* application: FW/*PBS, Inc. v. Dallas* (1990) ruled that Plaintiffs didn't have standing to challenge a licensing statute, which was for a sexually oriented business as well, because the Plaintiffs never applied for a license; *Obergefell v. Hodges* (2015) ruled that denying Plaintiffs' marriage license was demeaning to their "personhood" and "intimate choices"; *Schware v. Board of Bar Examiners of New Mexico* (1957) held that denying a license based on "moral character" was a violation of the 14th amendment Due Process Clause. *Schware* is interestingly persuasive because it involves conduct that was considered taboo which is similar in argument to the conduct that the State deems illegal and immoral in this present case. Being denied a license is a well-established "concrete" injury, as has been shown. With this long line of federal precedent, it is "likely" that Judge Pead will redress the current challenge favorably to Plaintiff because he has laid out thorough arguments and has strong case law that allows him to overturn the laws and get a license.

**Claim 2: Greer has Standing, as he has Engaged in Illegal Conduct and His Further Illegal Conduct is Imminent; Catching the AIDS virus is Imminent Harm:**

5

Greer's second concrete "injury-of-fact" is both actual and imminent. The actual concrete harms are listed as follows: Since 2013, Greer has paid prostitutes in the City and County of Salt Lake. His first act of prostitution occurred in 2013 at his college dorm. Greer paid a prostitute -- which most prostitutes go by the term "escorts" because it is a classier connotation and to avoid prosecution, thus making the term interchangeable with licensed escorts who aren't supposed to engage in sexual intercourse per state law and which bolsters Plaintiff's claims of hypocrisy and equal protection -- 300 dollars to give Greer a hand job which is illegal. When the brothels got too expensive and the travel became unbearable to Nevada, Greer regularly paid prostitutes in Salt Lake City and County, from 2013-2016. For those three years, Greer had many hit and misses. Some encounters were complete flukes. One such instance was when Greer paid a girl for three hours. The first hour was meant to be a dinner date. The last two hours were a planned sexual encounter. During dinner, the girl received a phone call, excused herself and never returned, defrauding Greer. Another time, Greer entered an apartment and was held under duress with a threat of violence to give him the money he had on him and to leave. Other times, Greer has met the girl as advertised, but both Greer and her are so scared of arrest, that they rush through any "proper vetting" or "inspections" for STDs, have sex and dispose of condoms by flushing them down the toilet. There is no verification that the girl is clean, unlike licensed sex workers (like in Nevada) who are tested weekly. Greer is robbed of the legality and comfort that non-commercial sex partners have where they can vet their partners and not have fear of police rushing into their bedroom. *Lawrence v. Texas* (2003) said that there is an arising awareness pertaining to sexual relations which thus invalidated fornication and sodomy laws. Courts have held that catching an STD or the imminent threat of catching an STD gives one standing to bring suit. *Martin v. Ziherl* (Va. 2005) (Held that intentionally giving an unmarried partner herpes

6

gives somebody standing). Therefore, Greer has standing because he faces the imminent threat of catching the AIDS virus. See Nevada law which gives one standing to sue a brothel owner if he or she knowingly employs a sex worker who has AIDS. *NAC 441A.800.*

In addition, Defendant Sim Gill has made a threat of prosecution against Greer. In December 2016, when reporter Stephen Dark was interviewing Greer for an article he was writing about the current lawsuit, Dark asked Gill what he thought of the case. Gill stated, "As long as it is illegal, Mr. Greer is expected to follow the law just like everybody else." Greer took this as a threat. This was proved to be true because when Greer contacted the police to report harassment against him, the officer stated that he knew who Greer was which establishes that Gill had police investigating Greer and to keep tabs on him in light of this lawsuit. Reyes could very well prosecute Greer too. Greer has not had sex with a prostitute recently because when Judge Pead overturns the laws, Greer does not want any criminal activity to prohibit him from having a license i.e. a "civil disability". But Greer has recently been looking at escort ads. He is often tempted to pay a prostitute. He misses sex. He misses intimacy. Prostitution is a lifestyle for Greer and other disabled people– it is the only way he can date. This isn't a hypothetical harm either because Greer does plan on paying illegally for a prostitute should he lose this case, which now that Gill and Reyes know about Greer's intention, Greer could easily be charged with an "inchoate" crime. It was recently established in this circuit with *Brown v. Buhman* (10th Cir. 2016) that when a prosecutor signs a declaration that he or she will not prosecute a crime, the plaintiff loses standing, as was seen with the Browns. That is not the case with Greer, as Gill made a veiled threat at Greer to prosecute him if he continued in illegal conduct. (*Lujan v. Defenders of Wildlife* (1992) established that repeated conduct and intent to repeat past conduct is more than enough to give one standing.) If there were a legal brothel in Utah, Greer wouldn't

7

be breaking the law. As an example, homosexuals were still having sex while sodomy was illegal. It was their lifestyle, it was later ruled in *Lawrence.* It's the same here. The State is controlling Greer's destiny to have sex.

### Claim 3: Greer has Standing due to Economic Harm:

Greer's third "injury-in-fact" is he has standing due to the laborious travel he has to go to flee the state to somewhere legal. He faces the risk that long travel brings with it and is not afforded the same protection in consumption of services as other consumers in the adult entertainment industry like patrons of strip clubs. Greer also has standing because of the injury of going to the smoke-filled brothels in Nevada. Further, Greer risks being terminated from his job if he engages in illegal conduct. His firm knows about this challenge and has sat down and talked to Greer and has warned Greer that if he does anything illegal or if he causes the firm to lose a client due to him challenging these laws, he will be fired. This threat is actual and imminent. Greer goes to work wondering if he will be fired due to him challenging these laws. If it were legal, Greer wouldn't need to worry about being fired. It is settled law that economic harms satisfy the injury-in-fact requirements. *FCC v. Sanders Brothers Radio Station* (1940) (likelihood of "financial injury" gives one standing).

### Claim 4: Greer has Standing, as his Business Can't Protect those Seeking Protection:

Greer, as established in the introduction of this Brief, has standing to challenge these laws as an unestablished business owner with an association that wants to protect those who have interests in his brothel, but can't because Berg revoked his license and Herbert oversees that it remains criminalized. "It is as unlawful to prevent a person from engaging in business, as it is to drive him out of business." *Thomsen v. Union Castle Mail* (2nd Cir. 1908). As per the cited law in the introduction, Greer's unestablished business can represent the interests of the very real

8

people who want to be a part of the brothel. Greer has met many who are harmed because they don't have a legal place. None of them are willing to come forward due to stigma and threat of prosecution. A few of them are:

1. Layla. A University of Utah student who has been a prostitute for two years now. An arrest would ruin her academics and she risks a possible expulsion.

2. Tricia Christie: a single mother who does prostitution because of the money. If arrested, she could lose custody of her child.

These women have interests in this case. Since the Mile High Neon is an association, it can represent the women. Plaintiff is also aware of several handicapped men who are more "limited" than Greer who seek to have a legal brothel. This shows that both customers and workers have an interest in this case. All can be called upon to testify at the trial, if needs be.

## B. GREER'S CLAIMS ARE RIPE TO BE HEARD

Along with having standing, Greer's claims are ripe to be heard. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States* (1998). The opposite is true with Greer's case. He has suffered actual harm from events that have already occurred, as has been specified. Even in the claims where threat of prosecution is imminent, the events have occurred to make them ripe based on Gill's statement to Dark and based on the fact that that the State and County regularly conduct police stings. Greer has already tried going the legislative route and other routes to bring relief for himself and for others, but was denied relief which resulted in this constitutional challenge. Thus, there would be an immense hardship on Greer and his business and the interests of the people that his business represents if judicial consideration was withheld. If judicial

9

consideration is withheld, Greer will continue to solicit prostitutes in the City of Salt Lake because it truly is a lifestyle as a disabled person. He has no easy way to get to Nevada, and Nevada is very expensive and the brothels reek of smoke and the travel causes an undue burden. Federal law has supported this argument of undue burdens for distances to abortion clinics and the hardship of getting married out of state in relation to gay marriage.  Greer's chances of catching AIDS will increase due to illegality whereas legalization would lower those risks due to proper vetting and testing; Greer's rights guaranteed by the constitution to have sex with another adult, upheld by a long line of federal case law, will be diminished. His status as a member of a protected class – the disabled community – will be "dragged through the mud" and be "spit upon", so to speak, if no judicial relief is granted or no favorable ruling issued. He had no control of being born the way he was. In challenging these laws, he only seeks to have protection and comfort for himself, other disabled persons, persons who aren't disabled and the men and women who choose to be paid sexual partners to Greer and other individuals. The resistance from the State and County is damning and discriminatory to the disabled. Even though their laws are neutral on its face, they have a discriminatory effect against the disabled. See Phyllis Segal, *Sexual Equality, the Equal Protection Clause, and the ERA*. Buff. L. Rev. (1984).

Greer respectfully submits and declares all to be true under penalty of perjury.

/rgreer/

05/05/2017

10

## CERTIFICATE OF SERVICE:

I certify that on May 05, 2017, a true and correct copy of PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S STANDING AND THE RIPENESS OF THE CLAIMS was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
Gmsoderberg@utah.gov

Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
Nsarin@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com

11

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov
E-mail: gsoderberg@agutah.gov
*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER, et al, | **SUPPLEMENTAL MEMORANDUM REGARDING FACIAL AND AS-APPLIED CHALLENGES** |
| Plaintiff, | |
| v. | Case No. 2:16-cv-01067-DBP |
| GARY R. HERBERT, et al, | |
| Defendants. | Magistrate Judge Dustin B. Pead |

Governor Herbert, Attorney General Reyes, and Kathy Berg (the "State Defendants"),

through counsel and pursuant to this Court's April 21, 2017 Order (doc. 34), submit this

Supplemental Memorandum. The Court directed Defendants to address whether Plaintiff raises

facial or as-applied challenges, and to set forth the analysis applicable to Plaintiff's challenges.

Ruling and Order at 5 doc. 34. Plaintiff's Complaint describes his challenges to Utah statutes

which "criminaliz[e] the commercial exchange of consensual, adult sexual activity inside houses

of prostitution" as "challeng[ing] the constitutionality of the statutes (on their face and as they

may be applied to Plaintiff[]) . . . ." Compl. ¶ 5 doc. 1. Later, in Plaintiff's Memorandum in

Opposition to the State Defendants' Motion to Dismiss, Plaintiff states that "the State Defendants are confused as to what Plaintiff is challenging. To reiterate, the Complaint of Plaintiff clearly challenges [a]s-[a]pplied sections of the statutes of the Utah Code—not all of the statutes which would constitute a facial challenge." Pl.'s Opp. Mem. at 7 doc. 25. To determine the nature of Plaintiff's challenges (whether they are as-applied or facial), the Court should look to the nature of the relief requested, and how the relief would affect individuals or classes of individuals other than Plaintiff.

Plaintiff challenges Utah Code § 76-10-1302(1)(b) (stating that a person is guilty of prostitution when the individual is an inmate of a house of prostitution), § 76-10-1303(1)(b) (stating that a person is guilty of patronizing a prostitute when the person enters or remains in a house of prostitution for the purpose of engaging in sexual activity), § 76-10-1304(1)(a)(iii) (stating that a person is guilty of aiding prostitution if the person leases or otherwise permits a place controlled by the actor, alone or in association with another, to be used for prostitution of the promotion of prostitution), § 76-10-1305(l)(a)(e) (stating that a person is guilty of exploiting prostitution if he procures an inmate for a house of prostitution or owns, controls, or manages, a house of prostitution), and § 47-1-1 (declaring brothels a nuisance that shall be enjoined and abated) (the "Statutes").

Here, Plaintiff's challenges have characteristics of both as-applied and facial challenges. Plaintiff's challenges are facial in nature because Plaintiff attacks the Statutes on legal grounds and contends that they are per se invalid. In this regard, Plaintiff's claims are not specifically applicable to his own circumstances or those of any particular person or business. But Plaintiff's claims also have characteristics of as-applied challenges because they focus on the constitutional

2

ramifications of the Statutes as they apply to a specific group of which Plaintiff is a member (the

physically disabled), and because Plaintiff limits his challenge to specific subparts of the statutes.

Accordingly, the Court should follow the three-part analysis set forth by the Tenth Circuit in

*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016), which results in

applying facial standards to Plaintiff's claims.

## FACTUAL BACKGROUND[1]

Plaintiff filed his Complaint on October 18, 2016 after having been denied a business

license to open a brothel in Utah by the Utah Department of Corporations and Commercial Code.

Compl. at 4 ¶ 8 doc. 1. Plaintiff seeks "to have a brothel erected in the District of Utah where not

just prostitution occurs, but other adult activity that includes escorting, nude dancing, and other

activities which are sexual and non-sexual and are currently regulated by the State." *Id.* at ¶ 30.

Plaintiff alleges that he has "struggled to find a partner" because of his disability, and therefore

must resort to prostitution to engage in sex. *Id.* at 12–13 ¶ 34. Plaintiff alleges that he is "tired of

doing things illegally" and seeks to "make prostitution legal so that everybody could have access

to intimacy." *Id.* at ¶ 50. Plaintiff acknowledges that he has engaged in illegal conduct and fears

that he may be prosecuted. *Id.* at ¶ 61. Plaintiff's Complaint raises five claims for relief. *Id.* at

23–36.

## PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff's first claim for relief alleges that "[a]s [a]pplied section of Title 76, Chapter 10,

Sections 1302–1308, concerning houses of prostitution, and [a]s [a]pplied section of Title 47,

Chapter 1, concerning brothels being nuisances, violate the right to substantive due process . . .

---

[1] For purposes of this memorandum, the relevant facts alleged in Plaintiff's complaint are
accepted as true.

as would be applied to Plaintiffs, impinge upon the fundamental liberty interests in one's own

private sexual conduct . . . ." *Id.* at ¶ 92.

Plaintiff's second claim contends that he has been denied equal protection of the law,

because he does not have the same access to sex as people with no disabilities. *Id.* at 27–31.

Plaintiff argues that the Statutes have a discriminatory effect on him, because as a disabled man,

the only way he can engage in sex is to pay for it, whereas people with no disabilities have

greater access to sex. *Id.* at ¶ 104. Plaintiff's second cause of action also includes a claim for

denial of equal protection for those who choose to work in prostitution. *Id.* at 31. However, such

a claim is related to Ms. Christie.  The Court struck all "allegations supporting Christie's claims

and causes of action against Defendants . . . from the complaint." Ruling and Order at 3 doc. 34.

Plaintiff's third cause of action is a claim based on a due process right to earn a living, on

behalf of Tricia Christie. *Id.* at 33. Pursuant to Fed. R. Civ. P. 11, the Court struck all claims

related to Ms. Christie from the Complaint, based on her lack of participation in the proceedings.

Ruling and Order at 3 doc. 34.

Plaintiff's fourth cause of action is a claim for denial of the freedom of association.

Compl. at 34–35 doc. 1. Plaintiff states that "[t]he [a]s [a]pplied brothel laws of Utah . . .

severely infringe on the rights to freedom of association of many persons in the State of Utah,

including Plaintiffs herein." *Id.* at ¶ 119. Plaintiff also states that by enforcing the Statutes, the

District Attorney and Attorney General "are depriving and will continue to deprive Plaintiffs of

rights secured by the First Amendment . . . ." *Id.* at ¶ 120.

4

Plaintiff's fifth cause of action references the Utah Constitution, and states generally that the Statutes violate the Utah Constitution in the same way as they violate the United States Constitution. *Id.* at ¶ 123.

Plaintiff's claims consistently refer to the Statutes as "the as applied brothel laws of Utah" but also reference the laws' impact on "many persons in Utah". *See e.g.*, Compl. at 34–35. In the Prayer for Relief, the Complaint asks the Court to declare that the "[a]s [a]pplied brothel laws of Utah . . . are unconstitutional" and asks for injunctive relief so that Plaintiff may obtain a business registration to operate a brothel in the State of Utah. *Id.* at 37.

In Plaintiff's Memorandum in Opposition to the State Defendants' Motion to Dismiss, Plaintiff again characterizes the issues in this case as "whether the [a]s-[a]pplied challenged laws are constitutional or not . . . ." Pl.'s Opp. Mem. at 7 doc. 25. And, as pointed out by the Court, doc. 34 at 5, Plaintiff states that "the State Defendants are confused as to what Plaintiff is challenging. To reiterate, the Complaint of Plaintiff clearly challenges [a]s-[a]pplied sections of the statutes of the Utah Code—not all of the statutes which would constitute a facial challenge." Doc. 25 at 7. Accordingly, Plaintiff's Opposition Memorandum states clearly that Plaintiff seeks to assert an as-applied challenge, not a facial challenge.

However, as noted above, Plaintiff's challenges share characteristics of each because 1) the relief he seeks would affect other individuals or classes of individuals, 2) Plaintiff only challenges certain subparts of the laws, and 3) one of Plaintiff's challenges relates only to the Statutes' impact on the physically disabled. Accordingly, the Court should look to "whether the claim and the relief therein extend beyond the plaintiffs' particular circumstances . . . [and] if the claim and relief do so, facial standards are applied but only to the universe of applications

5

contemplated by plaintiff[']s claim[s], not to all conceivable applications contemplated by the challenged provision." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 914 (10th Cir. 2016).

FACIAL AND AS-APPLIED CHALLENGES GENERALLY

The Supreme Court has recognized that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *see also John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (noting as to the parties's disagreement regarding whether the claim at issue "is properly viewed as a facial or as-applied challenge," that "[t]he label is not what matters"); *Ctr. for Indiv. Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) ("[F]acial challenges and as-applied challenges can overlap conceptually."); Richard H. Fallon, Jr., *As–Applied and Facial Challenges and Third–Party Standing, 113 Harv. L. Rev. 1321, 1336 (2000)* ("Facial challenges are not sharply categorically distinct from as-applied challenges to the validity of statutes."). "In other words, 'facial' and 'as-applied' are not necessarily antipodal rubrics." *Supreme Court of New Mexico*, 839 F.3d at 908.

In *Supreme Court of New Mexico*, the Tenth Circuit affirmed a district court decision that a rule prohibiting a federal prosecutor from subpoenaing a lawyer to present evidence about a past or present client in a grand-jury or other criminal proceeding (with some exceptions) violated the Supremacy Clause. 839 F.3d at 893. The district court concluded that the rule was preempted with respect to federal prosecutors practicing before grand juries, but was not preempted outside of the grand jury context. *Id.* The Tenth Circuit agreed and affirmed. *Id.*

6

In analyzing whether the United States' challenge was facial or as-applied, the Tenth Circuit concluded that the challenge had characteristics of both facial and as-applied challenges. *Id.* at 908. The challenge was facial in nature "because it attack[ed] [the rule's provisions] on purely legal grounds . . . and contend[ed] that they [were] per se invalid. In this regard, the claim d[id] not relate to the circumstances of any particular attorney subpoena or any particular trial or grand-jury investigation." *Id.* But the challenge also had "characteristics of an as-applied challenge because it focuse[d] solely on the constitutional ramifications of [the rule's provisions] as they appl[ied] to a specific, narrowly defined group—federal prosecutors licensed in New Mexico . . . ." *Id.* Regarding the relief requested, the Tenth Circuit concluded that Plaintiff did "not seek a determination that the rule [was] invalid as applied to any other category of prosecutors (e.g. state or local prosecutors), and thus not all applications of the challenged provisions [were] encompassed by the claim." *Id.*

The Tenth Circuit "offer[ed] three key lessons" to consider in determining the appropriate standard to apply when a challenge shares characteristics of facial and as-applied challenges. *Id.* at 914. First, "the labels the parties attach to claims are not determinative . . . ." *Id.* Second, "in determining whether to apply facial standards to the claim, importantly, the court must focus on whether the claim and the relief therein extend beyond the plaintiffs' particular circumstances . . . ." *Id.* Third, "if the claim and relief do so, facial standards are applied but only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision." *Id.*

The nature of the facial standard to be applied "does not attempt to assay the constitutional validity of all or virtually all of the applications of the challenged provision.

Instead, it focuses on only the constitutional validity of the subset of applications targeted by the plaintiffs' substantive claim." *Id.* at 915.

The Tenth Circuit in *Supreme Court of New Mexico* concluded that "facial standards should be applied to the United States's preemption claim but only to the extent that the challenged provisions of [the rule] impact federal prosecutors licensed in New Mexico and their attorney-subpoena practices." *Id.* at 916. The court's rationale was based, in part, on the observation that "the United States's claim and its desired relief clearly extend beyond the particular circumstances of any particular federal prosecutor issuing an attorney subpoena." *Id.* Accordingly, the court applied typical facial challenge analysis, that "is best understood as 'a challenge to the terms of the statute, not hypothetical applications' and is resolved 'simply by applying the relevant constitutional test to the challenged statute without attempting to conjure up whether or not there is a hypothetical situation in which application of the statute might be valid.'" *Id.* at 917 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127, 24 (10th Cir. 2012)).

Thus, as applied to the case at bar, the Court should apply the Tenth Circuit's three-part analysis to each of Plaintiff's claims to determine the nature of Plaintiff's claims and the appropriate standard.

SPECIFIC ANALYSIS TO PLAINTIFF'S CLAIMS

As stated above, four of Plaintiff's claims remain: (1) a substantive due process claim regarding an alleged liberty interest in paying for private sexual conduct; (2) an equal protection claim regarding whether criminalizing prostitution creates a disparate impact on people with physical disabilities; (3) whether "prohibiting the commercial exchange of private sexual activity

unconstitutionally infringes on freedom of association protected by the first amendment; and (4)

Utah constitutional claims mirroring Plaintiff's federal claims, including a claim that the Statutes

violate the Free Market Clause of the Utah Constitution found in Art. 12, Sec. 20.

### 1. Plaintiff's Substantive Due Process Claim is Analyzed Under a Facial Standard.

Plaintiff argues that the Statutes prohibiting houses of prostitution "as would be applied

to Plaintiff[], impinge[] upon the fundamental liberty interests in one's own private sexual

conduct recognized by various courts throughout the United States." Compl. ¶ 92 doc. 1. An

order from this Court that the Statutes prohibiting prostitution violate Plaintiff's substantive due

process right to private sexual conduct would extend far beyond Plaintiff. Plaintiff asks the Court

to recognize a substantive due process right "of adults to engage in consensual, private sexual

activity (even for compensation)," relief that would affect the application of the law to everyone

in Utah. *Supreme Court of New Mexico*, 839 F.3d at 914. Accordingly, Plaintiff's challenge

should be characterized as a facial challenge. *Id.* But Plaintiff's challenge also shares

characteristics of an as-applied challenge because it is aimed at subparts of Utah law that are

specific to houses of prostitution. Accordingly, the Court need only analyze "the universe of

applications contemplated by plaintiffs' claim . . . ." *Id.* As argued by the State Defendants in

their Motion to Dismiss, the applicable constitutional test for Plaintiff's substantive due process

claim is whether the Statutes criminalizing prostitution are supported by a rational basis. Mot.

Dismiss at 1–7 (doc. 17).

### 2. Plaintiff's Equal Protection Claim is Analyzed Under a Facial Standard.

Plaintiff's second claim for relief is that the Challenged Statutes prohibiting prostitution

violate the Equal Protection Clause because they have a disparate impact on physically disabled

individuals. Compl. at 27–28 doc. 1. Plaintiff "has a physical disability termed 'Mobius

Syndrome.'" *Id.* at ¶ 102. But Plaintiff's challenge is not as-applied in nature. Plaintiff does not

allege that his business license was denied because of his physical disability, only that the

Statutes have a disparate and unconstitutional impact on him and others with physical

disabilities. *Id.* at 28–31. The requested relief would necessarily affect the Statutes' application

to a class of people: the physically disabled. Accordingly, Plaintiff's challenge shares aspects of

facial and as-applied challenges, and therefore "facial standards are applied but only to the

universe of applications contemplated by plaintiff[']s claim, not to all conceivable applications

contemplated by the challenged provision." *Supreme Court of New Mexico*, 839 F.3d at 914. The

Court should apply the applicable constitutional standard to facial disparate impact equal

protection challenges: whether laws have a disproportional effect and whether that impact can be

traced to a discriminatory purpose. Mot. Dismiss at 8–9 doc. 17.

### 3.   Plaintiff's Free Association Claim is Analyzed Under a Facial Standard.

Plaintiff's Freedom of Association claim asks the Court to conclude that the First

Amendment protects "the commercial exchange of private sexual activity . . . ." Compl. at ¶ 119

doc. 1. As Plaintiff recognizes in his Complaint, such relief would apply to "many persons in the

State of Utah, including Plaintiffs . . . ." *Id.* Accordingly, Plaintiff's challenge is facial in nature,

and should be analyzed under the applicable constitutional standard. As set forth in State

Defendants Motion to Dismiss, Plaintiff's claim fails the first step of the constitutional analysis

as a matter of law because association for the purpose of sex is not protected by the First

Amendment. *See* doc. 17 at 10.

**4.   Plaintiff's Utah Constitutional Claims Are Analyzed Under Facial Standards.**

If the Court reaches the merits of Plaintiff's Utah constitutional claims, the Court should

conclude that the relief requested would be applicable to other individuals, and therefore apply

facial review to the Statutes under the Utah Constitution. The applicable facial constitutional

analysis is set forth in the State Defendants' Motion to Dismiss. *See id.* at 11–12.

CONCLUSION

Plaintiff's challenges to the Challenged Statutes share characteristics of facial and as-

applied challenges. The relief requested by Plaintiff would necessarily apply to individuals and

classes of individuals beyond Plaintiff. Accordingly, Plaintiff's claims should be analyzed under

facial standards. However, because Plaintiff has argued that his challenges relate to people with

physical disabilities or apply only as to subparts of Utah statutes, the Court need only consider

those applications of the Challenged Statutes. The State Defendants respectfully ask the Court to

conclude that the Challenged Statutes are facially valid and dismiss Plaintiff's Complaint with

prejudice and without leave to amend.

DATED:  May 5, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

Catherine L. Brabson (#6500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone: (801) 535-7788
Facsimile: (801) 535-7640
Catherine.Brabson@slcgov.com

*Attorney for Defendants Jackie Biskupski and James Allred*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER<br><br>        Plaintiff,<br><br>  vs.<br><br>GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the Count of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,<br><br>        Defendants. | **CITY DEENDANTS' SUPPLEMENTAL BRIEF RE: FACIAL VS. AS-APPLIED CONSTITUTIONAL CHALLENGES AND JOINDER IN STATE DEFENDANTS' SUPPLEMENTAL BRIEF**<br><br>Case No. 2:16-cv-01067<br><br>Judge Dustin B. Pead |

Defendants Jackie Biskupski and James Allred in their official capacity (collectively the "City Defendants"), by and through counsel of record, and pursuant to the Court's Order of April 21, 2017 (Dkt. #34), submit the following Supplemental Brief re: Facial vs. As-Applied Constitutional Challenges.

The City Defendants moved to dismiss the claims on numerous grounds, including by adoption of the arguments advanced in the motions to dismiss filed by the State Defendants and the County Defendants concerning the constitutionality (state and federal) of Utah's laws criminalizing prostitution. *See* City Defendants' Motion to Dismiss and Memorandum in Support, Dkt #21. Accordingly, the City Defendants also adopt the arguments advanced in the supplemental brief filed by Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Division of Corporations and Commercial Code (collectively, the "State Defendants") (Dkt. #36). The City Defendants hereby join in the points and authorities advanced in the Supplemental Brief in support of the State Defendants' motion. *See* DUCivR 7-1(a)(4) (permitting joinder in motions filed by other parties via filing of separate motion and adoption by reference); Fed. R. Civ. P. 10(c) (permitting adoption by reference). Based on these arguments, Plaintiffs' complaint should be dismissed against the City Defendants as a matter of law.

DATED this 5th day of May, 2017.

 /s/  Catherine L. Brabson
CATHERINE L. BRABSON
*Attorney for Defendants Jackie Biskupski
and James Allred*

Page 2

## CERTIFICATE OF SERVICE

I hereby certify that on 5th day of May, 2017, a true and correct copy of the **CITY DEFENDANTS' SUPPLEMENTAL BRIEF RE: FACIAL VS. AS-APPLIED CONSTITUTIONAL CHALLENGES AND JOINDER IN STATE DEFENDANTS' SUPPLEMENTAL BRIEF** was electronically filed with the Court using the CM/ECF system, which sent notice to the following:

David N. Wolf, dnwold@utah.gov
Gregory M. Soderberg, gmsoderberg@utah.gov
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Jennifer Bailey, jenbailey@slco.org
Neil R. Sarin, nsarin@slco.org
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
2001 South State Street, Suite S3-600
Salt Lake City, UT 84190
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

And was sent via email and first class mail, postage prepaid, to the following:

Russell Greer
1450 South West Temple, Apt. D206
Salt Lake City, UT 84115
russmark@gmail.com
*Plaintiff pro se*

/s/  Heidi Medrano

HB #60817

Page 3

Sim Gill (USB# 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Neil R. Sarin (USB# 9248) nsarin@slco.org
Jennifer Bailey (USB# 14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| Russell G. Greer, et al.<br><br>    Plaintiffs,<br>v.<br><br>Gary R. Herbert, et al.<br><br>   Defendants. | SALT LAKE COUNTY DEFENDANTS' SUPPLEMENTAL MEMORANDUM RE: FACIAL VS. AS-APPLIED CONSTITUTIONAL CHALLENGES AND JOINDER IN STATE DEFENDANTS' SUPPLEMENTAL MEMORANDUM<br><br>Case No. 2:16-cv-01067<br><br>Magistrate Judge: Dustin B. Pead |
| --- | --- |

Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga (collectively "County Defendants"), by and through their undersigned counsel, and pursuant to Magistrate Judge Dustin B. Pead's April 21, 2017 Ruling & Order (Docket No. 34) submit the following Supplemental Brief re: Facial vs. As-Applied Constitutional Challenges.

The County Defendants moved to dismiss the claims on numerous grounds, including by adoption of the arguments raised in the motion to dismiss filed by the State Defendants and the

City Defendants concerning the constitutionality of Utah's laws criminalizing prostitution.  *See* County's Motion to Dismiss (Docket No. 18).  The County Defendants also adopt the arguments advanced in the Supplemental Memorandum Regarding Facial and As-Applied Challenges ("Supplemental Memorandum") filed by the Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Divisions of Corporation and Commercial Code (collectively, the "State Defendants") (Docket No. 36). The County Defendants hereby join in the points and authorities raised in the Supplemental Memorandum in support of the State Defendants' Motion.  *See* DUCivR 7-1(a)(4) and Fed R. Civ P. 10(c).

Based on these arguments, Plaintiffs' complaint should be dismissed against the County Defendants as a matter of law.

Respectfully submitted this 5th day of May 2017.

SIM GILL
Salt Lake County District Attorney

/s/ NEIL R. SARIN
NEIL R. SARIN
JENNIFER BAILEY
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

2

## CERTIFICATE OF SERVICE

I certify that on this 5th day of May, 2017 a true and correct copy of the foregoing Salt Lake County Defendants' Supplemental Memorandum Re: Facial vs. As-Applied Constitutional Challenges and Joinder in State Defendants' Supplemental Memorandum was electronically filed with the Clerk of Court using the CM/ECF system and mailed to the following:

> David N. Wolf
> Gregory M. Soderberg
> UTAH ATTORNEY GENERAL'S OFFICE
> P.O. Box 140856
> 160 East 300 South, 6th Floor
> Salt Lake City, UT 84114-0856
> *Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

> Catherine L. Brabson
> SALT LAKE CITY CORPORATION
> P.O. Box 145478
> 451 South State Street, Suite 505A
> Salt Lake City, Utah 84114-5478
> *Attorney for Defendants Jackie Biskupski and James Allred*

Was sent by e-mail and first class mail, postage prepaid, to the following:

> Russell Greer
> 1450 South West Temple, Apt. D206
> Salt Lake City, UT  84115
> russmark@gmail.com
> *Pro Se*

                                        /s/ Iris Pittman
                                        Paralegal

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov
E-mail: gsoderberg@agutah.gov
*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GARY R. HERBERT, et al., <br><br> Defendants. | **RESPONSIVE SUPPLEMENTAL MEMORANDUM REGARDING STANDING AND RIPENESS** <br><br> Case No. 2:16-cv-01067-DBP <br><br> Magistrate Judge Dustin B. Pead |

Governor Herbert, Attorney General Reyes, and Kathy Berg (the "State Defendants"), through counsel and pursuant to this Court's April 21, 2017 Order, doc. 34, submit this Supplemental Memorandum. The Court's Order directed Defendants to file a responsive memorandum regarding Plaintiff's standing and whether Plaintiff's claims are ripe. Doc. 34 at 6. Plaintiff filed his Supplemental Memorandum on May 5, 2017. Doc. 35. As set forth more fully below, the State Defendants do not dispute that Plaintiff Russell Greer has standing to bring his claims, and that his claims are ripe.

FACTUAL BACKGROUND[1]

Plaintiff filed his Complaint on October 18, 2016 after having been first issued a business registration[2] to open a brothel in Utah by the Utah Department of Corporations and Commercial Code, then having that registration revoked. Compl. at 4 ¶ 8 doc. 1. Plaintiff seeks "to have a brothel erected in the District of Utah where not just prostitution occurs, but other adult activity that includes escorting, nude dancing, and other activities which are sexual and non-sexual and are currently regulated by the State." *Id.* at ¶ 30. Plaintiff alleges that he has "struggled to find a partner" because of his disability, and therefore must resort to prostitution to engage in sex. *Id.* at 12–13 ¶ 34. Plaintiff alleges that he is "tired of doing things illegally" and seeks to "make prostitution legal so that everybody could have access to intimacy." *Id.* at ¶ 50. Plaintiff acknowledges that he has engaged in illegal conduct and fears that he may be prosecuted. *Id.* at ¶ 61. Plaintiff's Complaint raises five claims for relief. *Id.* at 23–36.

PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff's first claim for relief alleges that "[a]s [a]pplied section of Title 76, Chapter 10, Sections 1302–1308, concerning houses of prostitution, and [a]s [a]pplied section of Title 47, Chapter 1, concerning brothels being nuisances, violate the right to substantive due process . . . as would be applied to Plaintiffs, impinge upon the fundamental liberty interests in one's own private sexual conduct . . . ." *Id.* at ¶ 92.

---

[1] For purposes of this memorandum, the relevant facts alleged in Plaintiff's Complaint are accepted as true.

[2] Plaintiff was issued a business registration from the Division of Corporations and Commercial Code, not a business license. Plaintiff's DBA registration is attached as Exhibit 1. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.")

2

Plaintiff's second claim contends that he has been denied equal protection of the law, because he does not have the same access to sex as people with no disabilities. *Id.* at 27–31. Plaintiff argues that the Statutes have a discriminatory effect on him, because as a disabled man, the only way he can engage in sex is to pay for it, whereas people with no disabilities have greater access to sex. *Id.* at ¶ 104. Plaintiff's second cause of action also includes a claim for denial of equal protection for those who choose to work in prostitution. *Id.* at 31. However, such a claim is related to Ms. Christie.  The Court struck all "allegations supporting Christie's claims and causes of action against Defendants . . . from the complaint." Ruling and Order at 3 doc. 34.

Plaintiff's third cause of action is a claim based on a due process right to earn a living, on behalf of Tricia Christie. *Id.* at 33. Pursuant to Fed. R. Civ. P. 11, the Court struck all claims related to Ms. Christie from the Complaint based on her lack of participation in the proceedings. Ruling and Order at 3 doc. 34.

Plaintiff's fourth cause of action is a claim for denial of the freedom of association. Compl. at 34–35 doc. 1. Plaintiff states that "[t]he [a]s [a]pplied brothel laws of Utah . . . severely infringe on the rights to freedom of association of many persons in the State of Utah, including Plaintiffs herein." *Id.* at ¶ 119. Plaintiff also states that by enforcing the Statutes, the District Attorney and Attorney General "are depriving and will continue to deprive Plaintiffs of rights secured by the First Amendment . . . ." *Id.* at ¶ 120.

Plaintiff's fifth cause of action references the Utah Constitution, and states generally that the Statutes violate the Utah Constitution in the same way as they violate the United States Constitution. *Id.* at ¶ 123.

STANDING

Standing consists of three elements: (1) the plaintiff must have suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At the pleading stage, the plaintiff "must clearly . . . allege facts demonstrating each element." *Id.* (citation and quotation marks omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017).

Regarding licenses or business registrations, the Tenth Circuit concluded, in the context of marriage licenses, that plaintiffs possessed standing after being denied licenses because, in part, the plaintiffs "identified several harms that flow[ed] from th[at] denial . . . ." *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014).

Regarding pre-enforcement challenges, "[w]hen a plaintiff alleges injury arising from the potential future enforcement of a criminal statute, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* (citation and quotation marks omitted). "Instead, a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (citation and quotation marks omitted).

4

When a plaintiff sues public officials, a plaintiff can satisfy the causation and redressability requirements of standing by demonstrating "a meaningful nexus" between the defendant and the asserted injury." *Kitchen*, 755 F.3d at 1201 (citation omitted). Causation requires the defendants "to possess statutory authority to enforce the complained-of provision, and the redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Id.* (citations omitted).

*Plaintiff Has Alleged An Injury In Fact*

Mr. Greer has alleged an injury in fact because he was denied a business registration by the Division of Corporations and Commercial Code, and because he has engaged in a course of conduct arguably affected with a constitutional interest, but proscribed by statutes, and there exists a credible threat of prosecution.[3] Mr. Greer attempted to take the first step in registering, licensing, and starting his business by filing for a business registration with the Division of Corporations and Commercial Code. Accordingly, Mr. Greer has standing to challenge Utah's prohibitions against prostitution and brothels. Like the plaintiffs in *Kitchen*, Mr. Greer has "identified several harms that flow[ed] from th[at] denial . . . ." 755 F.3d at 1201. Mr. Greer also has standing to challenge Utah's prostitution and brothel laws because he fears prosecution for soliciting prostitutes. *See* doc. 35 at 7. Mr. Greer has stated repeatedly that he has paid for sex in the past, and that he will continue to do so. *See, e.g.*, Pl.'s Supp. Mem. Standing at 7 doc. 35 (stating that "Greer does plan on paying illegally for a prostitute should he lose this case").

_____

[3] Arguments made herein apply only to the State Defendants. Mr. Greer likely lacks standing for his claims against County and City Defendants, because he has not been injured by them, and his alleged injuries are not traceable or redressable by them.

Accordingly, being denied a business registration and fearing prosecution are sufficient to demonstrate that Plaintiff has suffered an injury in fact.

*Plaintiff's Alleged Injury Is Traceable To And Redressable By The State Defendants*

Plaintiff has sued Governor Herbert, Attorney General Reyes, and Kathy Berg, among other Salt Lake City and Salt Lake County officials. Compl. at 4–6 doc. 1. Plaintiff argues that he has been harmed by his denial of a business registration to open a brothel, *id.* at 4, and argues that he fears prosecution by State or County attorneys for violating Utah's prostitution and brothel laws, *id.* at 17. Because Governor Herbert and Attorney General Reyes are responsible for promulgating and enforcing Utah law, and because Ms. Berg administers Utah law related to obtaining business registrations, Mr. Greer's alleged injuries are properly traceable to and redressable by the State Defendants. Accordingly, the State Defendants agree that Plaintiff Russell Greer has standing to sue the State Defendants for his alleged injuries and claims based on Utah's prostitution and brothel laws.

RIPENESS

For a claim to be justiciable under Article III, it must be shown to be a ripe controversy, meaning that "the issue arises in a specific dispute having real-world consequences." *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (citation omitted). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Id.* (citation omitted).

Two factors determine ripeness: the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citation omitted). "In determining whether an

issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citation and quotation marks omitted). In other words, courts focus on whether a challenged government action is final, whether a determination turns upon strictly legal issues, or whether further facts must be developed. *Id.* The second factor is assessed by determining whether the challenged action creates a direct and immediate dilemma for the parties. *Id.*

First, Plaintiff's claims are ripe because the government action here is final and the determination of Plaintiff's claims turns on legal issues.[4] Plaintiff's request for a business registration was denied by the Division of Corporations and Commercial Code. That denial is final and not appealable or reviewable. The requirements of Utah Code Ann. § 16-10a-126, allowing an appeal to the district court if the Division of Corporations and Commercial Code denies a filing related to the formation or amendment of corporations, does not apply here because Mr. Greer's filing was for a DBA business registration under Utah Code Ann. § 42-2-5.

Additionally, Plaintiff's claims turn on legal issues and does not require that facts be developed. Mr. Greer is not required to actually begin operating a brothel before challenging Utah's brothel and prostitution laws. Mr. Greer attempted to take the first step in the process, but was prevented from doing so. And Mr. Greer has specifically set forth his business plan for operating a brothel in Salt Lake City. Compl. at 18–23 doc. 1. Accordingly, Plaintiff's claims turn on legal issues.

---

[4] Arguments made herein apply only to the State Defendants. Mr. Greer's claims against the City and County Defendants are likely not ripe, because Mr. Greer never sought a license for his business from the City or County.

Finally, the denial of a business registration creates a direct and immediate dilemma for Mr. Greer. He has demonstrated his intent to start a brothel in Salt Lake City, and would like to do so immediately. *Id.* The denial of a business registration directly and immediately halted Mr. Greer's intentions to start a brothel. Accordingly, the State Defendants agree that Mr. Greer's claims are ripe for adjudication.

CONCLUSION

Plaintiff Russell Greer has standing to challenge Utah's prostitution and brothel laws because he was denied a business registration, and because the threat that he will be prosecuted is credible. Plaintiff's claims are ripe for adjudication because they turn on legal questions, the government action is final, and no other facts need to be developed. The State Defendants do not dispute that Plaintiff has standing and his claims are ripe. Notwithstanding, the State Defendants ask the Court to grant their Motion to Dismiss and dismiss Plaintiff's claims with prejudice.

DATED:  May 19, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

8

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of May, 2017 a true and correct copy of the foregoing **RESPONSIVE SUPPLEMENTAL MEMORANDUM REGARDING STANDING AND RIPENESS** was electronically filed using the CM/ECF system and e-mailed to the following:

Jennifer Bailey
Neil R. Sarin
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
Email: jenbailey@slco.gov
Email: nsarin@slco.org
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
Email: Catherine.Brabson@slcgov.com
*Attorney for Defendants Jackie Biskupski and James Allred*

was sent via e-mail and first class mail, postage prepaid, to the following:

Russell Greer
1450 South West Temple, Apt D206
Salt Lake City, Utah 84115
Email: russmark@gmail.com
*Pro Se*

# EXHIBIT 1

Plaintiff's DBA registration, dated December 28, 2015.

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov
E-mail: gmsoderberg@utah.gov

*Counsel for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| RUSSELL G. GREER, et al, <br><br>            Plaintiff, <br><br> v. <br><br> GARY R. HERBERT, et al, <br><br>            Defendants. | ***ERRATA* TO** <br><br> **RESPONSIVE SUPPLEMENTAL MEMORANDUM REGARDING STANDING AND RIPENESS** <br><br><br> Case No. 2:16-cv-01067-DBP <br><br> Magistrate Judge Dustin B. Pead |

---

Defendants' counsel erroneously filed Exhibit 1 to Responsive Supplemental

Memorandum Regarding Standing and Ripeness (Doc. 39-1) without Plaintiff's DBA registration

attached to the cover page. Defendants' counsel has corrected the error to Exhibit 1.  Attached

hereto is the corrected Exhibit 1.

DATED:  May 19, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

2

## CERTIFICATE OF SERVICE

I certify that on this 19th day of May, 2017 a true and correct copy of the foregoing *ERRATA* **TO RESPONSIVE SUPPLEMENTAL MEMORANDUM REGARDING STANDING AND RIPENESS** was electronically filed using the CM/ECF system and e-mailed to the following:

Jennifer Bailey
Neil R. Sarin
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
Email: jenbailey@slco.gov
Email: nsarin@slco.org
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
Email: Catherine.Brabson@slcgov.com
*Attorney for Defendants Jackie Biskupski and James Allred*

was sent via e-mail and first class mail, postage prepaid, to the following:

Russell Greer
1450 South West Temple, Apt D206
Salt Lake City, Utah 84115
Email: russmark@gmail.com
*Pro Se*

/s/ Valerie Valencia
Paralegal

3

# EXHIBIT 1

Plaintiff's DBA registration, dated December 28, 2015.



State of Utah

File Number 9643318

DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## Business Name Registration / DBA Application

<sup>4</sup> <u>Adding or removing</u> an Applicant/Owner will affect it's status as a General Partnership or Sole Proprietorship you
must submit a Registration Information Change Form*
*If you want a <u>new name</u> (adding or changing the existing name), a new DBA filing is required*

**BUSINESS INFORMATION**

1   Requested Business Name   The Mile High Neon
2   Purpose of the Business   Sexual services, companionship  We find that UT 76-10-1301 is an old, if not invalidated law
3   by supreme court rulings like Lawrence v Texas (prostitution laws called into question by Justice Scalia)  Therefore we
apply to register a brothel

| 4 | Business address | 851 Edison St Apt A | Salt Lake City | UT | 84111 |
|---|---|---|---|---|---|
| | | Street Address | City | State | Zip |

**REGISTERED AGENT  (Required Information)**

4a. RUSSELL Godfrey Greer        4b   801-616-1067
Print the Registered Agent Name        Daytime Phone Number

| 4d 851 Edison St Apt A | | Salt Lake City | UTAH | 84111 |
|---|---|---|---|---|
| Street Address ONLY | | City | State | Zip |

| INFORMATION ABOUT YOU THE APPLICANT/OWNER |
|---|
| I    If the applicant/owner is a business, the business entity must be in good standing and incorporated, registered or qualified in the state of Utah |
| II   When transferring ownership, a letter of transfer must be attached |

5   APPLICANT/OWNER INFORMATION

Is the applicant/owner a registered business in the state of Utah? No

[ ] Check this box if the name of the registered agent listed above is also the applicant/owner  If box is not checked please complete
5a through 5c

| 5a. RUSSELL Godfrey Greer | | 5b. RUSSELL Godfrey Greer Applicant | | |
|---|---|---|---|---|
| Print Person or Business Name | | Signature and Title of Applicant/Owner | | |
| 5c  851 Edison St Apt A | | Salt Lake City | UT | 84111 |
| Address | | City | State | Zip |



State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and
approved on 28, December 2015 in the office of the
Division and hereby issues this Certification thereof

*Kathy Berg*

KATHY BERG
Division Director

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record  For confidentiality purposes, the business entity
physical address may be provided rather than the residential or private address of any individual affiliated with the entity
WARNING  The filing of this application and its approval by the Division does not authorize the use in the state of Utah of an assumed name in violation of the
rights of another under federal, state, or common law (U C A Section 42-2-5 E t seq )  *When approved the DBA is registered for 3 years

Catherine L. Brabson (#6500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone:   (801) 535-7788
Facsimile:   (801) 535-7640
Catherine.Brabson@slcgov.com

*Attorney for Defendants Jackie Biskupski and James Allred*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER<br><br>        Plaintiff,<br><br>     vs.<br><br>GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the Count of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,<br><br>        Defendants. | **CITY DEENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF RE: STANDING AND RIPENESS**<br><br>Case No. 2:16-cv-01067<br><br>Judge Dustin B. Pead |

190

Defendants Jackie Biskupski and James Allred in their official capacity (collectively the "City Defendants"), by and through counsel of record, and pursuant to the Court's Order of April 21, 2017 (Dkt. #34), submit the following Response to Plaintiff's Supplemental Brief re: Standing and Ripeness (Dkt. #35).

## ARGUMENT

Plaintiff has not alleged facts that would establish the required elements of standing with regard to the City Defendants.[1]  Plaintiff's Supplemental Brief makes no mention of the City Defendants and appears to be addressed to the State Defendants and County Defendants. Moreover, the alleged injuries identified in Plaintiff's Complaint and Supplemental Brief, even assuming they meet the requirement of "injury-in-fact," are not "traceable" to the actions of the City Defendants, nor can any declaratory or injunctive relief against the City Defendants provide redress to Plaintiff.

Plaintiff Greer seeks to challenge the constitutionality of certain criminal and civil laws enacted by the State of Utah related to prohibitions on acts of prostitution and brothels as defined therein. Specifically, Plaintiff challenges Utah Code §§ 76-10-1302, -1303, -1304, -1305 and § 47-1-1 et seq. *See* Complaint ¶¶ 26-31. Plaintiff claims that enforcement of these state laws by the Governor, the Utah Attorney General and the Salt Lake County District Attorney violates his

---

[1]      The court noted the required elements of standing as set forth in *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (explaining the elements of standing) and that the plaintiff bears the burden of establishing these elements. *See id.*

Page 2

191

Case 2:16-cv-01067-DBP   Document 41   Filed 05/19/17   Page 3 of 5
Appellate Case: 18-4075   Document: 16   Date Filed: 06/28/2018   Page: 192

federal and state constitutional rights to due process, equal protection and freedom of speech and

association, and similar claims under the Utah Constitution. *See* Complaint ¶¶ 31, 89-90, 99,

110, 115-16, 120, 123-24.

      Plaintiff's alleged injuries are: he was denied a business license from the State of Utah to

operate a brother, he is subject to potential prosecution by the Salt Lake County District

Attorney, Sim Gill, for soliciting prostitutes, and he has suffered economic harm from being

forced to travel to other states where prostitution is legal. None of these injuries involve the City

Defendants in any way. Notably, Plaintiff does not allege any challenge to the constitutionality

of City ordinances. Moreover, he does not allege that he is potentially subject to any threat of

prosecution by Salt Lake City.[2]  He does not allege any specific action or threatened harm by

Defendants Biskupski and Allred that have caused him injury. He does not allege any attempt to

register or apply for a business license from Salt Lake City, and even acknowledges that he does

not intend to own or operate a brothel. *See* Complaint ¶ 88. Indeed, the only allegations against

the City Defendants merely identify Ms. Biskupski as the Mayor and Mr. Allred as the Business

License Manager. *See* Complaint ¶¶ 13, 16. Plaintiff has not shown how his alleged injuries are

related to or were caused by the acts of the City Defendants, nor how the requested relief would

---

[2]      Although Plaintiff has not alleged actual or threat of prosecution by the City, under Utah
Code § 10-3-928, the City Attorney may prosecute violations of City ordinances, and may
prosecute, under state law, infractions and misdemeanors occurring within the boundaries of the
municipality. However, neither Biskupski nor Allred have the authority to enforce or prosecute
alleged criminal violations under state law. Thus, the necessary element of causation is lacking.
*See Bronson*, 500 F.3d at 1109-10. Likewise, redressability is not met where a defendant has no
authority to enforce a challenged statute. *See id.* at 1111-12.

Page 3

192

redress his harm. The City Defendants cannot change state law or force the state to provide a

business license.

Accordingly, Plaintiff cannot state a claim for relief against the City Defendants and

Plaintiff's Complaint should be dismissed against the City Defendants as a matter of law.

DATED this 19th day of May, 2017.

    /s/   Catherine L. Brabson
CATHERINE L. BRABSON
*Attorney for Defendants Jackie Biskupski*
*and James Allred*

Page 4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 19th day of May, 2017, a true and correct copy of the **CITY DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF RE: RIPENESS AND STANDING** was electronically filed with the Court using the CM/ECF system, which sent notice to the following:

David N. Wolf
Greg Soderberg
OFFICE OF THE UTAH ATTORNEY GENERAL
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
dnwolf@utah.gov
gmsoderberg@utah.gov
*Attorneys for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Neil S. Sarin
Jennifer Bailey
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
2001 South State Street, Room S3-600
Salt Lake City, UT 84190
nsarin@slco.org
jenbailey@slco.org
*Attorneys for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

And was sent via email and first class mail, postage prepaid, to the following:

Russell Greer
1450 South West Temple, # D 206
Salt Lake City, UT 84115
russmark@gmail.com
*Plaintiff*

/s/   Lindsay Ross

HB #61113

Page 5

Russell Greer
1450 South West Temple
Apt D206
Salt Lake City, Utah 84115
949-397-7312
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 MAY 19  P 12: 31

DISTRICT OF UTAH
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER.** | **PLAINTIFF'S RESPONSE TO** |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL** |
| | **MEMORANDUM REGARDING FACIAL** |
| v. | **AND AS-APPLIED CHALLENGES** |
| **GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake, | Case No.: 2:16-cv-01067-DBP |
| | Magistrate Judge Dustin B. Pead |
| Defendants | |

Pursuant to the Honorable Judge Pead's Order requesting a response to Defendant's

Supplemental Memorandum, Plaintiff submits this Response:

1

# I.   INTRODUCTION

Plaintiff Greer vehemently disagrees with the Defendants' Memorandum. The Defendants purposely twisted and misconstrued Plaintiff's challenge. Furthermore, Defendants proved that they are again confused to Greer's clear complaint. Greer believes that this confusion is deliberate, as Soderberg, Counsel for State Defendants, has refused to listen to Greer and wants to dismiss this very personal Complaint to Plaintiff Greer. Greer emailed Soderberg, requesting a meeting to clarify what he was arguing and to reach a compromise, and Soderberg refused. Greer argues herein that his claims are solely As-Applied, contrary to Soderberg's Memorandum that straddled Greer's claims as As-Applied and Facial. In fact, Greer's Complaint and argument is very simple and narrowly tailored.

# II.   ARGUMENT

Greer is a visual learner and would like to use a visual argument to clarify Greer's constitutional challenge. The Court may be familiar with the board game *Jenga*. To reiterate, *Jenga* is a game where you have a wood block tower and must pull out its lower blocks and build onto the tower. If the player pulls out the wrong block, the tower collapses. But if the player pulls out an even number of blocks, the tower will stay standing. In comparison to the present case, Greer isn't seeking to "knock over the tower" which the tower can be seen as the state laws and the tower falling over being seen as a facial challenge. Greer only seeks to "pull a few blocks"; he only seeks to have an As-Applied challenge by striking down the parts about brothels, as that is what he is trying to open. Facially, the rest of the statute would still stand in regards to its other applications such as loitering in public places, prostitution occurring outside of brothels, etc. "Traditional thinking has long held that the normal if not exclusive mode of

2

constitutional adjudication involves an as-applied challenge . . . ." Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 328–30 (2006)

For the State to characterize Greer's challenge as being applied solely to the physically disabled, is false and completely misses the point of Plaintiff's challenge. Greer challenged the laws in part because he belongs to a class of persons, yes, and that the laws have a discriminatory effect, but he narrowed his challenge to just apply to brothels because of the harm suffered and for what started this entire cause of action. Therefore, it is an As-Applied challenge because it is seeking to strike part of the law applying to just brothels. (See Plaintiff's Standing/Ripeness Claims filed 5/5/2017). For an example to be understood, Nevada's laws are tailored as for what Greer is arguing for in Utah: facially, the laws disallow prostitution, but there is a caveat that creates an exception for legalized brothels: *NRS 201.354.* The statute reads:

"1.   It is unlawful for any person to engage in prostitution or solicitation therefor, *except* in a licensed house of prostitution."

As can be read from that statute, the caveat only applies to "licensed houses of prostitution". Greer's rightful cause of action is seeking to strike down the brothel laws of Utah and have the laws be amended to be read like Nevada's, as shown above, to allow him to open up the brothel he wanted to open up.

*Gonzalez v. Carhart* (2007) stated that As-Applied challenges were more acceptable than facial challenges in challenging abortion laws. The Supreme Court in that case stated that, "in an as-applied challenge, the nature of the medical risk can be better quantified and balanced than in a facial attack." *Id at 1639.* Since Greer's arguments hinge and rely on the right to privacy, as laid out by *Roe, Gonzalez* is mandatory law that is to be followed. The Utah brothel laws are found in the *Public Health, Safety, Welfare and Morals* section. As specified by *Gonzalez,* an

3

As-Applied challenge can brought to show a quantified health risk and the laws can be struck down based on that risk. As a potential business owner, Greer has shown in detailed writing the risks he faces by not being able to open up a brothel and the narrowed group of people he wishes to protect: customers and working girls.

### III.    Conclusion

Greer has successfully countered the Defendants' incorrect supplemental brief. Greer has stated factually and with law how he has standing to overcome the motions to dismiss lodged against him. He also stated how he has standing to challenge the laws. It is asked that the case continues on with its scheduling order. It is also requested that a Hearing is held on the matter.

/rgreer/

**05/19/2017**

4

## CERTIFICATE OF SERVICE:

I certify that on May 19, 2017, a true and correct copy of PLAINTIFF'S RESPONSE to DEFENDANTS' MEMORANDUM REGARDING AS-APPLIED and FACIAL CHALLENGES was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
    Gmsoderberg@utah.gov

Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
    Nsarin@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
    Catherine.Brabson@slcgov.com

5

Sim Gill (USB# 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Neil R. Sarin (USB# 9248) nsarin@slco.org
Jennifer Bailey (USB# 14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | |
|---|---|
| Russell G. Greer, | Case No. 2:16-cv-01067 |
| Plaintiff, | |
| v. | SALT LAKE COUNTY DEFENDANTS' SUPPLEMENTAL MEMORANDUM RE: PLAINTIFF'S STANDING AND RIPENESS |
| Gary R. Herbert, et al. | |
| Defendants. | Magistrate Judge:  Dustin B. Pead |

Defendants Rolen Yoshinaga, Ben McAdams and Sim Gill, by and through their

undersigned counsel, and pursuant to Magistrate Judge Dustin B. Pead's April 21, 2017 Ruling

& Order (Doc. No. 34) ("Order"), submit this supplemental memorandum in response to Plaintiff

Russell Greer's supplemental brief filed on May 5, 2017 regarding his standing and the ripeness

of the claims (Doc. No. 35) ("Plaintiff's Brief").

## INTRODUCTION

Plaintiff commenced this action to challenge the constitutionality of Utah Code Ann. §§ 76-10-1302, 76-10-1303, 76-10-1304, 76-10-1305 and 47-1-1; and asserts that enforcement violates his rights of due process, equal protection, freedom of speech, and freedom of association. (Doc. No. 1.).   In his Complaint, Plaintiff asserts claims against multiple governmental entities and actors, including Rolen Yoshinaga, the Director of Salt Lake County Planning and Development Services ("Mr. Yoshinaga"); Ben McAdams, the Mayor of Salt Lake County ("Mayor McAdams"); and Sim Gill, the District Attorney for Salt Lake County ("Mr. Gill") (collectively, "County Defendants").   On December 28, 2016, the County Defendants moved to dismiss Plaintiff's Complaint.[1]  *See* County Defendants' Motion to Dismiss (Doc. No. 18) ("County Defendants' Motion").   On April 21, 2017, Magistrate Judge Pead requested additional briefing on Plaintiff's standing and the ripeness of the claims.[2]   Order at 4-5 (Doc. No. 34) ("All parties' briefing must address issues of injury in fact, causation and redressability and shall include specific information on how the causes of action apply to each group of Defendants and whether those named defendants…possess authority to enforce the complained-of-provision.").

---

[1] The County Defendants move to dismiss the claims on numerous grounds, including by adoption of the arguments raised in the motion to dismiss filed by the State Defendants and the City Defendants concerning the constitutionality of Utah's laws criminalizing prostitution.

[2] In addition, Magistrate Judge Pead dismissed Tricia Christie as a Plaintiff.

**ARGUMENT**

**A.   PLAINTIFF DOES NOT HAVE STANDING TO PURSUE CLAIMS AGAINST MAYOR MCADAMS OR MR. YOSHINAGA.**

Neither Mayor McAdams nor Mr. Yoshinaga are alleged to have actually caused any injury to Plaintiff.  As such, Plaintiff does not have standing to pursue claims against Mayor McAdams or Mr. Yoshinaga.  In order for this Court to exercise jurisdiction over this claim, Plaintiff "must allege and (ultimately prove) that [he] ha[s] suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the [County] Defendants, and that it is redressable by a favorable decision."  *Initiative & Referendum Inst. v. Walker* 450 F.2d 1082, 1087-1088 (10th Cir, 2006) quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  *Id.* (citations omitted).

Plaintiff lacks standing as to Mr. Yoshinaga because he fails to assert that Mr. Yoshinaga took any action which caused him injury.  *See generally* Complaint (Doc. No. 1).  For example, Plaintiff does not allege that he ever attempted to apply for a business license with Salt Lake County ("County"), that any business license application was denied, or that he made any effort to locate his business in unincorporated areas of the County.  *Id.*  Rather, Plaintiff's official capacity claims against Mr. Yoshinaga are based on him being responsible for overseeing business licensing in the County, and that as such, Mr. Yoshinaga is "compelled to not issue business licenses for those businesses deemed 'illegal.'"  *See* Complaint at ¶ 33.  While Plaintiff

claims the State's denial of his business registration caused him injury,[3] there is no allegation

that any action by Mr. Yoshinaga caused him injury.  As such, Plaintiff fails to establish

traceability and does not have standing to bring his claims against Mr. Yoshinaga.

Plaintiff has similarly failed to establish that he has standing to assert claims against

Mayor McAdams.  Plaintiff's claims against Mayor McAdams are based on his position that as

Mayor, an elected official, he exercises executive and administrative powers of the

municipalities of the County.  Complaint at ¶ 14.  However, Plaintiff does not allege that Mayor

McAdams engaged in action which caused him injury.  Again, Plaintiff does not allege that he

attempted to apply for a business license with the County, that any business license application

was denied, or that he made any effort to locate his business in unincorporated areas of the

County.  Accordingly, Plaintiff has failed to establish traceability and does not have standing to

bring claims against Mayor McAdams.

## B.   PLAINTIFF'S CLAIMS AGAINST MR. YOSHINAGA AND MAYOR MCADAMS ARE NOT RIPE FOR CONSIDERATION.

Even if the Court finds that there is standing as to Mayor McAdams and Mr. Yoshinaga,

Plaintiff's claims are not ripe for consideration because he never applied for a business license

with the County.  The analysis for "[s]tanding and ripeness are closely related in that each

focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.

In evaluating ripeness the central focus is on whether the case involves uncertain or contingent

future events that may not occur as anticipated, or indeed may not occur at all." *Initiative &*

*Referendum Inst. v. Walker* 450 F.2d 1082, 1097-98 (10th Cir. 2006) (citations omitted).  As to

---

[3] *See* Plaintiff's Brief at 4-5 (Doc. No. 35).

4

both Mr. Yoshinaga and Mayor McAdams, Plaintiff has not applied for a business license from

the County nor has he alleged any concrete facts to substantiate his injury.  For example, Plaintiff

has not alleged that he owns property in the County on which he could build Mile High Neon,

that he has the resources to do so, or that he would be able to obtain all other licensing necessary

for the business to open.  As such, Plaintiff's ability to open Mile High Neon in the County is

purely speculative and the legal issues before the Court are not ripe for decision.

## C.    PLAINTIFF'S CLAIMS AGAINST MR. GILL ARE NOT RIPE.

While Mr. Gill[4] concedes that Plaintiff may have standing to pursue claims against him

based on a fear of arrest and prosecution for soliciting prostitution, Plaintiff's claims against him

are not ripe for decision.  First, Plaintiff has not asserted that he has been charged with any

criminal conduct and is not the subject of a prosecution.  Second, Plaintiff's claim that he is the

target of an investigation or prosecution is speculative and unsupported by the alleged facts,

particularly as Plaintiff admits that he no longer solicits prostitutes.  *See* Plaintiff's Brief at 7

(Doc. No. 35) (stating that "[he] has not had sex with a prostitute recently because when Judge

Pead overturns the law, Greer does not want any criminal activity to prohibit him from having a

license i.e. a 'civil disability.'").  While Plaintiff alleges that Mr. Gill stated to a reporter that "as

long as it is illegal, Plaintiff is expected to follow the law just like everybody else," *see*

Plaintiff's Brief at 7 (Doc. No. 35), Plaintiff has not alleged that the District Attorney's Office

has taken any action to investigate or initiate any prosecution against him.  Because Plaintiff's

---

[4] Mr. Gill is an independently elected official and does not report to Mayor McAdams.

claims are based on speculative events that may not occur at all, the Court should find that

Plaintiff's claims are not ripe for consideration.

## CONCLUSION

Based on the arguments set forth herein and in the County Defendants' Motion and Reply

(Doc. Nos, 21 and 30, respectively), Plaintiff's complaint against the County Defendants should

be dismissed as a matter of law.

Respectfully submitted this 19th day of May 2017.

SIM GILL
Salt Lake County District Attorney

/s/ *NEIL R. SARIN*
NEIL R. SARIN
JENNIFER BAILEY
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams*
*and Rolen Yoshinaga*

6

## CERTIFICATE OF SERVICE

I certify that on this 19th day of May, 2017 a true and correct copy of the foregoing Salt

Lake County Defendants' Supplemental Memorandum Re: Standing and Ripeness was

electronically filed with the Clerk of Court using the CM/ECF system, which automatically sent

notification of such filing to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
*Attorney for Defendants Jackie Biskupski and James Allred*

I further certify that notification was sent by U.S. Mail first class, postage prepaid, with a

courtesy copy sent by e-mail to the following:

Russell Greer
1450 South West Temple, Apt. D206
Salt Lake City, UT  84115
russmark@gmail.com
*Pro Se*

/s/ Maja Ljubicic
Paralegal

Russell Greer
1450 South West Temple
Apt D206
Salt Lake City, Utah 84115
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 SEP 12  P 12: 24

DISTRICT OF UTAH

BY:_____
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>    Plaintiff<br><br>v.<br><br>**GARY R. HERBERT,** in his official capacity as Governor of the State of Utah; **SEAN D. REYES,** in his official capacity as Attorney General of the State of Utah; **SIM S. GILL,** in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI,** in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS,** in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG,** in her official capacity as Director of the Division of Commerce; **JAMES ALLRED,** in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA,** in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>    Defendants | **SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No.: 2:16cv01067<br><br><br>Judge:   Dustin B. Pead |

1

Plaintiff Russell Godfrey Greer complains of Defendants and alleges:

## INTRODUCTION

1.     American courts continue to recognize that private sexual activity is a
fundamental liberty interest protected by the Fourteenth Amendment to the United States
Constitution.  Yet, when the private, consensual sexual activity occurs as part of a voluntary
commercial exchange between adults, the State prohibits the activity and deprives those
adults of their constitutional rights.

2.     To allow certain forms of Sexually Oriented Businesses, but to ban others creates
not only a hypocritical moral law – but also a dangerous law where only certain due process and
protection rights are granted to those who engage in conduct deemed permissible by the state
while others are robbed of the same protections engaging in conduct that has been proven to be a
"secondary effect" from the protected Sexually Oriented Businesses. To ensure that all people
are protected, we must regulate all Sexually Oriented Businesses -- including prostitution – or we
must abolish it all.

3.     There are those who are unable to find partners their entire lives due to things
beyond their control and therefore live in loneliness and never experience intimacy. Outlawing
prostitution is implicit discrimination against the disabled and other lonely people, and is
controlling their destinies and the self-determination of those who want to work in it and
controlling of how they choose to use their bodies. They are not afforded the same protections as
those who engage in "hookups" or whom give their partners gifts with the expectation of
receiving sexual favors of which is defined in state law as prostitution.

2

4.      Nevada is the only state in the nation to allow legalized prostitution. To travel there is an undue burden for those who are afraid of flying in airplanes or who cannot afford to travel there; for those who do not have cars; and for those who get sick during long periods of travel. The brothels are also too expensive for the average blue collar worker, due to greed from owners and workers, which causes undue burdens. Also, the cigarette smoke that fills up the brothels, allowed by the *Nevada Clean Indoor Act*, is harmful to the health of the non-smoking customer and worker and creates an undue burden.

5.      By this complaint, Plaintiff challenges the constitutionality of the statutes (on their face and as they may be applied to Plaintiff) criminalizing the commercial exchange of consensual, adult sexual activity inside houses of prostitution.  Plaintiff seeks a declaration that the laws themselves are unconstitutional, as well as preliminary and permanent injunctive relief prohibiting their enforcement and the allowance of receiving a license to be recognized just like every other Sexually Oriented Business.

### JURISDICTION AND VENUE

6.      The case raises questions under the Constitution of the United States and *42 U.S.C. § 1983* and this Court therefore has jurisdiction under *28 U.S.C. §§ 1331, 1343, 2201,* and *2202.*  This Court has supplemental jurisdiction over the Plaintiff' state law claims under *28 U.S.C. § 1367.*

7.      Venue in this Court is proper pursuant to *28 U.S.C. § 1391(b)* because all Plaintiff and Defendants either reside in or do business within this judicial district.  In addition, venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this judicial district

## THE PARTIES

8.      Plaintiff Russell Godfrey Greer ("Greer") resides in the City of Murray and the County of Salt Lake in the District of Utah. He is 25 years old and has his paralegal degree. Greer was born with a facial paralysis medically termed *Mobius Syndrome* which means he can't close his lips or move his eyes sideways. His disability has made his life difficult physically, socially, and also with finding a job in his field. He solicits escorts and sex workers in Nevada's legal brothels and in the City and County of Salt Lake as a means of coping with his disability and therefore faces a reasonable threat of prosecution for engaging in said conduct as he is in violation of *Utah Code 76-10-1302*. In his years of patronizing sex workers, he has seen that brothels work the best, in terms of safety for both parties, and so he tried to obtain a business license to open a brothel in Utah, which he would had then taken to the state legislature, county and city councils and had the laws surrounding brothels amended, but was denied by the Utah Department of Corporations and Commercial Code. He therefore seeks to have the laws surrounding brothels found unconstitutional and seeks that the law should be amended to only allow licensed brothels.

9.      Defendant Gary R. Herbert is the Governor of the State of Utah ("Herbert"). He is sued in his official capacity only. Herbert, an elected official, oversees that the laws are faithfully executed. *Utah Const. Art. 7, § 5(1).*

10.      Defendant Sean D. Reyes is the Attorney General of the State of Utah ("Reyes"). He is sued in his official capacity only. Reyes, an elected official, has the duty of representing the State as prescribed and carrying out the laws. *Utah Const. Art 7, § 16.*

4

11.    Defendant Sim S. Gill is the District Attorney for the City and County of Salt Lake ("Gill"). He is sued in his official capacity only. Gill, an elected official, is the County of Salt Lake's public prosecutor and counsel in civil matters. *Utah Code 17-18a-202.*

12.    Defendant Jackie Biskupski is the Mayor for the City of Salt Lake ("Biskupski"). She is sued in her official capacity only. Biskupski, an elected official, exercises the executive and administrative powers of the municipality.  *Utah Code 10-3b-202(1)(b).*

13.    Defendant Ben McAdams is the Mayor for the County of Salt Lake ("McAdams"). He is sued in his official capacity only. McAdams, an elected official, exercises the executive and administrative powers of the municipalities of the County. *Utah Code 10-3b-202(1)(b).*

14.    Defendant Kathy Berg is the Director of the Division of Corporations and Commercial Code for the State of Utah ("Berg"). She is sued in her official capacity only. Berg is responsible for supervising corporation and commercial code filings in the State. *Utah Code 13-1a-2.*

15.    Defendant James Allred is the Business Licensing Manager for the City of Salt Lake ("Allred"). He is sued in his official capacity only. Allred is responsible for overseeing the business licensing in Salt Lake City which includes Sexual Oriented Businesses (SOBs). *Salt Lake City Code 5.02.020; Utah Code 10-8-41.5.*

16.    Defendant Rolen Yoshinaga is the Director of Planning for the County of Salt Lake ("Yoshinaga"). He is sued in his official capacity only. Yoshinaga is responsible for overseeing the business licensing in Salt Lake County which includes Sexual Oriented Businesses (SOBs). *Salt Lake County Code 5.01.030; Utah Code 10-8-41.*

5

## STATEMENT OF THE FACTS

## THE HISTORY OF THE UNITED STATES' AND UTAH'S
## CRIMINALIZATION OF PROSTITUTION AND SOLICITATION

17.     Historically, there has been a lack of rigorous and systematic punishment of the

commercial exchange of consensual, adult sexual activity within our nation. For much of our

nation's history, the commercial exchange of private sexual activity – at least where its

solicitation and consummation was conducted discreetly and not on the public streets – was

widely accepted, was not illegal, and was, in fact, integral to our development. It has existed ever

since the country consisted of just 13 colonies, though, the demand for it was not high as the

majority of the populace lived in rural areas. During the Revolutionary War, prostitutes would

accompany the troops; lifting their morale. Prostitution became more accepted in the 1800s. See,

e.g., Beverly Balos & Mary Louise Fellows, *A Matter of Prostitution:  Becoming Respectable,*

*74 N.Y.U. L. REV. 1220, 1283* (1999) (noting that in the nineteenth century, prostitution was "an

essential component of industrialization"); *Prostitution and Sex Work, 14 GEO. J. GENDER &*

*L. 553, 554* (Tom DeFranco & Rebecca Stellato, eds., 2013) (describing how "[u]ntil the

nineteenth century, prostitution was generally legal in the United States and flourished in large

cities" until "groups concerned with social morality * * * crusaded against prostitution"); Gail

M. Deady, Note, *The Girl Next Door: A Comparative Approach to Prostitution Laws and Sex*

*Trafficking Victim Identification Within the Prostitution Industry*, 17 WASH. & LEE J. CIVIL

RTS. & SOC. JUST. 515 (2011)

18.     Even though all forms of prostitution flourished since the nation's conception from the Colonial Era, brothels were seen as the safest way of regulating prostitution and as one of the most lucrative ways as well. *A Renegade History of the United States.* Thaddeus Russell. (2010). One of the most respected and successful brothels in the Industrial Age was the Everleigh Club. The "club" was ran by two sisters, Ada and Minna Everleigh, in Chicago from 1900 to 1911. In stark contrast from other brothels at the time, the Everleigh Club was upscale and catered to the finest gentlemen. The brothel was also different because it had set standards that the workers had to live by or else they were terminated. *The Everleigh Club.* The Chicago Tribune. Louise Kiernan. (2016) (http://www.chicagotribune.com/news/nationworld/politics/chi-chicagodays-everleighclub-story-story.html). Though only a handful of states legalized brothels, (Arkansas, Kentucky, Louisiana, New Mexico, and South Carolina), the rest of the country prohibited them yet illegal brothels were tolerated because the brothels paid fees and bribes to the police to stay in business. *The Lost Sisterhood: Prostitution in America: 1900-1918.* Ruth Rosen. (1982).

19.     On July 5th, 1870, St. Louis, Missouri created the *Social Evil Ordinance* which recognized brothels as a legitimate enterprise and required prostitutes and the brothels to register with the police and to pay operating fees. *The Social Evil Ordinance.* (1982) (http://www.americanheritage.com/content/social-evil-ordinance). What started out as a good plan to regulate prostitution soon became an overbroad mess: more brothels opened than could be managed; the girls in the brothels soon began running their own businesses inside of the brothels; the doctors (there was only six of them) were in charge of checking the girls for diseases and collecting the fees from the girls and the brothels proved to be too much for the

7

doctors to juggle. The police also abused their power and began harassing the prostitutes. By

1874, the Ordinance was repealed and prostitution in all aspects was made illegal on a state level.

*Id.*

20. In 1897, Alderman Sidney Story, a New Orleans City Councilman, saw how

prostitution was inevitable to happen so he created a red-light district to control all forms of vice.

Thus was the creation of Storyville: a 38 block "district" that was the home to brothels and all of

the "taboo" things to the "respectable" person. *"1903: Storyville, New Orleans' Red-Light*

*District".* The Times-Picayune. (2016). Storyville was ordered shutdown November 14th, 1917

after four U.S. Navy men were killed in separate weeks within the District (though they were

advised by their superiors to not solicit). Secretary of the Navy Josephus Daniels said that

Storyville was a "bad influence" to those who went there. Before closing it, New Orleans Mayor

Martin Berhman quipped, "You can make it illegal, but you can't make it unpopular." *"An Old*

*House in the Quarter: Vice in the Vieux Carré of the 1930s"* (1996).

21. The only state that has legalized prostitution is Nevada. When Nevada became a

state, in 1864, its legislature allowed incorporated cities the right to regulate prostitution. *The*

*Mississippi of the West?,* 5 NEV. L.J. 57, 58 (2004). In 1881, the Nevada Legislature passed the

*Town Board Act* which allowed county commissioners the right to regulate prostitution in

unincorporated areas. *Presentation by Nevada State Archivist of the History of Prostitution in*

*Nevada (1999)(* http://www.nvbrothels.net/infoHistory.shtml). Such legislation left the legality

of brothels in the hands of the counties and not part of the state's affairs therefore each county

had different regulations for their brothels. There was a few state imposed laws that affected all

of the counties that are still on the books today such as laws against pandering (*NRS 201.300-*

8

*60*); prohibiting a person from living off the earnings of a prostitute (*NRS 201.320*) (law is hardly

enforced); brothels cannot be within 400 yards of a school or a church (*NRS 201.380, 201.390*).

In 1937, Nevada's State Board of Health mandated weekly checks for gonorrhea and monthly

blood tests for syphilis *(Nevada Admin. Code chp. 441A, 800)*. When the AIDS epidemic hit

America, the Board of Health added codes to check for HIV/AIDS *(NAC 441A010-A325; NAC

441A775-A815)*.

      22.     Clark and Washoe Counties (Las Vegas; Reno) used to have brothels – in the

early 1900s, but the County Commissioners voted to shut down the red-light districts in those

cities citing them as nuisances. *The Best Little Whorehouse…* Snadowsky (2005). Two cases

followed, seven years apart, *Kelley v. Clark County* (Nev. 1942) and *Cunningham v. Washoe

County* (Nev. 1949), in which the Nevada Supreme Court ruled in favor of Clark County citing

county supremacy. *Kelley v. Clark County* (Nev. 1942). To avoid further cases of being shut

down for being a nuisance, brothel owner Joe Conforte successfully petitioned for a brothel to be

licensed to avoid being a public nuisance in which the legislature made a brothel legal in a

county that had less than 200,000 residents (the number has since been risen to 400,000) (*NRS

244.345*). Soon after, almost every county in Nevada voted to allow legalized brothels.

      23.     Nevada has repeatedly refused to make brothels a state issue or issue a state

official ruling and thus leaving it to the counties and cities to decide therefore running the risk of

being voted to be closed down by city councils or the voters. (The mayor of Ely vetoed the city

council in Ely, Nevada to shutdown brothels in that county in 1999 saying that they had the

moral "responsibility" to keep brothels legal to fight the AIDS epidemic; Churchill County voted

in 2004 to keep brothels legal; Nye County voted the same in 2004). *Brothels in Nye County to Stay Legal.* Las Vegas Sun. (2004).

24.     While prostitution has always occurred in Utah since Brigham Young settled Deseret, it reached its peak of "ill fame" in the late 1800s when a prominent brothel was established on the West Side of Salt Lake City located on 1st South and 500 West. *Living History: Utah Had Its Own Share of Ladies of the Night.* The Salt Lake Tribune. (2012). The brothel was known as "The Stockade". It was considered a nuisance and the brothel was frequently raided by police. Belle London, whose real name was Dora Topham, was the Madam who ran the brothel. It achieved all kinds of notoriety that followed the Mormon missionaries in Europe which many Europeans thought the missionaries were trying to take their daughters to "The Stockade". *The Oldest Profession's Sordid Past in Utah.* The Salt Lake Tribune. (2016). (http://historytogo.utah.gov/salt_lake_tribune/in_another_time/theoldestprofessionssordidpastinu tah.html).

## THE CURRENT LAW OF THE STATE OF UTAH

25.     As it stands now, Chapter 10, Part 13, sections 1301-1308 in Title 76 of the Criminal Code of Utah, criminalizes all acts of prostitution, defined as any person who "engages, offers, or agrees to engage in any sexual activity with another individual for a fee, or the functional equivalent of a fee;", as Class B Misdemeanors. *Utah Code 76-10-1302(1)(a).* It also pertains to those who "enter" or "remain" in a place of prostitution (*Utah Code 76-10-1303(1)(b)*) and those who own, lease, enter, solicit, patronize or remain in a house of prostitution. *Utah Code 76-10-1304(a)(i-iv).*

10

26.     "Sexual activity", as defined by the Utah Code, means acts of masturbation, sexual intercourse, or any sexual act involving the genitals of one person and the mouth or anus of another person, regardless of the sex of either participant. *Utah Code 76-10-1301(5).*

27.     Title 47, Chapter 1, Section 1, of the Utah Code declares that whomever seeks to "erect, establish, maintain, use, own or lease any building, structure or place, for the purpose of lewdness, assignation or prostitution is guilty of nuisance, and such building, structure or place, and the ground itself, in or upon which such lewdness, assignation or prostitution is conducted, permitted or carried on, and the furniture, fixtures and musical instruments therein and the contents thereof are declared a nuisance, and shall be enjoined and abated as hereinafter provided." *Utah Code 47-1-1; Utah Code 78B-6-1101(2)(g).* A nuisance is a Class B Misdemeanor. *Utah Code 76-10-801.*

28.     Furthermore, the Utah Code allows for the municipalities and the counties of the State to enact laws to suppress and prohibit prostitution and brothels. *Utah Code 10-8-41(1).*

29.     Plaintiff, having experience soliciting in brothels, seeks to have a brothel erected in the District of Utah where not just prostitution occurs, but other adult activity that includes escorting, nude dancing, and other activities which are sexual and non-sexual and are currently regulated by the State. Plaintiff seeks to have the brothel licensed like other Sexually Oriented Businesses in the State. *Utah Code 10-8-41.5(3).* Having a licensed brothel in Utah would protect plaintiff and others from prosecution; give plaintiff and others equal protection and due process under the law; and not create an undue burden by having to travel to a different state where it's legal. Plaintiff seeks to have unlicensed brothels be a crime. Additionally, he seeks to have all other statutes criminalizing prostitution, not occurring inside brothels, remain enforced

11

and intact. If brothels become legalized, Plaintiff would seek to have all other forms of

prostitution be a felony and a sex offense, and the offenders be registered as sex offenders in

order to deter it and keep it regulated.

30.    As an unestablished business owner, Plaintiff can file on behalf of the interests of

his business, and represent the interests of would-be members (i.e. prostitutes, customers, etc),

that was granted brief legal recognition. *Central Telecommunications v. TCI Cablevision (8th*

*Cir. 1986; Denver Petroleum Corp v. Shell Oil Co. (D. Colo. 1969).* Since Greer filled out on the

applications for his license that he was a "sole proprietor", he can bring his business interests by

himself.

31.    Because Utah's statutes make it a misdemeanor for a place of prostitution (in the

2017 legislative session, the legislature changed the wording from "house of prostitution" to

"place of prostitution") to be erected, leased, or controlled; for one to enter or remain in a house

of prostitution, and for one to engage in sexual activity in a house of prostitution (*Utah Code 76-*

*10-1302(2)(b); 76-10-1303(1)(b); 76-10-1304(1)(a)(iii); 76-10-1305(1)(a)(e)),* the District

Attorney, the Attorney General, and their respective offices are charged with the duty of

enforcing the statutes in the County and State.  Compelled by this duty, the District Attorney and

the Attorney General are presently enforcing this state law in contravention of Plaintiff's

constitutional rights.

32.    Governor Gary Herbert, as executive leader of the State, oversees all legislation

and therefore is acting in color of authority by ensuring that these laws stay intact and hinders

Plaintiff's constitutional rights.

33.    Berg, Allred, and Yoshinaga are compelled to not issue business licenses for those businesses deemed "illegal" and therefore hinders Plaintiff's attempts from obtaining a license to try to amend State, County, and City laws surrounding houses of prostitution.

## THE EFFECT OF UTAH'S LAWS ON PLAINTIFF

34.    Due to Plaintiff Greer's disability, he has struggled to find a partner despite having a college education; having served an LDS mission; being an Eagle Scout; having worked at various businesses and firms located in downtown Salt Lake and being friendly and sociable; maintaining a good appearance and being physically fit; and trying all forms of dating: online dating, in-person dating, mutual friend set ups, church social events, etc. The current materialistic world has made dating difficult for Greer.

35.    Greer first decided to solicit prostitutes after a failed suicide attempt in January 2013 after being disowned by his birth family and his twin sister. He felt that paying for intimacy would help him feel loved and help him cope with his disability and his depression after counseling and medicine proved to not be effective.

36.    Because prostitution is illegal in Utah, Plaintiff Greer has had to travel long distances to where it's legal. The closest legal brothel to Salt Lake City is located in Elko, Nevada which is four hours away. Greer does not own a car so he has had to take an Amtrak to a

legal brothel eight hours away near Reno, Nevada as the Amtrak goes to and leaves Elko at unreasonable hours of the early morning.

37.     Greer's first encounter with a prostitute was at Dennis Hof's Love Ranch North brothel near Reno, Nevada in April 2013. Greer saved for months on end to afford the encounter as he had heard that it wasn't cheap. After eight hours on a train, he met Jade, a licensed sex worker. The moment with Jade was magical. He never felt so alive before. For the first time in his life, he felt accepted by a woman. He felt cared about. And even though it was paid for, it was something – because something means everything when you have nothing.

38.     Greer has treated the working girls as if they were his girlfriends: dressed in suits to look nice for them; gave them flowers; bought them dinner; engaged in polite, clean conversations with them.

39.     Greer has continued to make continuous travel to Reno for the past three years and has spent $14,000.00 at the brothels in total. It has meant so much to him, and being with caring, affectionate women has boosted his self-esteem and confidence.

40.     The travel, though, has been laborious, as Greer spends 16 hours roundtrip on a train and is only in the brothel for up to two hours which departs and arrives in Salt Lake City at very late hours. To make matters worse, the brothels, though ventilated with air vents, are filled with smoke and the smoke chokes Greer, as he is a non-smoker, and smells up his clothes. In addition, the prices of the brothels are too expensive for a recent college graduate like Greer.

41.     These undue burdens have forced Greer to engage in prostitution with prostitutes in Salt Lake City illegally, as they are cheaper and don't smell of smoke. He has engaged in oral and        vaginal        sex        with        several        local        prostitutes.

14

42.　Engaging with prostitutes in Salt Lake City has not only put Greer under threat of prosecution, but has put him at a threat of catching a venereal disease as the girls have no way of being verified if they are free of a sexually transmitted disease. Greer has also been defrauded by several local escorts who have posted fake pictures to lure Greer in and upon meeting, he is then held under duress to give them the money. Others have been the same girl as advertised, but they do not provide the services they promise.

43.　Several local prostitutes have told Greer that local men have robbed, raped, and beaten them and they have been too afraid to go to the authorities in fear of prosecution.

44.　After a licensed sex worker at the Bunny Ranch brothel, near Reno, Nevada, stole $4,000.00 from Greer through fraudulent inducement and he had a falling out with the owner, in late 2014, Greer decided he had had enough of going to the Nevada brothels.

45.　Greer went to an Elko brothel and the feel was just not the same as the Reno brothels: no connection or anything intimate.

46.　Greer continued to solicit escorts and prostitutes in Salt Lake City for sexual, but mostly non-sexual services while going to college and doing an internship at the Attorney General's Office in the Litigation Division.

47.　*Obergefell v. Hodges* was decided in the Summer of 2015 and after studying it for a college research legal paper on whether polygamy could be legalized, the words of the ruling inspired Greer and he felt it applied to him and prostitution.

48.　Greer graduated from the LDS Business College in the Summer of 2015 and was hired on with his first firm, an intellectual property law firm, two months later.

15

49.    A month later, at the end of November 2015, Greer was brought into the firm

manager's office and was laid off after the manager said that there had been rumors about Greer

and that they were "extremely disturbing". Greer felt these rumors had to do with his experiences

with prostitutes as his college had had similar rumors about him encountering prostitutes.

50.    Seeing that his interest in prostitution had caused him financial harm, Greer

decided that he was going to apply the wording of *Obergefell* and make prostitution legal so that

everybody could have access to intimacy. Greer was tired of doing things illegally and really had

no brothel to go to since his falling out with Dennis Hof.

51.    Towards the end of December 2015, Greer filled out the business licensing

paperwork on Utah.gov to try gaining a brothel license – the same way one obtains a Sexual

Oriented Business License. Once obtained, Greer would go to the state legislature and try to

amend the laws. Greer even obtained an IRS EIN for his proposed business.

52.    Greer named his proposed brothel, "The Mile High Neon" which is a take on "the

mile-high club" and the Greek word for brothel, "porneon".

53.    Greer believes that he is of the moral character to run a safe, legal brothel. He is

an Eagle Scout for the Boy Scouts of America; he served an LDS Mission; has paralegal training

to ensure that the brothel would follow regulations and has a business plan to "expedite" the

prostitution process by empowering the sex workers and to protect adults.

54.    Greer submitted his paperwork online and it was approved on December 29,

2015. The State gave him numbers for his business registration and the appropriate documents to

file at the Salt Lake City and County Building.

16

55. Greer received a notice from Berg, on January 14, 2016, that his registration had been cancelled "effective immediately" because it had been for "an illegal business purpose" thus resulting in harm to Greer. Greer decided to sue the state and gave notice to the Attorney General through electronic mail in accordance to *Federal Rules of Civil Procedure 5.1.*

56. Greer, being low on cash and not being able to secure a grant to put down on an attorney retainer fee, decided on April 12, 2016, to represent himself Pro Se, as he felt he could do just as good as a job in arguing and presenting the case.

57. Greer met a prostitute, sometime in 2016, at her apartment in downtown Salt Lake City near the Gateway Mall and they engaged in sexual intercourse in exchange for $500.00 thus committing the act of prostitution as defined by *Utah Code 76-10-1302.*

58. Plaintiff fears that he may be prosecuted by the District Attorney and the Attorney General under Utah's prostitution laws if he continues to engage in sexual activity for hire, particularly in light of his participation in this lawsuit. Greer has already gone a year without sex or intimacy.

59. This is difficult for Greer who has solicited and engaged in prostitution in Nevada brothels and was not subject to prosecution. He sees hardships by soliciting in the Nevada brothels: owner greed, strict working hours, expensive prices, second-hand smoke filled rooms. He affirm that if there were a legal brothel in Salt Lake City and County, he would follow the law and solicit in such a brothel, but there is not.

60. As a sole proprietor of a brothel, Greer wants to empower the workers; build a good reputation for the commercial sex industry; have a place for him to have sexual relations. Greer has already found a former female manager of a strip club in Salt Lake who is willing to

run the brothel. Greer would give all managing duties to her and he would ensure that the brothel

follows within all legal regulations. Greer has a few financial backers in mind who would back

his business, as they are multi-millionaires from the adult entertainment business, but it is

premature to approach the financial backers since Greer's license was revoked.

61.     Plaintiff's fears of arrest and prosecution, if he chooses to continue in

prostitution, are reasonable and grounded in actual enforcement activities throughout the State of

Utah.  Without the legalization of a brothel, the laws threaten to impact the sexual privacy rights

of Plaintiff and countless others who desire to sell or purchase sexual services.

62.     Additionally, the criminalization of brothels under *Utah Code 76-10-1302* harms

Plaintiff because criminalization serves to discourage safe sex practices whereas legalization and

regulation would mandate condom use as seen with Nevada.  For example, when prosecuting

cases under the Utah Code, the Defendants can use the fact of condom possession as evidence of

prostitution-related offenses.  By doing so, the Defendants discourage condom use and thwart

safe sex practices.  See generally SEX WORKERS AT RISK:  CONDOMS AS EVIDENCE OF

PROSTITUTION IN FOUR US CITIES (HUMAN RIGHTS WATCH 2012). Nevada laws and

regulation mandate that condoms be worn in every sexual act.

63.     Plaintiff Greer has laid out the business plan for the Mile High Neon which would

balance state interest in protecting the morals of the State, County, and City; control the spread

of sexual disease; and would protect those who wish to engage in prostitution or other sexually

oriented business activities.


## THE BUSINESS PLAN OF THE MILE HIGH NEON BROTHEL

### THE DESIGN AND LAYOUT

64.     To avoid public nuisance laws, plaintiff seeks to build his brothel in a rural part of

Salt Lake City and County so that the location is away from the general public and is not near

any freeways or highways (*Restatement[Second]of Torts 821B [1]*; take into consideration: *NRS

[Nevada Revised Statutes] 201:380,201:390*). Plaintiff also seeks to legally have transportation

that takes patrons to the brothel just like the Bunny Ranch brothel in Nevada does.

65.     The design of the Mile High Neon will resemble a Greek temple hence the last

word of the brothel name.

66.     The building will be gated and will consist of elegant walls meant to keep

trespassers out. The front of the building is held up by Greek columns. A little past the columns

is a large wooden door that resembles the front door to a luxury mansion. A door man will stand

at the door and will not only greet, but will also act as a bouncer.

67.     Inside, will be a pristine, marble floor, and chandeliers that hang from the ceiling.

Music plays, creating a lively atmosphere. In the center of the room is a fountain with water that

runs soothingly. Couches for guests and the workers to sit on will be located in a corner.

Hanging on the walls near the couches are TVs that play the news and other channels for guests

to enjoy.

68.     A non-alcoholic bar will serve beverages to customers and visitors.

69.     A business directory will be located at the front of the brothel which will feature a

touch screen where clients can click on the girls they want and call them to meet them which is

no different from how other businesses let their clients meet their professionals. This will differ

greatly from the Nevada brothel system where the girls are summoned to the door by the sound

of a buzzer and are forced to line at attention for customers that walk in. Many, including

19

columnist Bob Herbert, have criticized this form of system as being degrading. *Politics and Misogyny.* (http://www.nytimes.com/2008/01/15/opinion/15herbert.html?_r=2). Plaintiff Greer disagrees with this system.

70.     A cash office will be located in the brothel to conduct the transactions.

71.     Past the cash office is a hallway that has all of the different rooms of the working girls. Each room has a window and a king sized bed. There is also a shower and a bathroom in the room. On the wall is a TV hooked up with Dish Network. Next to the bed is the panic alarm and a speaker for the office to communicate with the girl. There will be about ten rooms.

72.     In a different hallway, that is adjacent to the hallway that has the girls' rooms, is a hallway that has two suites meant for bi-sexual or gay male sex workers who service LGBT clients.

73.     In the middle of the hallway would be an exercise room. Next to it, would be a Jacuzzi room.

74.     Once the patron pays the negotiated amount of time with the sex worker, the cashier sets a timer of the amount paid for.

75.     There will also be a kitchen in the Neon to allow the workers to cook their own meals.

## POLICY/PROCEDURES OF THE MILE HIGH NEON

76.     The policy and the procedure of the Mile High Neon will follow similar policies and laws of the Nevada brothels. Greer, though, proposes additional innovative policies that correct the flaws of the Nevada brothels.

77.     The girls will be inspected weekly for STDs and tested biweekly for HIV (*NAC chap. 441A010-A325; 441A775-A815; NRS 201.356-58*). Once a week, a doctor will come and teach the girls on how to check for STDs and about safe sex practices. Condoms are mandatory.

20

Contracts will be written to make sure the girls agree to these terms. Any breach of the contracts will lead to fines and/or termination of the girls.

78.     Unlike the brothels in Nevada, the Mile High Neon will be smoke free and will prohibit smoking. If working girls are smokers, they will be given the opportunity of being given resources to overcome the addiction. If not, they will not be allowed to smoke on the premises.

79.     The Mile High Neon will not serve alcoholic beverages -- given the current state of rules with Sexually Oriented Businesses and drinking, and observing from Nevada brothels how drunk men and naked girls do not create a safe environment. Greer also doesn't want to be held liable for drunk driving aka *dram shop laws.*

80.     The workers will be able to apply online. While not procuring, the brothel will sort its applicants for the classiest and most beautiful people that have extraordinary personalities and who are not judgmental. The brothel also wants to choose workers who have life goals ahead of them and -- realizing this is a lucrative job -- help them achieve their goals. Plaintiff wants the workers employed for a maximum of two years and each year he wants to see how they are coming about reaching their goals. For instance, if a worker needs money for college, she would be encouraged to set a goal of $50,000.00 for tuition and expenses (that would be an example). Since the workers would be independent contractors, they would be responsible for how often they worked and how fast they reached their goal in a two-year period. Once they reached their goal, the brothel would encourage the workers to go after their dreams, thus "expediting" the prostitution process. He would put them in touch with talent agents to work non-sexual jobs.  He feels this will resonate well with the public, as it shows he values women and isn't an "evil person" as often associated with prostitution.

81.     For the workers who apply, but don't meet the criteria of a sex worker, whether they be too old, not attractive, they have STDs, etc, the brothel would refer them to talent

21

agencies as many people want in prostitution for the money. Referring people to talent agencies

and getting them in good jobs would stop the "circulation" of the adult entertainment industry:

going from brothel to strip club to porn star. This is backed up by the City of South Salt Lake's

findings that strip clubs have secondary effects. *An Ordinance Of The City Of South Salt Lake*

*City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning*

*Licensing Requirements And Regulations For Sexually Oriented Businesses.*

(2012.09.21_South_Salt_Lake_SOB-Ord-final-mr.pdf). It's a giant connected ring of

entertainment that women can be stuck in for years. While Greer isn't against adult

entertainment, he believes that women can be so much more than cover girls and hookers and he

doesn't think criminalization is the answer. Greer believes that encouragement and regulation is

the answer.

82.     For the girls that are contracted as independent workers, they would be given

trainings on self-defense; checking for STDs; understanding the disabled; how to politely turn

down a customer; how to balance a budget; how to be empowered.

83.     The girls will be licensed through the sheriff's office in order to make sure they are

of legal age and are not criminals. The sheriff's office will conduct an STD test on them when

they are first hired.

84.     The brothel will also pay state taxes and make charitable donations to the

communities that surround it.

85.     The Mile High Neon will implement the regulatory system established in the

Nevada brothels and will aim to be a safe place for consenting adults. Barbara G. Brents &

Kathryn Hausbeck, *State-Sanctioned Sex: Negotiating Formal and Informal Regulatory*

*Practices in Nevada Brothels* (2001). The brothel will promote the Public Health, Safety,

Welfare and Morals of Utah by allowing an alternative to arrest and encourage those in it to

reach whatever financial goal they have and then help them adjust out of it to a better life to avoid physical and emotional "Russian roulette". Jeffrey R. Holland, *Personal Purity* (1998) https://www.lds.org/general-conference/1998/10/personal-purity?lang=eng).

86.    The most important thing is that Greer does not seek to own or run the brothel. If the laws were found to be unconstitutional and the legislature created laws to allow it, Greer would give the business license to an educated, classy, beautiful woman in her mid thirties to forties who has higher education and experience in business; somebody who could align with the policies of Greer's proposed brothel and help women in them. Greer's role would be that of a legal assistant to ensure all regulations were followed and to follow up on any complaints. He still would be listed as the sole proprietor.

87.    With all of the policies, procedures, and history of the Plaintiff's background explained, the enforcement of Utah's brothel laws violates the First Amendment rights of Plaintiff and others similarly situated by making pure speech a criminal activity and by defining a crime based solely on the speaker's message and the content of his or her speech.

88.    It also violates the Fourteenth Amendment rights of Plaintiff.

### CLAIMS FOR RELIEF:

### CLAIM ONE:
**Section 1983 Claim for Violation of Fourteenth Amendment
Substantive Due Process Right to Sexual Privacy**

89.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

90.    As Applied sections of Title 76, Chapter 10, Sections 1302-1308, concerning places of prostitution (*Utah Code 76-10-1302(2)(b); 76-10-1303(1)(b); 76-10-1304(1)(a)(iii);*

23

*76-10-1305(1)(a)(e))*), and As Applied sections of Title 47, Chapter 1, concerning brothels being

nuisances, violate the right to substantive due process as guaranteed by the Fourteenth

Amendment to the United States Constitution in that the As Applied sections of the statutes, as

would be applied to Plaintiff, impinges upon the fundamental liberty interests in one's own

private sexual conduct recognized by various courts throughout the United States. *See Lawrence*

*v. Texas*, 539 U.S. 558 (2003); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008);

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) (Berzon, J., concurring) ("More recently, *Lawrence*

clarified that licit, consensual sexual behavior is no longer confined to marriage, but is protected

when it occurs, in private, between two consenting adults...")

91.    The rights of adults to engage in consensual, private sexual activity (even for

compensation) is a right with no rational basis in being kept banned -- if not a fundamental

liberty interest. That right is one that is, objectively speaking, deeply rooted in this nation's

history and tradition, and one that is implicit in the concept of ordered liberty. *Seegmiller v.*

*Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008) (See also: *Washington v. Glucksberg,* 521

U.S. 702, 719 (1997) which laid out the criteria for evaluating a claim for a fundamental

right by looking at historical value of declared right and whether that right fits under a pre-

existing right), *Seegmiller* established that for guiding rational basis review, *Lawrence v.*

*Texas* was to be followed. There seems to be conflicting conclusions as to whether sexual

privacy is a fundamental right (as determined with *Obergefell v. Hodges*) or if it's evaluated

for rational basis review as found in *Lawrence.* But like with *Roe v. Wade*, though, the right

to privacy can be balanced to meet both state interests and individuals' liberties. *Roe* paves

the way for the legalization of prostitution, as abortion clinics are like brothels in many

instances as they protect the worker and the client. *Roe* establishes the right to commercial

privacy and that right should be extended to brothels. That is why brothels are important so

24

that they can balance both state interests and personal rights. The 9th Circuit in *Coyote Publishing*, when evaluating the constitutionality of prohibiting legal brothels from advertising in Nevada counties in which prostitution is banned, called the Nevada brothel system "unique" and that it is able to balance state interest with personal freedom. *Coyote Publishing Inc. v. Miller* (9th Cir. 2010). Nevada has proven that this can be done. Therefore, any regulation regarding the commercial exchange of private sexual activity is subject to strict scrutiny. But if a fundamental liberty right cannot be declared, there is no rational basis to banning brothels.

92.     While there is a legitimate governmental interest in controlling prostitution and keeping the face of most of the criminal statutes on the books, such as prostitution occurring in an open, public area, there is no compelling reason to not allow licensed, regulated brothels to function. Unlicensed brothels would still remain illegal so the house of prostitution sections would remain on the books. The wording, though, is hoped to be changed to reflect this challenge to allow licensed brothels. The government actually has an interest in regulating prostitution and controlling its activity to take part in one place for a number of reasons: (1) to protect its citizens from scams that pose on adult websites offering services, but turn out to be fraudulent which are often seen on the escort section of *BackPage*; (2) protecting its citizens from sexual diseases; (3) and to protect its citizens from human trafficking. All three of these are goals of the State of Utah. *Priorities, Attorney General of Utah* (Priorities listed on AG's website include "protecting citizens from violent crime....and consumers from fraud"). (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health*, which lists a mission statement of preventing illness amongst other ailments. The site also has charts and data reports on sexually transmitted disease rates with focuses on *Chlamydia trachomatis* and *gonorrhea*, the two most communicable STDs in Utah. Data charts show that

25

both   diseases   had   a   48%   growth   rate   in   Utah   from   2004-2014.)
(http://ibis.health.utah.gov/phom/UDOH.html).

93.     Any concerns of establishing a brothel for fear of disease is misguided as the state already has an STD problem. If anything, brothels would help control diseases through mandatory safe sex as observed in many studies of Nevada brothels. Barbara G. Brents & Kathryn Hausbeck, *Violence and Legalized Brothel Prostitution In Nevada: Examining Safety, Risk, and Prostitution Policy,* University of Las Vegas (2005). In 2012, it was found that the Nevada brothels were more safe than the California porn industry. Ken Miller, *Study Says Nevada Brothel Workers Have A Lower STD Rate Than LA County Porn Actors.* Las Vegas Weekly. (2012). A regulated brothel can solve and prevent all of the problems listed in point 94. Several local government officials even agree that a brothel could do this if established in Salt Lake County. Stephen Dark, *Only the Lonely,* Salt Lake City Weekly (2016) (http://www.cityweekly.net/utah/ohhoney/Content?oid=3168969&storyPage=4).

94.     Furthermore, the fact that the governing majority in a state has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting its practice. *See, e.g., Baskin v. Bogan*, 766 F.3d 648, 669-70 (7th Cir. 2014) (Posner, J.) (citing *Loving v. Virginia*, 388 U.S. 1 (1967); *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012); and *Lawrence v. Texas*, 539 U.S. 558 (2003)).

95.     Utah's prohibition against the commercial exchange of private sexual activity in brothels is not narrowly tailored, nor is it the least restrictive means for advancing whatever governmental interest that the Defendants may claim the law advances.

96.     By prohibiting licensed brothels, the As Applied statutes precludes many individuals, including both those who want to sell their sexual services and those who want to buy them, from deciding how to conduct their private lives in matters pertaining to sex. This law

26

also significantly hinders, if not deprives, many individuals from their ability and right to engage in sexual intimacy.

97.      Insofar as they are enforcing Utah's brothel laws, the Governor, District Attorney, members of local and state commerce, and the Attorney General, acting under color of state law, are depriving and will continue to deprive Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

98.      Plaintiff is therefore entitled to a declaration of unconstitutionality and injunctive relief prohibiting the enforcement of As Applied sections of Title 76, Chapter 10, Sections 1302-1308 and As Applied sections of Title 47, Chapter 1.

## CLAIM TWO:
### Section 1983 Claim for Violation of Fourteenth Amendment
### Equal Protection Rights

#### A. Denial of Equal Protection of the Same End Goal of Intimacy

99.      Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

100.     To reiterate, Plaintiff Greer has a physical disability termed "Mobius Syndrome". A disability is defined by the ADA as an impairment – physical or mental – that impedes one or more of life's daily activities. *What Is the Definition of a Disability Under the ADA?* (https://adata.org/faq/what-definition-disability-under-ada). His disability has hindered his dating life in all aspects and he has not been able to meet a non-commercial partner due to it even when he has given his all and pursued all kinds of women online and in-person. While realizing that he is perfectly free to approach anybody and ask them out, that is not what Greer is arguing for. He wants to have the same end result of dating as non-disabled people freely get i.e. kissing and other intimacy which includes sex. He feels that not being able to pay a woman in Salt Lake

27

denies him of his equal protection rights as found in the 14th amendment. There are escort

companies in Salt Lake that are licensed, but they upsell their customers and usually do not offer

much more than a strip tease.

101.    The guarantees of the 14th amendment apply to all citizens of the United States

with equal opportunity of pertaining available rights. They are personal rights. *Shelley v. Kraemer*

(1948). In her concurring opinion, Justice O'Connor determined that the State of Texas could not

"control" the destinies of homosexuals from engaging in sexual privacy rights. *Lawrence v. Texas*

(2003). People with disabilities, such as Greer, face the same problem of having their destinies

being controlled by the State of Utah. The plight of people with disabilities to live their lives freely

has been an ongoing struggle due to discrimination. The discrimination was particularly brought to

light with the case of *Buck v. Bell* (1927) when Justice Holmes said that forced sterilizations of

people with disabilities was constitutional because "three generations of imbeciles are enough". It

wasn't even until the late 90s that federal law was signed to protect people with disabilities.

102.    Though the law may apply to all persons who engage in prostitution in a place of

prostitution in Utah regardless of difference in class, it is actually implicit discrimination against

disabled people. The law has a disparate impact on disabled people or those who are in other

circumstances because they comprise a higher percentage of patrons who pay for those kinds of

services. *Texas Department of Housing v. Inclusive Communities Project* (2015) (Disparate

impact litigants could cite statistical data to show discrimination, though, their claims would fail

if they could not show how the policies are discriminative).

103.    The As Applied sections of Utah's brothel laws are discriminative because they

are controlling of how one decides how to conduct their private lives. They force plaintiff and

others similarly situated to plaintiff to travel long distances to Nevada, basically being forced to

flee their homes to engage in legal conduct in another State, risking the perils that long distance

28

travel brings. But for those who cannot afford to travel or are afraid to travel or who have no car

or get sick travelling long distances, the law forces them to remain "unintimate" or to go into

criminal activity. There is no alternative for these people if they desire to have sex, but are

unable to get it because of the materialistic world and the judgement of people. It invades their

personal liberty choices. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 847

(1992). It is also an undue burden to plaintiff. It places a hardship on him due to the cost of the

brothels and the travel. *Id.* The brothels also allow smoking and the smoking is hazardous to

Greer's health as he is a non-smoker. When he usually returns from his trips, his suits reek of

cigarette smoke. Being forced to engage in a brothel where smoking is allowed in the open,

places terrible burdens on Greer and is a contributing factor as to why he has solicited in Salt

Lake because he wishes to not be around that atmosphere. *Id.*

      104.    With hook up apps and dating apps available for download, consensual sex is

happening 24/7. If a person wants to pay for sex in a safe, regulated place then he or she

shouldn't be condemned for it because non-commercial sex is already happening. In fact,

intimacy has been shown to have many healthy effects for a person, from increasing the immune

system to lowering the risk of heart disease. *The Top 11 Benefits of Sex* (2013).

(http://articles.mercola.com/sites/articles/archive/2013/11/18/11-sex- health-benefits.aspx)

*Lawrence* has truly opened the doors for the legalization of prostitution. To put it more precisely,

*Bowers v. Hardwick* (1986) said that if homosexual conduct was legalized, other "sexual crimes"

would follow, with Justice White concluding, "We are unwilling to start down that road."

*Lawrence* invalidated *Bowers* and Justice Scalia gave the same reasoning as Justice White did, in

his dissent. The toothpaste can't be put back into the tube now, so to speak. The can of worms

have been opened up, and it would be unconstitutional to say that some sexual conduct has rights

while other conduct does not. *Id.*

29

105.     The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) are implicitly discriminatory in that disabled people have a higher risk of being arrested for soliciting for sexual services than non-disabled people. It is honestly hard to gather statistics on patrons of prostitutes due to the illegal nature of the business. The arrest statistics that are available do not focus on disabilities or characteristic traits. They only focus on age range, ethnicity, marital status, and education. Charlotte Alter. *Cops Arrest 500 Johns in Sex Trade Crackdown*. Time. (August 5, 2014). But if one uses logic, they can turn to already legalized areas of prostitution and see that disabled people do comprise a large aspect of consumers: the Bunny Ranch; countries in Europe with legalized prostitution; etc. With reasonable presumption, disabled people here in Utah and elsewhere are engaging in it illegally. Marguerite Ward. *The Surprising Way the Netherlands is Helping Its Disabled Have Sex*. Mic.com. (March 13, 2014). Disability Studies Quarterly has established that sex and sex access is a right and obtaining the expression of that right does not matter whether it be commercial or non-commercial. Holly Anne Wade. *Discrimination, Sexuality and People with Significant Disabilities: Issues of Access and The Right to Sexual Expression in the United States*. Disability Studies Quarterly. (2002).  Whether that right is a fundamental right or a right proven under rational basis review does not matter. Both reviews and tests have been previously established in this legal brief. The brothel laws in the state of Utah are implicitly discriminative and must be struck down to allow legalization to allow access to sex for the disabled.

**B.  Denial of Equal Protection for Those Who Choose to Work in Prostitution**

106.     Sexually Oriented Businesses are regulated by the counties of Utah. *Utah Code 17-50-331*. These type of businesses include strip clubs, escort services, adult toy stores and pornographic book stores. They do not include prostitution. In fact, when one goes to register for

30

a Sexually Oriented Business, they are asked how they will stop prostitution from happening. In many cases, prostitution is still happening even after these businesses declare that they will not engage in prostitution.

107.    Plaintiff see the sexually oriented business laws of allowing some sexually oriented businesses and outlawing other sexually oriented businesses as a hypocritical form of law. In the City of South Salt Lake's Ordinance on Sexual Orientated Businesses, it even acknowledges that one of the secondary effects stemming from such businesses is prostitution. *An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.* (2012). An infamous study backs this up by saying that bikinis cause men to see women as objects and that action impulses can trigger the brain when looking at women. *Bikinis Make Men See Women As Objects, Scans Confirm.* National Geographic. (2009). Therefore, hypothetically speaking, if a stripper or an escort knows that they can make more money by working in prostitution by knowing that is what men want upon seeing their nakedness, then it puts the stripper or escort at risk of arrest of engaging in paid sexual intercourse.

108.    The reasonable thing to do would be to outlaw all sexually oriented businesses in the State, as seen with the State's declaration that porn is a health crisis. *Utah Declares Pornography a Public Health Crisis.* CBS News. (2016). Iceland did this years ago because they found that stripping fueled the sex trade. *Legislation Bans Stripping In Iceland.* Iceland Review. (2010). But the legislatures can't make stripping or escorting illegal due to the previous Supreme Court rulings that make that conduct protected under the 1st amendment. *Erie v. Pap's A.M.* (2000). Therefore, all sexually oriented businesses must be legalized to not deny workers and customers the right of equal protection. They are participants in the adult entertainment business

31

and deserve that protection. The As-Applied challenged laws must be struck down to allow

women the right to work in brothels. They have that right as much as stripping or being an

escort. As an unestablished business owner, Plaintiff can argue on behalf of the rights of the

women whom his business seeks to protect their interests, backed up by a long line of federal

precedent that associations can represent the interests of its members. See: *Hunt v. Washington

State Apple Advertising Commission* (1977)*; Planned Parenthood v. Casey* (1992) (in which

both cases had associations argue on behalf of its members). As a sole proprietor and denied

business owner, Plaintiff can argue in the prostitutes' interests.

## CLAIM THREE:
### Section 1983 Claim for Violation of Fourteenth Amendment Substantive Due Process Right to Earn a Living

109.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully
set forth herein.

110.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-
1304(iii); 76-10-1305(a)(e); As Applied 47-1) makes the act of running, erecting, owning,
working in a brothel (a house of prostitution) a crime in the State of Utah.

111.    Plaintiff and others desire to engage in the commercial exchange of sex, but
refrain from doing so for fear of being arrested and prosecuted. Alternatively, many persons,
whom Plaintiff has encountered, have in the past engaged in the commercial exchange of sex
despite the threats of criminal prosecution because this profession provides them with a
livelihood and the ability to support themselves and/or their families. They would like to do so in
the future in a safe, legal place, but for Utah's prohibition of brothels, they can't.

112.    Because these statutes severely infringe on the ability to earn a living through
one's chosen livelihood or profession, it unconstitutionally burdens the right to follow any of
the ordinary callings of life; to live and work where one will; and for that purpose to

32

enterinto all contracts which may be necessary and essential to carrying out these pursuits, all liberty interests protected by the Fourteenth Amendment right to substantive due process. *See e.g., Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Allgeyer v. Louisiana*, 165 U.S. 578, 589-90 (1897).

113.    Insofar as they are enforcing Utah's brothel laws, the District Attorney and the Attorney General, acting under color of state law, have deprived, are depriving, and will continue to deprive Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

114.    Plaintiff is therefore entitled to a declaration that As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) violate the substantive due process right to earn a living, and injunctive relief prohibiting the enforcement of the As Applied statutes as violative of the Fourteenth Amendment to the United States Constitution.

**CLAIM FOUR:**
**Section 1983 Claim for Violation of First Amendment**
**Freedom of Association**

115.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

116.    The First Amendment to the United States Constitution affords constitutional protection to the freedom of association. Construing this constitutional protection, the Supreme Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private

relationships. *Board of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987). Indeed, "the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Id.* at 545. "Such relationships may take various forms, including the most intimate." *Id.*`

117.    The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) severely infringe on the rights to freedom of association of many persons in the State of Utah, including Plaintiff herein. By prohibiting the commercial exchange of private sexual activity, many persons in the State of Utah, including Plaintiff herein, are unable to enter into and maintain certain intimate and private relationships.

118.    Insofar as they are enforcing Utah's prostitution laws, the District Attorney and the Attorney General, acting under color of state law, are depriving and will continue to deprive Plaintiff of rights secured by the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

119.    Plaintiff is therefore entitled to a declaration that The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) violate freedom of association, and injunctive relief prohibiting the enforcement of said laws as violative of the First Amendment to the United States Constitution.

## CLAIM FIVE:
### Violations of the Utah Constitution

120.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

121.     The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76
1304(iii); 76-10-1305(a)(e); As Applied 47-1) violates Article I, Section 7 of the Utah
Constitution by depriving Plaintiff and all others similarly situated the right to substantive
and procedural due process. In the manner set forth in Claims One and Three above, the
statutes impinge upon the fundamental rights to sexual privacy, to live and work where one
will, to pursue any livelihood or vocation, and to associate.

## CLAIM SIX:

### Newly Worded Laws Are Unconstitutionally Vague

122.     Plaintiff incorporates by reference each of the foregoing paragraphs as if fully
set forth herein.

123.     The As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-
1304(iii); 76-10-1305(a)(e); As Applied 47-1) also violate the United States Constitution
for being unconstitutionally vague.

124.     "A vague law impermissibly delegates basic policy matters to policemen,
judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant
dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford* (1972).
That is exactly at what's at issue here, in addition to the law being unconstitutional on the
abovementioned grounds.

125.     The Utah legislature during its 2017 legislative session, updated the prostitution
code and changed the wording of statutes pertaining to brothels from "house of prostitution" to
"place of prostitution", with the definition reading: "Place of prostitution" means a place or
business where prostitution or promotion of prostitution is arranged, regularly carried on, or
attempted by one or more persons under the control, management, or supervision of another."

*Utah Code 76-10-1301(3).* The amended changes were apparently made to "simplify" the

prosecution of prostitution. Ironically, these changes have complicated what exactly a place

of prostitution is.

126. By its very definition, a "place of prostitution" could be an already legally

established place. As discussed in Claim 6, heavy rumors concerning Trails strip club could

technically make that a place of prostitution. Instead, though, it is legally recognized as a strip

club. As seen before, the manager of the Doll House, an escort company in Salt Lake City,

was arrested for arranging his girls to accept money for sex. *Doll House Owner Accussed of*

*Running Prostitution Ring.* Salt Lake Tribune. 2008.

(http://www.sltrib.com/news/ci_9857789). He wasn't shut down until one of his workers

turned him in. Another currently functioning escort company, Escort Companions, has had

reports of workers engaging in prostitution. In fact, one worker gave Plaintiff a handjob which

is illegal. If one reads reviews on the sites of these escort companies, there are hints of illegal

activity. Thus, it is not only arbitrary and hypocritical, but also vague which could make

potential and unestablished business owners like plaintiff confused as to if a currently legal

company automatically becomes illegal under this new law because of current and past

conduct of these so called "legal businesses".

127. The law isn't vague as to where plaintiff can't understand it, as he obviously

knows his proposed business falls into this category. What concerns plaintiff and gives him

standing to raise vagueness is the seemingly arbitrariness of the statute. Basically, the state and

those in authority to charge those in violation of the statute can arbitrarily choose to go after

obvious brothels, but not go after legal places that may be practicing prostitution like Trails, a

massage parlor or other businesses that engage in prostitution or related activities. It denies

plaintiff of his due process knowing that other businesses are doing illegal things, yet plaintiff is trying to legalize, but the law won't let him.

128. Plaintiff is therefore entitled to a declaration that the As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1) are unconstitutionally vague as in violation of the United States Constitution.

## IRREPARABLE INJURY

129. Plaintiff incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

130. Plaintiff are now severely and irreparably injured by the As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1, state laws that violate the Due Process Clause of the Fourteenth Amendment. By way of example only, Plaintiff' injuries include the deprivation of rights guaranteed by the Fourteenth Amendment and the severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma caused by the State of Utah's restrictions on Plaintiff' ability to decide how to conduct their private lives in matters pertaining to sex. Plaintiff' injuries will be redressed only if this Court declares the As Applied Challenged laws unconstitutional and enjoins the Governor, District Attorney and the Attorney General from enforcing the laws and allowing Plaintiff to apply for a business license to start the Mile High Neon brothel.

131. An actual and judicially cognizable controversy exists between Plaintiff and Defendants regarding whether the As Applied Challenged brothel laws violate the federal and state constitutions with questions raised as to whether the above laws violate Plaintiff's equal protection and due process rights, and his rights associated with whom they want by starting a business.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.  A declaration that Utah's brothel statutes, As Applied brothel laws of Utah (76-10-1302(b); 76-10-1303(b); 76-1304(iii); 76-10-1305(a)(e); As Applied 47-1), are unconstitutional;

2.  Preliminary and permanent injunctive relief prohibiting Defendants from enforcing mentioned statutes of the Utah Code, and allowing Plaintiff to obtain a business registration and to work with the Utah legislature to create laws for allowance of a legal brothel.

3.  An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

4.  Any other such award or relief that the Court finds justified under the circumstances.

Dated: September 09, 2017

RUSSELL G. GREER
PRO SE LITIGANT

By: /s/ Russell G. Greer
Russell G. Greer

## CERTIFICATE OF SERVICE:

I certify that on September 11, 2017, a true and correct copy of the SUPPLEMENTAL COMPLAINT was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.

Gmsoderberg@utah.gov

David Quealy, Counsel for County Defendants Gill, McAdams & Yoshinaga

dquealy@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski

Catherine.Brabson@slcgov.com

Catherine L. Brabson (#6500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone:   (801) 535-7788
Facsimile:   (801) 535-7640
Catherine.Brabson@slcgov.com

*Attorney for Defendants Jackie Biskupski and James Allred*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>          Plaintiff,<br><br>     vs.<br><br>GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the Count of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,<br><br>          Defendants. | **MOTION TO DISMISS SUPPLEMENTAL COMPLAINT FOR FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:16-cv-01067<br><br>Judge Dustin B. Pead |

Defendants Jackie Biskupski and James Allred in their official capacity (collectively the "City Defendants"), by and through counsel of record, and pursuant to Federal Rules of Civil Procedure 12(b)(6) and DUCivR 7-1, move to dismiss Plaintiff's Supplemental Complaint (Dkt. #55) for failure to state a claim for relief.

## STATEMENT OF RELIEF SOUGHT

The City Defendants seek dismissal of the five causes of action asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff lacks standing to assert claims against them. Moreover, under the standard of Rule 12(b)(6), the factual allegations do not state federal constitutional violations by the City Defendants, nor does Plaintiff appear to seek redress from the City Defendants. Plaintiff's claims under the Utah Constitution should be dismissed for the same reasons.

Additional grounds supporting dismissal are set forth in the motion to dismiss filed by Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Division of Corporations and Commercial Code (collectively, the "State Defendants"). As explained at length by the State Defendants, the challenged statutes are not unconstitutional, either on their face, or as applied to Plaintiff. These arguments apply with equal weight to the claims asserted against the City Defendants.

## PLAINTIFF'S ALLEGATIONS AGAINST THE CITY DEFENDANTS

Plaintiff seeks to challenge the constitutionality of certain criminal and civil laws enacted by the State of Utah relating to prostitution and the prohibition on patronizing a prostitute. Specifically, Plaintiff seeks declarative and injunctive relief challenging the constitutionality of Utah Code §§ 76-10-1302, -1303, -1304, -1305, -1308 and Utah Code § 47-1-1 et seq. *See*

Page 2

Supplemental Complaint, ¶¶ 25-31. Plaintiff claims that enforcement of these state criminal statutes by the Governor, the Utah Attorney General and the Salt Lake County District Attorney violates his federal and state constitutional rights to due process, equal protection, freedom of speech, and freedom of association. *See* Supplemental Complaint, ¶¶ 31, 87-88, 97-98, 105, 108, 133-14, 118-19, 121. Plaintiff also asserts a claim that these statutes are unconstitutionally vague. *See* Supplemental Complaint, ¶¶ 122-28.

Defendant Biskupski is named solely in her official capacity as Mayor of Salt Lake City Corporation and Defendant Allred is named solely in his official capacity as the Business Licensing Manager for Salt Lake City Corporation. *See* Supplemental Complaint, ¶¶ 12, 15.

## ARGUMENT

I.      **Rule 12(b)(6) Standard of Review.**

Federal Rule of Civil Procedure 12(b)(6) provides that the Court may dismiss any claim that "fail[s] to state a claim upon which relief can be granted." When considering a motion to dismiss, the Court views the complaint in a light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). Nevertheless, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**II.    Plaintiff Lacks Standing to Assert Claims Against the City Defendants.**

Plaintiff has not plausibly alleged facts that would establish the required elements of standing with regard to the City Defendants. In order to establish a case or controversy, plaintiff bears the burden of demonstrating:

> (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). With respect to constitutional challenges to criminal statutes, Plaintiff must show a credible threat of prosecution. *Id.* at 1107. More importantly, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision. *Id.* at 1109. A plaintiff lacks standing in circumstances where the defendant has no ability to enforce a statute in her individual capacity. *See id.* (finding plaintiff lacked standing to assert a challenge to criminal statutes prohibiting polygamy against the County Clerk, since she had no authority to initiate a criminal prosecution). Likewise, Plaintiff must show redressability – the likelihood that the injury-in-fact will be redressed by a favorable decision. *Id.* at 1111. This element is not satisfied when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute. *See id.* (concluding that the requested injunctive and declaratory relief against the County Clerk would be meaningless since it would not protect plaintiffs from the threat of future criminal prosecution for polygamy by state prosecutors).

In this case, Plaintiff Greer does not allege any specific action or threatened conduct by either Defendant Biskupski or Allred that has caused him injury. Plaintiff's alleged injuries are: he was denied a business license from the State of Utah to operate a brothel, he is subject to potential prosecution by the Salt Lake County District Attorney and/or the Utah Attorney General for soliciting prostitutes, and he has suffered economic harm from being forced to travel to other states where prostitution is legal. *See* Supplemental Complaint, ¶¶ 51-55, 58, 97, 103, 111, 113, 118. Notably, Plaintiff does not allege that he is potentially subject to any threat of prosecution by Salt Lake City.[1]  Likewise, Plaintiff has not alleged that he attempted to register or apply for a business license from Salt Lake City. Indeed, the only allegation against Mayor Biskupski merely identifies her as an elected official who "exercises the executive and administrative powers of the municipality." *See* Supplemental Complaint ¶ 12. The only allegation against Mr. Allred is that he is "responsible for overseeing the business licensing in Salt Lake City which included Sexual Oriented Businesses." *See* Supplemental Complaint ¶ 15. Even assuming Plaintiff was harmed by the State's denial of a business registration, he cannot "trace" that harm to the action of Mayor Biskupski or Mr. Allred. Similarly, Plaintiff has not shown how the requested relief against these Defendants would redress his harm. Like the County Clerk in *Bronson*, the Mayor and Mr. Allred do not have authority to enforce or change state law or require the state to provide a business registration to Plaintiff. Accordingly, Plaintiff

---

[1]     Under Utah Code § 10-3-928, the City Attorney may prosecute violations of City ordinances, and may prosecute, under state law, infractions and misdemeanors occurring within the boundaries of the municipality. This authority does not extend to Mayor Biskupski nor Mr. Allred.

Page 5

cannot establish injury-in-fact, causation or redressability, and all of Plaintiff's claims against the

City Defendants fail as a matter of law for lack of standing.

### III.     Plaintiff Fails to State a Factual Basis for Section 1983 Claims Against the City Defendants.

Assuming Plaintiff can demonstrate sufficient facts to support standing to assert his

claims, Plaintiff does not allege a factual basis for his claims against the City Defendants, nor

does he appear to seek redress against them. Therefore, Plaintiff fails to state a claim for liability

under 42 U.S.C. § 1983.

Section 1983 provides a remedy against "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected . . . to

the deprivation of any rights, privileges or immunities secured by the Constitution and Laws . . ."

42 U.S.C. § 1983. Section 1983 creates a federal cause of action for damages to vindicate alleged

violations of the Constitution and federal laws by individuals acting "under color of state law."

42 U.S.C. § 1983; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). The statute does not

create any substantive civil rights, but is only a procedural mechanism for enforcing existing

rights. *Gallegos v. City & County of Denver*, 984 F.2d 358, 362 (10th Cir. 1993).

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must

allege "(1) a violation of rights protected by the federal Constitution or created by federal statute

or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color

of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia. *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005). Plaintiff fails to plead these

elements with respect to the City Defendants. The Complaint includes almost no facts about the

Page 6

City Defendants. At most, Plaintiff alleges that Ms. Biskupski is the Mayor and James Allred is

the Business License Manager for Salt Lake City Corporation. (*See* Supplemental Complaint ¶¶

12, 15). The laws challenged by Plaintiff are state laws passed by the Utah Legislature. Plaintiff

does not allege any conduct of the City Defendants that relates to these state laws. Accordingly,

Plaintiff does not sufficiently state a cause of action under § 1983 against the City Defendants.

## IV.   Plaintiff's State Constitution Claims Should Be Dismissed.

Just as with his federal constitutional claims, Plaintiff fails to allege any facts against the

City Defendants that would state a claim for relief under the Utah Constitution. Accordingly, the

Fifth Cause of Action should therefore be dismissed.

## V.   The Challenged Statutes are not Unconstitutional.

The City Defendants join in the arguments set forth in the motion to dismiss filed by

Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg,

Division Director of the Division of Corporations and Commercial Code (collectively, the "State

Defendants"). The arguments advanced by the State Defendants concerning the constitutionality

(state and federal) of Utah's laws criminalizing prostitution apply equally to Plaintiff's claims

asserted against the City Defendants. The City Defendants hereby adopt these arguments as their

own and join in the points and authorities advanced therein. *See* DUCivR 7-1(a)(4) (permitting

joinder in motions filed by other parties via filing of separate motion and adoption by reference);

Fed. R. Civ. P. 10(c) (permitting adoption by reference). Based on these arguments, Plaintiff's

Supplemental Complaint against the City Defendants should be dismissed with prejudice.

**CONCLUSION**

Plaintiff's Supplemental Complaint (Dkt. #55) should be dismissed against the City

Defendants, Mayor Biskupski and Mr. Allred, with prejudice.

DATED this 26th day of September, 2017.

/s/   Catherine L. Brabson
CATHERINE L. BRABSON
*Attorney for Defendants Jackie Biskupski*
*and James Allred*

Page 8

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of September, 2017, a true and correct copy of the **MOTION TO DISMISS SUPPLEMENTAL COMPLAINT AND MEMORANDUM IN SUPPORT** was electronically filed with the Court using the CM/ECF system, which sent notice to the following:

Gregory M. Soderberg
David N. Wolf
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
gmsoderberg@agutah.gov
dnwolf@agutah.gov
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

David M. Quealy
Jennifer Bailey
SALT LAKE COUNTY DISTRICT ATTORNEY'S OFFICE
2001 South State Street, Suite S3-600
Salt Lake City, UT 84190
dquealy@slco.org
jenbailey@slco.org
*Attorney for Defendants Sim S. Gill, Ben McAdams, and Rolen Yoshinaga*

was sent via email and first class mail, postage prepaid, to the following:

Russell Greer
1450 South West Temple, # D 206
Salt Lake City, UT 84115
russmark@gmail.com
*Plaintiff pro se*

          /s/   Lindsay Ross

HB #63959

Page 9

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: gsoderberg@agutah.gov

*Counsel for State Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>        Plaintiff,<br><br>v.<br><br>GARY R. HERBERT, in his official capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake; BEN McADAMS, in his official capacity as Mayor of the County of Salt Lake; KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>        Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT**<br><br><br><br>Case No. 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

MOTION................................................................................................................ vii

INTRODUCTION .............................................................................................. viii

LEGAL STANDARD............................................................................................. ix

ARGUMENT .......................................................................................................... 1

   1.   Plaintiff Has Standing Except as To Claims Asserted on Behalf of Others........................ 2

   2.   Plaintiff's Controversy is Ripe for Judicial Review........................................... 5

   3.   Plaintiff's Constitutional Claims Are Analyzed Under Facial Standards ........................... 6

   4.   Plaintiff's Substantive Due Process Claims Fail. ............................................... 11

      A.   THE RELATIONSHIP BETWEEN PROSTITUTE AND CLIENT IS NOT PROTECTED BY THE DUE PROCESS CLAUSE. .................................................. 11

      B.   UTAH'S LAWS CRIMINALIZING PROSTITUTION ARE RATIONALLY RELATED TO LEGITIMATE GOVERNMENT INTERESTS................................. 13

   5.   Plaintiff's Equal Protection Claim Fails Because the Acts Are Neutral and There Is No Discriminatory Purpose Toward People with Disabilities. ................................................. 16

   6.   Plaintiff's Due Process Claim to a Right to Earn a Living as Sole Proprietor of a Brothel Fails Because Prostitution Is Illegal. ................................................................ 18

   7.   There Is No Associational Right Between Prostitute and Client. ..................................... 19

   8.   Plaintiff's Claims Under the Utah Constitution Should Be Dismissed. ............................ 19

   9.   Utah's Prostitution Statutes Are Not Unconstitutionally Vague....................................... 21

CONCLUSION....................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697 (10th Cir. 2014) ........................... 1

*Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502 (10th Cir. 1991) ............... 14, 16

*Am. Bush v. City of S. Salt Lake*, 2006 UT 40, 140 P.3d 1235 ............................................... 20, 21

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) ............................................................ vii, ix, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ ix

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ................................................. 18

*Bishop v. Wood*, 426 U.S. 341 (1976) ......................................................................................... 18

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) ..................................................... 18

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) ..................................................................... 2

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013) ......................... ix

*Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016 (10th Cir. 2014) .............. 5

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) ........................................ 19

*Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394 (10th Cir. 1992) ................................ 5

*Conn v. Gabbert*, 526 U.S. 286 (1992) ....................................................................................... 18

*Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592 (2010) .............................................................. 14, 15

*Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) ....................................................... 8

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, No. C 15-01007 JSW, 2016 WL 1258638 (N.D. Cal. Mar. 31, 2016) ...................................................................................... 12

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) .................................................................. 11

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ................................................................ 19

iii

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................... 21, 22

*Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004) ................................. 14

*Heller v. Doe by Doe*, 509 U.S. 312 (1993).................................................................. 14

*IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir. 1988).......................................... ix, 13, 19

*Johnson v. United States*, 135 S.Ct. 2551 (2015) .......................................................... 21

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014)...................................................... 2, 3

*Lawrence v. Texas*, 539 U.S. 558 (2003).......................................................... vii, ix, 11, 12, 13

*Love v. Superior Court*, 226 Cal. App. 3d 736 (1990)...................................................... 15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................................ 2

*Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991) ............................................................ 1

*Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005) ............................................................... 12

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995) ...................... 5, 6

*Northern Mariana Islands v. Taman*, 2014 WL 4050021 (N. Mar. I. 2014)............................... 15

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ................................... ix, 19, 20

*People v. Grant*, 195 Cal. App. 4th 107 (2011) ..................................................... 15, 16

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ....................................... 16, 17

*Petrella v. Brownback*, 787 F.3d 1242 (10th Cir. 2015)................................................. 11

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) ...................................................... 13

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ................................................... 11, 13

*Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997) ............... 20

*Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008) ................................... 11, 12, 14, 17

*Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013)....................................... ix

iv

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................... 2

*State v. Hernandez*, 2011 UT 70, 268 P.3d 822 .............................................................. 20

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................. 3, 4

*Summit Water Distribution Co. v. Summit Cty.*, 2005 UT 73, 123 P.3d 437............................. 21

*Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)................................... 1

*Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007) ................................................... 11, 14

*United States v. Carter*, 266 F.3d 1089 (9th Cir. 2001)............................................... 14

*United States v. Pruitt*, 502 F.3d 1154 (10th Cir. 2007) ............................................. 10

*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016).............. 6, 7, 8, 9

*United States v. Welch*, 327 F.3d 1081 (10th Cir. 2003) ......................................... 21

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................................ 11, 12

*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ..................................... 20

*Williamson v. Lee Optical of*, Okla., 348 U.S. 483 (1955) ...................................... 18

**Statutes**

Article 12 section 20 of the Utah Constitution ........................................................ 21

Utah Code Ann. § 16-10a-126 ............................................................................... 5

Utah Code Ann. § 42-2-5 ........................................................................................ 6

Utah Code Ann. § 76-10-1304(1)(iii) ................................................................... 22

Utah Code Ann. §§ 76-10-1302–76-10-1305 ........................................... vii, viii, ix

**Rules**

Fed. R. Evid. 201 ................................................................................................. 14

Federal Rule of Civil Procedure 12(b)(6) ................................................. vii, viii, 1

v

**Other Authorities**

*Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523 .......................................... 15

*Prostitution Trafficking, and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 Yale J.L. & Feminism 109 .............. 14, 15

# MOTION

Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Division of Corporations and Commercial Code ("State Defendants"), through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and District of Utah Local Rule 7-1, submit this Motion to Dismiss and Supporting Memorandum. Plaintiff's Supplemental Complaint should be dismissed primarily because the Due Process Clause has never been found to protect the relationship between a prostitute and a client.

Plaintiff challenges Utah laws that make prostitution and brothels illegal. Supp. Compl. ¶¶ 1–2 doc. 55; Utah Code Ann. §§ 76-10-1302–76-10-1305 (criminalizing prostitution and solicitation); *id.* § 47-1-1 (declaring brothels nuisances). Plaintiff argues, *inter alia*, that private consensual sexual activity between adults is a protected liberty interest. Supp. Compl. ¶¶ 1–3 doc. 55.

The Court should dismiss Plaintiff's claims because 1) the liberty interests protected under the Due Process Clause do not include the relationship between prostitute and solicitor; 2) the laws in question are neutral and do not discriminate against persons with disabilities; 3) there is no substantive due process right to earn a living as a prostitute; and 4) the First Amendment's freedom of association does not protect the relationships at stake in the context of prostitution. Similarly, the relationship or conduct at issue is not protected by analogous provisions of the Utah Constitution, and the challenged statutes are not unconstitutionally vague.

The State Defendants ask the Court to find that the statutes are constitutional and dismiss Plaintiff's Supplemental Complaint.

# MEMORANDUM

## INTRODUCTION

Pursuant to the Court's Ruling & Order dated August 30, 2017 (doc. 53), the State

Defendants submit this Motion to Dismiss Plaintiff's Supplemental Complaint. Per the Court's

Order, the State Defendants' revised Motion comprehensively addresses jurisdictional

arguments, claim based arguments, and supplements to the Complaint.

Prostitution and the solicitation of prostitutes are crimes in Utah, punishable as

misdemeanors, or in some cases as felonies. *See* Utah Code Ann. §§ 76-10-1302–1305

(criminalizing prostitution and solicitation), § 47-1-1 (declaring brothels nuisances). Plaintiff

asks this Court to strike down Utah laws that criminalize prostitution and brothels (the "Acts"),

claiming that the Acts, as applied to Plaintiff, violate his Fourteenth Amendment right to

substantive due process, his Fourteenth Amendment right to equal protection, his First

Amendment right to freedom of association, and analogous provisions of the Utah Constitution.

Supp. Compl. pp. 23–36 doc. 55.

The Court should dismiss Plaintiff's Supplemental Complaint as a matter of law. The

standard for review of the Acts is rational basis, not heightened or strict scrutiny, because the

Due Process Clause does not protect the relationship between a prostitute and a solicitor. *See*

*Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (distinguishing its holding from application in the

context of prostitution)[1]. Neither is there a fundamental right to engage in prostitution or to

solicit prostitution. Prostitution and solicitation are not expressive conduct protected by the First

---

[1] Importantly, in *Lawrence*, the Court applied rational basis review, because no fundamental
right was implicated 539 U.S. at 579. The Court concluded that Texas's stated government
interest of "promotion of morality" was not legitimate. *Id.* at 582–83.

Amendment. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704–05, 707 (1986). And the

relationship between prostitute and client is not an expressive association protected by the First

Amendment. *See IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1195–96 (9th Cir. 1988). Courts

have uniformly concluded that there is no substantive due process right to work as a prostitute.[2]

*See e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

  Plaintiff's analogous claims under the Utah Constitution also fail. These claims are

barred by the Eleventh Amendment, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89

(1984), and are foreclosed by multiple state court decisions holding that the Utah Constitution

provides less protection to the relationship and conduct at issue here than the United States

Constitution.

## LEGAL STANDARD

  To survive a motion to dismiss, Plaintiff's Complaint "must plead facts sufficient to state

a claim to relief that is plausible on its face." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d

1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

The court must "accept all the well-pleaded allegations of the complaint as true and must

---

[2] Plaintiff's Claim 2(B) states a claim of "Denial of Equal Protection for Those Who Choose to Work in Prostitution." Supp. Compl. p. 30 doc. 55. This claim relates to "allow[ing] women the right to work in brothels," as well as Mr. Greer's alleged right to be the proprietor of a brothel. *Id.* p. 32. Since co-Plaintiff Tricia Christie withdrew from this lawsuit, the Court should dismiss Plaintiff's claim related to an alleged right to work as a prostitute. As set forth below, Plaintiff lacks standing to assert this claim on behalf of others.

ix

construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## ARGUMENT

Pursuant to the Court's August 30, 2017 Order, the State Defendants here include arguments previously made regarding standing, ripeness, and whether Plaintiff's claims are facial or as-applied. Order p. 13 doc. 53. The State Defendants agree that Plaintiff has standing (in relation to the State Defendants), except to assert his claim 2(B) for the right to work as a prostitute. The State Defendants also agree that Plaintiff's claims are ripe in relation to the State Defendants, because his business registration was denied and Plaintiff has engaged in illegal conduct. Additionally, Plaintiff's claims raise facial challenges to Utah's laws.

Plaintiff's arguments fail as a matter of law because 1) the prostitute-client relationship is not protected by the Due Process Clause; 2) the Acts are rationally related to legitimate government interests; 3) the Acts are neutral and do not discriminate against people with disabilities; 4) Mr. Greer does not have a constitutional right to work as a brothel proprietor and does not have standing to assert claims on behalf of prostitutes alleging they have a right to work as prostitutes; 5) there is no associational right between prostitute and client; 6) the Utah Constitution does not protect Plaintiff's asserted rights; and 7) the Acts are not unconstitutionally vague.

1

**1. Plaintiff Has Standing Except as To Claims Asserted on Behalf of Others.**

Standing consists of three elements: (1) the plaintiff must have suffered an injury in fact; (2) fairly traceable to the challenged conduct of the defendant; and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At the pleading stage, the plaintiff "must clearly . . . allege facts demonstrating each element." *Id.* (citation and quotation marks omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017).

Regarding licenses or business registrations, the Tenth Circuit concluded, in the context of marriage licenses, that plaintiffs possessed standing after being denied licenses because, in part, the plaintiffs "identified several harms that flow[ed] from th[at] denial . . . ." *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014).

Regarding pre-enforcement challenges, "[w]hen a plaintiff alleges injury arising from the potential future enforcement of a criminal statute, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Brown*, 822 F.3d at 1165 (citation and quotation marks omitted). "Instead, a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Kitchen,* 755 F.3d at 1201. (citation and quotation marks omitted).

When a plaintiff sues public officials, a plaintiff can satisfy the causation and redressability requirements of standing by demonstrating "a meaningful nexus" between the defendant and the asserted injury." *Id.* (citation omitted). Causation requires the defendants "to possess statutory authority to enforce the complained-of provision, and the redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Id.* (citations omitted).

Regarding associational standing, a plaintiff must "make specific allegations establishing that at least one identified member ha[s] suffered of would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009).

*Plaintiff Has Alleged an Injury in Fact*

Here, Plaintiff has alleged an injury in fact because he was denied a business registration by the Division of Corporations and Commercial Code, and because he has engaged in a course of conduct arguably affected with a constitutional interest, but proscribed by statutes, and there exists a credible threat of prosecution.[3] Plaintiff attempted to take the first step in registering, licensing, and starting a business as a sole proprietor by filing for a business registration with the Division of Corporations and Commercial Code. Plaintiff has also stated repeatedly that he has paid for sex in Salt Lake City in the past, and he fears being prosecuted for doing so in the future. *See, e.g.*, Supp. Compl. ¶¶ 57–58 doc. 55. Being denied a business registration and fearing prosecution are sufficient to demonstrate that Plaintiff has suffered an injury in fact.

---

[3] Arguments made herein apply only to the State Defendants. Mr. Greer likely lacks standing for his claims against County and City Defendants, because he has not been injured by them, and his alleged injuries are not traceable or redressable by them.

3

*Plaintiff's Alleged Injury is Traceable to and Redressable by the State Defendants*

Plaintiff has sued Governor Herbert, Attorney General Reyes, and Kathy Berg, among other Salt Lake City and Salt Lake County officials. Supp. Compl. ¶¶ 9–16 doc. 55. Plaintiff argues he has been harmed by the State's denial of a business registration to open a brothel, *id.* ¶ 55, and argues that he fears prosecution by State or County attorneys for violating Utah's prostitution and brothel laws, *id.* ¶ 58. Because Governor Herbert and Attorney General Reyes are responsible for promulgating and enforcing Utah law, and because Ms. Berg administers Utah law related to obtaining business registrations, Mr. Greer's alleged injuries are properly traceable to and redressable by the State Defendants. Accordingly, the State Defendants agree that Plaintiff Russell Greer has standing to sue the State Defendants for his alleged injuries and claims based on Utah's prostitution and brothel laws, except for Plaintiff's claim regarding the right to work as a prostitute.

*Plaintiff Lacks Standing to Assert a Claim on Behalf of Future Brothel Workers*

Plaintiff lacks associational standing to assert claim 2(B) regarding a right to work as a prostitute because he has failed to make specific allegations establishing that at least one identified member has suffered or would suffer harm. *Summers*, 555 U.S. at 498. Neither is Plaintiff stating the claim as an association. At most, Plaintiff is seeking to state the claim as a future business owner on behalf of his future employees. Such an attenuated relationship is not sufficient to support associational standing or to assert a claim on behalf of Plaintiff's alleged future workers.[4]

---

[4] "An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested

4

### 2. Plaintiff's Controversy is Ripe for Judicial Review

For a claim to be justiciable under Article III, it must be shown to be a ripe controversy, meaning that "the issue arises in a specific dispute having real-world consequences." *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (citation omitted). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Id.* (citation omitted).

Two factors determine ripeness: the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citation omitted). "In determining whether an issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citation and quotation marks omitted). In other words, courts focus on whether a challenged government action is final, whether a determination turns upon strictly legal issues, or whether further facts must be developed. *Id.* The second factor is assessed by determining whether the challenged action creates a direct and immediate dilemma for the parties. *Id.*

First, Plaintiff's claims are ripe because the government action here is final and the determination of Plaintiff's claims turns on legal issues.[5] Plaintiff's request for a business registration was denied by the Division of Corporations and Commercial Code. That denial is final and not appealable or reviewable. The requirements of Utah Code Ann. § 16-10a-126,

---

requires the participation of the individual members in the lawsuit." *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1397–98 (10th Cir. 1992) (citation omitted).

[5] Arguments made herein apply only to the State Defendants. Mr. Greer's claims against the City and County Defendants are likely not ripe, because Mr. Greer never sought a license for his business from the City or County.

allowing an appeal to the district court if the Division of Corporations and Commercial Code

denies a filing related to the formation or amendment of corporations, does not apply here

because Plaintiff's filing was for a DBA business registration under Utah Code Ann. § 42-2-5.

Additionally, Plaintiff's claims turn on legal issues and do not require that facts be

developed. Mr. Greer is not required to begin operating a brothel before challenging Utah's laws.

Mr. Greer attempted to take the first step in the process, but was prevented from doing so. And

Mr. Greer has specifically set forth his business plan for operating a brothel in Salt Lake City.

Suppl. Compl. at 19–23 doc. 55. Accordingly, Plaintiff's claims turn on legal issues.

Finally, the denial of a business registration creates a direct and immediate dilemma for

Mr. Greer. He has demonstrated his intent to start a brothel in Salt Lake City, and alleges that he

would like to do so immediately. *Id.* He alleges that the denial of a business registration directly

and immediately halted his intentions to start a brothel. Accordingly, the State Defendants agree

that Mr. Greer's claims are ripe for adjudication.

### 3. Plaintiff's Constitutional Claims Are Analyzed Under Facial Standards

In determining whether a constitutional challenge is facial or as-applied, the Tenth

Circuit asks parties to consider "three key lessons . . . ." *United States v. Supreme Court of New*

*Mexico,* 839 F.3d 888, 914 (10th Cir. 2016) (*petition for cert. filed June 6, 2017*). First, "the

labels the parties attach to claims are not determinative . . . ." *Id.* Second, in determining whether

to apply facial standards to the claim, "the court must focus on whether the claim and the relief

therein extend beyond the plaintiffs' particular circumstances . . . ." *Id.* Third, "if the claim and

relief do so, facial standards are applied but only to the universe of applications contemplated by

6

plaintiffs' claim, not to all conceivable applications contemplated by the challenged provisions."
*Id.*

These lessons were applied in *Supreme Court of New Mexico*, where the Tenth Circuit affirmed a district court decision that a rule prohibiting a federal prosecutor from subpoenaing a lawyer to present evidence about a past or present client in a grand-jury or other criminal proceeding violated the Supremacy Clause. *Id.* at 893. The district court concluded the rule was preempted with respect to federal prosecutors practicing before grand juries, but was not preempted outside of the grand jury context. *Id.*

In analyzing whether the United States' challenge was facial or as-applied, the Tenth Circuit concluded that the challenge had characteristics of both facial and as-applied challenges. *Id.* at 908. The challenge was facial in nature "because it attack[ed] [the rule's provisions] on purely legal grounds . . . and contend[ed] that they [were] per se invalid. In this regard, the claim d[id] not relate to the circumstances of any particular attorney subpoena or any particular trial or grand-jury investigation." *Id.* But the challenge also had "characteristics of an as-applied challenge because it focuse[d] solely on the constitutional ramifications of [the rule's provisions] as they appl[ied] to a specific, narrowly defined group—federal prosecutors licensed in New Mexico . . . ." *Id.* Regarding the relief requested, the Tenth Circuit concluded that Plaintiff did not seek a determination that the rule [was] invalid as applied to any other category of prosecutors, and thus not all applications of the challenged provisions [were] encompassed by the claim." *Id.*

Instead, the Tenth Circuit held that that "facial standards should be applied to the United States's preemption claim but only to the extent that the challenged provisions of [the rule]

impact federal prosecutors licensed in New Mexico and their attorney-subpoena practices." *Id.* at
916. The court's rationale was based, in part, on the observation that "the United States's claim
and its desired relief clearly extend beyond the particular circumstances of any particular federal
prosecutor issuing an attorney subpoena." *Id.* Accordingly, the court applied typical facial
challenge analysis, that "is best understood as 'a challenge to the terms of the statute, not
hypothetical applications' and is resolved 'simply by applying the relevant constitutional test to
the challenged statute without attempting to conjure up whether or not there is a hypothetical
situation in which application of the statute might be valid.'" *Id.* at 917 (quoting *Doe v. City of
Albuquerque*, 667 F.3d 1111, 1127, 24 (10th Cir. 2012)).

Turning to the present case, Plaintiff's challenges have characteristics of both as-applied
and facial challenges. Plaintiff's claims consistently refer to the Statutes as "the as applied
brothel laws of Utah" but also reference the laws' impact on "many persons in Utah." *See* e.g.,
Supp. Compl. p. 32 ¶ 111 doc. 55. In the Prayer for Relief, the Supplemental Complaint asks the
Court to declare that the "[a]s [a]pplied brothel laws of Utah . . . are unconstitutional" and asks
for injunctive relief so that Plaintiff may obtain a business registration to operate a brothel in the
State of Utah. *Id.* at 33 ¶ 114. Plaintiff's complaint also characterizes each of his claims as as-
applied challenges. *E.g.*, *id.* at ¶¶ 90, 96, 98, 103, 105. Because the claims have characteristics of
both as-applied and facial challenges, the Court should apply the Tenth Circuit's three-part
analysis to each of the Plaintiff's claims to determine the appropriate standard.

*Plaintiff's First Substantive Due Process Claim is Analyzed Under a Facial Standard*

Plaintiff's substantive due process claim asserts an as-applied challenge aimed at subparts
of Utah's prohibition against places of prostitution. Supp. Compl. pp. 23–27 doc. 55. However,

8

271

an order from this Court that the law violates Plaintiff's substantive due process right to private sexual conduct would extend far beyond Plaintiff and affect the application of the law to everyone in Utah. Under *Supreme Court of New Mexico,* this implicates a facial challenge. 839 F.3d at 914. Accordingly, the Court need only analyze "the universe of applications contemplated by plaintiffs' claim." *Id.* Following *Supreme Court of New Mexico,* this Court should thus apply the "relevant constitutional test," which is rational basis review. *Id.* at 917.

*Plaintiff's Equal Protection Claims are Analyzed Under a Facial Standard*

Plaintiff alleges Utah's prostitution laws violate the Equal Protection Clause because they have a disparate impact on physically disabled individuals such as himself. Suppl. Compl. pp. 27–30 doc. 55. Plaintiff does not allege that his business license was denied because of physical disability. *Id.* Rather that Utah's laws disparately impact disabled individuals. *Id.* Accordingly, his challenge possesses aspects of facial and as-applied challenges, and therefore facial standards are applied "only to the universe of applications contemplated by plaintiff's claim." *Supreme Court of New Mexico*, 839 F.3d at 914. The relevant constitutional test for this claim, then, is whether the laws have a disproportional effect and whether the impact can be traced to a discriminatory purpose.

Plaintiff also alleges the laws deny him equal protection because they deny people seeking to work in prostitution the legal right to do so, while those working in other adult businesses such as strip clubs or escort services enjoy legal protection. Suppl. Compl. pp. 30–32 doc. 55. This claim is a facial challenge because it argues that all those seeking to work in prostitution are discriminated against under Utah law.

9

272

*Plaintiff's Free Association Claim is Analyzed Under a Facial Standard*

Plaintiff's Freedom of Association claim asks the Court to conclude that the First Amendment protects "the commercial exchange of private sexual activity . . . ." *Id.* at ¶ 110. As Plaintiff recognizes in his Complaint, such relief would apply to "many persons in the State of Utah, including Plaintiff's . . . ." Suppl. Compl ¶ 117 doc. 55. Accordingly, Plaintiff's challenge is facial in nature, and should be analyzed under the applicable constitutional standard.

*Plaintiff's Utah Constitutional Claims are Analyzed Under Facial Standards*

Plaintiff's fifth claim argues the Acts violate the Utah Constitution in the same way as they violate the United States Constitution. *Id.* at 34–35. If the Court reaches the merits of Plaintiff's Utah constitutional claims, the Court should conclude that the relief requested would be applicable to other individuals, and therefore apply facial review to the Acts under the Utah Constitution.

*Plaintiff's Vagueness Claim is Analyzed Under a Facial Standard*

Plaintiff's sixth claim argues the 2017 amendments to Utah's prostitution statutes are unconstitutionally vague. *Id.* at 35–37. Plaintiff contends Utah's vague prostitution laws promote the "dangers of arbitrary and discriminatory application." *Id.* These dangers are asserted broadly, with Plaintiff arguing that arbitrary enforcement of prostitution laws could affect not just brothels but "other businesses" such as escort services. This argument implies that the challenged law violates the Constitution in "virtually all" applications, not just "the particular circumstances of this case," and is therefore a facial challenge. *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007).

**4. Plaintiff's Substantive Due Process Claims Fail.**

A statute that does not burden a fundamental right is upheld under rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (statute upheld "if it is rationally related to a legitimate government purpose or end."). Here, the Act is constitutional because it does not burden a fundamental right and is supported by a rational basis.

A. THE RELATIONSHIP BETWEEN PROSTITUTE AND CLIENT IS NOT PROTECTED BY THE DUE PROCESS CLAUSE.

Substantive due process, in addition to the freedoms protected by the Bill of Rights, extends protections to fundamental rights *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 588 (2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "To qualify as 'fundamental,' a right must be 'objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 720–21).

Additionally, the Due Process Clause has been the source of protection for "certain kinds of highly personal relationships" and "certain kinds of personal bonds." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The relationships and bonds that have been protected are characterized by how they "have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs." *Id.* But the Tenth Circuit has clearly held that the Due Process Clause protects no free-floating right to sexual intimacy. *See Seegmiller v. LaVerkin City*, 528 F.3d 762, 770-71 (10th Cir. 2008) ("nowhere in *Lawrence* does the Court describe the

11

right at issue in that case as a fundamental right or a fundamental liberty interest. It instead

applied rational basis review to the law and found it lacking.")

Plaintiff has sought to define prostitution as "the fundamental liberty interest in one's

own private sexual conduct . . . ." Suppl. Compl. p. 24 ¶ 90 doc. 55 However, as just noted, the

Tenth Circuit has foreclosed such a free-floating claim.  *See Seegmiller*, 528 F.3d at 770-71.

Another court, when faced with a similar case, determined that describing prostitution as a

fundamental liberty interest in sex was too broad, and instead defined the right in terms of the

relationship sought to be protected, stating that "this case challenges particular intimate conduct

within a specific context . . . ." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*,

No. C 15-01007 JSW, 2016 WL 1258638, at *4 (N.D. Cal. Mar. 31, 2016); *see also Lawrence*,

539 U.S. at 567 ("[w]hen sexuality finds overt expression in intimate conduct with another

person, the conduct can be but one element in a personal bond that is more enduring."). The

interest at issue here is not the physical act of sexual intercourse, rather, the relationship between

one person paying another person for sex. *Glucksberg*, 521 U.S. at 722 ("we have a tradition of

carefully formulating the interest at stake in substantive-due-process cases."). A relationship

premised on purchasing sexual conduct has never been protected, and is actually the opposite of

the types of relationships that have been recognized as worthy of protection under the Due

Process Clause. *See, e.g., Lawrence*, 539 U.S. at 578 (distinguishing its holding from application

in the context of public conduct or prostitution); *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir.

2005) (holding that, pursuant to *Lawrence*, there is no cognizable fundamental right to private

consensual sexual conduct); *Erotic Serv. Provider Legal Educ. & Research Project*, No. C 15-

01007 JSW, 2016 WL 1258638, at *4.

12

The relationship between a prostitute and client possesses few, if any, of the aspects of the "highly personal relationships" or "personal bonds" referenced by the Court in *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), that are protected by the Due Process Clause. The relationship between prostitute and client lasts a short time, and only as long as the client is willing to pay the fee. *See IDK, Inc.*, 836 F.2d at 1193 (involving challenges to county regulations by escort services). A prostitute has little choice as to the identity and personal preferences of the clients that solicit sex. Prostitutes and clients are not involved in procreation, raising and educating children, cohabiting with relatives, or other family activities. *See id.* A prostitute may be involved with a large number of clients. "While we may assume that the relationship between [prostitute and client] is cordial and that they share conversation, companionship, and the other activities of leisure, we do not believe that a day, an evening, or even a weekend is sufficient time to develop deep attachments or commitments." *Id.* The relationship between prostitute and client is in fact the opposite of the types of relationships protected by the Fourteenth Amendment, and the Court should refuse to extend such protection in this case.[6]

B.  UTAH'S LAWS CRIMINALIZING PROSTITUTION ARE RATIONALLY RELATED TO LEGITIMATE GOVERNMENT INTERESTS.

To satisfy the rational basis test, the Act "need only be rationally related to a legitimate government purpose." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted). "[R]ational basis review is highly deferential toward the government's actions."

---

[6] The Supreme Court has specifically excluded prostitution when expanding the scope of relationships protected by the Due Process Clause. *Lawrence*, 539 U.S. at 560 ("This case does not involve minors, persons who might be injured or coerced, those who might not easily refuse consent, or public conduct or prostitution.")

13

*Seegmiller*, 528 F.3d at 772. "Governmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted). The Court "need not satisfy [itself] that the challenged rules will in fact further their articulated purposes; it is sufficient if the legislature could rationally have concluded that the purposes would be achieved." *Id.* (quotation omitted). Plaintiff must "overcome the presumption of rationality," *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007), by negating "every conceivable basis which might support [the Acts] . . . ", *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citation omitted).

Utah's ban on prostitution is rationally related to legitimate government interests. Prostitution is linked to trafficking in women and children. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d at 600; *see* U.S. Dep't of State, The Link Between Prostitution and Sex Trafficking (Nov. 24, 2004), https://2001-2009.state.gov/r/pa/ei/rls/38790.htm;[7] Bureau of Justice Statistics, U.S. Dep't of Justice, Characteristics of Suspected Human Trafficking Incidents, 2008-2010 1, 3 (April 2011) (reporting that 82% of suspected incidents of human trafficking were characterized as sex trafficking, and more than 40% of sex trafficking involved sexual exploitation or prostitution of a child) https://www.bjs.gov/content/pub/pdf/cshti0810.pdf.

Prostitution creates a climate conducive to violence against women. *See United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001); Melissa Farley, *Prostitution Trafficking, and*

---

[7] The facts in this section relating to the negative effects of prostitution may be judicially noticed, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.).

*Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 Yale J.L. & Feminism 109, 111 & *passim* (2006) (addressing pervasive violence in prostitution and concluding that "[r]egardless of prostitution's status (legal, illegal, zoned or decriminalized) or its physical location (strip club, massage parlor, street, escort/home/hotel), prostitution is extremely dangerous for women."); Sylvia A. Law, *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 nn. 47–48 (2000) (reporting that a "study of 130 prostitutes in San Francisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes," and that another study "demonstrate[ed] that violence is pervasive in the lives of all categories of women who sell sex for money").

Prostitution is linked to the transmission of AIDS and sexually transmitted diseases. *See, e.g.*, *Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (upholding mandatory AIDS testing and counseling for person convicted of soliciting where the Legislature "has determined that those who engage in prostitution activities represent a high-risk group in terms of their own health, in contracting AIDS, and in terms of the health of others, in spreading the virus"); *Northern Mariana Islands v. Taman*, 2014 WL 4050021, at *3 (N. Mar. I. 2014) (prostitutes pose a health risk for sexually transmitted diseases).

Utah also has a legitimate interest in deterring the commodification of sex. *See Coyote Publ'g, Inc.*, 598 F.3d at 603 (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and that restrictions on prostitution are driven by "an objection to their inherent commodifying tendencies – to the buying and selling of things and activities integral to a robust conception of personhood."); *People v. Grant*, 195 Cal.

15

App. 4th 107, 113–15 (2011) (holding that anti-pimping statute bore a rational relationship to the proper legislative goal of suppressing prostitution). The Acts are rationally related to legitimate government interests and does not violate Plaintiff's substantive due process rights.

Plaintiff's Complaint alleges that there is no rational basis in prohibiting prostitution or brothels. Suppl. Compl. p. 24 ¶ 91 doc. 55. Plaintiff argues that the State has an interest in regulating, rather than prohibiting, prostitution because it would protect citizens from scams, sexual diseases, and human trafficking. *Id.* Plaintiff argues that the State already has an STD problem, so that allowing brothels might help control the spread of disease. *Id.* p. 26 ¶ 93.

However, under rational basis review, even if Plaintiff's allegations are true, the question before the Court is not whether Plaintiff's or the State's basis is more rational, or whether the Acts are narrowly tailored, and not even whether "the challenged rules will in fact further their articulated purposes . . . ," the question for the Court to decide is whether "the legislature could rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937 F.2d at 1512.[8] Decreasing human trafficking, decreasing violence against women, decreasing the spread of STDs, and deterring the commodification of sex are all rational bases that support prohibiting prostitution and brothels in Utah.

### 5. Plaintiff's Equal Protection Claim Fails Because the Acts Are Neutral and There Is No Discriminatory Purpose Toward People with Disabilities.

Even if the Acts have a disproportional effect on disabled persons, as argued by Plaintiff, they do not violate the Equal Protection Clause because their alleged impact cannot be traced to a discriminatory purpose. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979)

---

[8] The Court may take judicial notice of the fact that 49 of the 50 states in the Union have chosen to criminalize prostitution, with only Nevada leaving that decision to its counties to decide.

16

(discussing classifications based on gender and race). Because Plaintiff does not allege the Acts

intended to discriminate against disabled persons, and because no such intent exists, Plaintiff's

equal protection claim based on the Acts' alleged "implicit discrimination," Suppl. Compl. p. 28

¶ 102 doc. 55, against disabled persons fails as a matter of law.

Second, Plaintiff argues that the State cannot allow some sexually oriented businesses but

prohibit prostitution, and that women have a right to work in brothels. *Id.* ¶ 110. This argument

fails as a matter of law. Plaintiff's argument that women have a right to work as prostitutes is

properly analyzed under the Due Process Clause, and is done so below.[9]

Plaintiff's argument that the State has no rational basis for treating one class of

businesses (brothels) differently than another class of similarly situated businesses (sexually

oriented businesses such as strip clubs, escort services, and adult businesses), fails because, as

described above, a great number of rational bases exist for the State to prohibit prostitution

and brothels, and classifying businesses based on whether sexual intimacy is sold is not a suspect

classification. *Feeney*, 442 U.S. at 272 ("When the basic classification is rationally based,

uneven effects upon particular groups within a class are ordinarily of no constitutional

concern."). Nor is a fundamental right at issue, such that heightened scrutiny is warranted.

*Seegmiller*, 528 F.3d at 770 ("the Court has never endorsed an all-encompassing right to sexual

privacy . . ."). Accordingly, Plaintiff's equal protection claims fail as a matter of law.

---

[9] Plaintiff lacks standing to assert claims on behalf of possible future brothel employees, but
Plaintiff's claim is analyzed here anyway.

**6.   Plaintiff's Due Process Claim to a Right to Earn a Living as Sole Proprietor of a Brothel Fails Because Prostitution Is Illegal.**

Plaintiff's claim that he as the proprietor, or his possible future brothel employees have a right to earn a living as prostitutes fails because there is no state-law property interest in working in "the commercial exchange of sex." Suppl. Compl. p. 32 ¶ 111 doc. 55.

The Fourteenth Amendment establishes the individual right "to contract, to engage in any of the common occupations of life." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). However, "[a] threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Id.* at 569.

Whether a property interest in employment exists is a matter of state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Utah law does not recognize a property interest in working in the commercial exchange of sex in any capacity—whether it be as a prostitute or sole proprietor of a brothel—and the Acts at issue here negate any such alleged interest.

"[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nonetheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1992).   A protectable liberty interest in employment arises only "where not affirmatively restricted by reasonable laws or regulations of general application." *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995). A law placing restrictions on employment will be upheld so long as there is a legitimate state interest in regulating the trade or profession. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483 (1955). As discussed above, Utah has an interest in regulating prostitution and brothels. Accordingly, Plaintiff's due process claim that he

18

or his future brothel employees have a right to work in the commercial sex industry fails as a matter of law.

### 7.   There Is No Associational Right Between Prostitute and Client.

Association for the purpose of sex is not protected by the First Amendment. *Arcara*, 478 U.S. at 704–05, 707; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990) (concluding that a 10-hour limitation on motel room rentals did not burden or "have any discernible effect on the sorts of traditional personal bonds" that the Court has protected), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). Prostitutes are not hired for their conversational skills; they are hired for sex, and the Acts do not criminalize meeting with a prostitute.  They criminalize paying a prostitute for sex. *See IDK, Inc.*, 836 F.2d at 1195 ("the escort services make no claim that expression is a significant or necessary component of their activities. The services' advertisements included in the record do not tout their employees' skills in conversation, advocacy, teaching, or community service, and thus we assume that clients select their companions on the basis of other criteria.")

Because the association between a prostitute and a client is not expressive or protected by the First Amendment, Plaintiff's First Amendment freedom of association claim fails as a matter of law and should be dismissed with prejudice.

### 8.   Plaintiff's Claims Under the Utah Constitution Should Be Dismissed.

Plaintiff's state constitutional challenges likewise fail. The Eleventh Amendment bars these claims. "[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 117. Here, the State is the real, substantial

party in interest to plaintiff's challenge to the Acts. *See id.* at 92, 101. This Court's pendent

jurisdiction does not extend to Plaintiff's state law claims. *Id.* at 118.

Alternatively, if the Court dismisses Plaintiff's federal claims, the Court should dismiss

Plaintiff's state constitutional claims for lack of subject matter jurisdiction. *Roe v. Cheyenne*

*Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

If the Court reaches the merits of Plaintiff's Utah constitutional claims, those claims are

barred because in relation to prostitution, the Utah Constitution provides less protection than the

United States Constitution. The Utah Supreme Court analyzes state constitutional issues under

the primacy model, which analyzes issues under the state constitution before resorting to the

federal constitution. *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 7, 140 P.3d 1235 (citing

*West v. Thomson Newspapers*, 872 P.2d 999, 1004–07 (Utah 1994)). In interpreting the Utah

Constitution, the Utah Supreme Court has stated that the drafters' intent must be ascertained.

*State v. Hernandez*, 2011 UT 70, ¶ 8, 268 P.3d 822 (citing *American Bush*, 2006 UT 40 ¶ 12, 140

P.3d 1235). Because the best evidence of the drafters' intent is the constitutional text, analysis

begins with the text itself. *Id.* (citations omitted).

Plaintiff's Supplemental Complaint fails to explain how the Utah Constitution provides

more protection than the federal constitution, and Utah state court decisions support the

conclusion that the relationship between prostitute and client, the right to earn a living as a

prostitute, or the association between a prostitute and a client are less protected by the Utah

Constitution than the United States Constitution. *See e.g.*, *American Bush*, 2006 UT 40 ¶ 2, 140

P.3d 1235 (nude dancing not protected by the Utah Constitution).[10]  Plaintiff has thus failed to

state a claim under the Utah Constitution.

### 9.   Utah's Prostitution Statutes Are Not Unconstitutionally Vague.

Laws violate due process when they are "so vague that [they] fail to give ordinary people

fair notice of the conduct" they punish, or are "so standardless that [they] invite arbitrary

enforcement." *Johnson v. United States* 135 S.Ct. 2551, 2556 (2015). Legislatures prevent

arbitrary enforcement of laws by "provid[ing] explicit standards for those who apply them."

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). When determining whether a statute is

vague, a court starts with "the presumption that the statute comports with . . . federal due process

and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond

the confines of the Constitution." *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003).

In *Grayned,* the Supreme Court declined to strike down as vague the language "disturbs

or tends to disturb the peace and good order of such school session or class thereof" in a

municipal ordinance. 408 U.S. at 108. The Plaintiff in *Grayned* argued that this language gave

police "too broad a discretion in determining whether conduct was proscribed." *Id.* at 109.  The

court disagreed, holding the statute was not vague because it included a standard for

enforcement, "whether normal school activity has been or is about to be disrupted," and was

"written specifically for the school context." *Grayned*, 408 U.S. at 112.

---

[10] Plaintiff also references Article 12 section 20 of the Utah Constitution, the "Free Market
Clause." Compl. p. 36 ¶ 124 doc. 1. However, the Free Market Clause prohibits monopolies, and
does not relate to one individual's attempt to obtain a business license. Utah Const. Art. 12 § 20;
*Summit Water Distribution Co. v. Summit Cty.*, 2005 UT 73, ¶ 50, 123 P.3d 437 (declining to
analyze whether Article 12 section 20 is self-executing).

21

284

Plaintiff concedes the Acts "obviously" apply to his "proposed business" and are not so vague that they fail to give fair notice. Suppl. Compl. p. 36 ¶ 127 doc. 55. Instead, Plaintiff argues the statute invites arbitrary enforcement because it permits law enforcement "to go after obvious brothels" but not after otherwise legal strip clubs and escort services that may be engaging in prostitution. *Id.*

Only one of the challenged statutes, Utah Code Ann. § 76-10-1304(1)(iii), applies to the operation of a brothel. The other three statutes pertain to the personal solicitation or exploitation of prostitutes. Therefore, Plaintiff has failed to state a claim for vagueness upon which relief can be granted with regard to these three statutes. Furthermore, under the *Grayned* standard the remaining statute is not vague. Like the *Grayned* ordinance, the statute specifically regulates prostitution and includes an explicit standard: whether the "place" in question is "used for prostitution or the promotion of prostitution." Utah Code Ann. § 76-10-1304(1)(iii). While a place that clearly holds itself out as a brothel may be a more obvious target for law enforcement, police nonetheless have a clear standard under which to enforce the law against an otherwise legal strip club or escort service, and businesses and people can understand what types of businesses or activities fall into that category. Therefore, because the law provides an explicit standard for enforcement, Plaintiff fails to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's Supplemental Complaint fails as a matter of law, because the United States and Utah Constitutions do not protect prostitution as a profession, or a person's right, disabled or not, to pay another person for sex. Neither should the Court extend constitutional protection to the relationship between prostitute and client because that relationship is antithetical to the highly

personal relationships and personal bonds that are protected by the Due Process Clause. The

State Defendants ask the Court to find that the Act is constitutional and dismiss Plaintiff's

Complaint with prejudice.

DATED: October 3, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

23

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 3, 2017, a true and correct copy of the foregoing **State**

**Defendants' Motion to Dismiss Supplemental Complaint** was mailed via First Class Mail and

by email to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
E-mail: russmark@gmail.com
*Pro Se Litigant*


/s/ Mohamed I. Abdullahi_____

24

Sim Gill (USB #6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
David M. Quealy (USB #12379) dquealy@slco.org
Jennifer Bailey (USB #14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams, and Rolen Yoshinaga*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Russell G. Greer, et al. <br><br> Plaintiffs, <br> v. <br><br> Gary R. Herbert, et al. <br><br> Defendants. | SALT LAKE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br> Case No. 2:16-cv-01067 <br><br> Magistrate Judge: Dustin B. Pead |

### MOTION AND RELIEF SOUGHT

Defendants, Salt Lake County District Attorney Sim Gill, Salt Lake County Mayor Ben

McAdams, and Rolen Yoshinaga, Director of Salt Lake County Planning and Development

Services (collectively "County Defendants"), by and through their undersigned counsel, move to

dismiss Plaintiffs' Supplemental Complaint for Declaratory and Injunctive Relief

("Supplemental Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff

Russell Greer has not plead facts sufficient to establish standing to bring his claims against the

County Defendants, his claims against the County Defendants are not ripe, and even if Mr. Greer

had standing and his claims were ripe, his Supplemental Complaint fails to state a claim for relief under the United States Constitution, Utah Constitution, 42 U.S.C. § 1983, and Federal Rule of Civil Procedure 12(b)(6).  Consequently, his claims against the County Defendants should be dismissed with prejudice.

## INTRODUCTION AND RELEVANT FACTS

Mr. Greer's Supplemental Complaint challenges the constitutionality of Utah Code §§ 76-10-1302, 76-10-1303, 76-10-1304, 76-10-1305, and 47-1-1 ("Brothel Statutes"), which he alleges are unconstitutionally vague, violate the substantive due process clause of the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, the right to free association encompassed in the First Amendment, and Article I, Section 7 of the Utah Constitution because they prevent him from opening a brothel—the Mile High Neon—in Utah. Supp. Compl. ¶¶ 25-29, 90, 105, 108 113, 118, 121, 123 (Doc. 55).  He does not allege that prostitution occurring outside a licensed brothel should be legal, only that the State's prohibition on operating a licensed brothel is unconstitutional.  *See* Supp. Compl. ¶ 92 (Doc. 55).  The Supplemental Complaint does not allege that Mr. Greer has ever been arrested or investigated for a violation of the Brothel Statutes.  *See generally* Supp. Compl. (Doc. 55).  The Supplemental Complaint likewise does not allege that Mr. Greer has ever filed an application for a business license with Salt Lake County Planning and Development or that Salt Lake County ("County") has denied him a license to operate a brothel in the County.  *Id.*  Rather, Mr. Greer conceded in prior briefing that "his main quarrel is with the State defendants," that naming the County Defendants was merely part of "a 'trap net', so to speak," and that neither "the City nor County can[] pass

2

laws that contradict State laws." [1]  Pl. Mem. Opp. Cnty. Reply at 2 (Doc. 31).  Plaintiff provided

those concessions as the justification for why he did not respond to the County's original motion

to dismiss.  *Id.*

## ARGUMENT

**I.      Plaintiff Lacks Standing to Pursue Claims against the County Defendants.**

Under Article III of the U.S. Constitution, a claim is not justiciable in federal court unless

the plaintiff can establish he has "standing" to bring it.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

1547 (2016); *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).  In order to establish

standing, a plaintiff must demonstrate:

> (1) that [he has] suffered an "injury in fact"—an invasion of a judicially cognizable
> interest which is (a) concrete and particularized and (b) actual or imminent, not
> conjectural or hypothetical; (2) that there [is] a causal connection between the
> injury and the conduct complained of—the injury must be fairly traceable to the
> challenged action of the defendant, and not the result of the independent action of
> some third party not before the court; and (3) that it be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Babbitt*, 137 F.3d at 1202 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)); *see also Spokeo*,

136 S. Ct. at 1547.  Establishing these elements is not a "mere technical hoop through which

every plaintiff must pass, but rather is a part of the basic charter promulgated by the Framers of

the Constitution"  *Babbitt*, 137 F.3d at 1202 (internal quotations omitted).  Thus, a plaintiff's

complaint must clearly allege facts demonstrating he has satisfied every element of the standing

test in order to survive a motion to dismiss.  *Spokeo*, 136 S. Ct. at 1547 ("the plaintiff must

---

[1] A court is allowed to "take judicial notice of its own files and records" without having to
convert a motion to dismiss under Federal Rule of Civil Procedure 12(b) into a motion for
summary judgment.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (quoting *Van
Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)).

'clearly allege . . . facts demonstrating' each element" of standing); *Babbitt*, 137 F.3d at 1202

(stating the burden is on plaintiffs to "clearly to allege facts demonstrating" they have standing).

> ### a. Lack of standing as to Mayor McAdams.

The Supplemental Complaint does not contain *any* substantive allegations against Mayor

McAdams, let alone clearly allege facts demonstrating that Mayor McAdams has caused him an

"injury in fact" that could be redressed by a favorable decision in this case.  The only mention of

Mayor McAdams in the Supplemental Complaint is in Paragraph 13 which simply identifies him

as the Mayor of Salt Lake County, states that he is being sued in his official capacity, and

incorrectly cites to a statute setting forth the general powers of mayors of cities, towns, and

metro townships—not counties.  Supp. Compl. ¶ 13 (citing Utah Code § 10-3b-202(1)(b)) (Doc.

55); *see also* Utah Code § 10-1-104 (defining municipality so as to not include counties); Utah

Code, title 17 (regulating counties).  Thus, the Supplemental Complaint is woefully insufficient

in setting forth factual allegations that could satisfy Mr. Greer's obligation to establish standing

to bring claims against Mayor McAdams.  *Spokeo*, 136 S. Ct. at 1547 ("the plaintiff must 'clearly

allege . . . facts demonstrating' each element" of standing); *Babbitt*, 137 F.3d at 1202 (stating the

burden is on plaintiffs to "clearly to allege facts demonstrating" they have standing).

Moreover, as a matter of law, Mr. Greer cannot assert any facts sufficient to establish

standing against Mayor McAdams, as he does not have the authority to enforce the State's

Brothel Statutes.  A county mayor's statutory duties are set forth in Utah Code § 17-53-302.

Those duties do not include enforcing state or even county laws.  *Id.*; *see also* Salt Lake County

Code 2.06A.030 (setting forth the duties of the County Mayor).  To the contrary, the district

attorney is the official charged with enforcing laws through prosecution.  Utah Code § 17-18a-

401 (charging the district attorney with prosecutorial authority); Salt Lake County Code 2.12.140

(same); *see also* Utah Code § 17-53-301(2)(c) (stating a county mayor does not oversee a district

attorney).  Because Mayor McAdams cannot enforce the State's Brothel Statutes he cannot have

caused any Mr. Greer any injury.[2]  Mayor McAdams was merely named as part of Mr. Greer's

"trap net, so to speak," not as a legitimate party against whom his alleged harms can be

redressed.  Accordingly, the Court should dismiss Mayor McAdams as a defendant with

prejudice.

### b.  Lack of standing as to Mr. Yoshinaga.

As to Mr. Yoshinaga, the Supplemental Complaint also does not contain any substantive

allegations or "clearly allege" facts that establish standing against Mr. Yoshinaga.  There are

only two paragraphs in the Supplemental Complaint that even mention Mr. Yoshinaga.  The first

paragraph, Paragraph 16, simply states that he is "the Director of Planning for the County of Salt

Lake," that he is only being sued in his official capacity, and that he oversees business licensing

in Salt Lake County.  (Doc. 55).  The second paragraph, Paragraph 33, merely alleges that Mr.

Yoshinaga cannot issue business licenses for those businesses deemed illegal (Doc. 55), but Mr.

Greer has also acknowledged that neither Mr. Yoshinaga nor the County have any control over

what businesses (i.e. brothels) the State deems illegal, Pl. Mem. Opp. Cnty. Reply at 2 (Doc. 31).

In short, the Supplemental Complaint merely sets forth facts describing who Mr. Yoshinaga is, in

what capacity he is being sued, and a very cursory description of his job—all of which is

---

[2] The County Defendants do no concede that any injury in fact actually exists, but for purposes
of this motion only will assume that one exists.

insufficient to establish standing. *Spokeo*, 136 S. Ct. at 1547; *Babbitt*, 137 F.3d at 1202 (quoting

*Bennett*, 520 U.S. at 167).

First, there is no allegation that Mr. Yoshinaga did anything that actually invaded any of

Mr. Greer's judicially cognizable rights. *Babbitt*, 137 F.3d at 1202 (identifying the injury in fact

prong of the standing test as requiring "an invasion of a judicially cognizable interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"). In

other words, there is no allegation of an "injury in fact" attributable to Mr. Yoshinaga. Second,

even if Mr. Greer had plead facts that could establish an injury in fact, any such injury is not

traceable to Mr. Yoshinaga. *Id.* (stating the standing test requires a "causal connection between

the injury and the conduct complained of" that is "fairly traceable to the actions of the

defendant"). Mr. Greer does not allege that he ever applied for a Salt Lake County business

license, let alone that he was denied a business license or appealed a denial. There are simply no

facts on the face of the Supplemental Complaint showing a causal connection between Mr.

Greer's alleged constitutional harm and any action of Mr. Yoshinaga. Finally, because Mr.

Yoshinaga has not taken and is not alleged to have taken any actions in this case, there is nothing

to be redressed against him. Consequently, Mr. Greer lacks standing to sue Mr. Yoshinaga and

he should be dismissed as a defendant with prejudice.

### c.  Lack of standing as to District Attorney Gill.

Mr. Greer has not alleged facts sufficient to establish an "injury in fact" attributable to

District Attorney Gill. However, even if he had sufficiently established an "injury in fact," he

has not plead any facts sufficient to establish a causal connection between District Attorney Gill

and his alleged harm.  The Court should, therefore, dismiss Mr. Greer's claims against District Attorney Gill

> ### i.  Mr. Greer cannot establish an "injury in fact" attributable to District Attorney Gill.

Mr.  Greer bases his "injury in fact" against District Attorney Gill on the premise that he has and will continue to patronize prostitutes, which could potentially subject him to criminal prosecution by the Salt Lake County District Attorney's Office.  Supp. Compl. ¶¶ 8, 58 (Doc. 55).  While it is possible Mr. Greer could be prosecuted by District Attorney Gill, such a proposition is not concrete, particularized, actual, or imminent in the way required to establish an "injury in fact." *Babbitt*, 137 F.3d at 1202.  To the contrary, it is purely conjectural and hypothetical at this point. *Id.* (holding that conjectural and hypothetical harms are not "injuries in fact").

The crime of patronizing a prostitute is a misdemeanor offense unless an individual has previously been convicted of patronizing a prostitute twice, at which point the third offense is prosecuted as a felony, or the prostitute is a minor.  Utah Code §§ 76-10-1303 & 1308; *see also* Supp. Compl. ¶ 31 (Doc. 55) (admitting violation or prostitution laws is a "misdemeanor"). Under Utah Code *city* prosecutors are charged with prosecuting misdemeanors that occur within their municipal boundaries.  Utah Code § 10-03-928(2).  On the other hand, county district attorneys are charged with prosecuting felonies that occur within the county and misdemeanors that occur within the unincorporated portion of the county (i.e. portions of the county that are not part of any municipality).  Utah Code § 17-18a-401.

Thus, unless Mr. Greer is first convicted of patronizing a prostitute two times or solicits a child prostitute (which he has never alleged he intends to do) he would be charged with a

misdemeanor if arrested, not a felony, and would therefore be subject to prosecution by a city

prosecutor not District Attorney Gill.  The only exception to that conclusion would be if Mr.

Greer was arrested for patronizing a prostitute in unincorporated Salt Lake County.  However,

while Mr. Greer makes general reference to soliciting prostitutes in Salt Lake County, all of his

specific allegations related to actually visiting prostitutes identify Salt Lake City as the location

where his actions took place.  Supp. Compl. ¶ 8 (general reference to soliciting prostitutes in "the

City and County of Salt Lake"); ¶¶ 41-42, 46 (admitting to soliciting prostitutes in "Salt Lake

City"); ¶ 57 (admitting to meeting a prostitute in "downtown Salt Lake City").  Thus, on the face

of the Supplemental Complaint Mr. Greer has only alleged that he has and intends to visit

prostitutes in Salt Lake City, not unincorporated Salt Lake County.[3]

It is untenable to stretch the concept of "injury in fact" so far as to include a potential

harm—in the form of a prosecution by District Attorney Gill—that could only occur *if* Mr. Greer

is first arrested and convicted of patronizing a prostitute *two times*, solicits a child prostitute

rather than an adult prostitute (something he has never alleged he has or intends to do), or solicits

a prostitute in unincorporated Salt Lake County (also something he has not alleged on the face of

the Supplemental Complaint).  There are simply too many "if" and required intervening events

that must occur before Mr. Greer's alleged "injury in fact" could be considered concrete,

particularized, actual, or imminent as required to establish standing.  While Mr. Greer is free to

speculate and imagine what could happen if those contingencies were to come to fruition, those

---

[3] It is also worth noting Mr. Greer resides in the "City of Murray," which is located in Salt Lake
County but is not unincorporated County.  Supp. Compl. ¶ 8 (Doc. 55).  Thus, if he patronized a
prostitute at his residence, such action would not be within unincorporated Salt Lake County.

ruminations do not establish standing and his claims against District Attorney Gill should be dismissed with prejudice.

### ii.   Mr. Greer cannot establish causal connection between District Attorney Gill and any alleged "injury in fact."

As discussed above, to establish the second element of standing, Mr. Greer must allege facts showing that there is a "causal connection between the injury and the conduct complained of . . . ." *Babbitt*, 137 F.3d at 1202.  Here, Mr. Greer's entire case is a narrow challenge to only those portions of Utah's prostitution statutes that prohibit him from opening a brothel—the Brothel Statutes.  Supp. Compl. P. 38, Prayer for Relief (Doc. 55).  In fact, he readily concedes that solicitation of prostitutes outside of brothels and should remain illegal. *Id.* ¶ 92 (Doc. 55).  Thus, the "conduct complained of" is the State's bar on brothels.  The "injury" he alleges is a fear of being arrested for patronizing prostitutes *outside of brothels*, for example being prosecuted for visiting a prostitute "at her apartment in downtown Salt Lake City."  Supp. Compl. ¶ 57.  Because Mr. Greer has framed his case as merely a challenge to the ability to open a brothel and not a challenge to the legality of being able to solicit prostitutes more generally, there is no causal connection between his alleged injury and the State's ban on brothels.  In other words, his alleged "injury in fact"—in the form of a fear of prosecution by District Attorney Gill—is predicated on a portion or application of the Utah Code that he does not allege is unconstitutional in the broader sense.  If his allegation was that he has visited a *brothel* in the past and intends to keep frequenting *brothels*, he may be able to establish a causal link between his fear of prosecution and the statutes that he is challenging, but that is not what he has alleged and the generalized legality of prostitution is not the issue in this case.  Thus, there is no causal connection between the laws preventing him from opening the Mile High Neon brothel and his

9

fear of being prosecuted for patronizing prostitutes in non-brothel settings. Consequently, Mr. Greer cannot establish standing to assert claims against District Attorney Gill and he should be dismissed from this action with prejudice.

**II.      Plaintiff's Claims against the County Defendants are not Ripe.**

A claim is not justiciable in federal court unless it is "ripe." *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014). A claim is not ripe for adjudication when the case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all" or when there is not a direct and immediate dispute between the parties. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). As this case relates to the County Defendants, it is based entirely on "contingent future events" that may never occur and consequently there is no immediate dispute between the parties.

With respect to Mayor McAdams and Mr. Yoshinaga, the only role they could have with respect to Mr. Greer's ability to open the Mile High Neon brothel would be in the context of reviewing a business license application submitted by Mr. Greer. *See supra*, 4-5. It is undisputed, however, that Mr. Greer has never filed, nor does he allege to have ever filed, an application for a business license with Salt Lake County. Moreover, he has not alleged any facts showing he owns property where he could build the Mile High Neon brothel, that he has other necessary licenses needed to operate, for example, the Mile High Neon's kitchen, or that he has the resources to bring his business plan to fruition. Put more simply, the entire basis for his claims against Mayor McAdams and Mr. Yoshinaga center around uncertain and contingent

events that may never occur. Thus, there is no immediate dispute between Mr. Greer and the County Defendants and Mr. Greer's claims are not ripe.

Similarly, with respect to District Attorney Gill, there is no allegation in the Supplemental Complaint that he has ever prosecuted Mr. Greer for violating the Brothel Statutes or any other law related to prostitution, no allegation that he is investigating Mr. Greer for anything related to prostitution or otherwise, or even an allegation that Mr. Greer has been arrested. Thus, any claim related to a potential prosecution by District Attorney Gill is based on unknown future contingencies that may never occur. Mr. Greer's claims against District Attorney Gill are simply speculative and should be dismissed as unripe.

**III.     Plaintiff's Constitutional Claims should Be Reviewed Under a "Facial Challenge" Standard.**

Defendants Gary R. Herbert, Sean D. Reyes, and Kathy Berg (collectively "State Defendants") filed a Motion to Dismiss Supplemental Complaint with the Court on October 3, 2017. (Doc. No. 57). The State Defendants' Motion to Dismiss Supplemental Complaint thoroughly addressed whether Mr. Greer's claims should be reviewed under the standard applicable to "as-applied" challenges to statutes or "facial" challenges to statutes. *See* State Motion to Dis. Supp. Compl. At 6-10 (Doc. 57). The arguments advanced by the State Defendants apply equally to the County Defendants. The County Defendants hereby adopt the State Defendants' arguments advocating for application of the standard for "facial challenges" to Mr. Greer's claims as their own and join in the points and authorities advanced therein. *See* DUCivR. 7-1(a)(4) (permitting joinder in motions filed by other parties via filing a separate motion and adoption by reference); Fed. R. Civ. P. 10(c) (permitting adoption by reference).

IV.    **Plaintiff's Supplemental Complaint should be Dismissed in Its Entirety under Federal Rule of Civil Procedure 12(b)(6) for Failing to State a Claim Upon Which Relief Can Be Granted.**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-movant. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

To survive a motion to dismiss, a plaintiff's complaint must allege enough facts, taken as true, to make his claim for relief "plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original); *see also Southern Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (holding the court "need not accept conclusory allegations without supporting factual averments"). Although all well-pleaded facts in the complaint are presumed

12

true, conclusory allegations—allegations that "do not allege the factual basis" for the claim—

will not be considered.  *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995).

### a.   Plaintiff Flails to State a Claim Against the County Defendants under the United States Constitution and 42 U.S.C. § 1983.

Mr. Greer asserts four claims under 42 U.S.C. § 1983 asserting violations of the

substantive due process clause of the Fourteenth Amendment, the equal protection clause of

the Fourteenth Amendment, and the right to free association encompassed in the First

Amendment.  Supp. Compl. P. 23-34 (Doc. 55).  Mr. Greer has failed to state a claim against

the County Defendants because his Supplemental Complaint is factually deficient and because

his claims fail as a matter of law.

### i.   Plaintiff Flails to State a Factual Basis for the Claims Asserted Against the County Defendants.

In order for the County Defendants to be held liable under 42 U.S.C. § 1983, Mr. Greer

must show that the County Defendants "subjected or causes [Plaintiff] to be subjected….to a

deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42

U.S.C. § 1983.  In the context of a civil rights action against multiple individual governmental

actors, liability must be predicated on an individual defendant's personal involvement in the

constitutional violation.  *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).  "It is

particularly important . . . that the complaint make clear exactly who is alleged to have done

what to whom, to provide each individual with fair notice as to the basis of the claims against

him or her."  *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (emphases in original)

(citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)); see also *Auvaa v. City of*

*Taylorsville*, 506 F. Supp. 2d 903, 909 (D. Utah 2007) quoting *Serna v. Colo. Dep't of Corr.*, 455

F.3d 1146, 1155 (10th Cir. 2006) ("In any § 1983 action, the plaintiff must demonstrate the

liability of each . . . official against whom a claim is made," and "the burden is on the plaintiff to

develop facts that show the defendant's responsibility for a constitutional violation").  The Tenth

Circuit recently found:

> When various officials have taken different actions with respect to a plaintiff, the
> plaintiff's facile, passive-voice showing that his rights "were violated" will not
> suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated
> contention that "defendants" infringed his rights.

*Pahls*, 718 F.3d at 1225-26 (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th

Cir.1998); *see also Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir.2011)).  "Rather, it is

incumbent upon a plaintiff to 'identify specific actions taken by particular defendants' . . . ."

*Tonkovich*, 159 F.3d at 532 (emphasis added); *see also Glaser v. City & County of Denver*, 557

F. App'x 689, 702 (10th Cir. 2014) (finding that the plaintiff's "undifferentiated contentions"

failed to specify what each of the individual defendants specifically did or said).

In his Supplemental Complaint, Plaintiff fails to make specific allegations as to what the

County Defendants did to deprive him of his constitutional rights.  "A § 1983 plaintiff must show

an affirmative link between a defendant's conduct and a constitutional violation, and that

affirmative link must be alleged in the complaint as well as proven at trial."  *Auvaa v. City of

Taylorsville*, 506 F. Supp. 2d 903, 909-10 (D. Utah 2007) quoting *Stidham v. Peace Officer

Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).  Plaintiff has failed to make the

necessary affirmative link between the County Defendants' conduct and a constitutional violation.

There are no allegations: (1) that District Attorney Gill has investigated or filed criminal charges

against Mr. Greer; (2) that Mr. Yoshinaga reviewed and denied Plaintiff a business license; or (3)

that Mayor McAdams acted or failed to act, resulting in any constitutional violation against him.

Absent an affirmative link in the Supplemental Complaint between County Defendants' conduct

and a constitutional violation, the Section 1983 claims in the Supplemental Complaint (Claims One

through Four) must be dismissed.

> ii.  **Plaintiff's Claims under 42 U.S.C. § 1983 Fail as a Matter of Law to State a Claim against the County Defendants.**

Even if the Supplemental Complaint alleged facts sufficient to assert claims against the

County Defendants, Mr. Greer's 42 U.S.C. § 1893 claims fail as a matter of law and should

nonetheless be dismissed. The State Defendants thoroughly briefed why the Brothel Statutes are

constitutional and thus cannot serve as the basis for Mr. Greer's 42 U.S.C. § 1983 claims. *See*

State Motion to Dis. Supp. Compl. At 11-19 (Doc. 57). The arguments advanced by the State

Defendants apply equally to the County Defendants. The County Defendants hereby adopt the

State Defendants' arguments as to why the Brothel Statutes are constitutional as their own and

join in the points and authorities advanced therein. *See* DUCivR. 7-1(a)(4) (permitting joinder in

motions filed by other parties via filing a separate motion and adoption by reference); Fed. R.

Civ. P. 10(c) (permitting adoption by reference). For the reasons stated therein, even if the

Supplemental Complaint alleged facts sufficient to state a claim against the County Defendants,

Mr. Greer's 42 U.S.C. § 1983 claims fails as a matter of law and should be dismissed with

prejudice.

> **V.  Plaintiff Fail to State a Claim under Article 1, Section 7 of the Utah Constitution.**

Claim Five of Mr. Greer's Supplemental Complaint alleges a violation of Article I, Section

7 of the Utah Constitution in that the County Defendants have deprived Plaintiffs of their rights to

substantive and procedural due process. Supp. Compl. ¶ 121 (Doc. 55). Article 1, Section 7 is the

State constitution's "due process clause."  Like its federal counterpart, Article I, Section 7 provides

that "[n]o person shall be deprived of life, liberty or property, without due process of law."  Utah

Const. Art. I, § 7; *Jensen v. Cunningham*, 2011 UT 17, ¶ 71, 250 P.3d 465, 483.  The Utah

Supreme Court has stated:

> Since the due process clause of our state Constitution (Article I, Section 7) is
> substantially similar to the Fifth and Fourteenth Amendments to the federal
> Constitution, the decisions of the Supreme Court of the United States on the federal
> due process clauses are highly persuasive as to the application of that clause of our
> state Constitution.

*Disability Law Ctr. v. Utah,* 180 F. Supp. 3d 998, 1013 (D. Utah 2016) citing *Terra Utils. v. Public*

*Serv. Comm'n,* 575 P.2d 1029 (Utah 1978).  County Defendants encourage the Court to find "that

its analysis of Plaintiffs' federal substantive due process claim applies with equal force to

Plaintiffs' due process claim under the Utah Constitution."  *Id.*  Incorporating the federal due

process analysis necessary to dismiss the Plaintiffs' federal claims, the County Defendants urge the

Court to conclude that Plaintiffs have not stated a plausible claim for relief under Article I, Section

7 of the Utah Constitution and to dismiss Plaintiffs' state claim with prejudice.

## VI.    The Brothel Statutes Are Not Unconstitutionally Vague.

The State Defendants thoroughly briefed why the Brothel Statutes are not

unconstitutionally vague.  *See* State Motion to Dis. Supp. Compl. At 21-22 (Doc. 57).  The

arguments advanced by the State Defendants apply equally to the County Defendants.  The

County Defendants hereby adopt the State Defendants' arguments as their own and join in the

points and authorities advanced therein.  *See* DUCivR. 7-1(a)(4) (permitting joinder in motions

filed by other parties via filing a separate motion and adoption by reference); Fed. R. Civ. P.

10(c) (permitting adoption by reference).  For the reasons stated therein, the Supplemental

Complaint fails to state a claim and Claim Six should be dismissed.

## CONCLUSION

For the reasons stated herein, the County Defendants respectfully request that the Court

grant their motion to dismiss the Supplemental Complaint in its entirety, enter an order

dismissing with prejudice all claims and causes of action asserted by Plaintiffs against them, and

award County Defendants any other relief to which they may appear entitled.

Respectfully submitted this 3rd day of October 2017.

> SIM GILL
> Salt Lake County District Attorney
>
> /s/ David M. Quealy
> DAVID M. QUEALY
> JENNIFER BAILEY
> Deputy District Attorney
> *Attorney for Defendants Sim Gill, Ben McAdams*
> *and Rolen Yoshinaga*

17

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of October, 2017 a true and correct copy of the foregoing

SALT LAKE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'

SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF was

electronically filed with the Clerk of Court using the CM/ECF system, which sent notice to the

following:

> David N. Wolf
> Gregory M. Soderberg
> UTAH ATTORNEY GENERAL'S OFFICE
> P.O. Box 140856
> 160 East 300 South, 6th Floor
> Salt Lake City, UT 84114-0856
> *Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*
>
> Catherine L. Brabson
> SALT LAKE CITY CORPORATION
> P.O. Box 145478
> 451 South State Street, Suite 505A
> Salt Lake City, Utah 84114-5478
> *Attorney for Defendants Jackie Biskupski and James Allred*

The following individuals received service via first class mail, postage prepaid, addressed to:

> Russell Greer
> 689 Vine Street
> Murray, UT 84107
> *Pro Se*

                                    /s/ Natasha Schouten-Martinez
                                    Legal Secretary

18

Russell Greer
1450 South West Temple
Apt D206
Salt Lake City, Utah 84111
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 OCT 24 P 2: 18

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>     Plaintiff<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>    Defendants | **OPPOSITION MOTION re STATE DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No.: 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

1

# TABLE OF CONTENTS

OPPOSITION MOTION..................................................................7

SURVIVING A MOTION TO DISMISS............................................8

STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S.....................9

ALL PROSTITUTION DOES NOT CORRELATE..............................10
PLAINTIFF HAS PURSUED NON-JUDICIAL RELIEF.......................11

THE STATE DID NOT CITE HONEST FINDINGS.............................12
OUTDATED LAWS....................................................................15

GUIDING CASE LAW................................................................18
TWO PART ANALYSIS
APPROACH.............................................................................21

    Fundamental Liberty Interest Analysis......................................21

    Rational Basis Test...............................................................24

        A.  The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses...................28
        B.  The State Laws Do Not Achieve Their End Purpose.........................................................34


CONCLUSION..........................................................................36
Exhibit A................................................................................39
Exhibit B................................................................................40
Exhibit C................................................................................41
Exhibit D................................................................................42
Exhibit E................................................................................45

2

# TABLE OF AUTHORITIES

## STATUTES of STATES and COUNTIES

*An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.*

Lyon County Brothel Ordinance

*Nevada Administrative Code 441A010-A325; NAC 441A775-A815.*

Utah Code 76-10-1302(1)(b); 47-1-1; 76-10-1303(1)(b); 76-10-1304(1)(a)(iii); 76-10-1305(1)(a)(e):

## MANDATORY AND PERSUASIVE CASE LAW

*Agency For International Development v. Alliance For Open Society International (2013)*
*Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D. Mass 2007)

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)

*Attorney General of Canada v. Bedford* (Canadian Supreme Court 2013)

*Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 582 (1991)

*Bowers v. Hardwick,* 478 US 186 (1986)

*Brown v. Board of Education of Topeka.* (1954).

*Celotex Corp. v. Catrett,* 477 US 317 (1986)

*Coyote Publishing Inc. v. Miller,* 598 F. 3d 592 (9th Circuit Court of Appeals 2010)

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal. Mar. 31, 2016)

*FCC v. Beach Communications Inc,* 508 US 307, 315 (1993)
*Griffin v. Illinois,* 351 US 12 (1956).

*Griswold v. Connecticut* (1965)

*Lawrence v. Texas* (2003)

*Love v. Superior Court*, 226 Cal. App. 3d 736 (1990)

*Loving v. Virginia* (1967)

*Obergefell v. Hodges* (2015)

*Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973)

*Reliable Consultants v. Earle* (2008)

*Roe v. Wade* (1973)

*Sandquist v. United States,* 115 F.2d 510 (10th Circuit Court 1940).

*Seegmiller v. Laverkin City,* 528 F.3d 762, *769* (10th Cir. 2008)

*Washington v. Glucksberg* (1997)

*Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004)

*Williams v. Morgan* (11th Cir. 2007)

**LAW REVIEWS/ARTICLES**

*100 Countries and Their Prostitution Policies.* ProCon.org.
(http://prostitution.procon.org/view.resource.php?resourceID=000772).

*13th Amendment to the U.S. Constitution.* Library of Congress website.

*7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013).
(http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11)

*A Comparison of United States and Canadian Approaches to the Rights of Privacy
and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989).

*America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein,
Ph.D., (2012).

*Applying Lawrence: Teenagers and Crime Against Nature*, 58 Duke L.J. 1825, 1835
(2009).

*Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being
Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*

4

*Consolidated Guidelines on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/)

*Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005).

*Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law. (2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp)

*Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You Pick from Menus and Can Stay for Up to Four Days.* Mirror. (2016). (http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466)

*Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University Press. (2012).
*Marketing Sex: US Legal Brothels and Late Capitalist Consumption.* Barbara G. Brents. (2007).

*Paying for Pleasure: Men Who Buy Sex.* Teela Sanders. (2012).

*Pick Up a Penguin.* BBC News. (http://news.bbc.co.uk/2/hi/asia-pacific/60302.stm). (1998).
*Priorities, Attorney General of Utah.* (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health).*

*Reason and the Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139, 139 (1998)

*Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011).

*Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes".* Belkys Garcia. New York School of Law. (2006)

*Satisfying Lawrence: The Fifth Circuit Strikes Ban on Sex Toy Sales.* Jamie Iguchi. UC Davis School of Law. (2010)

*Strip Club Testimony.* Kelly Holsopple. The Freedom and Justice Center for Prostitution Resources. (2016). (http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf).
*Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish Games.* Fox 13 News. (2016). (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-assaulted-escort-who-refused-to-engage-in-fetish-games/).

5

*The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004)

*The Government's Moral Crusade: America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May. Liberty University. (2015).

*The Many Faces of Sex Work.* Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005).

*The Price of Intimacy.* Stephen P. Dark. Salt Lake City Weekly. (2016). (http://www.cityweekly.net/utah/the-price-of-intimacy/Content?oid=3566816)

*The Viability of Nevada 's Legal Brothels as Models for Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010)

*U.N. Commission Calls for Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012) (http://www.hivlawcommission.org/resources/report/FinalReport-Risks,Rights&Health-EN.pdf)

*What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw

## OPPOSITION MOTION

Plaintiff Russell Greer files this Opposition Motion and Supporting Memorandum in response to State Defendants' Motion to Dismiss which the State filed October 3rd, 2017. This Opposition Motion should be taken into consideration and the State's Motion should be set aside because: (1) the State fails to cite any case precedent or facts that are identical to Plaintiff's case; (2) the State's Motion is based on conjecture and no legal findings; (3) the brothel laws in Utah have seen "No Change Since 1953" (according to the legislative enactment date on the Utah Code website) and therefore a more modern review is needed as a lot has happened socially since 1953 and (4) Plaintiff feels that for a fair determination of whether the As-Applied challenged laws are constitutional or not, a trial should be held for witnesses and evidence to show how the laws are unconstitutional.

And while it may be true that there is no mandatory case law saying that there is constitutional protection in prostitution, as has previously been mentioned by the State, it should be noted that when there is an absence of mandatory authority, Courts are required to look at a "robust consensus of persuasive authority", as has been ordered by the Supreme Court. *Wilson v. Layne (1999); Ashcroft v. Al-Kidd (2011)*. The task Plaintiff presents to Judge Pead is to determine if there is more protection in brothels than other prostitution. If a declaration is made by Judge Pead that the criminalization of brothels in Utah are constitutional, then it is an automatic declaration that the Nevada brothels are unconstitutional. Judge Pead is asked to study the Nevada brothel system to fairly make a determination.

Lastly, the State defendants continue to have an odd understanding that Plaintiff is challenging all of the laws. Clearly, Plaintiff has stated he is only challenging As-Applied sections that only pertain to brothels and not all aspects of prostitution. Plaintiff is unsure why the State continues to affirm this when Plaintiff has stated to the contrary. Mr. Soderberg is

dangerously hovering upon the libelous area which could seriously damage Plaintiff's

Complaint, as Plaintiff is only challenging the brothel laws, not all laws surrounding prostitution.

## SURVIVING A MOTION TO DISMISS

As State Defendants argued, a complaint must contain "sufficient factual matter,

accepted as true to 'state a claim to relief that is plausible on its face.' *Id.,* at 570, <u>127 S.Ct. 1955.</u>

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556,

<u>127 S.Ct. 1955.</u>" *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Needless to say, the facts are in

Plaintiff's favor — the State has even admitted that Plaintiff has standing. (See State's Motion to

Dismiss which states that Plaintiff has standing). The Plaintiff only addresses chosen points

made by State in their Motion to Dismiss, as Plaintiff isn't required to answer all objections nor

does Plaintiff have the space, per page limitations.


### Plaintiff Has Standing to Assert Claims on Behalf of Future Brothel Workers

Contrary to what the State claims, Plaintiff does indeed have standing on behalf of

brothel workers, as his proposed business was meant to protect sex workers and clients. Huge

federal precedent allows for businesses, denied business owners, etc, to file on behalf of those

who would have been apart of the business had it been established. *Hunt v. Washington State

Apple Advertising Commission* (1977). In fact, Plaintiff wrote a very comprehensive

supplemental brief regarding his standing and how he has standing on behalf of others, thus it

would be redundant to reiterate here. Plaintiff invites the Court to refer back to his supplemental

brief.

### Plaintiff is Challenging As-Applied Laws

As was stated previously, Plaintiff wrote a very comprehensive reply brief regarding

whether his claims were As-Applied or Facial. Plaintiff invites the Court to read his arguments

for the sake of conserving space in the Motion. Needless to say, Plaintiff only is challenging the brothel sections. His claims he states do not extend to all aspects of prostitution. To say so is ridiculous and libel. Plaintiff has even admitted that he does not want his arguments to apply to all sections of prostitution. As a great example, Plaintiff already cited how he wishes for the laws to be like Nevada's. Nevada law only protects legal houses of prostitution. That right there shows that the the State of Nevada agrees that there is more protection in brothels than there is in other aspects of it.

## STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S

Plaintiff also feels that this case should overcome a Motion to Dismiss because State Defendants failed to cite any legal case like Plaintiff's. *Celotex Corp. v. Catrett*, 477 US 317 (1986) (Respondent had the burden to show that Petitioner lacked any legal claims to bring forth a case). The State cited many cases, yes, but all had to do with prostitution occurring with clients in their homes or in public. None of the cases cited, except one, had to do with brothels or establishing a brothel or trying to go the legal way. All of the cases, except *Coyote Publishing,* dealt with prostitutes appealing their criminal convictions; cases involving people who willfully broke the law instead of petitioning the court with a constitutional challenge. Even in the ESPLER case, the Plaintiffs hide their identities to avoid prosecution because they continue to engage in criminal activity. Plaintiff has followed the law to the best of his ability and legally tried going through the legislative route to make this legal. He has since refrained from engaging in any illegal activity and has been giving his all to make this legal. But he has gone almost  a year without sex – that is the troubling part. Plaintiff's challenge is not a broad constitutional challenge, either, but a simple, straightforward challenge. Affirmatively, *Coyote Publ'g, Inc. v. Miller,* 598 F.3d (2010) was the only case that the State cited that had to do with brothels. But even in that regard, the 9th Circuit Court, in *Coyote*, did not determine whether brothels should be legalized in counties that did not

allow brothels. Rather, the Court determined whether prohibiting the advertising of brothels was

a violation of the First Amendment. Therefore, no case is like plaintiff's and his case should be

heard.

## ALL PROSTITUTION DOES NOT CORRELATE

Objectively speaking, upon looking at the statutes of the Utah Code, the Code – as discussed

earlier – separates different areas of prostitution, primarily: brothels and non-brothel prostitution.

The legislature obviously intended to separate prostitution into these two categories because they

knew that prostitution was a broad concept. If they thought prostitution was all inclusive, then they

should have formed the statute without any caveat letters. All of the cases that the State cited had to

do with the category of non-brothel prostitution which is generally uncontrolled and has more

violence in it. Brothel prostitution follows some kind of control, whether legal or illegal, and has

very little, if any, violence attached to it than compared to prostitution that occurs outdoors. *The*

*Viability of Nevada's Legal Brothels as Models for Regulation and Harm Reduction in Prostitution,*

David H. Rodgers, Florida State University (2010) (In-depth study shows how legalized brothels

were safe for both worker and customer. Study even showed that when illegal, prostitution that

occurs inside, is far more safe than outdoor prostitution. The study cites from highly reviewed

researchers and draws analysis from more than twenty countries). It would be unfair and quite

unlawful for cases that have nothing to do with brothels to be applied to the laws the Plaintiff is

arguing based on the fact that the Utah Code separates brothels as a separate criminal act than

other acts of prostitution. In fact, the case of *Love v. Superior Court*, 226 Cal. App. 3d 736

(1990) (mandatory AIDS testing of those arrested for prostitution was constitutional), which the

State cited, supports what plaintiff is arguing. With legalization and regulation of prostitution,

AIDS testing would be mandatory, as seen with Nevada's brothels. See, *Nevada Administrative*

*Code 441A010-A325; NAC 441A775-A815.*

315

Prostitution is so broad that researchers have identified 25 different types of prostitution: indirect and direct forms of prostitution. *The Many Faces of Sex Work*. Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005). Amongst the many types of sex work they list are direct forms such as brothels, street, escort, and in-direct forms such as Bondage Domination Slave Master (more commonly known as BDSM), lap dancing and massage parlors. *Id.* Many of these in-direct forms of prostitution occur within the State of Utah as the genitals of either participant is touched and are not prosecuted. Even escort companies in Utah (The Doll House, Utah Party Girls, Escort Companions, etc), which escorting is listed as a direct form of prostitution, freely flourishes in the State without prosecution. Even buying a non-prostitute partner (a girlfriend; a first date; or even a spouse) dinner with the expectation of sex is technically prostitution (*Utah Code 76-10-1302(1)(a): engages in sex with another for the functional equivalent of a fee.)* If the State is going to use cases that have nothing to do with brothels as a form of legal precedent to dismiss Plaintiff's case, then shouldn't their cited cases be used to shut down the direct and in-direct forms of prostitution and arrest consenting non-commercial partners? "Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would...be meaningless..." *Griffin v. Illinois,* 351 US 12 (1956). Indeed, a trial is warranted to determine whether there is more constitutional protection or rational basis in brothels than in non-brothel prostitution, as it would be unfair to cite non-brothel prostitution as binding precedent to not allow plaintiff to have a trial.

## PLAINTIFF HAS PURSUED NON-JUDICIAL RELIEF

Another reason that Plaintiff pleads for the case to not be dismissed is because he has sought non-judicial relief. In fact, when he first came out about his intentions of challenging the laws, he reached out to State representatives to help him. He reached out many times to try setting up a meeting in hopes of possibly starting a lobby to overturn the laws and he got no response from his representatives. Next, he started a petition on change.org to overturn the laws

and his petition saw very little movement. Plaintiff has not found the trick at "trending". He tried going the legislative route by getting a business license to open a brothel and that was shut down by the State (which is what started this entire cause of action). He can't even get the news to carry his sincere stories about challenging these laws to bring public attention to it. It's as if every opportunity has been closed on him. He was left with filing this constitutional challenge not as the "easy way" to overturn the laws, but as the only way he had left. He asks that he is given the chance to present his arguments at trial with expert witnesses and business models of the brothel he would like opened.

### THE STATE DID NOT CITE HONEST FINDINGS

The State of Utah claimed that no good comes from prostitution. *State Defendants' Motion to Dismiss.*. In arguing for dismissal in their Motion to Dismiss, they cite half-truths and bald faced lies. They do not cite neutral findings. They quote from Melissa Farley, who is a staunch anti-adult entertainment researcher and whose zealousness caused her to go into an adult book store and light several pornographic magazines on fire. In fact, she was arrested 13 different times in 9 different states for these continuous same actions. *America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein, Ph.D., (2012). It really helps to know whose sources are cited. A common complaint about Ms. Farley is that none of her work has been peer-reviewed and that her non-profit organization, *Prostitution Research and Education*, creates a conflict of interest for her because she founded it. A fellow researcher says this about Melissa Farley: "Moreover, most of the empirical studies she cites are deeply flawed methodologically. Sampling biases and other procedural problems, in greater or lesser degree, pervade her literature, yet Farley never addresses this problem because that might undermine her sweeping claims." *Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005). Who's to say that the State has presented much more skewed research? In fact, they have.

The State also seems to ignore the complete regulation process of the Nevada brothels. For each county in Nevada that has legalized prostitution, they have a county ordinance that the worker and brothel owner have to abide by just like any occupation has ordinances (see Lyon County's, where the Bunny Ranch is incorporated, Brothel Ordinance as example: http://prostitution.procon.org/sourcefiles/LyonCountyTitle5Chap3Prostitution.pdf). The broad claims the State presents that all women are victims and that children are trafficked into prostitution, while may be true in illegal in situations, is false in legalized situations. In fact, each prostitute wanting to work at a Nevada brothel is given a work card by the local sheriff. *Lyon County Brothel Ord. 336, 2-2-90.* All prostitutes, who wish to work in a brothel, must: (1) give their real names and alias; (2) their age, address, physical description; (3) a recent photo and full set of fingerprints; (4) employment history; (5) address history; (6) complete record of criminal history; (7) a 50.00 fee deposit; (8) a medical release form for the issuance of STD test results. *Lyon County Brothel Ord. 5.03.14(A)(1)(a).* The same is true for other employees that are not prostitutes such as bartenders, door greeters, cashiers: they all must be licensed. The brothels take regulation seriously. In fact, it makes it hard for unlicensed people to be in the brothels. In addition to regulations on county and state level, the brothels have guards; security cameras; and panic buttons in the girls' rooms. They appeal to the communities that they are in. *Marketing Sex: US Legal Brothels and Late Capitalist Consumption.* Barbara G. Brents. (2007). So it is libel for the State to say prostitution leads to AIDS, when in fact, few, if any, cases of AIDS have been found in Nevada brothels. Honestly, that is why the Court needs to look at this case As-Applied and not facially. It's unfair to lump all aspects of prostitution together. Again, Judge Pead is urged to look at the Nevada system upon making his declaration..

Therefore, the State has completely ignored the legalization process of Nevada and has ignored the fact that several times the legislature of Nevada has been given the chance to abolish brothels, but has declined to do so each time because they know it will cause more harm than

good. *Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011). If

prostitution was truly as evil as the State wants the Court to believe, then the legislature would

have repealed the law by now. Or the federal government would have stepped in if it truly was a

13th Amendment violation which Plaintiff cannot believe that the State even used that argument

since the 13th Amendment applies to slavery and not consenting adults. *13th Amendment to the*

*U.S. Constitution.* Library of Congress website.

(https://www.loc.gov/rr/program/bib/ourdocs/13thamendment.html). The State doesn't even

attempt to explain why legalization does not work nor does the State try to show any flaws with

Nevada's system – the system Greer is basing his model off of. Instead, they cover all

prostitution (legal, illegal, etc) with a broad blanket and skew results. Defendants have a footnote

on the bottom of page 14 in their Motion and use the fact that 49 out of 50 states have banned

prostitution, though, they ignore the fact that brothels were generally legal before the turn of the

twentieth century due to a moral crusade led by religionists which the same crusade prohibited

alcohol for the first twenty years of the twentieth century. *The Government's Moral Crusade:*
*America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May.
Liberty University. (2015).
(http://digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=1001&context=ljh). (Argues that

banning prostitution did more harm than good). *Lawrence* argued that basing legislation off of

moral welfare is not a sufficient basis to outlaw conduct. See *Lawrence v. Texas* (2003). The

State's arguments should not even be considered because it appears they found what sounded

best to them and randomly placed the arguments in their Motion. Their arguments are all based

on conjecture and second hand results and therefore should be barred from having a Motion to

Dismiss let alone a Summary Judgement. Plaintiff is offended by the State because they have

slandered his friends. He knows many prostitutes who are in it freely and many brothel owners

who legally operate brothels. The State has never stepped a foot in a brothel; their sources they

cite from have never stepped a foot in a brothel either. Therefore, their arguments are of little value.

**OUTDATED LAWS**

The brothel laws, particularly those found in 47-1-1 of the Utah Code, are outdated. The Code itself says that the laws have had "No Change Since 1953". Morally, a lot has happened since 1953. Racial segregation was found unconstitutional. *Brown v. Board of Education of Topeka*. (1954). Interracial marriages became legal in 1967 with *Loving v. Virginia*. Using the penumbras of the Constitution, abortion was legalized in 1973 with *Roe v. Wade*. That case established that there was indeed a right to privacy. In 2003, in strongest support to Plaintiff's case, *Lawrence v. Texas* (2003), the Court held that one had the liberty to choose how to conduct their private sex life. While a fundamental right was not entirely argued, a rational basis test was established with ambiguity allowing other cases to draw upon *Lawrence*. While the Court held that their ruling did not apply to prostitution and gay marriage, 12 years later, gay marriage was legalized in *Obergefell v. Hodges* (2015) with the Court relying heavily on *Lawrence*. These three major cases (Roe, Obergefell & Lawrence) pave the way for Plaintiff, and also put the law at the need for review, as the concept of privacy was not established when the laws were enacted.

**Robust Consensus of Persuasive Authority**

Courts have held that when there is an absence of guiding case law, courts are to look at a robust consensus of persuasive authority. *Wilson v. Layne* (1999). This can include cases in other circuits and cases in other countries. Persuasive authority can also include agency policies and advisory opinions from agency organizations. *United States v. Mead Corp* (2001). A robust consensus of persuasive authority is contained herein. Besides the guiding ambiguity of *Lawrence* (which will be touched upon in the rational basis review analysis), there is both mandatory and persuasive Supreme Court case law that gives Plaintiff standing to overcome the State's Motion to Dismiss. They are as follows:

1. In *Agency For International Development v. Alliance For Open Society International (2013)*, the United States Supreme Court ruled that prohibiting NGOs (Nongovernmental Organizations) from receiving Governmental aid for not avowing an Anti-prostitution stance was a violation of their 1st amendment right to freedom of speech. *Agency* created a precedent for plaintiff's case. It allowed for another option to be opened up aside from the Government's beliefs and laws. If a person can freely choose to give money to condone and help those in prostitution (or take a neutral stance), then why can't a person believe that regulated prostitution can help protect those wanting to be in it and implement a U.S. based model that helps contain prostitution and that has demonstrated an incredibly great safety record? Ignoring a problem does not make it go away nor does arresting persons involved in it or imposing laws that try to deter those who want to pay or sell. Brothels can help curb many of the ills facing prostitution whether the "morally upright" wish to acknowledge such a fact. This is where the rational basis test would come in to see if Greer's plans for the *Mile High Neon* could be utilized.

2. In *Attorney General of Canada v. Bedford* (2013), the Canadian Supreme Court ruled that the country's laws against brothels were unconstitutional. While the ruling comes from a high court in another country, it is a persuasive ruling because their legal system is not too different than the American system. They are a Common-Law country like the United States which relies on case law as precedent. The Court argues that banning brothels violates the amendment in the Canadian Constitution that is similar to the United States' 14th amendment.

*Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*; Jennifer Coates, *A Comparison of United States and Canadian Approaches to the Rights of Privacy and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989). The Court, in deciding the case, wrote: "The focus [of the case] is on security of the person, not liberty…It seems…that the real gravamen of the complaint is not that breaking the law engages the applicants' liberty, but rather that compliance with the laws infringes the

applicants' security of the person." *Id at footnote rationale.* The unanimous Court ruling made a

point of saying: "Parliament has the power to regulate against nuisances, but not at the cost of the

health, safety and lives of prostitutes." *Id.* This can be applied to the State legislature. The State

can enforce and create laws, but they cannot do so when it robs the citizens of this State of

security. This case is quite guiding because Courts often turn to see how similar countries have

acted in similar matters when there is no guiding case law in the jurisdiction. Further, the

Canadian Supreme Court said the criminalization of brothels couldn't even pass "constitutional

muster". Seeing that no case is like Plaintiff's in this jurisdiction, *Bedford* should be guiding

authority for this Court to act upon.

     3. Another guiding legal authority is the United Nations. Several sub-groups of the United

Nations support the legalization of prostitution and the implementation of brothels such as the

World Health Organization (WHO), the leading authority in the United Nations for health-

related matters, which argues that legalizing brothels will help prevent HIV with mandatory

condom use and policies that protect sex workers and their customers. *Consolidated Guidelines*

*on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health

Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/). It should be

noted that WHO was instrumental in the eradication of smallpox and handling the Ebola crisis so

therefore their judgement should be given significant authority. The Supreme Court has turned to

the United Nations in the past to help guide them in decisions (see *Lawrence at 574*). Another

UN commission that supports legalization of brothels is *UNAIDS* which says: "Laws that

criminalize and dehumanize populations at the highest risk of HIV--including men who have sex

with men, sex workers, transgender people and injecting drug users--drive people underground,

away from essential health services and heighten their risk of HIV." *U.N. Commission Calls for*

*Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012). (See the

commission's full report here: http://www.hivlawcommission.org/resources/report/FinalReport-

Risks,Rights&Health-EN.pdf). Other agencies and organizations advocate for the legalization of brothels: *AIDS United, APLA Health, The Center for HIV Law and Policy, GLBTQ Legal Advocates & Defenders, The HIV Prevention Justice Alliance, National Alliance of State & Territorial AIDS Directors, National Center for Lesbian Rights, Positively Trans, Positive Women's Network-USA, San Francisco AIDS Foundation, Brad Sears (Executive Director of The Williams Institute), Sero Project, Lambda Legal and the Sex Workers Project at the Urban Justice Center.*

Accordingly, while the State can argue that sex workers have high rates of AIDS, it really is the State's own fault for the epidemic and their flawed laws that do not work in preventing the disease or stopping the conduct. Criminalization does not work. *7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013). (http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11) (Skeptical news reporters visit a Nevada brothel and have their expectations broken from being against prostitution to supporting legalization). Each listed case and policy from established legal cases should act as guidance for this case to overcome a Motion to Dismiss and be allowed a trial as it shows that Plaintiff has stated claims for which relief can be sought.

## TWO ANALYSIS APPROACH

As stated in Plaintiff's complaint, either analysis ("fundamental liberty" review or "rational basis" review) can be found to overturn the As Applied laws that Plaintiff is challenging.

### Fundamental Liberty Interest Analysis

The Supreme Court has outlined the framework for evaluating a claim to the existence of a fundamental right. This "established method of substantive-due-process analysis has two primary features." *Glucksberg,* 521 U.S. at 720. First, the asserted "fundamental right" (or "fundamental liberty") must be "deeply rooted in this Nation's history and tradition and implicit

in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal citations and quotations omitted). Second, the analysis requires "a careful description' of the asserted fundamental liberty interest." (The 10th Circuit applies this *Glucksberg* framework by addressing the second prong first to narrow the inquiry: "a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty." *Seegmiller v. Laverkin City,* 528 F.3d 762, *769* (10th Cir. 2008); *cf. Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004) ("First, in analyzing a request for recognition of a new fundamental right, or extension of an existing one, we must begin with a careful description of the asserted right.") (internal quotation marks and citation omitted).

As shown in Plaintiff's complaint, he has demonstrated that commercial sex that takes place in brothels is deeply rooted in this nation's history. It wasn't until the early 1900s that prostitution became outlawed in part because it was "immoral" which goes against *Lawrence* and other cases that says immorality is not a basis to outlaw rights. This is presumed to be a reason for the State enacting the brothel bans. *Reliable Consultants v. Earle* (2008) ("Just as in *Lawrence*, the State here wants to use its laws to enforce a public moral code by restricting private intimate conduct…because the State is morally opposed to a certain type of consensual private intimate conduct. This is an insufficient justification for the statute after *Lawrence*." When a right isn't as obvious a right such as marriage or procreation, previous existing rights such as procreation are extended to see if a new right can be created. *Griswold v. Connecticut* (1965) (The Court in this case agreed that the right to marry could be extended to include the right to contraceptive use since apart of marriage is deciding whether to have children). This was again the case in *Roe v. Wade* (1973) when the Court determined that the right to privacy was a right under the penumbras of constitution.

To satisfy the second part of the test, a careful description of the asserted right must be shown. Plaintiff believes that the right to abortion and the right to marriage can be extended to commercial sex. The reason he believes that marriage and abortion can be extended to commercial sex is that a person can already make decisions with two intimate life choices. Both choices include sex. The Court must reasonably understand that Plaintiff, and people similarly situated as Plaintiff, cannot find partners to marry; to procreate with; to rear a family with; so that they must have a legal place to go to pay somebody to be their partner for an agreed upon time. While no Court – yet – has deemed the right to sex a fundamental right, the dissenting view in *Bowers* supports that determining intimate life choices should be a fundamental right: "This case is no more about "a fundamental right to engage in homosexual sodomy," as the Court purports to declare, *ante,* at 191, than *Stanley* v. *Georgia,* 394 U. S. 557 (1969), was about a fundamental right to watch obscene movies, or *Katz* v. *United States,* 389 U. S. 347 (1967), was about a fundamental right to place interstate bets from a telephone booth. Rather, this case is about "the most comprehensive of rights and the right most valued by civilized men," namely, "the right to be let alone." *Olmstead* v. *United States,* 277 U. S. 438, 478 (1928) (Brandeis, J., dissenting)." *Bowers v. Hardwick,* 478 US 186 (1986) (Dissent at 199). The dissent in *Bowers* goes onto further write: "The Court has referred to such decisions as implicating `basic values,' as being `fundamental,' and as being dignified by history and tradition. The character of the Court's language in these cases brings to mind the origins of the American heritage of freedom." *Id at 217.* The recent Supreme Court ruling in *Obergefell* supports the dissent in *Bowers* and Plaintiff's argument that the right to privacy found in marriage and abortion can be extended to brothels. "In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Obergefell v. Hodeges* (2015).

Being with sex workers is central to Plaintiff's well being. As stated in his Complaint, Plaintiff went to a Nevada brothel and had a complete change in his thoughts and feelings; he

went from being sad to happy. He has invested so much in being with sex workers because they have boosted his self-esteem. Not being allowed to have the freedom to pay another adult for sex in a safe, legal place "would disparage [plaintiff's] choices and diminish [his] personhood to deny [him] this right." *Id.* But Plaintiff believes that commercial sex must be limited to brothels - - just as abortion was limited to meet state safety interests. *Roe at 154* (ruled that the right to privacy was not "absolute", but still allowed abortion under the right to privacy). The right to abortion was just limited to clinics — didn't include infanticide.

### Rational Basis test

If the asserted right does not qualify as "fundamental" under the fundamental analysis, "*rational basis review*" applies. For rational basis review, *Lawrence v. Texas* is the guiding standard for such review. Plaintiff, the challenging party, realizes that he bears the burden to negate "every conceivable basis" for why the State laws are unconstitutional. *FCC v. Beach Communications Inc,* 508 US 307, 315 (1993). The standard for rational basis review is to find whether challenged laws further a governmental purpose. The ambiguity of *Lawrence* guides Plaintiff with the words of Justice Kennedy saying: "As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom." *Lawrence v. Texas*, 539 US 579 (2003). While the Court in Lawrence does say that the ruling does not apply to prostitution, the Court of Plaintiff's case must keep in mind that prostitution is vague and therefore must be analyzed to see if rights can extend to brothels than to other forms of prostitution, and also to keep in mind that *Lawrence* specifically stated that it did not apply to gay marriage as well. ("The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. *It does not involve whether*

*the government must give formal recognition to any relationship that homosexual persons seek to enter."* [Emphasis added]. *Obergefell*, though, relies heavily on *Lawrence*, citing it 7 times. Thus, the words of Justice Kennedy ring true that every generation can use the constitution to find liberty for themselves. The majority's strongest argument for Plaintiff is when they write that there is "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in *matters pertaining to sex." Id at 572. (*Read, *"Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes"*. Belkys Garcia. New York School of Law. (2006) Study gives in-depth analysis of the *Lawrence* decision and argues that the ambiguity of *Lawrence* legalizes prostitution).

Further, Justice Scalia's dissent also paves the way for Plaintiff's case, as Scalia cautions that the majority's opinion causes a "a massive disruption of the current social order" and "calls into question [every other morality based law]". *Lawrence v. Texas*, 539 US 591 (2003). (See *The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004). The author argues that *Lawrence* "may very well have left all moral-based legislation vulnerable to constitutional attack." Scalia specifically argues that *Lawrence* calls into question prostitution laws because of the impossibility of differentiating between sodomy and other moral laws. *Id at 590.* Dissents are frequently used by the Supreme Court: *Lawrence* used *Bowers* dissent to overturn sodomy.  Despite opposition from defendants, *Lawrence* failed to limit its holding to just homosexual sex and has thus given rights to many who have used the case law for their own from fornication and same-sex marriage to sex toys. *Applying Lawrence: Teenagers and Crime Against Nature*, 58 Duke L.J. 1825, 1835 (2009). The Fifth Circuit in *Reliable Consultants* held that *Lawrence* gives "precise instructions" that morality is an insufficient state interest to sustain laws affecting sexual privacy. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746-47 (5th Cir. 2008). *Reliable Consultants* boosts Plaintiff's case, as it dealt with commercial sex. See *Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D.

Mass 2007) (Explained that a "sister court's", different jurisdiction, ruling can be followed when there is a similar fact pattern). The fact pattern in *Reliable Consultants* is similar to Plaintiff's because there is commercial activity taking place with the involvement of sex.

In regards to commercial sex, *Lawrence* did not distinguish commercial and non-commercial; public or private. The *Lawrence Court* only referred to "particular practices" and morality not being a basis for banning those ambiguous practices. *Lawrence at 577-578* which has left them open for interpretation as shown with *Reliable Consultants*. See *Reason and the Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139, 139 (1998) (arguing bare assertion of public morality cannot serve as legitimate governmental interest). Whether one has sex in a brothel or sex with a sex toy is of little difference because in the end, it's "commercial sex". It's all inclusive. *What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw) (Argues that the term "commercial sex worker" is broad because it can encompass not just prostitutes, but those who work in the sex entertainment business which can be those who sell sex toys or they can be escorts or strippers). *Lawrence* must be read "broadly" to find that it encompasses *commercial* sex, something *Lawrence* criticized the *Bowers* court for failing to do with sodomy before *Bowers* was turned over. *Lawrence at 566-567.*

The notion that sexual interactions under 10 hours are not protected is absurd, as the State argues. That's what *Lawrence* was all about – protecting one night stands. The two *Lawrence* plaintiffs were guys who **occasionally** had sex (they weren't even in a relationship), thus the State's arguments that constitutional protection only applies to family rearing fails. Not only were bans on homosexual sodomy rendered unconstitutional;

heterosexual bans were rendered invalid as well, as were fornication laws. There is no difference between buying dinner for a partner with the expectation of sex than paying a consenting adult for sex. The State has failed to distinguish the difference between "Tinder hook ups" and "brothel hook ups". How is meeting a person on Tinder for three hours to have sex protected, but paying somebody is not? The State doesn't prosecute hook up apps yet brothels are prosecuted. It is a hypocritical, absurd law. Therefore, it truly violates Plaintiff's equal protection because the State is choosing not to prosecute certain conduct (hooking up) that is not within the bounds of "family rearing" and other conduct the State claims is protected, yet they prosecute consenting adults that pay others. In criticizing the *ESPLER* decision (the California ruling against prostitution) in the *Washington Post,* a law professor pointed out the irony that the judge failed to mention hook ups since the judge cited not within the bonds of family rearing. *No Constitutional Right to Engage in Prostitution.* The Washington Post. Eugene Volokh. (2016). This again calls for a trial to determine this question: is there protection in brothels at the very least?

Plaintiff now presents his arguments for rational basis review:

## A. The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses

As Plaintiff stated in his Complaint, the State does not have a basis to ban brothels because it is hypocritical since other commercial sex operations are in full, legal operation within the State. Refer to cited link to *Kinkly* about Commercial Sex being a broad, inclusive term. In 2012, the County of Salt Lake conducted a study and found that sexually oriented businesses have secondary effects that lead to prostitution. *An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.* (2012.09.21_South_Salt_Lake_SOB-Ord-final-mr.pdf). ("Based on evidence of the adverse secondary effects of adult uses presented in hearings and in reports made available to the City

Council, and on findings, interpretations, and narrowing constructions incorporated in the

cases [cites over 50 different cases associated with adult conduct], Sexually oriented

businesses, as a category of commercial uses, arc associated with a wide variety of adverse

secondary effects including, but not limited to, personal and property crimes, prostitution,

potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug

trafficking, negative impacts on surrounding properties, urban blight, noise, traffic, litter, and

sexual assault and exploitation. Alcohol consumption impairs judgment and lowers inhibitions,

thereby increasing the risk of adverse secondary effects…. Each of the foregoing negative

secondary effects constitutes a harm which the City has a substantial government interest in

preventing and/or abating. This substantial government interest in preventing secondary

effects, which is the City's rationale for this chapter, exists independent of any comparative

analysis between sexually oriented and non-sexually oriented businesses. Additionally, the

City's interest in regulating sexually oriented businesses extends to preventing future

secondary effects of either current or future sexually oriented businesses that may locate in the

City. The City finds that the cases and documentation relied on in this chapter are reasonably

believed to be relevant to said secondary effects.") *Id.*

Surely, the State would outlaw sexually oriented businesses based upon the in-depth

research into finding harmful secondary effects. Courts, in the past, have upheld bans on sexually

oriented businesses due to fear of secondary effects. See: *Barnes v. Glen Theatre, Inc.*, 501 U.S.

560, 582 (1991) (Souter, J., concurring) (concurring with plurality to uphold Indiana's public

nudity statute, but on grounds of preventing secondary effects of adult entertainment

establishments); *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973) (upholding Georgia

obscenity statute). But the State upholds laws that allows sexually oriented businesses such as

strip clubs, sex toy stores, and escort services. These businesses can function, in the midst of

secondary effects, due to having licenses and following regulations. *City of South Salt Lake*

*Ordinance on Sexually Oriented Businesses 5.56.030.* Ironically, the Nevada brothels are able to function the same way: having licenses and following regulations. Therefore, with the previously established fact that Nevada brothels run on regulations and the current fact that Utah's sexually oriented businesses have secondary effects, but are still able to operate, Plaintiff finds this to be hypocritical and it gives the State zero standing to withhold a business license to Plaintiff based on the fact that a secondary effect of strip clubs is prostitution, according to the City's findings. It would be safe and business-wise to either ban all sexually oriented businesses or allow a place for where prostitution can legally occur. See Complaint and *Exhibit A* where State Defendant Berg withdrew Greer's business registration after it was approved. The State argued in their Motion to Dismiss that brothels lead to violence against women and trafficking. See page 12. Those are the secondary effects of ***illegal*** prostitution, as the State failed to cite those findings in legal brothels which is another dishonest statistic the State cited in their link on Page 12: (https://2001-2009.state.gov/r/pa/ei/rls/38790.htm). The link they use for their trafficking statistic deals with illegal prostitution and nowhere mentions trafficking inside legal brothels. In fact, their link specifically states that criminals "do not register with the government" which doesn't prove how legalization doesn't work. If anything, it bolsters Plaintiff's argument that people wanting to follow the law, like Dennis Hof, register with the government and that criminals will continue to not follow the law. Again, the State fails to cite how the legalized systems of Nevada; parts of Mexico; parts of South America; the Netherlands; Greece; Australia; Thailand; New Zealand do not work. *100 Countries and Their Prostitution Policies.* ProCon.org. (http://prostitution.procon.org/view.resource.php?resourceID=000772). Out of 100 countries with laws towards prostitution, including the U.S., over 50% of them have some legalized form of prostitution. *Id.* The State has not gone through and discredited the systems; they have not gone through and discredited Plaintiff's witness Dennis Hof, a licensed brothel owner. In a Nevada study, there was zero prostitution arrests in the Nevada counties where prostitution is

legal. *Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010). Instead, the State has tried to mislead the Court of this case by bunching together flawed statistics. Therefore, based on the fact that other sexually oriented businesses are able to operate with licenses, there is no reason Plaintiff can't obtain a license for a brothel and prevent the secondary effects that illegal prostitution has (trafficking, violence, etc) which Nevada and other legal systems easily prevent. Either the State needs to be serious with themselves and outlaw all sexually oriented businesses to prevent secondary effects or they need to allow legalization to prevent some of the secondary effects.

Also, the State can't honestly argue that prostitution "commodifies" (See *Motion to Dismiss, Page* 14) women and not acknowledge that other sexually oriented businesses do the same thing: "exploit" women. *Strip Club Testimony*. Kelly Holsopple. The Freedom and Justice Center for Prostitution Resources. (2016). (http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf). (Study finds that strip clubs to be hostile work environments where women are harassed and objectified). Talking to local licensed escorts and strippers, Plaintiff has learned that they have suffered harassment and violence at the hands of customers, but the State keeps these establishments legal because they tolerate it. *Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish Games.* Fox 13 News. (2016).  (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-assaulted-escort-who-refused-to-engage-in-fetish-games/). Plaintiff believes brothels are more safe because the prostitutes in brothels can be selective of clientele whereas strippers in strip clubs must be naked in front of "all eyes" to make their incomes. To Plaintiff, that is pure commodification. *Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You Pick from Menus and Can Stay for Up to Four Days.* Mirror. (2016). (http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466). (Investigative look into the Bunny Ranch brothel and finds that the women are treated fairly and work for

themselves). The State has yet to explain why they can allow these businesses and not allow

Plaintiff's brothel. Simply "not wanting to" is not a logical argument. In fact, on page 8 in

their Motion, they talk about other businesses, but fail to explain why when those same

businesses have shown to have harmful secondary effects.

### B.  The State Laws Do Not Achieve Their End Purpose

The question the State Defendants pose to the Court is whether "the legislature could

rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937

F.2d at 1512. *Defendants' Motion to Dismiss, Page 14.* As shown in Plaintiff's previous

arguments, the statutes do not achieve their purpose (to stop prostitution). The sexual oriented

businesses of the State create the demand for prostitution which contradicts the purpose of the

statute. *Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University

Press. (2012). (Peer-reviewed, well-written research study shows that pornography and stripping

fuels the demand for prostitution and is thus hypocritical, as Plaintiff is arguing). Plaintiff likens

this situation to a free-flowing faucet (sexually oriented businesses that relate to non-prostitution)

that flows to a weak wall (anti-brothel laws) which the wall is meant to be a dam to the water.

But eventually, the wall breaks because it's so weak; the dam is breached; its purpose is broken.

The same with these laws. These laws were meant to prevent prostitution and hold in any

prostitution that happened. But sexually oriented businesses have now merged to inter-loop and

interconnect all of it together, making it indistinguishable. The State now has three options: (1)

contradict its findings and show that strip clubs and other licensed establishments aren't linked;

(2) do the *Iceland Approach* and outlaw all adult entertainment; or (3) the State can work with Greer

to legalize, regulate and save lives. *Exhibit D* shows laws that Greer has drafted to pitch to the

legislature once the laws are found unconstitutional and to immediately start working with the State.

Also, *Exhibit E* shows the fiscal note for how much the legalization would cost. The State is

gambling with the lives of its citizens; with the nearly 100 people who post to the Escort section of

Backpage daily and engage in prostitution activities even though they pose under the guise of being legal. The laws of this State fail to stop the free flow of people engaging in it or the unknown numbers of STDs associated with it. Because of the illegality of it, the numbers and the people and the harm are all unaccounted for. Who is to say at this very moment as Plaintiff writes this rebuttal that an escort in Salt Lake is not being victimized; being raped; being coerced; whose screams and wails are not being heard; though she found herself in this situation because Salt Lake legally allows escorts, but the escorts take advantage of that legality and do illegal things. We have already seen this happen in this state last year. How many more of our women must be strangled? Plaintiff affirms under penalty of perjury that many women have told him about being raped and robbed and beaten within this state; within this city while escorting. Any blood or bruises that she (or a male escort) receives are on the hands of the State for their willful stubbornness; their haughty morality; their blindness to the problems that they create. This would not happen with a brothel that was licensed and that worked with the sheriff's office.

Plaintiff has the business plan and model to help free-thinking, free adults who wish to engage in this and to help those who don't qualify as a sex worker. Plaintiff begs the Court to allow him to proceed to a trial.

Criminalization does not work, as has been established time and time again. *Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law. (2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp). (Peer-reviewed study shows that the best approach to combating the ill effects of prostitution is to have strict regulations: allowing brothels, but criminalizing everything unlicensed). As *Roe* argued, the right to privacy is not "absolute" and therefore rights should be given, but regulated. The rational basis is the best route to do this, as every objection the State has given has been defeated and the State's statutes have not achieved their goal because people are still engaging in sex work.

## CONCLUSION

If the State's Motion to Dismiss wasn't pertaining to real things, their Motion would almost be like a comical, 60s Sci-Fi movie: full of campy effects with no substance or research — just a clear attempt at a dismissal (or a "cash grab": studios released cheesy movies back then for a quick buck which is what makes the simile stick). Unfortunately, Plaintiff and those he wants to protect are suffering. This cause of action is very real and has stated clear claims and only seeks to challenge the clearly as-applied brothel laws which Plaintiff has listed time and time again: 76-10-1302(b), 1303(b), 1304(iii), 1305(a)(e), 47-1. All apply to brothels and running a brothel and working in a brothel.

It also would be appreciated if the Defendants CEASE saying that Greer is challenging all of the laws. That is libel and is not protected by the *litigation privilege*.

Greer asks for the Court to WITHOLD issuing a ruling and accept that Plaintiff has stated a claim (several claims stated, in fact) of the State lacking a rational basis, or that it may lack a rational basis, and allow the case to proceed to trial so that Plaintiff may show with expert witnesses how the laws do not work. Simple citations on paper do not achieve that effectiveness. This is the Plaintiff's Opposition and plea.

Russell Greer
Pro Se Litigant
/rgreer/
10/23/17

## EXHIBIT A

Brothel Business Registration that Berg and the Utah Business Licensing Approved before being revoked. Because it was approved initially, Greer began working on a sexually oriented license to register at the city.



**SALT LAKE CITY CORPORATION**
**451 South State Street, Room 225**
**Salt Lake City, Utah 84111**
**(801) 535-6644**

License # _____

### SEXUALLY ORIENTED BUSINESS - LICENSE APPLICATION

**Ownership Type** (Check one):

| Corporation | Limited Partnership | Partnership | Sole Proprietorship (Individual) |
|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | [X] |

**Type of Business** (Check one):

| Adult Bookstore / Video Store | Adult Motion Picture Theater | Adult Theater | Nude Dancing Agency | Outcall Agency | Other - Licensed Brothel |
|:---:|:---:|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | ☐ | ☐ | [X] |

Person signing this application on behalf of applicant business:

Full and correct legal name:   Russell Godfrey Greer

Residence address:   851 Edison St Apt A          Salt Lake City   UT      84111

39

## EXHIBIT B

Blueprint for the Mile High Neon with clear description of rooms and facilities.



40

## EXHIBIT C

Pictures of Plaintiff Greer with sex worker. Also, a picture of a manifestation of Greer's inability to get dates. Tinder shows that Greer was passed up 285 times.





41

It is Plaintiff's hope that once the laws are found unconstitutional, that Governor Herbert would hold a special legislative session and that the following proposed laws will be incorporated into the Utah Code to protect adults.

## EXHIBIT D

PROPOSED AMENDED LAWS TO THE UTAH CODE

**76-10-1301 – Definitions**

**Licensed House of Prostitution – A legal establishment that has been licensed by the State and allowed to function.**

**Licensed Sex Worker – A sex worker can be male or female and is licensed to work in a licensed house of prostitution.**

**76-10-1308 – Prosecution – Prosecution for unlicensed prostitution would be felonies**

1. **A. Any prostitution that occurs outside of a licensed house of prostitution is a third degree felony and a sex offense with both parties, prostitute and john, being registered on the sex offender registry.**
**B. Anyone that places an ad online, through print, or any other means, offering prostitution services outside of an unlicensed house of prostitution, shall be guilty of a third degree felony.**
**C. Anyone that places an ad offering escort, massage, or dancing services, with the intent to engage in prostitution, shall be guilty of a third degree felony.**
**D. Anyone that shall have a profile linked to websites known for harboring and running illegal prostitution shall be guilty of a third degree felony.**

2. **A. Anyone that shall attempt to run, operate, own or lease an unlicensed house of prostitution is guilty of a third degree felony.**
**B. Anyone that attempts to or patronizes or solicits or works inside of an unlicensed house of prostitution is guilty of a third degree felony and shall be put on the sex offender registry.**

**76-10-1311 – Penalties on Licensed House of Prostitution Owners/Workers**

1. **A. Any licensed house of prostitution owner who breaks the conditions of his or her license (see section on granting licenses) shall be guilty of a third degree felony.**
**B. Any licensed house of prostitution owner who traffics another against his or her will into a licensed house of prostitution shall be guilty of a second degree felony.**
**C. Any licensed house of prostitution owner who knowingly employs a minor shall be guilty of a second degree felony.**

42

      **D. Any licensed house of prostitution owner who knowingly employs a licensed sex worker who has a Sexually Transmitted Disease shall be guilty of a third degree felony.**

2. **A. Any licensed sex worker who breaks the conditions of his or her employment license shall be guilty of a third degree felony.**
   **B. Any licensed sex worker who helps traffick another against his or her will into a licensed house of prostitution shall be guilty of a third degree felony.**
   **C. Any licensed sex worker who helps or encourages a minor to work in a licensed house of prostitution shall be guilty of a third degree felony.**
   **D. Any licensed sex worker who knowingly has a sexually transmitted disease and continues to work as a sex worker shall be guilty of a third degree felony.**

**76-10-1312 – Assault on a Sex Worker**

1. **Given the vulnerable positon that sex workers are in, anyone that shall assault or batter a sex worker shall be guilty of a third degree felony.**
2. **It does not matter how the sex worker was assaulted or what state of mind the assaulter was in, the assaulter shall be guilty of a third degree felony. There will be a zero tolerance policy for violence on sex workers.**

**Added Section to the Utah Code Concerning Legalizing and Regulating Brothels. A brief summary is given for each proposed section (See Utah Code 76-7-3 concerning the regulation of abortion clinics for similar guidance; See also Lyon County Brothel Ordinance on how they regulate and zone brothels):**

1. **Granting the powers for a commission to be created to scope a location in Salt Lake County for brothels to be created. The commission shall also be made to work with Greer in the planning process. Two brothels shall be allowed in the county. On opposite sides of the county to provide easy access for interested parties.**
2. **State law shall make prostitution a state matter and shall determine how many counties besides Salt Lake County can have a brothel.**
3. **State law shall set out regulations and the background checks for those who wish to work in brothels and those who wish to own and run a brothel. Regulations will include:**
   a. **An organized and detailed list of keeping track of prostitutes and owners such as finger printing; file keeping of information concerning owners and workers; recent photos of workers and owners; background information; financial and medical disclosures.**
   b. **A plan on how to STD test the workers weekly and give them shots.**
   c. **A plan on how to treat workers that do obtain a STDs.**

4. **Have a watch dog/open door policy to allow those who have evidence of criminal wrong doing taking place to come forward and report it.**
5. **State law to require mandatory condom use in all sex acts.**

**EXHIBIT E**

**Dynamic Fiscal Note shows the benefits the State earns by enacting this bill.**

**SHORT BILL TITLE:** Utah Brothel Legalization
**Bill Sponsor:** R. Greer
Note: Estimates subject to change during actual fiscal noting process.

DYNAMIC FISCAL NOTE



Note: In 2016, there was an estimated prostitution arrest rate of 400 arrestees.*
The State/Local Communities spent about 1,000,000 dollars on fighting prostitution. **
The State legislature spent very little itself doing anything new than doing the same old.
They didn't see any benefits from enforcing these laws.

In 2017, if the laws were found unconstitutional and Gov. Herbert was thus
forced to hold a special legislative session to legalize brothels, the State
would spend anywhere from spending 500,000.00 to 1,000,000.00 dollars
enacting the Brothel Bill sponsored by Greer. Immediate effects would not
be seen until the next fiscal year.

In 2018, the arrests of prostitution would drop three-fourths because
everybody would see how beneficial legal brothels are. Thus, the time and
money fighting it would drop as well. And the tax revenue from the
brothel(s) would be about 4 million dollars that would go back into the
state's pocket***.

In the following fiscal years, the harmful effects would decrease and the
benefits would only increase because people would see the benefits. Thus, the

Mile High Neon is truly that: a mile high light that would serve as a light
unto the world.


\*Prostitution statistics from years ago coupled with recent news reports of arrests in Utah.
*US and State Prostitution Arrests, 2001-2010.* ProCon.org.
(http://prostitution.procon.org/view.resource.php?resourceID=000120).

\*\**The Costs of Keeping Prostitution Illegal.* Moneycation: Money Management and
Information News. (2014). (http://www.moneycation.com/2014/03/the-cost-of-
keeping-prostitution-illegal.html).

\*\*\*Simple math. If brothels become legal, let's suppose that one brothel makes up to
$160,000.00 in one day (10 sex workers would make up that much) and it makes up to this
for one year (365 days in a year). Multiply $160,000.00 by 365 and you get: $58,400,000.00.
Ten percent of that tax is going back to the State. The legalization benefits are tremendous.
But money isn't the essence of the argument: saving lives and protecting people is. The
money only comes along with that protection.

## CERTIFICATE OF SERVICE:

I certify that on October 23, 2017, a true and correct copy of PLAINTIFF'S OPPOSITION
MOTION AND MEMORANDUM IN SUPPORT was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg,
Herbert & Reyes.
    Gmsoderberg@utah.gov

David Quealy: Counsel for County Defendants Gill, McAdams &
Yoshinaga. dquealy@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com

DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: gsoderberg@agutah.gov

*Counsel for State Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GARY R. HERBERT, in his official capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake; BEN McADAMS, in his official capacity as Mayor of the County of Salt Lake; KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>　　　　　Defendants. | **STATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SUPPLEMENTAL COMPLAINT**<br><br><br><br>Case No. 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff's constitutional challenge to Utah laws that prohibit brothels and prostitution within brothels fails as a matter of law because commercial sex is not a fundamental right, and the challenged laws are supported by rational basis. Laws subject to rational basis review are "accorded a strong presumption of validity," *Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007) (granting motion to dismiss), and it is the plaintiff's burden to overcome the presumption and show that the statute or law in question is not rationally related to a legitimate state interest. *Heller v. Doe*, 509 U.S. 312, 319 (1993). The Tenth Circuit presumes the statue's validity and requires the plaintiff to "overcome the presumption of rationality." *Teigen*, 511 F.3d at 1086; *see also Heller*, 509 U.S. at 320–21 (1993) (holding plaintiffs have the burden to establish that the policy is unconstitutional and "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record"). "[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Heller*, 509 U.S. at 320 (quoting *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).

Plaintiff's Supplemental Complaint fails to overcome the challenged laws' presumption of rationality, and the State Defendants have shown multiple reasons that the challenged laws are rationally related to legitimate government interests. State Defs.' Mot. Dismiss Supp. Compl. at 13–16 doc. 57. The State Defendants' government interests, referenced in the State's Motion to Dismiss, are rationally related to its interest of prohibiting brothels and commercial sex in brothels. The State Defendants agree and understand that Plaintiff's challenge relates only to brothels, not prostitution as a whole.

Plaintiff's policy arguments that the challenged laws need to be updated, or that Nevada's system of regulating brothels works better than prohibition, are not proper before this Court. A court does not act as a "super-legislature to weigh the wisdom of legislation" and "strike down laws or regulations simply because the Court may believe that they are unwise or improvident." *Bensing v. United States*, 551 F.2d 262, 265 (10th Cir. 1977) (reviewing statute denying credit for act of commissioned military service performed prior to one's becoming 21). Here, the Court should apply rational basis review, as explained by the Tenth Circuit and Supreme Court, and determine that laws prohibiting brothels and prostitution within brothels, are rationally related to legitimate government interests. The State Defendants respectfully request that the Court dismiss Plaintiff's Supplemental Complaint with prejudice.

DATED: November 7, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

3

## CERTIFICATE OF SERVICE

I certify that on November 7, 2017, a true and correct copy of the foregoing **State Defendants' Motion to Dismiss Supplemental Complaint** was mailed via First Class Mail and by email to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
E-mail: russmark@gmail.com
*Pro Se Litigant*


/s/ Mohamed I. Abdullahi

Sim Gill (USB #6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
David M. Quealy (USB #12379) dquealy@slco.org
Jennifer Bailey (USB #14121) jenbailey@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
2001 South State Street, Room S3-600
Salt Lake City, Utah 84190
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams, and Rolen Yoshinaga*

_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | |
|---|---|
| Russell G. Greer, et al. | SALT LAKE COUNTY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT |
| Plaintiffs, | |
| v. | |
| Gary R. Herbert, et al. | Case No. 2:16-cv-01067 |
| Defendants. | Magistrate Judge:  Dustin B. Pead |

_____

Defendants, Salt Lake County District Attorney Sim Gill, Salt Lake County Mayor Ben McAdams, and Rolen Yoshinaga, Director of Salt Lake County Planning and Development Services (collectively "County Defendants"), by and through their undersigned counsel, submit this Reply in Support of Salt Lake County's Motion to Dismiss Plaintiff's Supplemental Complaint for Declaratory and Injunctive Relief (Doc. 60) ("County's Motion to Dismiss).

The County filed its Motion to Dismiss on October 3, 2017.  (Doc. 60).  Plaintiff had twenty-eight days—until October 31, 2017—to respond to the County's Motion to Dismiss. DUCivR 7-1(b)(3)(A).  Plaintiff did not file an opposition to the County's Motion to Dismiss and the time for doing so has now passed.  Thus, the County's Motion to Dismiss should be

considered unopposed and the Motion granted for the reasons articulated in the County's motion papers (Doc. 60). *See* DUCivR 7-1(d) ("[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice"); *Masero v. Mortgage Elec. Registration Sys.*, No. 1:10-CV-132 TS, 2010 U.S. Dist. LEXIS 128564, *1 (D. Utah Dec. 2, 2010) (granting motion to dismiss as unopposed pursuant to DUCivR 7-1(d)).

Moreover, Greer's "Opposition Motion re State Defendants' Motion to Dismiss and Memorandum in Support" (Doc. 61) ("Opposition to the State's Motion") cannot be considered an opposition to the County's Motion to Dismiss. First, Plaintiff's Opposition to the State's Motion does not even reference "Salt Lake County," "Sim," "Gill," "Ben," "McAdams," "Rolen," or "Yoshinaga"—terms that would identify the County Defendants—but repeatedly references the "State" in an indication the opposition is not directed toward the County Defendants.[1]

Second, the Notice of Electronic Filing for Plaintiff's Opposition to the State's Motion specifically states that the document is an opposition to "[57]," which is the docket entry number for the State Defendants' Motion to Dismiss Supplemental Complaint. It does not mention Document 60, which is the County's Motion to Dismiss.

Finally, the Plaintiff's Opposition to the State's Motion does not address the substance of the County's Motion to Dismiss, including but not limited to, the County's arguments that Plaintiff lacks standing to bring his claims against the County Defendants and that his claims against the County Defendants are not ripe.

---

[1] On Page 24 of 38, Plaintiff does include the term "County of Salt Lake," but that is simply a mistaken reference to a 2012 study conducted by the *City of South Salt Lake* to evaluate the secondary effects of sexually oriented businesses. Opposition to State's Motion (Doc. 61). It is not a reference to Salt Lake County.

Consequently, the County Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Supplemental Complaint (Doc. 60) as unopposed and for the reasons set forth in their motion and memorandum.  *See* DUCivR 7-1(d).  Moreover, because the County's Motion to Dismiss is unopposed, there is no good cause to hold oral argument and the motion should be decided on the basis of the written memoranda.  *See* DUCivR 7-1(f).

Respectfully submitted this 7th day of November 2017

SIM GILL
Salt Lake County District Attorney

/s/ David M. Quealy
DAVID M. QUEALY
JENNIFER BAILEY
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

3

## CERTIFICATE OF SERVICE

I certify that on this 7th day of November, 2017 a true and correct copy of the foregoing

SALT LAKE COUNTY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF

MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT was electronically

filed with the Clerk of Court using the CM/ECF system, which sent notice to the following:

David N. Wolf
Gregory M. Soderberg
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
*Attorney for Defendants Jackie Biskupski and James Allred*

The following individuals received service via first class mail, postage prepaid, addressed to:

Russell Greer
689 Vine Street
Murray, UT 84107
*Pro Se*

/s/ Iris Pittman
Paralegal

4

Russell Greer
3306 E Del Verde Ave
Salt Lake City, Utah 84109
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 NOV -8 P 3: 16

DISTRICT OF UTAH

DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' REPLY MEMORANDUM** |
| Plaintiff | |
| v. | **AND REQUEST FOR HEARING** |
| **GARY R. HERBERT,** in his official capacity as Governor of the State of Utah; **SEAN D. REYES,** in his official capacity as Attorney General of the State of Utah; **SIM S. GILL,** in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI,** in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS,** in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG,** in her official capacity as Director of the Division of Commerce; **JAMES ALLRED,** in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA,** in his official capacity as Director of Planning and Development for the County of Salt Lake, | Case No.: 2:16-cv-01067-DBP

Magistrate Judge Dustin B. Pead |
| Defendants | |

Pursuant to *Utah Rules of Civil Procedure 7(b)(1)*, Plaintiff Russell Greer files this Response to State Defendants' Reply Memorandum. Invoking the words of Justice Kennedy in his opinion written for the majority in *Lawerence v. Texas* (2003), Kennedy eloquently said: "As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom." As has been stated in past complaints and motions, Plaintiff Greer sought help in his efforts from the legislature and his representatives. Partly why Greer tried applying for a license to operate a brothel was because he felt if he could get a license, he could convince the legislature to work with him. But since he was denied a license and his pleas to his state representatives fell on "deaf ears", he was left with filing this constitutional challenge — not as the easy way, but as Plaintiff's only way. Plaintiff has followed after Justice Kennedy's words in his search for greater freedom.

As this District has held in recent years, the State cannot legislate or put to a vote a person's privacy or freedoms, and that a person's rights come before state rights. *Kitchen v. Herbert* (Utah District Court 2013). This has been stated before in *Lawrence v. Texas* (2003) where the Supreme Court stated that the States could not control or demean a person's "destiny". *Id.* This view has been shared by foreign jurisdictions, with the Canadian Supreme Court ruling that the legislature could not enact laws that violated the health and safety of those in prostitution. *Canada (AG) v. Bedford* (2013). "…Proper that we acknowledge the overwhelming weight of international opinion…While not controlling our outcome, it does provide respected and significant confirmation for our own conclusions." *Roper v. Simmons (2005)* (Supreme Court looked to international rulings and policy to outlaw death penalty for minors).

Plaintiff has provided the Honorable Judge Pead with a robust consensus of persuasive authority and with two different analyses for this Court to find the As-Applied brothel laws unconstitutional. Contrary to what the State says, policies and cases and the way the Nevada brothels are ran are presented to help guide the Court. Ruling whether laws are constitutional or

unconstitutional is apart of the judicial function. Plaintiff's rights are being affected: his right to

privacy, his due process rights and his equal protection rights. Further, banning LICENSED

brothels that run the same as other legal and licensed sexually oriented business has no rational

basis. Neither is there a rational basis in allowing non-commercial one night stands that spread

STDs, but not allowing a REGULATED facility that allows paid one night stands. It denies

plaintiff of multiple rights. Paying a consenting adult does not create a science fiction result that

is somehow different than agreeing to buy a "hook up partner" one met off Tinder, dinner and

Netflix in exchange for sex. The only fantasy narrative portrayed in this entire litigation process

has been the State defendants' mindset that Utah and the world is all sunshine and rainbows and

that prostitution does not happen within this Court's jurisdiction. Realistically, it does and since

it's unregulated and illegal, violence, rape, robbery, assault, AIDS, fraudulent inducement and

other real horrors happen, of which Plaintiff and the people he wishes to protect have suffered. If

anything, there IS a rational basis in allowing a licensed place to control prostitution and its

secondary effects, just like the State allows licensed strip clubs and escort companies. It's in the

State's best interest and in the interest of public health and safety, and this can be found under

any constitutional review..


## CONCLUSION

Plaintiff asks the Court to allow this constitutional challenge to proceed to a trial to have

expert witnesses testify that the Utah brothel laws are indeed unconstitutional, as there is a robust

consensus of persuasive authority, as a matter of law, to allow Plaintiff to argue the

unconstitutionality of stated laws. Plaintiff also asks for the Court to rule in his favor. Further, a

hearing is requested on the matter.

Russell Greer
Pro Se Litigant
/rgreer/
11/08/2017         354

## CERTIFICATE OF SERVICE:

I certify that on November 8th, 2017, a true and correct copy of PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' REPLY MEMORANDUM was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
Gmsoderberg@utah.gov

David Quealy: Counsel for County Defendants Gill, McAdams & Yoshinaga. dquealy@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com

Sim Gill (USB# 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB# 10720) jmramos@slco.org
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| Russell G. Greer, et al. | REQUEST TO SUBMIT FOR DECISION: |
|         Plaintiffs, | SALT LAKE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| Gary R. Herbert, et al. | Case No. 2:16-cv-01067 |
|         Defendants. | |
| | Magistrate Judge:  Dustin B. Pead |

---

Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga (collectively "County

Defendants"), by and through their undersigned counsel, and pursuant to DUCivR 7-3, hereby

request that their Motion to Dismiss Plaintiffs' Supplemental Complaint for Declaratory and

Injunctive Relief ("County's Motion to Dismiss") (Doc. No. 60) be submitted for decision.

The County's Motion to Dismiss was filed and served on October 3, 2017 (Docket No. 60.).  Plaintiff did not file an Opposition to County's Motion.[1]   Out of an abundance of caution, the County Defendants filed a reply memorandum on November 7, 2017, to make clear that no opposition had been filed to County's Motion to Dismiss. (Docket No. 63.)

Accordingly, the County Defendants' Motion is now ripe for submission and decision by the Court.

Respectfully submitted this 13th day of April 2018.

SIM GILL
Salt Lake County District Attorney

/s/ JACQUE M. RAMOS
JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants Sim Gill, Ben McAdams and Rolen Yoshinaga*

---

[1] On October 24, 2017, Plaintiff filed his Opposition Motion re State Defendants' Motion to Dismiss and Memorandum in Support (Dkt. 61) and on November 8, 2017, Plaintiff filed Plaintiff's Response and Memorandum in Opposition to State Defendant's Reply Memorandum (Dkt. 65).

2

## CERTIFICATE OF SERVICE

I certify that on this 13th day of April, 2018 a true and correct copy of the foregoing

Request to Submit for Decision: Salt Lake County Defendants' Motion to Dismiss Plaintiffs'

Supplemental Complaint for Declaratory and Injunctive Relief was electronically filed with the

Clerk of Court using the CM/ECF system and mailed to the following:

David N. Wolf
UTAH ATTORNEY GENERAL'S OFFICE
P.O. Box 140856
160 East 300 South, 6th Floor
Salt Lake City, UT 84114-0856
*Attorney for Defendants Gary Herbert, Sean D. Reyes, and Kathy Berg*

Catherine L. Brabson
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
*Attorney for Defendants Jackie Biskupski and James Allred*

Was sent by e-mail and first class mail, postage prepaid, to the following:

Russell Greer
3068 W. Mark Ave
West Valley City, UT 84119-2710
russmark@gmail.com
*Pro Se*

/s/ Iris Pittman
Paralegal

# IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIMS S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the County of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for, the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,**<br><br>        **Defendants.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 2:16-cv-01067**<br><br>**Magistrate Judge Dustin Pead** |

1

## TABLE OF CONTENTS

Introduction ……………………………………………………………… 3

Factual Background ……………………………………………………………3

Utah's Prostitution & Brothel Laws………………………………………… . 6

Discussion

    I.    Standing……………………………………………………......8

        1.    Standard of Review…………………………………… ..8

        2.    No Standing To Enforce The Rights Of Others………………....10

        3.    No Standing For Claims Against Biskupski, Allred, McAdams
               and Yoshinaga……………………………………………......11

                a. Biskupsk and McAdams…………………………………11
                b. Allred and Yoshinaga…………………………......12

        4.    Standing For Claims Against Gill and State Defendants………….13

                a.    Pre-Enforcement Challenge…………………………13
                b.    Gill………………………………………………14
                c.    Herbert, Reyes and Berg……………………………......15

    II.    42 U.S.C. §1983……………………………………………16

    III.    Utah's Laws Are Constitutional………………………………………...17

        1.    Facial And As-Applied Challenges. …………………………...18
        2.    Right To Sexual Privacy…………………………………………19

                a.    No Fundamental Right …………………………20
                b.    Rationally Related To Legitimate Interest……........21

        3.    Equal Protection For Same End Goal Of Intimacy………………23
        4.    Right To Engage In Illegal Employment……………………………24
        5.    First Amendment Free Association………………………………25
        6.    Article 1 Section 7 of Utah Constitution………………………......26
        7.    Vagueness……………………………………………………... 27

    IV.    Ruling & Order……………………………………………………...29

# INTRODUCTION[1]

Russell Godfrey Greer wants to provide everyone with safe and legal "access to intimacy." In order to do so, he seeks to open a Utah brothel called The Mile High Neon. Under Utah's current laws, however, he is prohibited from doing so.[2] Consequently, Greer filed his federal declaratory action challenging the constitutionality of portions of Utah's laws criminalizing prostitution, solicitation and the operation of brothels.

# FACTUAL BACKGROUND

The following facts are taken from Plaintiff Russell Greer's (Plaintiff or Greer) amended complaint and viewed in a light most favorable to him.[3]

Plaintiff is a well-educated,[4] twenty-five year old man currently residing in Murray, Utah.[5] He was born with Mobius Syndrome, a neurological condition that causes facial paralysis and prohibits him from closing his lips or moving his eyes sideways.[6] Greer's disability causes

---

[1] All parties in this case have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. Dkt. No. 24. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] *See* Utah Code Ann. §§ 76-10-1302 through 1305 (criminalizing prostitution and solicitation), §47-1-1 (declaring brothels a nuisance).

[3] *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs.,* 633 F.3d 1022, 1025 (10th Cir. 2011) (when considering a motion to dismiss, the court "accepts all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff."); *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002) (the court "must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed") (*citing Swanson v. Bixler*, 750 F.2d 810, 813) (10th Cir. 1984).

[4] In the summer of 2015, Plaintiff graduated from LDS Business College. Prior to graduation, Greer completed an internship in the Litigation Division of the Utah Attorney General's Office. Dkt. No. 55, ¶¶46-48.

[5] Dkt. No. 55, ¶8.

[6] *Id.*

significant physical and social challenges for him. Consequently, in order to "feel loved", Greer

solicits sex workers[7] at brothels in Nevada, where prostitution is legal, and in Utah, where

prostitution is criminalized.[8]

In April of 2013, Greer started visiting brothels in Nevada.[9] He describes his experiences

as "magical" and claims that his time there helped him to "cope with his disability and [ ]

depression."[10] Over time, frequent travel to Nevada became financially prohibitive[11] and Greer

was "forced" to seek companionship in Utah.[12] Prostitution is illegal in Utah and Plaintiff lived

in fear of being victimized,[13] criminally prosecuted and of contracting a sexually transmitted

disease.

Determined to provide everyone with the opportunity for safe and legal "access to

intimacy," Greer decided to open a brothel in Utah called "The Mile High Neon" (TMHN).[14]

Plaintiff outlines TMHN's business plan, design, layout and operational procedures in copious

---

[7] Greer refers to "prostitutes," "escorts," and "sex workers" interchangeably throughout his
pleading. While there are subtle nuances that differentiate these terms, for purposes of this opinion, the
court broadly defines all prostitutes, escorts and sex workers as individuals "who engages, offers, or
agrees to engage in any sexual activity with another individual for a fee, or the functional equivalent of a
fee." Utah Code Ann. §76-10-1302(1)(a).

[8] Dkt. No. 55, ¶¶8, 20, 25, 34-36.

[9] Greer visited brothels in or near Elko and Reno, Nevada. Dkt. No. 55, ¶¶36-37.

[10] Dkt. No. 55, ¶¶35, 39.

[11] Greer estimates he spent up to $14,000 at brothels in Nevada. Dkt. No. 55, ¶¶39-40.

[12] Additional reasons for Greer's decision to stop traveling to brothels in Nevada include, a falling
out with brothel owner Dennis Hoff and becoming the victim of a $4,000.00 theft. Dkt. No. 55, ¶¶41-44.

[13] Plaintiff claims he has been the victim of fraud when escorts post "fake pictures to lure Greer in
and upon meeting, . . . [hold him] under duress to give them the money. Others have been the same girl as
advertised, but they do not provide the services they promise." Dkt. No. 55, ¶42.

[14] The name "Mile High Neon" is a combination of "the mile-high club" and the Greek word
"porneon," meaning brothel. Dkt. No. 55, ¶¶ 47, 50-52.

detail.[15] In order to obtain a license, Greer submitted his licensing paperwork online with the

State of Utah. On December 29, 2015, Plaintiff's paperwork was approved and he was given

"numbers for his business registration and the appropriate document to file."[16] On January 14,

2016, Greer received notice from Kathy Berg, Director of Utah's Division of Commerce, that his

registration was for "an illegal business purpose" and immediately revoked.[17]

On October 18, 2016, Greer filed his initial complaint.[18] Later, he sought to incorporate

relevant statutory amendments and the court granted Plaintiff leave to amend.[19] Greer filed an

---

[15] Greer explains that the structure will resemble a Greek temple with large columns, marble floors and a wooden front door similar to that found at a "luxury mansion." Dkt. No. 55, ¶¶ 66, 67. A fountain will decorate the main room along with couches, televisions and a non-alcoholic bar. *Id.,*¶ 67. An electronic business directory is located near the front of the building where clients can "click" on the girls' pictures if they are interested in meeting them. *Id.,*¶69. Past the office where financial transactions are conducted, there are approximately ten employee rooms. *Id., ¶*71. Each room contains a window, bed, television and panic alarm. *Id.* TMHN also has a kitchen area where employees can cook their own meals. *Id.,¶73.*

Plaintiff proposes "innovative" operational procedures for TMHN's employees: weekly sexually transmitted disease inspections, self-defense training, financial planning, and training related to understanding the disabled. *Id.,* ¶¶76-79, 82. All workers are licensed through the sheriff's office and TMHN will pay taxes and donate to local charities. *Id.*, ¶¶83- 84. Potential employees may apply online and TMHN will hire only "the classiest and most beautiful people that have extraordinary personalities and who are not judgmental." *Id.,*¶80. Employees are encouraged to set goals, and every two years Greer will check to see if they are achieving their goals. *Id.* Greer will encourage employees to "go after their dreams," and put them in touch with "talent agents" who can help find other "non-sexual jobs." *Id.* Greer will act as TMHN's legal assistant, but will not own or run the brothel. *Id.,*¶86. Instead, he intends to give his business license to "an educated, beautiful woman in her mid-thirties to forties who has higher education and experience in business." *Id.*

[16] Dkt. No. 55, ¶¶51, 54.

[17] Dkt. No. 55, ¶55.

[18] *See* Dkt No. 1, Dkt. No. 2. Greer's initial pleading also listed Tricia Christie as a plaintiff. Christie did not sign the pleading, or provide a physical address, email, or telephone number. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number . . . ."). Further, as a non-attorney Greer is prohibited from representing Christie in any case. *See* DUCivR 83-1.3(c); *Perry v. Stout,* 20 F. App'x. 780, 782 (10th Cir. 2001) (non-attorney cannot represent a pro se litigant).

amended complaint on September 12, 2017, seeking declaratory and injunctive relief against

Defendants Governor Gary Herbert (Herbert), Utah Attorney General Sean Reyes (Reyes) and

Utah's Director of the Division of Corporations and Commercial Code Kathy Berg (Berg)

(collectively "State Defendants"), Salt Lake District Attorney Sim Gill (Gill), Salt Lake County

Mayor Ben McAdams (McAdams) and Salt Lake Director of Planning Rolen Yoshinaga

(Yoshinaga) (collectively "County Defendants") and Salt Lake City Mayor Jackie Biskupski

(Biskupski) and Salt Lake City Business Licensing Manager James Allred (Allred) (collectively

"City Defendants").[20]

Currently pending before the court are the City, State and County Defendants' motions to

dismiss Greer's amended complaint for failure to demonstrate standing, state a claim or establish

a constitutional violation.[21] Greer did not oppose the City or County Defendants' motions to

dismiss, and the time within which to do so has expired.[22]


## UTAH'S PROSTIUTION & BROTHEL LAWS

Greer seeks a declaration that the following portions of Utah's statutes are

unconstitutional (Utah's Prostitution and Brothel Laws).

---

[19] Dkt. No. 47.

[20] Greer's claims against individual City, County and State Defendants are brought solely in their official capacities. In addition, Greer's amended pleading does not name Christie as a Plaintiff, and therefore she is no longer a party to this action. *See* Dkt. No. 55.

[21] Dkt. No. 56, Dkt. No. 57, Dkt. No. 60.

[22] *See* DUCivR 7-1(b)(3)(A), *see also* DUCivR 7-1(d) ("[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."); *Masero v. Mortgage Elec. Registration Sys.,* 2010 U.S. Dist. LEXIS 128564 * 1 (D. Utah Dec. 2, 2010) (granting motion to dismiss as unopposed pursuant to DUCivR 7-1(d)).

<u>Utah Code Ann. §76-10-1302, Prostitution</u>.
(1) An individual is guilty of prostitution when the individual:
      (b)    takes steps in arranging a meeting through any form
              of advertising, agreeing to meet, and meeting at an
              arranged place for the purpose of sexual activity in exchange
              for a fee or the functional equivalent of a fee;
UCA §76-10-1302(b)


<u>Utah Code Ann. 76-10-1303, Patronizing a prostitute</u>.
(1) An individual is guilty of patronizing a prostitute when the individual:
      (b)    enters or remains in a place of prostitution for the purpose
              of engaging in sexual activity.
UCA §76-10-1303(b).


<u>Utah Code Ann. 76-10-1304, Aiding prostitution</u>.
(1) A person is guilty of aiding prostitution if the person:
      (iii)    leases, operates, or otherwise permits a place controlled
              by the actor, alone of in association with another, to be used
              for prostitution or the promotion of prostitution;
UCA §76-10-1304(1)(iii)


<u>Utah Code Ann. 76-10-1305, Exploiting prostitution</u>.
(1) An individual is guilty of exploiting prostitution if the individual:
      (a)    procures an individual for a place of prostitution; or
      (e)    owns, controls, manages, supervises, or otherwise keeps,
              alone or in association with another, a place of
              prostitution or a business where prostitution occurs
              or is arranged, encouraged, supported, or promoted.
UCA §76-10-1305(1)(a)(e).


<u>Utah Code Ann. 47-1-1, Declared a nuisance—Abatement</u>.
Whoever shall erect, establish, maintain, use, own or lease any building,
structure or place, for the purpose of lewdness, assignation or prostitution
is guilty of nuisance, and such building, structure or place, and the ground
itself, in or upon which such lewdness, assignation or prostitution is
conducted, permitted or carried on, and the furniture, fixtures and musical
instruments therein and the contents thereof are declared a nuisance, and
shall be enjoined and abated as hereinafter provided.
UCA §47-1-1.


7

# DISCUSSION

## I.     STANDING

### 1.     Standard of Review.

A threshold issue is whether Greer has standing to bring his claims against Defendants. Standing ensures that federal courts only issue judgments in "cases" and "controversies" in which they have jurisdiction to do so.[23] The burden is on plaintiff to clearly demonstrate the elements of standing for each cause of action,[24] and the court has an "independent obligation" to raise the standing issue "regardless of whether it is challenged by any of the parties."[25] When considering dismissal, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[26]

---

[23] U.S. Const. art. III, §2.

[24] *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007); *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (burden is on plaintiff "clearly to allege fact demonstrating" standing).

[25] *Summers v. Earth Island Inst.,* 555 U.S. 488, 499, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (citations omitted). The court previously issued an Order requesting supplemental briefing on standing, ripeness and the proper analysis for facial versus as-applied challenges. *See* Dkt. No. 34.

[26] *See* Fed. R. Civ. P. 12(b)(1); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed.2d 343 (1975). In general, Rule 12(b)(1) motions for dismissal take two forms:
> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.

*Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).

Article III standing requires a plaintiff to meet the following elements:

> First, the plaintiff must have suffered an invasion of a
> legally-protected interest which is (1) concrete and
> particularized, and (b) actual or imminent, not
> conjectural or hypothetical. Second, there must be a
> causal connection between the injury and conduct
> complaint of---the injury has to be fairly traceable to
> the challenged action of the defendant, and not the result
> of the independent action of some third party not before
> the court. Third, it must be "likely" as opposed to merely
> "speculative," that the injury will be redressed by a
> favorable decision.[27]

In addition to constitutional standing, a plaintiff must also establish prudential standing.

Prudential standing places limits on who may invoke the courts' powers and requires:

> (1) the plaintiff generally must assert his or her own legal
> rights; (2) the court must refrain from adjudicating
> "generalized grievances" most appropriately addressed by
> one of the other branches of government; and (3) the
> plaintiff's complaint must fall within the zone of interests to
> be protected or regulated by the statute or constitutional
> guarantee in question.[28]

When mounting a pre-enforcement claim, plaintiff is not required to "await and undergo

a criminal prosecution" before challenging the statute on constitutional grounds.[29]  Rather, a

plaintiff may establish standing prior to enforcement by showing both a future intention to

engage in conduct that is "arguably affected with a constitutional interest, but proscribed by a

statute" and a credible threat of prosecution.[30]

---

[27] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (citations and quotations omitted); *see also Gilbert v. Shalala,* 45 F.3d 1391, 1393-94 (10th Cir. 1995), *cert. denied,* 133 L. Ed. 2d 14, 116 S. Ct. 49 (1995).

[28] *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450-51 (10th Cir. 1994) (citations omitted).

[29] *Babbitt v. United Farm Workers Nat'l. Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979) (*quoting Doe v. Bolton*, 410 U.S. 179, 188, 35 L. Ed. 2d 201, 93 S. Ct. 739) (1973).

[30] *Id.*, *see also Brown v. Herbert*, 850 F. Supp. 2d 1240, 1246 (D. Utah 2012).

2.    <u>**Greer Does Not Have Standing To Enforce The Rights Of Individuals**</u>
<u>**Who Choose To Work In Prostitution.**</u>

As a preliminary matter, Greer cannot establish standing to bring his equal protection

challenge on behalf of individuals who "choose to work in prostitution."[31] Under the doctrine of

prudential standing, Greer cannot bring suit to enforce the rights of others.[32] Moreover, while an

association may bring suit on behalf of its members, it can only do so if: "(a) its members would

otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane

to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires

the participation of the individual members in the lawsuit."[33] As an unestablished business

owner, Greer does not identify any discernable "association" or "members" who otherwise have

standing to sue in their own right.[34] At best, Plaintiff attempts to bring an equal protection claim

as a future brothel owner on behalf of future brothel employees.[35] Yet, any currently unknown or

potential future relationships are too tenuous to support representational standing and Greer's

equal protection claim brought on behalf of unidentified others is dismissed.

---

[31] Dkt. No. 55, ¶¶106-108; *See* Claim 2(B) "Denial of Equal Protection for Those Who Choose to Work In Prostitution."

[32] *See VR Acquisitions, LLC v. Wasatch Cnty.,* 853 F.3d 1142, 1146 (10th Cir. 2017).

[33] *Thiebaut v. Colo. Springs Utils.,* 455 Fed. Appx. 795, 801 (10th Cir. 2011); *see also Summers* 555 U.S. at 498-99; *S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement*, 620 F.3d 1227, 1246 (10th Cir. 2010).

[34]*Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1397-98 (10th Cir. 1992) (citation omitted).

[35] *See* Dkt. No. 55, ¶108 ("The As-Applied challenged laws must be struck down to allow women the right to work in brothels."). Tricia Christie is no longer a party to this lawsuit and Greer may not assert a claim on her behalf.

3.    **Greer Does Not Have Standing To Assert Claims Against City Defendant
Biskupski and Allred and County Defendants McAdams and Yoshinaga.**

Greer does not demonstrate standing to bring claims against Defendants Salt Lake

City Mayor Jackie Biskupski, City Business Licensing Manager James Allred, Salt Lake County

Mayor Ben McAdams and County Director of Planning and Development Rolen Yoshinaga.

a.    **Biskupski and McAdams**

The only allegation raised against City Mayor Jackie Biskupski is set forth at paragraph

twelve (12) of the amended pleading and states:

> Defendant Biskupski is the Mayor for the City of Salt Lake
> ("Biskupski"). She is sued in her official capacity only.
> Biskupski, an elected official, exercise the executive and
> administrative powers of the municipality. *Utah Code
> 10-3b-202(1)(b).*[36]

Likewise, the only mention of Salt Lake County Mayor Ben McAdams is at paragraph

thirteen (13):

> Defendant Ben McAdams is the Mayor for the County of Salt
> Lake ("McAdams"). He is sued in his official capacity only,
> McAdams, an elected official, exercises the executive and
> administrative powers of the municipalities of the County.
> *Utah Code 10-3b-202(1)(b).*[37]

Plaintiff does not raise any substantive claims or assert an injury-in-fact. Absent a

traceable injury, causation and redressability,[38] Plaintiff lacks standing and Biskupski and

Allred's motions to dismiss are granted.

---

[36] Dkt. No. 55, ¶12.

[37] Dkt. No. 55, ¶13. Utah Code §10-3b-202(1)(b) sets forth the general powers of mayors of
cities, towns and metro townships, but not for counties.

[38] *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

### b.      Allred and Yoshinaga

The limited allegations raised against City Business Licensing Manager James Allred and

County Development Director Rolen Yoshinaga are found at paragraphs fifteen (15) and sixteen

(16) of the amended pleading:

> Defendant James Allred is the Business Licensing Manager
> for the City of Salt Lake ("Allred"). He is sued in his official
> capacity only. Allred is responsible for overseeing the business
> licensing in Salt Lake City which includes Sexual Oriented
> Businesses (SOBs). *Salt Lake City Code*  5.02.020;
> *Utah Code 10-8-41.5.*
>
> County of Salt Lake ("Yoshinaga"). He is sued in his official
> capacity only. Yoshinaga is responsible for overseeing the
> business licensing in Salt Lake County which includes Sexual
> Oriented Businesses (SOBs). *Salt Lake County Code 5.01.030;*
> *Utah Code 10-8-41.*[39]

And, additionally at paragraph thirty-three (33):

> Berg, Allred, and Yoshinaga are compelled to not issue business
> licenses for those businesses deemed "illegal" and therefore
> hinders Plaintiff's attempts from obtaining a license to try to
> amend State, County, and City laws surrounding houses of
> prostitution.[40]

Together, these allegations are insufficient to establish standing. In their official

capacities, Allred and Yoshinaga oversee aspects of business licensing for Salt Lake City and

Salt Lake County. Greer, however, does not allege that he applied for, or was denied, a business

license by either. No substantive allegations are raised and there is no concrete or particularized

---

[39] Dkt. No. 55, ¶¶ 15, 16.

[40] Dkt. No. 55, ¶33.

injury alleged.[41] Without an injury, causal connection[42] or redressability, Greer cannot

demonstrate standing and Allred and Yoshinaga's motions to dismiss are granted.

> ### 4.    Greer Has Standing To Bring Claims Against County Defendant Gill and State Defendants Herbert, Reyes and Berg.

Greer demonstrates standing to bring claims against Defendant Salt Lake

County District Attorney Sim Gill and State Defendants Governor Gary Herbert, Attorney

General Sean Reyes and Director of the Division of Commerce, Kathy Berg.

> #### a.    Pre-Enforcement Challenge

As discussed, Article III standing limits federal court jurisdiction to clearly defined cases

and controversies where a plaintiff's injury is "actual or imminent, not conjectural or

hypothetical."[43] That said, a plaintiff is not required to "await the consummation of threatened

injury to obtain preventive relief."[44] Indeed, in order to establish injury under a pre-enforcement

challenge to the constitutionality of a criminal statute, a plaintiff must show: "(1) an intention to

engage in a course of conduct arguably affected with a constitutional interest, but proscribed by

[the challenged] statute, and (2) [the existence of] a credible threat of prosecution thereunder."[45]

A credible threat of prosecution exists when the challenged statute prohibits conduct that

---

[41] *Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

[42] *Id.* 137 F.3d at 1202 (standing doctrine requires a "causal connection between the injury and the conduct complaint of" that is "fairly traceable to the actions of the defendant.").

[43] *Lujan,* 504 U.S. at 560.

[44]*Babbit v. UFW Nat'l. Union,* 442 U.S. at 298 (*citing Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S. Ct. 658, 67 L. Ed. 1117 (1923).

[45] *Colo. Outfitters Ass'n. v. Hickenlopper,* 823 F.3d 537, 545 (10th Cir. 2016); *United States v. Supreme Court,* 839 F.3d 888, 901 (10th Cir. 2016) (pet. for cert. filed June 6, 2017) (*citing D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004) (requiring an "objectively justified fear of real consequences").

plaintiff "wishes to engage [in], and the state has not disavowed any intention of invoking the . . .

provision" against plaintiff.[46]

###   b.   Gill[47]

County District Attorney Sim Gill does not dispute that he possess authority to enforce

Utah's criminal prostitution laws,[48] and he provides no assurances that Greer will not be

prosecuted thereunder.[49] Rather, the thrust of Gill's argument is that any felony prosecution is

too speculative to support standing since it would require two prior prostitution convictions,

solicitation of a child, or solicitation in unincorporated Salt Lake.[50]

Greer has not been threatened with arrest or prosecution under Utah's Prostitution and

Brothel laws. Nonetheless, he asserts an objective fear of prosecution "if he continues to engage

in sexual activity for hire."[51] The court lacks information on the regularity of the statutes'

enforcement. However, any assertion that enforcement is too speculative is undermined by the

---

[46] *Supreme Court*, 839 F.3d at 901 (*citing Babbitt* 442 U.S. at 298).

[47] *See* Dkt. No. 43 (conceding "Plaintiff may have standing to pursue claims against [Gill] based on fear of arrest and prosecution for soliciting prostitution . . . .").

[48] *See e.g., Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1248 (11th Cir. 1998) ("where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.").

[49] *See Babbitt*, 442 U.S. at 302 (threat of prosecution credible where the state "has not disavowed any intention of invoking the. . . provision" against plaintiff.).

[50] Patronizing a prostitute is a misdemeanor offense prosecuted by the City. UCA §§76-10-1303, 76-10-1308, 10-03-928(2). However, patronizing a prostitute is charged as a felony, and prosecuted by the County District Attorney's Office, if it is a third offense or the prostitute is a minor.  *Id.* In addition, the County District Attorney's Office is charged with prosecuting felonies within the county as well as misdemeanors that occur within the unincorporated county. *See* UCA §17-18a-401.

[51] Dkt. No. 55, ¶¶8, 58. Even though Greer has "gone a year" without intimacy, standing can still be established based on a credible threat that "such behavior, if taken in the future, would be prosecuted." *Bronson v. Swenson,* 500 F.3d 1099, 1108 (10th Cir. 2007) (*referencing Medimmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 772-76 , 166 L. Ed. 2d 604 (2007).

absence of any geographical limits on Greer's future "engagements" or solicitations. Absent parameters, it is possible that Greer's engagements will occur in unincorporated Salt Lake, an area where the District Attorney is charged with prosecuting felony and misdemeanor crimes.[52] Accordingly, under the somewhat loosened pre-enforcement requirements Gill has authority to enforce the laws and a credible threat of prosecution exists that is sufficient to support standing.[53]

### c.     *Herbert, Reyes and Berg*

State Defendants Herbert, Reyes and Berg concede that Greer has standing to bring his claims against them. Berg denied Greer's business registration for TMHN,[54] and Herbert and Reyes are responsible for promulgating and enforcing Utah's Prostitution and Brothel laws. Given the possibility that Greer may engage in the proscribed conduct in the future, a credible threat of enforcement and prosecution exist.

---

[52] *See* UCA §17-18a-401.

[53] In so ruling, the court declines to adopt the State's argument that Greer's case is only "a challenge to the ability to open a brothel and not a challenge to the legality of being able to solicit prostitutes more  generally, . . ."(Dkt. No. 60 at 9.) Indeed, Plaintiff challenges the  constitutionality of Utah Code Ann. §76-10-1302(b) which criminalizes "the generalized legality of prostitution" when meeting at "an arranged place" for the purpose of sexual activity in exchange for a fee or the functional equivalent of a fee. UCA §76-10-1302(b).

Additionally, the court finds Gill's ripeness argument unpersuasive, noting that contingent future events are always at issue in a pre-enforcement matter. *See Thomas v. Anchorage Equal Rights Comm'n.,* 220 F.3d 1134, 1138-39 (9th Cir. 2000) (*stating* "[t]he overlap between [ripeness and standing] has led some legal commentators to suggest that the doctrines are often indistinguishable") (*citing* Erwin Chemerinsky, *A Unified Approach to Justiciability,* 22 Conn. L. Rev. 677, 681 (1990); *see also Awad v. Ziriax,* 670 F.3d 1111, 1124 (10th Cir. 2012) (*quoting Am. Civil Liberties Union v. Johnson,* 194 F.3d 1149, 1154 (10th Cir. 1999) ("If a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.").

[54] *See Kitchen v. Herbert,* 775 F.3d 1193, 1201 (10th Cir. 2014) (holding plaintiffs possessed standing after being denied a license because, in part, the plaintiffs "identified several harms that flow[ed] from th[at] denial."); *see also* Utah Code Ann. §42-2-5.

## II.      42 U.S.C. § 1983

Section 1983 creates a federal cause of action to vindicate violations of constitutional law

by individuals acting "under color of state law."[55] Specifically, §1983 provides a remedy against:

> Every person who, under color of any statute, ordinance, regulations,
> custom, or usage, of any State . . . subjects or causes to be subjected
> . . . to the deprivation of any rights, privileges or immunities secured
> by the Constitution and Laws . . . .[56]

Standing alone, the statute does not create substantive civil rights. Instead, the statute serves as a

procedural mechanism for enforcement of existing federal and constitutional rights.[57]

In the context of a civil rights action against multiple governmental actors, liability is

predicated on each defendant's personal involvement in the constitutional violation.[58] It is of

particular importance "that the complaint make clear exactly who is alleged to have done what to

whom, [in order] to provide each individual with fair notice as to the basis of the claims against

him or her."[59] Specifically,

> When various officials have taken different actions with respect to a
> plaintiff, the plaintiff's facile, passive-voice showing that his rights
> "were violated" will not suffice. Likewise insufficient is a plaintiff's
> more active-voice yet undifferentiated contention that "defendants"
> infringed his rights.[60]

---

[55] *See* 42 U.S.C. §1983.

[56] *Id.*; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).

[57] *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992) ("The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

[58] *See Pahls v. Thoms*, 718 F. 3d 1210, 1225-56 (10th Cir. 2013).

[59] *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (*citing Robbins v Oklahoma,* 519 F.3d 1242, 1250 ) (10th Cir. 2008).

[60] *Pahls,* 718 F.3d at 1225-26 (*citing Tomkovich v. Kan. B. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998).

16

To survive dismissal for failure to state a claim, a §1983 plaintiff must allege a: "(1) violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."[61]

As set forth herein, Plaintiff does not assert violations of constitutional rights secured under the First, Fifth and Fourteenth Amendments.[62] Because Utah's Prostitution and Brothel laws are constitutional sound, they cannot serve as the grounds for redress of Greer's §1983 claims.[63]

## III. UTAH'S STATUTES ARE CONSTITUTIONAL

Greer mounts several constitutional challenges to Utah's Prostitution and Brothel laws claiming violations of (1) the right to sexual privacy, (2) equal protection of the laws, (3) the right to earn a living, (4) freedom of association, (5) Article 1, Section 7 of the Utah Constitution, and (6) prohibitions on vagueness.[64]

As explained herein, the challenged provisions are constitutionally sound and Defendants Gill, Herbert, Reyes and Berg's motions to dismiss for failure to state a claim are granted. In addition, Greer's failure to establish a violation of rights protected under the

---

[61] *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (*citing Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted).

[62] Dkt. No. 55.

[63] *Auvaa v. City of Taylorsville,* 506 F. Supp. 3d 903, 909-10 (D. Utah 2007) (*quoting Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1157) (10th Cir. 2001) (a §1983 plaintiff must "show an affirmative link between a defendant's conduct and a constitutional violation, and that affirmative link must be alleged in the complaint as well as proven at trial.").

[64] *See* Utah Code Ann. §§76-10-1302(1)(b), 76-10-1303(1)(b), 76-10-1304(1)(iii), 76-10-1305(a)(e) and 47-1-1.

Constitution also serves as an alternative holding for granting Defendants Biskupski, McAdams, Allred and Yoshinaga's motions to dismiss.[65]

### 1.   <u>Facial And As-Applied Challenges.</u>

A party may challenge the constitutionality of a statute under a facial challenge, an as-applied challenge or both.[66] More specifically,

> [a] facial challenge is a head-on attack [on a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications.
>
> In contrast, an as applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case.[67]

The distinction between facial and as-applied challenges is murky. One is not always categorically distinct from the other and the line of demarcation may be fluid.[68] At first blush, Greer's claims exhibit characteristics of both facial and as-applied challenges; Plaintiff titles his challenges "As Applied,"[69] yet the body of the claims reference application to "many persons in Utah."[70]

---

[65] *See supra*, pg. 10-12.

[66] *See Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008).

[67] *United States v. Supreme Court*, 839 F.3d 888, 907 (10th Cir. 2016) (internal citation and quotation omitted); *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n. 5 (10th Cir. 2010) ("[An] 'as applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitution as applied to [particular parties]."); *United States v. Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

[68] *See Am. Fed'n. of State, Cty. & Mun. Emps. Council 79 v. Scott,* 717 F.3d 851, 865 (11th Cir. 2013).

[69] Dkt. No. 55, ¶¶ 90, 96, 98, 103, 105.

[70] Dkt No. 55, ¶¶111, 117.

When characteristics of both challenges are present, the court may consider other guiding tenets.[71] First, labels that "the parties attach to claims are not determinative."[72] Thus, Greer's "as applied" designations are not dispositive of the inquiry. Second, "the court must focus on whether the claim *and the relief therein* extend beyond the plaintiffs' particular circumstances"[73] Third, if the claim and relief extend beyond the plaintiff, "facial standards are applied but only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision."[74]

As set forth below, the court applies the appropriate "analytical construct" in conjunction with its consideration of Greer's constitutional challenges to Utah's Prostitution and Brothel laws.

## 2. **Plaintiff's Fourteenth Amendment Substantive Due Process Claim For The Right To Sexual Privacy.**

While labeled "[a]s [a]pplied," Plaintiff actually asserts a violation of "many individuals'" substantive due process rights and raises a facial objection.[75]

The Due Process Clause extends constitutional protections to fundamental rights and freedoms protected under the Bill of Rights.[76] Fundamental rights are "deeply rooted in this

---

[71] *Supreme Court,* 839 F.3d at 914 (10th Cir. 2016).

[72] *Id.* at 914. *See also Doe v. Reed,* 561 U.S. 186, 194, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010) ("The label is not what matters.").

[73] *Id.* (Emphasis added).

[74] *Id.*

[75] Dkt. No. 55, ¶96. *See Discount Tobacco City & Lottery, Inc. v. United States,* 674 F.3d 509, 522 (6th Cir. 2012) (*quoting Reed,* 561 U.S. at 194).

[76] *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (*quoting Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal quotations omitted).

Nation's history and tradition . . . , such that neither liberty nor justice would exist if [the liberties] were sacrificed."[77]

### a.   The Relationship Between Prostitute And Client Is Not A Fundamental Right Protected By The Due Process Clause.

Any fundamental rights analysis involves consideration of plaintiff's "careful description of the asserted fundamental liberty interest" along with its historical roots.[78] Fundamental constitutional protections have been afforded to personal decisions and relationships such as "marriage, procreation, contraception, family relationships, child rearing, and education." [79] Similar protections have not been extended to the relationship between a prostitute and client.

In support of his claim, Greer asserts sex in brothels is deeply rooted in this nation's history.[80] Additionally, Plaintiff points to the "ambiguity" surrounding the Supreme Court's ruling in *Lawrence v. Texas*, striking down Texas' law prohibiting homosexual sodomy.[81] Admittedly, the nature of rights protected under *Lawrence* is imprecise. Nonetheless, the *Lawrence* court acknowledged the case "does not involve . . . prostitution."[82] Further, the Supreme Court's holding has not been interpreted as creating "a liberty interest that invalidates

---

[77] *Id.* 755 at 1208-09 (*citing Glucksberg*, 521 U.S. at 720-21) (quotations omitted).

[78] *Chavez v. Martinez,* 538 U.S. 760, 775-76, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2002).

[79] *Carey v. Population Services International,* 431 U.S. 678, 684-686, 52 L. Ed. 2d 675, 97 S. Ct. 2010 (1977).

[80] Dkt. No. 55, ¶91.

[81] Dkt. No. 61 at 19; *See Lawrence v. Texas,* 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508  (2003).

[82] *Lawrence,* 539 U.S. 558 at  578 .

laws criminalizing prostitution."[83] Without a fundamental liberty interest, rational-basis review

applies.[84]

      **b.**    **Utah's Laws Criminalizing Prostitution Are Rationally Related To Legitimate Government Interests.**

Under rational review a statute must be upheld "if there is any reasonably conceivable

state of facts that could provide a rational basis for the classification."[85] Review is highly

deferential to state action and the burden is on plaintiff "to negate every conceivable basis which

might support" the legislation.[86]

Utah's Prostitution and Brothel laws rationally relate to legitimate governmental

interests. In reaching this conclusion, the court takes judicial notice of the harms of prostitution

as determined by other federal courts.[87] Legitimate harms of prostitution include an interest in

---

[83] *See Erotic Service Provider Legal Education & Research Project v. Gascon,* 880 F.3d 450, 456 (9th Cir. 2018); *See e.g. Doe v. Jindal,* 851 F. Supp. 2d 995, 1000 n. 11 (E.D. La. 2012) ("*Lawrence* does not speak to the solicitation of sex for money, and has little precedential force here."); *United States v. Thompson,* 458 F. Supp. 2d 730, 732 (N. D. Ind. 2006) ("it would be an untenable stretch to find that *Lawrence* necessarily renders (or even implies) law prohibiting prostitution . . . unconstitutional"); *State v. Thomas,* 891 So. 1223, 1236 (La. 2005) ("[T]he majority opinion in *Lawrence* specifically states the court's decision does not disturb state statutes prohibiting public sexual conduct or prostitution.").

[84] *FCC v. Beach Commc'ns.,* 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (upholding statute under rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *see also Teigen v. Renfrow,* 511 F.3d 1072, 1083 (10th Cir. 2007) (upholding statute that is "rationally related to a legitimate government purpose or end."). If a fundamental liberty interest is involved, strict scrutiny applies; *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

[85] *Beach Commc'ns, Inc.,* 508 U.S. at 313 (1993); *see also Allright Colorado, Inc. v. City & Cty. Of Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted).

[86] *Heller v. Doe,* 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (internal quotation marks omitted).

[87] A court is required to convert a motion to dismiss to a motion for summary judgment if it considers matters that are outside the scope of the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But, a court is not required to convert a motion to summary judgment based upon its consideration of public records for which the court takes judicial notice. *See Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) ("facts subject to

deterring the commodification of sex,[88] along with findings that support a connection between

prostitution and trafficking in women and children,[89] violence against women,[90] illegal drug

use[91] and sexually transmitted diseases.[92]

Greer maintains criminalizing prostitution actually places individuals at greater risk of

contracting a sexually transmitted disease or becoming the victim of a crime, and therefore no

rational basis exists.[93] The issue, however, is not whether Greer's basis or the basis offered by

the State is more rational. Rather, the question is whether Utah's Prostitution and Brothel laws

further a legitimate purpose.[94] Here, they do. Commercial sex is not a fundamental right and

---

judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.); *see also St Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue.").

The State also asks the court to take judicial notice of the fact that forty-nine (49) of the fifty (50) states in the United States have chosen to criminalize prostitution, with only Nevada leaving that decision to the counties to decide.

[88] *See Coyote Publ. Inc. v. Mille,* 598 F.3d 592, 603 (9th Cir. 2010) (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and restrictions on prostitution stem from "an objection to their inherent commodifying tendencies—to the buying and selling of things and activities integral to a robust conception of personhood.").

[89] *See Erotic Serv. Provider,* 880 F.3d at 457 (*citing Coyote Publ'g Inc.,* 598 F.3d at 600 (9th Cir. 2010) and Bureau of Justice Statistics, U.S. Dep't. of Justice, *Characteristics of Suspected Human Trafficking Incidents,* 2008-2010 1, 3 (April 2011).

[90] *See Id.* at 457-58 (*citing United States v. Carter,* 266 F.3d 1089, 1091 (9th Cir. 2001) and *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 n. 47-48 (2000).

[91] *See Id.* at 458 (*citing Colacurio v. City of Kent,* 163 F.3d 545, 554, 556 (9th Cir. 1998) and Amy M. Young, et al., *Prostitution, Drug Use, and Coping with Psychological Distress,* J. Drug issues 30(4), 789-800 (2000).

[92] *Id.* at 458.

[93] Dkt. No. 55, ¶92; Dkt. No. 61 at 10.

[94] *Allright Colorado, Inc.,v. Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991).

22

Utah's laws prohibiting prostitution and the operation of brothels are supported by a rational basis.

### 3. Claim Two: Plaintiff's Fourteenth Amendment Equal Protection Claim For Same End Goal of Intimacy.

The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[95] Equal protection requires the laws to afford similarly situated people like treatment.[96]

Greer concedes Utah's Prostitution and Brothel laws are neutral and apply to "all persons who engage in prostitution."[97] He argues, however, that the laws have a disparate impact on individuals with physical disabilities in violation of equal protection. Greer asserts disabled people "comprise a higher percentage of patrons who pay for [prostitution] services" and are therefore at a higher risk of being arrested for soliciting prostitutes.[98] As an individual with a disability, Plaintiff's claim contains aspects of both facial and as-applied challenges.[99] Yet, the relief requested affects the statute's application to the physically disabled. Accordingly, facial standards apply but only "to the universe of applications contemplated by plaintiff's claim."[100]

---

[95] U.S. Cons. Amend. XIV.

[96] *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). A statute violates the equal protection clause "if it makes distinctions between the disabled and nondisabled without a rational justification."); *see also Thompson v. Colorado,* 278 F.3d 1020 (10th Cir. 2001) (*citing United States Dep't. of Agric. v. Moreno,* 413 U.S. 528, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973).

[97] Dkt. No. 55, ¶102.

[98] Dkt. No. 55, ¶¶ 102, 105.

[99]*Cmpr.* Dkt. No. 55, ¶103 ("The As Applied sections") *with* Dkt. No. 55, ¶ 102 ("discrimination against disabled people").

[100] *Supreme Court,* 839 F.3d at 913 (10th Cir. 2016).

Assuming, as Greer has alleged, that Utah's Prostitution and Brothel laws have a

disproportional effect on the disabled, "a neutral law that disproportionately impacts [a group]

does not violate equal protection, . . . , unless that impact can be traced to a discriminatory

purpose."[101] Greer does not allege any discriminatory purpose and therefore fails to raise an

equal protection violation. And, even if alleged, any discriminatory purpose would need to

support the unlikely contention that Utah's legislature enacted statutes prohibiting prostitution

and brothels "because of, not merely in spite of" the laws' adverse effects on the disabled."[102]

There is no fundamental right to solicit sexual services and Utah's Prostitution and Brothel laws

bear a rational relation to legitimate government interests.[103]

### 4.    Claim Three: Violation of Plaintiff's Fourteenth Amendment Substantive Due Process Right To Earn A Living.

Greer's third constitutional challenge alleges Utah's Prostitution and Brothel laws violate

the Fourteenth Amendment right to "earn a living through one's chosen livelihood or profession"

and to "follow any of the ordinary callings of life; to live and work where one will; and for that

purpose enter into all contracts which may be necessary and essential to carrying out these

pursuits."[104] Greer mounts a facial challenge on behalf of the "many persons" who seek to earn a

living by engaging in the commercial exchange of sex.[105]

---

[101] *United States v. Williams,* 45 F.3d 1481, 1486 (10th Cir. 1995) (*citing United States v. Thurmond,* 7 F.3d 947, 953 (10th Cir. 1993).

[102] *See Thurmond,* 7 F.3d  947, 952 (10th Cir. 1993) (citing *Personnel Adm'r. v. Feeney*, 442 U.S. 256, 272, 99 S. Ct. 2282, 60 L. Ed. 2d 870) (1979).

[103] *Romer v. Evans,* 517 U.S. 620, 631, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996).

[104] Dkt. No. 55, ¶112.

[105] Dkt. No. 55, ¶111.

The language of Plaintiff's challenge is identical to that raised by plaintiffs in the Ninth

Circuit case *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, challenging the

constitutionality of a California statute criminalizing prostitution.[106] While recognizing a

fundamental right to make contracts and earn a living, the Ninth Circuit ultimately concluded

"there is no constitutional right to engage in illegal employment, namely, prostitution" and

Plaintiff's claim fails.[107] Consistent therewith, Greer fails to state a claim for a violation of a

Fourteenth Amendment substantive due process right to earn a living through illegal

employment---prostitution.

**Claim Four: Violation of Plaintiff's First Amendment Right To Free Association.**

Next, Greer raises a facial attack on Utah's Prostitution and Brothel laws, claiming the

statutes violate "many persons" rights to the freedom of association as secured under the First

Amendment.[108]

"There are two distinct forms of freedom of association: (1) freedom of intimate

association, protected under the Substantive Due Process Clause of the Fourteenth Amendment;

and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the

First Amendment." [109] As an initial matter, Greer does not assert that the association between a

prostitute and client is expressive. Further, Utah's Prostitution and Brothel laws do not

---

[106] *Erotic Service Provider,* 880 F.3d at 454 (*citing* Cal. Penal Code §647(b)).

[107] *Id. at* 459; *see Lowe v. S.E.C.,* 472 U.S. 181, 228, 105 S. Ct. 2557, 86 L. Ed 2d 130 (1985) ("It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose." (internal quotation and citation omitted).

[108] Dkt. No. 55, ¶117. Plaintiff mounts a facial challenge based on his objection to the laws on behalf of "many persons" and not just himself.

[109] *Erotic Service Provider*, (2018) (*citing Roberts v. U.S. Jaycees,* 468 U.S. 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

criminalize associating or meeting with a prostitute; they criminalize paying a prostitute for sex. This association is not protected.  Thus, even though Greer frames his claim as a First Amendment issue, his allegations are actually rooted in a claim for violation of the substantive due process clause protecting "intimate" and highly personal associations.[110] As discussed, Greer's substantive due process claim fails because Utah's Prostitution and Brothel laws do not burden a fundamental right and are supported by a rational basis.[111]

### Claim Five: Violation Of  Article I Section 7 Of The  Utah Constitution

Plaintiff argues the statutes violate Article 1 Section 7 of the Utah Constitution by depriving him of his due process rights.[112]

Like its federal counterpart, Utah's due process clause provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."[113] The Utah Supreme Court interprets the state due process clause consistent with Supreme Court case law interpreting the federal due process clause.[114] Accordingly, this court's analysis of Greer's "federal substantive

---

[110] *See* Dkt. No. 55, ¶116 ("the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships."); *see also* Dkt. No. 55, ¶117 (challenging Utah's Prostitution and Brothel statutes as prohibiting the ability of "many persons in the State of Utah, . . . to enter into and maintain certain intimate and private relationships.").

*See also IDK Inc. v. County of Clark,* 836 F.2d 1185, 1192 (9th Cir. 1988) (noting the Supreme Court typically identifies the source of protection for highly personal relationships as the fourteenth amendment due process clause and not the first amendment freedom to assemble.).

[111] *See IDK,* 836 F.2d at 1193 (holding duration of relationship between prostitute and client does not support an intimate relationship).

[112] Dkt. No. 55, ¶121.

[113] Utah Const. Art. I, §7, *Jensen v. Cunningham,* 2011 UT 17, ¶71, 250 P.3d 465, 483.

[114] *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d 998, 1013 (D. Utah 2016) (*citing Terra Utils. v. Public Serv. Comm'n.,* 575 P.3d 1029 (Utah 1978) ("Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the

26

due process claim applies with equal force to Plaintiffs' due process claim under the Utah

Constitution" and, as a result, Greer fails to state a claim for relief under Article I Section 7. [115]

**Claim Six: Violation Of  Constitutional Prohibition On Vagueness**

In 2017, the Utah legislature changed the term "house of prostitution" to "place of

prostitution," which it defines as:

> a place or business where prostitution or promotion of prostitution
> is arranged, regularly carried on, or attempted by one or more
> persons under the control, management, or supervision of another. [116]

Greer asserts the term "place of prostitution" is unconstitutionally vague because it[117]

arbitrarily allows law enforcement "to go after obvious brothels, but not go after legal places that

may be practicing prostitution [i.e. strip clubs, massage parlors etc.] . . . ."[118] Utah Code Ann.

§76-10-1304(1)(iii) is the only criminal statute challenged by Plaintiff that is applicable to

operation of a brothel.[119]

Greer raises his challenge to the constitutionality of the statute in the context

of a pre-enforcement review. Pre-enforcement review amounts to a facial challenge since "no

one has been charged so the court cannot evaluate the statute as applied."[120] Moreover, because

---

federal Constitution, the decisions of the Supreme Court of the United States on the federal due process clauses are highly persuasive as to the application of that clause of our state Constitution.").

[115] *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d at 1013.

[116] Dkt. No. 55, Utah Code Ann. §76-10-1301(3).

[117] Dkt. No. 55, ¶117.

[118] Dkt. No. 55, ¶127.

[119] The other Utah Prostitution and Brothel statutes pertain to personal solicitation or exploitation of prostitutes and are not encompassed within Greer's vagueness challenge. *See* UCA §76-13-1302(1)(b), UCA §76-10-1303(1)(b) and UCA §76-10-1305(1)(a)(e). Moreover, the "definitions" referred to in Title 76 of Utah's Criminal Code do not have any application to Title 47 Nuisances or UCA §41-1-1.

[120] *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988).

Greer's challenge does not implicate any conduct protected under the First Amendment,[121] the statute is reviewed "on its face as unduly vague in violation of due process."[122] To demonstrate that the law is impermissibly vague, it must be "vague in all of its applications."[123]

Vagueness is rooted in the due process clause of the Fifth Amendment which guarantees that "[n]o person shall . . . be deprived of life, liberty or property without due process of law."[124] A statute is impermissibly vague if "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement."[125] When reviewing a statute for vagueness, "courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution"[126]

---

[121] *See Gaudreau*, at 361 ("[A] statute may be challenged on its face when it threatens to chill constitutionally protected conduct, especially conduct protected by the First Amendment.").

[122] *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L.Ed.2d 362, (1982).

[123] *Id.* at 495; *see Free Speech Coalition v. Gonzales,* 483 F. Supp. 2d 1069, 1078 (D. Colo. 2007) (holding that because the "regulation does not implicate a substantial amount of constitutionally protected conduct, and since it comes in a pre—enforcement context" the *Hoffman Estates* analysis applied); *But see United States v. Moesser,* 2010 U.S. Dist. LEXIS 123271 *33-34 (10th Cir. 2010) ("while the Supreme Court has not expressly overturned its prior rule permitting facial vagueness claims outside of a First Amendment context, it is clear that since Justice Scalia's in-depth discussion of the issue, . . . , the Court has shifted away from allowing such challenges and now favors only permitting facial vagueness challenges when First Amendment protections are involved.")

[124] U.S. Cons. Amend. V.

[125] *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir 2005); *see also United States v. Corrow*, 119 F.3d 796, 802 (10th Cir. 1997).

[126] *United States v. Day,* 223 F. 3d 1225, 1228 (10th Cir. 2000) (*citing Brecheisen v. Mondragon*, 833 F.2d 238, 241 (10th Cir. 1987).

Upon review, the statute is clearly designed to regulate prostitution and includes a specific standard for enforcement; namely, whether the "place" in question is "used for prostitution or the promotion of prostitution."[127] The law provides fair warning of what is proscribed, and in the pre-enforcement context there is no allegation that the statute has been enforced in a discriminatory manner. Further, while a business that holds itself out as a "brothel" may be a more obvious target for prosecution, the statute provides a clear enforcement standard that does not encompass otherwise legal businesses. Consequently, the language of the statute "is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness."[128]

## IV.    RULING & ORDER

At its core, Greer's action stems from an impassioned belief that Nevada's system of regulating prostitution and brothels is superior to Utah's laws criminalizing prostitution. While engaging, Greer's policy based claims do not control and it is not the role of this court "to weigh the wisdom of the legislation."[129] Utah's Prostitution and Brothel laws are rationally related to legitimate governmental interests, and any claim that the laws are antiquated and out of line with popular convictions is a policy based argument that is appropriate for consideration by the legislature, not the courts.

For the reasons set forth in this decision, the City, County and State Defendants' motions are granted, and Greer's amended complaint is dismissed with prejudice.

---

[127] Utah Code Ann. §76-10-1304(1)(iii).

[128] *Hoffman Estates*, 455 U.S. at 503.

[129] *Bensing v. United States,* 551 F.2d 262, 265 (10th Cir. 1977).

29

**DATED**:  May 8th , 2018.

**BY THE COURT:**

Dustin B. Pead
U.S. Magistrate Judge

# United States District Court

## District of Utah

RUSSELL G. GREER,

Plaintiff

v.

GARY R. HERBERT,

Defendant

**JUDGMENT IN A CIVIL CASE**

Case Number: 2:16-cv-01067

IT IS ORDERED AND ADJUDGED that Plaintiff's Amended Complaint is dismissed with prejudice.

May 8, 2018

BY THE COURT:

Dustin B. Pead
U.S. Magistrate Judge

Russell Greer
3068 West Mark Ave
West Valley City, UT 84119
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2018 MAY 22  A 11: 45

DISTRICT OF UTAH

BY: _____
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>   Plaintiff<br><br>v.<br><br>**GARY R. HERBERT,** in his official capacity as Governor of the State of Utah; **SEAN D. REYES,** in his official capacity as Attorney General of the State of Utah; **SIM S. GILL,** in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI,** in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS,** in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG,** in her official capacity as Director of the Division of Commerce; **JAMES ALLRED,** in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA,** in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>   Defendants | **PLAINTIFF'S NOTICE OF APPEAL**<br><br>Case No.: 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

Notice is hereby given that Russell Greer, Plaintiff in the above named case, hereby appeals to the

United States Tenth Circuit Court of Appeals from the final judgment entered in this action on May 8th,

2018 (Dkt. 74). Respectfully submitted.

/rgreer/
05/21/2018
Pro Se Litigant

## CERTIFICATE OF SERVICE:

I certify that on May 21st, 2018, a true and correct copy of PLAINTIFF'S NOTICE OF APPEAL
was emailed to the following:

    David Wolf, Assistant Attorney General and Counsel to State Defendants Berg,
Herbert & Reyes.
      dnwolf@agutah.gov

      Jackie Ramos: Counsel for County Defendants Gill, McAdams &
      Yoshinaga. jmramos@slco.org

      Catherine Brabson, Counsel for City Defendants Allred and Biskupski
      Catherine.Brabson@slcgov.com