**Appeal No. 18-4075**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

*RUSSELL G. GREER,*

*Appellant,*

v.

*GARY R. HERBERT*, in his individual capacity as Governor of the State of Utah; *SEAN D. REYES*, in his official capacity as Attorney General of the State of Utah; *SIM S. GILL*, in his official capacity as District Attorney of the City and County of Salt Lake; *JACKIE BISKUPSKI*, in her official capacity as Mayor of the City of Salt Lake, *BEN MCADAMS*, in his official capacity as Mayor of the County of Salt Lake, *KATHY BERG*, in her official capacity as Director of the Division of Commerce; *JAMES ALLRED*, in his official capacity as Business Licensing Manager for the City of Salt Lake; *ROLEN YOSHINAGA*, in his official capacity as Director of Planning and Development of the County of Salt Lake,

*Appellees.*

**On Appeal from the United States District Court for
the District of Utah, No. 2:16-cv-01067-DBP
Magistrate Judge Dustin Pead, Presiding**

**BRIEF OF APPELLANT**

**ORAL ARGUMENT REQUESTED**

> Russell Greer
> 6337 South Highland Dr.
> #209
> Salt Lake City, Utah 84121
> russmark@gmail.com
> 801-895-3501
> Pro Se Litigant

Dated:     July 28th, 2018

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... 2

TABLE OF AUTHORITIES ....................................................................3

PRIOR AND RELATED APPEALS ...................................................... 7

JURISDICTIONAL STATEMENT ........................................................7

STATEMENT OF THE ISSUES ............................................................7

STATEMENT OF THE CASE ................................................................8

INTRODUCTION……………………………………………………..8

FACTUAL BACKGROUND………………………………………..10

    I.      Russell Greer…………………………………………………10
    II.     The As-Applied Brothel Statutes…..:…………………………12
    III.   Procedural History……………………………………………13

LEGAL STANDARDS………………………………………………14

SUMMARY OF ARGUMENTS……………………………………14

ARGUMENT I………………………………………………………16

ARGUMENT II………………………………………………………19

ARGUMENT III………………………………………………………20

ARGUMENT IV…………………………………….:..:::.:……..:………..25

ARGUMENT V………………………………………………..:…….27

ARGUMENT VI………………………………………………..29

 ARGUMENT VII…………………………………………...31

 CONCLUSION……………………………………………35

ORAL ARGUMENT STATEMENT…………………………..:………36

CERTIFICATE OF SERVICE…………………………………37
CERTIFICATE OF COMPLIANT…………………………………38

# TABLE OF AUTHORITIES

**Cases**

*Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007)…

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

*Liteky v. United States* (1994).

*Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002).

*Central Telecommunications v. TCI Cablevision* (8th Cir. 1986)

*Hunt v. Washington State Apple Advertising Commission* (1977).

*Gonzalez v. Carhart* (2007)

*Roe v. Wade* (1973)

*United States v. Moses,* 41 U.S.L.W. 2298 (Nov. 3, 1972)

*In re P.*, 92 Misc. 2d 62, 400 N.Y.S.2d 455 (Fam. Ct.1977)

*ESLERP v. Gascon* (9th Cir. 2018)

*Coyote Publishing v. Miller* (9th Cir. 2010)

*Lawrence v. Texas* (2003)

*Patterson v. McLean Credit Union* (1989)

*Kitchen v. Herbert* (D. Court 2013)

*Baker v. Nelson* (1972)

*Obergefell v. Hodges* (2015)

*Arizona v. Rumsey,* 467 U.S. 203, 212 (1984)

*Witt v. Department of Air Force* (9th Cir. 2008)

*Cook v. Gates,* 528 F. 3d 42, 56 (1st Cir. 2008)

Kimel v. Florida Bd. of Regents (2000)

*State v. Talty* (2004)

*Bowers v. Hardwick* (1986)

*Moore v. City of E. Cleveland* (1977)

*State v. Talty* (2004)

*Pyler v. Doe* (1982)

*Quinn v. Millsap,* 491 U.S. 95, 107 n.10 (1989)

*Williams v. Vermont*, 472 U.S. 14, 27 (1985)

*Zobel*, 457 U.S. at 60–61 (1982)

*Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)

*Reliable Consultants v. Earle (*5th Cir. 2008)

Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)

*Ashcroft v. al-Kidd* (2011)

*Canada AG v. Bedford* (Canada Supreme Court 2013)

*Roper v. Simmons* (2005)

**Constitutional Provisions**
U.S. Const., amend. 14

**Statutes**

28 U.S.C. §§ 1331

28 U.S.C. § 1291

76-10-1302(b)

76-10-1303(b)

76-10-1304(iii)

76-10-1305(a)(e)

47-1

S. B. 230. Solicitation Amendments

*Fed. R. Civ. P. 12(b)(6)*

*28 U.S.C. § 455 (b) (1)*

*28 U.S.C. § 455*

## Other Authorities

*Moebious Syndrome.org. (http://moebiussyndrome.org).*

*Utah Man Allegedly Stabs South Jordan Woman to Death in a Hotel Room.*

*(http://archive.sltrib.com/article.php?id=4043229&itype=CMSID)*

*Is it Anti-Catholic to Ask a Supreme Court Nominee How Her Religion Affects Her*

*Decisions?* Vox.com (2018)

(https://www.google.com/amp/s/www.vox.com/platform/amp/the-big-

idea/2018/7/5/17536344/amy-coney-barrett-supreme-court-short-list-kennedy-trump-

replacement-catholic-dogma)

*Judicial Profile: Hon. Dustin Pead Magistrate Judge, U.S. Discrict Court for the*

*District of Utah.* The Federal Lawyer. (2015). (http://www.fedbar.org/PDFs/Current-

Judicial-Profiles/profile-pead-aug15.aspx?FT=.pdf).

*Immigration Law Forum.* BYU Law. (2016).

(http://law.byu.edu/news2/immigration-law-forum-).

*Uncharted Territory: Recovering Lost Profits for a New or Unestablished*

*Business (https://blog.meadenmoore.com/blog/iag/uncharted-territory-recovering-*

*lost-profits-for-a-new-or-unestablished-business).*

*The Many Faces of Sex Work.* Harcourt & Donovan. National Centre in HIV

Epidemiology and Clinical Research of the University of New South Wales. (2005).

*The        Largest        U.S.        Charities.*        Forbes.        (2016).

(https://www.forbes.com/companies/planned-parenthood-federation-of-america/).

*Right of Privacy Challenges to Prostitution Statutes.* Washington University Law Review. (1980).

*Tyron Garner, 39, Plaintiff in Pivotal Sodomy Case, Dies.* The New York Times (2005). (https://www.nytimes.com/2006/09/14/obituaries/14garner.html)

*Arrest On Unconstitutional Sodomy Law Prompts Baton Rouge Police Chief To Send Memo To All Officers.* The Advocate. (2015)

(https://www.theadvocate.com/baton_rouge/news/crime_police/article_ce56e834-d61d-50bd-894d-bd664428e56d.html).

*Reconciling Rational-Basis Review: When Does Rational Basis Bite?* New York University Law Review. (2015)

. U.S. Statistics. HIV.gov. (https://www.hiv.gov/hiv-basics/overview/data-and- trends/statistics)

*Hookup-App Sexual Assaults And Other Crimes Are Skyrocketing. Why?* (2017). (http://www.newnownext.com/grindr-crime-increase/10/2017).

*Human Traffickers Target Social Media, Dating Sites.* News Channel 5. (2018) (https://www.google.com/amp/amp.newschannel5.com/2620218829/human-traffickers-target-social-media-dating-sites.html).

*Are Sugar Daddies Legal?* Findlaw.com. (2011).

(https://blogs.findlaw.com/blotter/2011/11/are-sugar-daddies-legal.html)

**PRIOR AND RELATED APPEALS**

The issues presented in this appeal do not have any prior or related appeals.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331. The case was filed October 18th, 2016. The district court dismissed Appellant's case May 8th, 2018 and a timely notice of appeal was filed May 22nd, 2018. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The following issues are presented:

(1).    Did Magistrate Judge Dustin Pead fail to recuse himself from the case due to his extrajudicial bias stemming from his open religious beliefs?

(2).    Did the district court fail to analyze the case "As-Applied"?

(3).    Did the district court fail to analyze the case with strict scrutiny?

(4).    Did the district court fail to use a more searching form of rational basis review, if the rights weren't fundamental?

(5).    Did the district court fail to turn to a robust consensus of persuasive authority, if no controlling authority was available?

(6).    Did the district court fail to see that Plaintiff did indeed state a claim with his Equal Protection arguments?

(7).    Did the district court fail to find that doctrinal developments have rendered the dicta in Lawrence v. Texas (2003) no longer controlling?

(8).    Did the district fail to see that Greer listed people his brothel would help?

(9).    Should the district court have allowed Greer to amend his complaint?

## STATEMENT OF THE CASE

This appeal arises from a challenge to many As-Applied state statutes related to prostitution occurring in brothels, namely: 76-10-1302(b), 1303(b), 1304(iii), 1305(a)(e), 47-1, on the basis that said statutes infringed on Appellant's Equal Protection and Due Process rights, as found in the 14th amendment, and Plaintiff's First Amendment rights. The district court dismissed appellant's case and this appeal followed.

## INTRODUCTION

This case asks whether there is more protection As-Applied to licensed brothels than there is to prostitution in general. This question is appropriate, as courts have dismissed prostitution claims facially. No case, except appellant's, has ever been argued "As-Applied". If an As-Applied analysis to brothels would indeed change the outcome of the case, this case then further asks if the conduct in brothels can have the same Due Process and Equal Protection rights as those who are engaged in commercial transactions involving bodily autonomy (abortion) and those who are in "quid pro quo" one night stands and those people and businesses who are also in the adult entertainment industry that often serves as a "front" for prostitution.  The statutes at issue force Greer from not being able to have a business license to run a brothel, where he can't protect consenting adults who wish to engage in the act of prostitution. In addition, the statutes deny Greer, a disabled adult, the liberty and equal protection of partaking in sexual relations that those engaged in one night stands have and those who pay for other adult services,

which connect to prostitution, have. If Greer does not follow the law and does not refrain from paying another adult for sex, he faces a Class A misdemeanor.

In the district court's ruling, it seemed as though Judge Pead was oblivious to the liberty and harm at stake. Pead made huge errors in his legal reasoning, which are believed to be connected to his extrajudicial bias, that other judges may have been more careful in analyzing the case. Some of these errors include failing to use an "As-Applied" analysis instead of a "facial" analysis. Other errors include flat out dismissing the Equal Protection arguments, instead of failing to see that Greer stated a claim as a matter of law. Pead didn't seem to have compassion for Greer's plight as a disabled man and see that paying others is the only way Greer can have sex. And while the district court ruled against all of Greer's claims, Judge Pead made a point to praise Greer for his "engaging…policy based arguments", only to fail to consider that policy based arguments overturn statutes on a daily basis, per Supreme Court rulings. With this, the lower court rendered Greer's rights invisible to our Constitution and to previous sexual case rights rulings.

Put bluntly, the lower court erred. The statutes in question are not only unconstitutional in light of recent doctrinal developments, they are damning and dehumanizing. The As-Applied brothel laws mockingly imply that one night stands are OK, but if a one night stand becomes an agreed upon financial transaction for sex, the consenting adults magically become criminals with a stroke of a pen. In other words, the laws become a hazard because they pick and choose which non-family rearing conduct can be protected, instead of banning all non-family rearing conduct, which in turn creates violence, rape and other horrors because of the

9

illegality of the conduct. Appellant's proposed brothel, which he sought a license

for, would prevent many of the ills that the laws in question cause.

The State and the lower court both failed to demonstrate the difference between

commercial sex and "one night stand" sex where there might be an exchange of

something of value, like dinner or a place to sleep for the night, or where one

partner "hooks up" with another because of the other's net worth, social standing

or material belongings. Previous federal precedent seems to recognize that "quid

pro quo" hook ups are constitutionally protected. Federal precedent and

international policy sways in the favor of appellant, to where he can seek redress

under our Constitution.

This Court should reverse the district court's ruling in favor of Appellant.

## FACTUAL BACKGROUND

The material facts are based on the Complaint and are undisputed.

## I.    Russell Greer

Appellant is Russell Greer and he is representing himself in this matter. He tried

finding counsel, but the only lawyer who was willing to represent him was asking

for too much. He is 27 years old. He was 25 years old when he filed the complaint

in district court. He has a paralegal degree and legal background, which includes

working in several different law firms and interning at the Utah Attorney General's

Office in 2015. Greer has standing to challenge the laws because he solicits and

pays prostitutes in the county and city of Salt Lake. Paying prostitutes are the only

way Greer can have intimacy and sex because Greer's face is paralyzed. Suffering

from his deformity and disability since birth, which is named "Moebious

Syndrome", Greer has experienced struggles with eating, communicating, finding work and dating. To clarify what his disability is, Greer can't close his lips and so it looks like he is always grimacing. *Moebious Syndrome.org. (http://moebiussyndrome.org)*. Though his disability may seem minor on paper, Greer had to have a lot of surgeries and therapy to get to where he is today. For one to even attempt to downplay Greer's struggles is extremely bigoted and insulting.

While others not born with deformities and disabilities enjoy easier success of finding partners, Greer is essentially damned for being born the way he was. Greer has tried different avenues for dating: online, meeting people, being friendly and sociable, taking care of himself to be attractive to others. Nothing has worked. Painfully, Greer can remember being in high school and being heartbroken because no girls wanted to be his date to prom or other dances. Appellant's first kiss was in a Nevada Legal brothel. He felt so cared about, even though it was paid for, because having something is better than nothing. Unfortunately, the travel to Nevada is 8 hours and Greer has no car and he gets sick flying, so he has had to take the Amtrak, which leaves and arrives at very late hours. Also, the brothel prices are cumbersome. Because of this, Greer has had to break the law in Utah to have sex. His crime is simply paying another consenting adult for sex. The same consent given as those in quid pro quo hook ups.

Fearing arrest and being bothered by breaking the law, Greer decided to open a brothel in Utah. Appellant applied for and was given a business registration for a brothel in December 2015. A few weeks later, in January 2016, Defendant Kathy Berg revoked the registration of Greer, citing Utah code pertaining to brothels and

how it was for an illegal business purpose. This prompted Greer to challenge the laws.

## II.    THE As-Applied Utah Brothel Statutes

The challenged As-Applied state laws in this case force appellant to choose between being abstinent or to engage in criminal activity. The laws in question label Greer a "criminal" if he pays for sex. The laws discriminate against him for HOW he has sex, which stems from his disability, thus there is animus. There is no alternative for Greer except for him to stay lonely and abstinent, which is a huge violation of his personal freedoms. Demeaningly, assaulting somebody, littering, urinating in public and being in possession of marijuana are all less of an offense in Utah than Greer paying for sex. In May 2017, the Utah legislature amended the penalty of patronizing a prostitute from a Class B to a Class A misdemeanor. *S. B. 230. Solicitation Amendments. (*https://le.utah.gov/~2017/bills/static/sb0230.html).

Greer reads of and has talked to prostitutes in Utah and abroad of the harms that they face due to illegality. A South Jordan, Utah woman was killed in Wyoming working as a prostitute, recently. *Utah Man Allegedly Stabs South Jordan Woman to Death in a Hotel Room.* *(http://archive.sltrib.com/article.php?id=4043229&itype=CMSID)* When Greer reads of these stories, he is heartbroken. Disgustingly, the State of Utah doesn't care whether a father and mother are now childless because their daughter was killed doing something she chose to do with her body. But Greer cares. Sadly, the law will criminalize Greer if he tries protecting these women by establishing a house of prostitution.

As stated previously, Greer was denied a license to open a brothel. He has talked and emailed with Utah legislators to see if they would help him or to see if they could establish a meeting. In one email dated 4/22/2018, Utah legislator Todd Weiler, who sponsored the Bill to change the criminal penalties for solicitation, told Greer that Utah "isn't ready for that change." Weiler's words do not reflect the Attorney General's arguments for banning Greer's brothel and conduct. Rather, Weiler's email suggests a moral concern, which goes against *Lawrence v. Texas* (2003). Greer has reached out to his direct representatives and they ignore him. So to have the district court instruct Greer that this is a legislative matter, is not realistic or helpful, as Greer has gone to the legislature many times. Greer hopes that the 10th Circuit Court of Appeals will have a more opened mind.

## III.    PROCEDURAL HISTORY

The case was filed October 18th, 2016. Greer originally listed a prostitute as a co-plaintiff, but she was dismissed from the case in April 2017, due to pro se litigants being unable to represent other litigants. After a few reply briefs and supplemental briefs asked for by the judge in early to mid 2017, Greer supplemented his complaint due to the Utah legislature changing the Code's wording from "house of prostitution" to "place of prostitution". Greer believed the new wording created vague laws. Greer submitted his supplemental complaint in August of 2017. Nine months went by without any word from the district court. The district court then dismissed Appellant's case May 8th, 2018 and a timely notice of appeal was filed May 22nd, 2018.

## LEGAL STANDARDS

**I.    STANDARD OF REVIEW**

This circuit applies de novo review to a district court's grant of a motion to dismiss. *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007). In reviewing a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6),* the Court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.* Dismissal is not proper where "the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002).

## SUMMARY OF ARGUMENT

The district court made multiple, fundamental legal errors in dismissing Appellant's complaint. This is in part due to the fact that Magistrate Judge Dustin Pead failed to recuse himself from the case, as to not cause impartiality. Over the years, Judge Pead has touted his religion as being a motivating factor for him becoming a legal professional and which made him naturally biased to the subject matter of the case: prostitution. With such a controversial topic that has much to be lost if decided incorrectly, Judge Pead's bias clouded his judgement and he should have therefore recused himself to allow another judge to take the case. His bias caused him to make mistakes that other, more neutral judges wouldn't have made, as will be shown.

Appellant stated multiple times in his complaint that he was only challenging laws as applied to houses of prostitution, to which the State agreed with, but the district court instead analyzed the case as if it were pertaining to all forms of prostitution, which was wrong for the district court to do. During the judge's analysis, he failed to use strict scrutiny, as the right to sex has been ruled to be a ***subtle*[1]** fundamental right. And if the rights weren't a "subtle" fundamental right, they were quasi-fundamental, as they extended from existing fundamental rights and have been recognized to be a significant right and so the court should have used a more searching form of rational basis review, given the liberty and life at stake.

Another error the court made was failing to look towards a robust consensus of persuasive arguments to find relief for appellant, as dictated by the Supreme Court, which can include looking to policies of internationally, praised organizations; rulings from other countries and popular opinion. With the persuasive authority and controlling authority established, the judge should have seen that Greer indeed stated an Equal Protection claim. Just like with the Substantive Due Process claim, the analysis of the Equal Protection claim should have been conducted using a higher level of rational basis, as the rights given to those in non-commercial, non-family rearing relationships have been found to be quasi-fundamental.

As if his eyes were shut, the district court ignored Greer's arguments that Kennedy's dicta in *Lawrence* must no longer be valid, given its use in *Obergefell.*

---

[1] Emphasis added to show that the right to sex has not been ruled to be a fundamental right, per se, but that conduct involving it has been ruled to be fundamental, so thus the right to engage in activities involving it has made sex a "subtle" fundamental right that makes an analysis involving sex held to strict scrutiny.. Obergefell *v. Hodges,* 135 S. Ct. (2015) referred to the conduct in Lawrence as "fundamental".

The latter case was a major doctrinal development and would be an equal protection conflict to say the dicta doesn't apply to gay marriage , but it applies to prostitution, and hence the dicta is no longer binding. Greer argued that the term "prostitution" is broad and is why he argued his case As-Applied, to see if more rights extended to brothels than to other aspects of prostitution. Further, Greer clearly listed the people his brothel would help, thus he is able to make arguments on behalf of women and is thus why his arguments should be held to a higher scrutiny, because sex and gender are intermediate protected classes. It is dealing with a woman's right to choose. And if Greer was unclear with any of his arguments, the district court should have allowed Greer to amend his complaint. The court should have also let Greer amend his complaint to add additional arguments.

For a note of reference: ***Greer doesn't argue the merits of generalized prostitution, his challenge is strictly  as applied to licensed brothels.*** When Greer mentions "prostitution" in this complaint, he means it to occur in brothels, unless noted otherwise.

## ARGUMENT

### I.    JUDGE DUSTIN PEAD SHOULD HAVE RECUSED HIMSELF

*28 U.S.C. § 455* reads, "Any justice, judge or magistrate judge...shall disqualify himself in any proceeding in which his impartiality might be questioned." The statute goes on to list circumstances in which a judge should recuse himself from the case. *28 U.S.C. § 455 (b) (1)* states that a judge should recuse himself if he or she has a prejudice against a party. Per *Liteky v. United States,* judge recusal isn't limited

to the listed points in the statute. It can stem from "extrajudicial sources". "Recusal is required whenever there exists a genuine question concerning a judge's impartiality." *Id.* Therefore, prejudice can also be an impartiality towards a case's subject matter. This is not a new concern or question. When Judge Amy Coney Barrett was being questioned for her confirmation to the Seventh Circuit, her Catholic beliefs and statements that she's made in past articles were scrutinized for impartiality. *Is it Anti-Catholic to Ask a Supreme Court Nominee How Her Religion Affects Her Decisions?* Vox.com (2018) ([https://www.google.com/amp/s/www.vox.com/platform/amp/the-big-idea/2018/7/5/17536344/amy-coney-barrett-supreme-court-short-list-kennedy-trump-replacement-catholic-dogma](https://www.google.com/amp/s/www.vox.com/platform/amp/the-big-idea/2018/7/5/17536344/amy-coney-barrett-supreme-court-short-list-kennedy-trump-replacement-catholic-dogma)). It was found to be a valid concern for fairness. That valid question reigns here, nor is it anti-Mormon to question Pead's impartiality. If any judge cites his or her religion as a motivating factor in their work, their impartiality should be questioned.

Simply put: Judge Pead was prejudice against the case from the beginning, due to his religious beliefs. This is gathered from statements that he made in the August 2015 edition of the *Federal Lawyer Magazine*. A three page article covered Judge Pead. In it, Pead explained what motivated him in becoming a legal professional. Judge Pead explains that when he was an LDS (Mormon) missionary in Haiti from 1991 to 1993, he began to be interested in current affairs and had a desire to become a lawyer. Judge Pead says that his views helped shape who he is and that he still lives by those views in his work. *Judicial Profile: Hon. Dustin Pead Magistrate Judge, U.S. Discrict Court for the District of Utah.* The Federal Lawyer. (2015).

(http://www.fedbar.org/PDFs/Current-Judicial-Profiles/profile-pead-aug15.aspx?FT=.pdf).

Further, since Judge Pead is presumably still a devout Mormon, based on the article, he has been "endowed" in the the religion's temple, which basically means he has made what he believes to be "holy covenants" and has promised to live by those covenants. In order for him, or any other active LDS member, to maintain access to the temple, they must be interviewed by their congregational leader and are asked a series of questions. One of the questions asked in the interview is if the member is a part of any causes or groups that run contrary to the LDS faith. Since Pead is a part of this case, he would be in violation of his covenants and lose standing in his religion if he gave a favorable ruling to appellant. Truthfully, Judge Pead could not and cannot give a favorable ruling to appellant in good conscience and good faith without violating his religious beliefs. His religion views prostitution as a "sin". While Pead may sincerely look to his beliefs as a guiding light, they do not belong in the courtroom. Further, Judge Pead frequently teaches classes at Brigham Young University (BYU), which is a private, religious university. This is of importance to note, given the school's religious atmosphere. *Immigration Law Forum*. BYU Law. (2016). (http://law.byu.edu/news2/immigration-law-forum-).

It is apparent that there was prejudice, given the district court's hastily and lazily given ruling, which completely glossed over key arguments and which seemed that Judge Pead may have been forced to give appellant a favorable ruling, so the district court skimmed through and ignored key arguments to avoid giving a favorable ruling. Essentially, Pead should have recused himself and given the case to Judge

Robert Shelby, who handled the gay marriage cases, another controversial topic that parallels Greer's case.

**II.    Greer Clearly Listed Members for Prudential Standing & Therefore Should Be Able to Proceed with Business Equal Protection Claims**

In dismissing the case, the district court ruled that while Greer had standing himself, he lacked prudential standing as an unestablished business owner to bring claims on behalf of others, reasoning that the members were "unknown" and therefore dismissed Greer's equal protection claims As-Applied to his licensed brothel. *Greer v. Herbert.* (2018). *Memorandum Decision* & Order. Page 10. The district court also claimed that any known people wanting to be apart of the brothel would be considered "future members" and therefore not count towards prudential standing. *Id.* This is an error because the members were not unknown, nor would they be considered hypothetical, future members, because they had expressed desire in wanting it legalized so that they could work freely and legally. Greer listed the sex workers who wanted protection (e.g. Tricia Christie) and Greer listed that he had been talking to a woman in Salt Lake City who managed several adult businesses who was interested in managing the brothel. *Doc. 55. Plaintiff's Supplemental Complaint.*

*Central Telecommunications v. TCI Cablevision* (8th Cir. 1986) (including District Courts in this 10th Circuit) held that "unestablished businesses" can bring suit based on the degree of "affirmative action" the plaintiff had for his business he tried starting. *Id* at 729. Part of the affirmative action Greer put into his established business was talking to real people who expressed interest in working at and helping run the brothel had it been allowed to open. The district court said that they had to be actual members, but as Greer cited, "unestablished" businesses can bring suit. This is

inferred to mean that the interests of "unestablished members" can be represented too, as the members' interests "are germane to the organization's purpose." *Hunt v. Washington State Apple Advertising Commission* (1977).

Common sense would ask how else an unestablished member's rights could be represented, if they weren't allowed to join an unestablished business, but wanted to? Looking to rights that unestablished businesses hold, if one looks to commercial litigation, they will see that an unestablished business can sue for profits that they never made, but could have made, based on business plans and other similar factors. *Uncharted Territory: Recovering Lost Profits for a New or Unestablished Business* (*https://blog.meadenmoore.com/blog/iag/uncharted-territory-recovering-lost-profits-for-a-new-or-unestablished-business)*. Thus, based upon commercial litigation and *Central Telecommunications,* Greer and his unestablished business can represent his unestablished members due to the amount of planning and affirmative action he put into starting the business. With that showing, Greer's equal protection arguments, as regarding businesses, should be given back to the trial court and not be dismissed.

If Greer's arguments for representing members' claims are unpersuasive, he should be allowed to proceed with equal protection claims as applied to him as an unestablished business owner and his unestablished business, as he argued in his Complaint that equal protection could apply solely to his business, if he wasn't able to represent members. Greer can prevail on both arguments.

### III.    An As-Applied Analysis Would Change the Outcome of the Case

From the very start of the case, Greer clearly explained that he was only challenging the laws *As-Applied* to houses of prostitution. This challenge even

narrowed the applicability, as appellant was trying to get a business license, thus

making the challenge as-applied to potential *licensed* houses of prostitution. But in

footnote 53 of the Memorandum & Order, Judge Pead writes, "The court declines to

adopt the State's argument that Greer's case is only "a challenge to the ability to open

a brothel and not a challenge to the legality of being able to solicit prostitutes more

generally, . . ."(Dkt. No. 60 at 9.) The district court bases his reason to apply a "facial

analysis" instead because appellant listed the statute that reads, "meeting at an

arranged place for the purpose of sexual activity in exchange for a fee or the

functional equivalent of a fee." *UCA §76-10-1302(b).* Again, this is an example of a

lazy judgement.

When appellant first challenged the As-Applied brothel laws, *76-10-1302(b)*

read, "is an inmate in a house of prostitution." This can be found by going onto the

Historical Code section of the Utah code and typing in the date that Greer originally

filed the complaint. *Historical Utah Code. 76-10-1302(b).*

*(https://le.utah.gov/xcode/historical.html?date=8/10/2016&oc=/xcode/Title76/Chapte*

*r10/C76-10-S1302_2016051020160510.html*). That section of the code was changed,

effective 5/7/2017, which is the version Judge Pead went off of. Greer noticed this

change when he supplemented his complaint to add a claim for vagueness when the

Code was changed to read "place of prostitution" from "house of prostitution". Greer

decided to continue to challenge 76-10-1302(b) as it currently reads because he

understood "an arranged place" to mean a brothel and not generalized prostitution.

*Plaintiff's Motion for Leave to File Supplemental Complaint. Page 3. Doc. 47.* No

reasonable person would think that the "arranged place" meant generalized

prostitution. Judge Pead erred in failing to see that when Greer challenged the law, he

meant to challenge how it read in 2016, not how it read in its amended state.

Further, the district court affirms its facial analysis by citing that Greer wrote

"many people" had an interest in the brothels. *Memorandum & Order. Doc 73.*

Somehow, the district court assumed this to mean a facial challenge and analyzed it

facially. Greer only cited many people having an interest to show that many people

would indeed benefit from the challenge since the laws apply to everyone, and also

because he couldn't represent others. But the difference between facial and as-applied

is elementary. Any junior lawyer and paralegal knows that a facial challenge is a

challenge to a statute in which the plaintiff alleges that the legislation is always

unconstitutional, and therefore void. It is contrasted with an as-applied challenge,

which alleges that a particular application of a statute is unconstitutional. A very

simple textbook definition. *Gonzalez v. Carhart* (2007) (stating that legislation may

have been unconstitutional if as applied).

Appellant's challenge has simply and clearly challenged laws only as-

applied to brothels (aka houses of prostitution, which are now termed "places of

prostitution"). The district court conducted a facial analysis by stating protections are

not afforded to prostitute and client, and the court seems to lump all prostitution

conduct together.. This is a mistake to do, as there are twenty-five different forms of

prostitution, some of them currently legal and constitutionally protected, thus each

form must be analyzed individually. *The Many Faces of Sex Work.* Harcourt &

Donovan. National Centre in HIV Epidemiology and Clinical Research of the

University of New South Wales. (2005). The district court seems to rely heavily on

the dicta held in Lawrence (which will be explained later why that dicta has been weakened), but forgets that Plaintiff stated in his Complaint, he was also applying the *Roe v. Wade analysis,* which is: there is a zone of privacy that the government cannot enter.

*Roe* held that a woman had a right to an abortion before the third trimester of pregnancy, due to bodily autonomy, but after that, the State had compelling reasons to restrict abortion. The right to abortion was limited to just clinics. *Roe* didn't give a woman a right to infanticide. It didn't give a woman the right to flush her baby down a toilet or tossed into a garbage can. It gave her a right to enter into a protected and regulated zone of privacy to conduct and control her intimate body functions. *Roe v. Wade* (1973). There is no reason this privacy can't be applied to brothels.

The fact patterns between abortion clinics and brothels are the same: a customer enters a facility to pay for an intimate, bodily service from another person. The district court and other courts try saying that commercial sex isn't protected, but essentially, *Roe and Griswold* established that there is a right to commercial intimacy, as both abortion and contraceptives are paid for. Planned Parenthood, in 2016, had a revenue of 1.35 billion dollars. *The Largest U.S. Charities.* Forbes. (2016). (https://www.forbes.com/companies/planned-parenthood-federation-of-america/). Abortion is definitely a lucrative, intimate, commercial, constitutional right.

In fact, in the 1970s, several lower courts overturned prostitution statutes based on the *Roe* privacy analysis: *United States v. Moses,* 41 U.S.L.W. 2298 (Nov. 3, 1972), rev'd, 339 A.2d 46 (D.C. 1975), cert. denied, 426 U.S. 920 (1976); *In re P.,* 92 Misc. 2d 62, 400 N.Y.S.2d 455 (Fam. Ct.1977), rev'd, 68 A.D.2d 719, 418 N.Y.S.2d

597 (1979). In the case of *In re P,* the court found that the right of privacy protects "each individual's decision as to whether, when and in what manner he or she will engage in private intimate relations." *Id.* For purposes of this right, the court drew no distinctions between commercial and non-commercial acts. It is unknown why courts do not rule more openly like *In re P,* but it is assumed it's because of narrow readings of rights and the fear of expanding new rights. *Right of Privacy Challenges to Prostitution Statutes.* Washington University Law Review. (1980).

Judge Pead failed to box together a client and a prostitute into a more narrow zone of privacy and as apply the right to see if there were more protection than generalized prostitution. Many of the concerns with prostitution do not exist in this narrow as-applied analysis, as human trafficking, STDs and violence would be prevented and contained, as opposed to findings in a facial analysis. All previous major prostitution cases like *ESLERP v. Gascon* (9th Cir. 2018) and *Coyote Publishing v. Miller* (9th Cir. 2010) were facial challenges and therefore their analyses were broad. Appellant argues the difference with *Gascon* in Document 67, *Plaintiff's Response to Notice of Supplemental Authority.*

The facts of this case and *Roe* are the same and thus there is no reason to not find relief for appellant if the correct analysis is as applied to licensed brothels. Appellant challenging a statute that has been revised during the course of this case and saying that many people have a need for the brothel, would not change the fact of how Greer obviously only challenges laws as applied to brothels and thus the case should be given back, as an as-applied, scrutinized analysis would find relief for appellant.

#### IV.    Lawrence v. Texas' Dicta is No Longer Binding

For the other arguments in this appeal to be comprehensive and valid, this point must be addressed: the court failed to see that the dicta in *Lawrence v. Texas is* no longer binding, nor is it good law. In dismissing the case, the district court held that *Lawrence's dicta* excluded protection to prostitution, especially as applied to brothels. For several reasons, that dicta is no longer binding. *Patterson v. McLean Credit Union* (1989) proclaims, "A precedent becomes more vulnerable as it becomes outdated and after being tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare." The dicta can be scrutinized by all three words of *Patterson*'s vulnerability claim:

(1) Experience, or judicial rulings after *Lawrence*, has weakened the dicta.

*Kitchen v. Herbert* (D. Court 2013) held that *Baker v. Nelson* (1972) was no longer binding due to "doctrinal developments". Developments have been made since 2003 when Lawrence was decided. In the same dicta, that case also forbade *Lawrence* from being applied to gay marriage. In 2015, though, *Obergefell* cited *Lawrence* 7 times. Thus, the dicta was essentially weakened by having Justice Kennedy praise *Lawrence,* which he oddly authored it 12 years before, reinforcing his previous words in *Lawrence*, "As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom." This proves that the dicta has been breached and doesn't hold the same value it had 16 years ago. If it still had the same force, Kennedy wouldn't have cited *Lawrence*.

*(2)* The dicta is inconsistent with justice. The two plaintiffs in *Lawrence* were men who were not even in a relationship. They occasionally had sex. *Tyron Garner, 39, Plaintiff in Pivotal Sodomy Case, Dies.* The New York Times (2005).

(https://www.nytimes.com/2006/09/14/obituaries/14garner.html) (article says, "…interviews showed that Mr. Garner and Mr. Lawrence were occasional sexual partners, not in a committed relationship."). So for the dicta to forbid appellant from how he has sex (which is by paying consenting adults) is no different than denying homosexuals how they have one night stands. It brings forth huge equal protection considerations, as Jude Pead cites prostitution is not within family conduct, but seems oblivious to the facts of *Lawrence.* The Utah brothel laws criminalize those with how they have sex. No matter how much the courts may disagree with prostitution, the bitter truth stands: appellant and people like him (citing others to show there is a need) can only obtain sexual relations through money because of how they were born. Being born disabled is no different than being born gay. They are both immutable traits. And the Court system is the only way to obtain that right, as the Utah legislators have shown Greer that they will never in a million years work with him unless their hands are forced.

*(3)* Social welfare shows that those in prostitution need protection. They need the same protection as others who engage in one night stands or commercial, adult activities. The girl who was stabbed to death in her

hotel needed that social protection. Greer needs it. His sex partners need it.

Any departure from the doctrine of *stare decisis* "demands special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212 (1984). Appellant believes that those three points are a special justification to weaken the dicta and why this Court should use *Lawrence* and other sexual privacy cases in their analysis as applied to houses of prostitution. Appellant previously mentioned in Document 67 how the dicta in *Lawrence* must haven been weakened by *Obergefell*. *Response to Notice of Supplemental Authority,* Page 3. To quote *Lawrence* itself: "societal reliance contradicts its" dicta holding. *Lawrence* at 578. As will be shown in the policy argument, world renowned organizations do not follow the dicta of *Lawrence* and in fact lambast it. Again, the doctrine of stare decisis is not an "inexorable command" nor a "mechanical formula of adherence to the latest decision." *Lawrence* at 580.

## V.    Strict Scrutiny Should Have Been Applied

The district court failed to see that sex is a fundamental right. When Justice Kennedy was authoring *Obergefell*, he touched back on the overturned case of *Bowers v. Hardwick* and reflected on how *Bowers* "upheld a state action that denied… a *fundamental right." Obergefell v. Hodges* at page 25. Though *Lawrence* overturned Bowers, Kennedy, in *Lawrence,* stopped short of classifying sex as a fundamental right. However, as he referred to *Bowers and Lawrence* in *Obergefell*, he clearly thought of and declared sodomy and fornication as fundamental rights with the words just written: "denied a fundamental right.". "The generations that wrote and ratified the Bill of Rights and the Fourteenth Amendment did not presume to know the extent

of freedom in all of its dimensions, and so they entrusted to future generations a charter protecting the right of all persons to enjoy liberty as we learn its meaning." *Id* at 2598. So basically, Kennedy was subtlety declaring sex to be a fundamental right, clarifying his ambiguous 2003 ruling. Further, *Lawrence's* reliance on previous fundamental rights cases shows that it was creating a fundamental right to sex. *Cook v. Gates,* 528 F. 3d 42, 56 (1st Cir. 2008) at 100.

Lastly, as established in **Argument III**, *Roe's* framework and rights to privacy raised the analysis to strict scrutiny. The district court erred in not following the mandatory case law that declared sex, sex related activities and privacy to be a fundamental right. To say that only family rearing is afforded fundamental rights, is ignoring the fact pattern in *Lawrence* and is ignoring that *Lawrence* is cited as the reason one night stands are not prosecuted. *Arrest On Unconstitutional Sodomy Law Prompts Baton Rouge Police Chief To Send Memo To All Officers*. The Advocate. (2015) ([https://www.theadvocate.com/baton_rouge/news/crime_police/article_ce56e834-d61d-50bd-894d-bd664428e56d.html](https://www.theadvocate.com/baton_rouge/news/crime_police/article_ce56e834-d61d-50bd-894d-bd664428e56d.html)). Any court that concludes that Due Process privacy protections extend no further than the boundaries of the family, "clos[es] [its] eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth Amendment's Due Process Clause." These rights have been afforded protection because they are "so central a part of an individual's life." *Bowers,* 478 U.S. at 204 (Blackmun, J., dissenting) (quoting *Moore v. City of E. Cleveland* (1977).

Referring back to *In re P, the* court applied strict scrutiny to the prostitution statute and agreed that the state had valid interests in preventing venereal disease, trafficking and similar interests that the State of Utah cites, but found these interests insufficient to support governmental interference with the individual's right of privacy. *In re P.*, 92 Misc. 2d 62, 400 N.Y.S.2d 455 (Fam. Ct.1977) at 76-77. This was back in 1977, before any of the monumental cases of today that Plaintiff has cited. With the as-applied challenge only pertaining to licensed houses of prostitution, there is no reason this court can't find a similar conclusion as *In re P* did.

### VI.    A More Searching Form of Rational Basis Review Should Have Been Applied

Appellant has asked from the beginning: is he damned for being born the way he was? Is he excluded from having fundamental rights if he isn't able to find a partner due to his paralysis? If appellant's strict scrutiny and fundamental rights arguments fail, then a more searching form of rational basis review should be applied, given the "failure to appreciate the extent of the liberty at stake." *Witt v. Department of Air Force* (9th Cir. 2008 (citing Lawrence *v. Texas* (2003). Informally known as "rational basis with bite" or "rational basis plus", this form of higher than usual rational basis scrutiny is used when a law burdens an interest that is very important or "quasi-fundamental", but is not a recognized fundamental right. *Reconciling Rational-Basis Review: When Does Rational Basis Bite?* New York University Law Review. (2015). As established, sex is a very significant right and personal decision that one has the right to do in regards to procreation (*State v. Talty)* (2004)), marriage (Obergefell), abortion (*Roe)* and one night stands (*Lawrence)*, which the latter puts the right out of the concept of being solely for "family rearing". But there is a very

important right at stake in this case: wanting the opportunity to have sex, but being unable to get it. *Pyler v. Doe* (1982) (a law that imposes severe burdens on its victims "can hardly be considered rational").

Several cases have been found to use the heightened rational basis test without outright declaring a fundamental right: *Quinn v. Millsap,* 491 U.S. 95, 107 n.10 (1989) (ballot access); *Hooper*, 472 U.S. at 618 (interstate travel); *Williams v. Vermont*, 472 U.S. 14, 27 (1985) (interstate travel); *Zobel*, 457 U.S. at 60–61 (1982) (interstate travel); *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) (privacy). *Plyler* acknowledged that education is not a fundamental right, but the Court recognized the importance of the interest at stake. *Plyler*, 457 U.S. at 235–36 (Blackmun, J., concurring). There are at least 14 major rational bite cases that follow the heightened scrutiny analysis, without declaring actual fundamental rights. If these cases had been applying regular rational basis review, they would have "no reason to consider the extent of the liberty involved; any hypothetical rationale of the law would do" to uphold the law. *Witt* at 80. *Lawrence* even stated that a "more searching form of rational basis review was applied". Lawrence v. *Texas* (2003) (O'Connor dissent).

Three sister circuits have used rational basis with bite when deciding sex privacy rights: the 9th circuit, the 1st circuit and the 5th circuit, relating to gay military rights and sex toys, citing Lawrence. The sex toys case proves that *Lawrence's* reach went beyond solely for the LGBT, it includes protection to commercial sex, as sex toys encompass the adult entertainment industry. *Reliable Consultants v. Earle (*5th Cir. 2008). The three mentioned circuit courts did three things in their analysis to heighten their review: (1) they realized the failure to appreciate the liberty at stake, (2)

they relied on "sexual freedom cases" (*Roe, Lawrence, etc*) and (3) the language of the cases they relied on created a liberty interest that could be applied for future cases. *Cook v. Gates* (1st Cir. 2008) at 51 (citing *Lawrence*, which cited *Casey)*. The 10th circuit should apply the sister circuits' heightened analysis to find liberty in brothels. This Court also needs to keep in mind that Greer's destiny is being controlled, just like the destinies of the plaintiffs' in *Lawrence*.

### VII.    Greer Stated Clear Equal Protection Claims

The district court failed to analyze that Greer stated clear equal protection claims in regards to having the same rights as those who engage in one night stands. As discussed in the above arguments, *Lawrence* legalized conduct that is not within family rearing, is less than 8 hours and has been prone to have sexually transmitted diseases and violence: one night flings. This is why hook up apps like *Tinder* and *Grinder* are allowed to legally function. This is why one can go onto the apps and talk to somebody for twenty minutes, have sex and then never meet that person again. As previously written, *Obergefell* endorsed said conduct by calling it "fundamental". This is the exact same conduct that Greer engages in, except when he pays, it suddenly is a crime. There is no difference between non-paid hook ups and paid hook ups. This denies Greer of his equal protection rights.  Case law has held that whenever there is an available right, those similarly situated must also have that right. "Whatever  the rights of the individual to access contraceptives may be, the rights must be the same for the unmarried and the married alike." *Eisenstadt* at 453, 92 S.Ct. 1029 (1972). Because prostitution is a commercial act, though, the act must be

contained to brothels. *Greer doesn't argue the merits of generalized prostitution, his challenge is strictly as applied to licensed brothels.*

While the laws of prostitution are neutral and apply to anybody who pays another adult in a house of prostitution, they have a discriminatory impact because it makes criminals of those who were born with deformities and disabilities that will leave them single and abstinent for their entire lives. It denies plaintiff of his fundamental and quasi-fundamental rights. It denies Plaintiff of his equal rights to choose his destiny to be with a stranger for how long he chooses to pay to be with a partner. The Supreme Court has observed that "we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(citing Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). Because the right to privacy has been ruled to be a fundamental right and the right to sex borders between fundamental and quasi-fundamental, an equal rights analysis should be given strict scrutiny or rational basis with bite.

All of the "harms" listed by the State in prostitution are prevalent with one night stands. HIV.gov finds that homosexual men have the highest rates of HIV, as of 2016. U.S. Statistics. HIV.gov. (https://www.hiv.gov/hiv-basics/overview/data-and-trends/statistics), not women who prostitute themselves. In recent years, violence has increased on hook up sites. "Crimes related to online hookups have increased almost fourfold over the last five years, a new survey reveals. People using Grindr, Tinder,

and other popular apps now are 382% more likely to be the victim of a crime than they were in 2011, when many sites were still in their infancy." *Hookup-App Sexual Assaults And Other Crimes Are Skyrocketing. Why?* (2017).

(http://www.newnownext.com/grindr-crime-increase/10/2017). Human trafficking occurs on dating sites too. *Human Traffickers Target Social Media, Dating Sites*. News Channel 5. (2018)

(https://www.google.com/amp/amp.newschannel5.com/2620218829/human-traffickers-target-social-media-dating-sites.html). Thus, there is a varying different degree of treatment between those who pay for sex and those who don't, yet their conduct is the same and the same potential harms result from conduct.

       Justice Scalia said that if sodomy were to be legal, then prostitution would be, as the acts are the same. *Lawerence v. Texas dissent.* Many Tinder hook ups consist of quid pro quo sex, which is buying dinner for a partner one met off Tinder and having sex, or providing a room to stay the night in for sex. Many other hook ups are known to be "sugar daddy" relationships, where women meet up with rich men (or men who have money) on dating sites and expect "allowances" or being paid to be a girlfriend in exchange for sex. While some argue that sugar daddy relationships aren't arranged money for sex acts, there is money nonetheless involved, with sex happening. *Are Sugar Daddies Legal?* Findlaw.com. (2011).

(https://blogs.findlaw.com/blotter/2011/11/are-sugar-daddies-legal.html). Prostitutes are beginning to do the same thing, where they charge per hour, and not by sex act, and claim that the money is for "time only" and that "any sex that happens is between consenting adults", per standard prostitute lingo. The recently passed law, *FOSTA,*

seems to agree that there is no difference between hook up sites and prostitution sites, as both have shuttered due to the law. *Plaintiff's Notice of Supplemental Authority. Document 69.* The district court failed to see that Greer stated an equal protection claim by which relief could be granted..

### VIII.    The District Court Failed to Look at a Robust Consensus of Persuasive Authority

In dismissing the complaint, the district court said that Greer's complaint was a policy based argument. While that isn't necessarily true that Greer's complaint is solely based on policy, the district court failed to see that the Supreme Court has held that when mandatory case law isn't clear pertaining rights, a robust consensus of persuasive authority is to be looked at to establish any constitutional rights. *Ashcroft v. al-Kidd* (2011). Greer presented a robust consensus in his Opposition Motion. Greer presented advisory opinions from the World Health Organization, the United Nations and cited how Canada found their prostitution laws unconstitutional, based on equal protection arguments,  ruling that the legislature could not enact laws that violated the health and safety of those in prostitution. *Canada AG v. Bedford* (Canada Supreme Court 2013).  Looking to how foreign countries have ruled on laws is precedent set by the Supreme Court: Kennedy looked at Europe for sodomy and looked at other countries in how they handled the death penalty for minors. "...Proper that we acknowledge the overwhelming weight of international opinion...While not controlling our outcome, it does provide respected and significant confirmation for our own conclusions." *Roper v. Simmons* (2005).

**IX.    The District Court Failed to Allow Plaintiff to Amend His Complaint**

Finally, for any arguments Greer may not have listed clearly or coherently, Greer should have been allowed to amend his complaint, as is customary with pro se litigants who have their complaints dismissed. Greer was only allowed to supplement his complaint. In fact, when Greer tried clarifying arguments, Judge Pead denied it because it wasn't a new claim that happened after the case was filed. *Document 53.*

## CONCLUSION

Based on the above arguments, the Court should reverse the district court's decision and remand for a trial to determine whether plaintiff can open a brothel to where he can protect those wanting protection and have intimacy for himself.

Respectfully submitted,

S/s Russell Greer
Russell Greer
6337 South Highland Drive
#209
Salt Lake City, Utah 84121

Dated: July 30th

## ORAL ARGUMENT STATEMENT

Appellant submits  that oral argument is necessary because this appeal presents

issues of exceptional importance:.

s/s Russell Greer
Russell Greer

## **CERTIFICATE OF SERVICE:**

I certify that on August 2nd, 2018, a true and correct copy of *Appellant's Brief* was emailed to the
following:


Tyler Green, Assistant Attorney General and Counsel to State Defendants Berg, Herbert &
Reyes.
tylergreen@agutah.gov

Jackie Ramos: Counsel for County Defendants Gill, McAdams & Yoshinaga.
jmramos@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com



## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **10,021**words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Office Word 2010** in **Times New Roman 14-point font**.

S/s Russell Greer

Russell Greer
6337 South Highland Drive
#209
Holladay, Utah 84121
russmark@gmail.com
801-895-3501
Pro Se Litigant

Dated: August 2nd, 2018