No. 18-4075

In the
UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Russell Greer,

*Plaintiff-Appellant,*

v.

Gary R. Herbert, in his official capacity
as Governor of the State of Utah, et al.,

*Defendants-Appellees.*

On appeal from the United States District Court, District of Utah
Magistrate Judge Dustin Pead
No. 2:16-cv-01067

**Brief of Appellees
Gary R. Herbert, Sean D. Reyes, and Kathy Berg**

Lance F. Sorenson
Assistant Attorney General
Tyler R. Green
Utah Solicitor General
Stanford E. Purser
Deputy Solicitor General
Office of the Utah Attorney General
P.O. Box 140856
Salt Lake City, Utah 84114
801-366-0100
*Counsel for Defendants-Appellees
Gary R. Herbert, Sean D. Reyes,
and Kathy Berg*

**Oral Argument Not Requested**

# TABLE OF CONTENTS

Table of Authorities .................................................................... iii

Statement of Prior Appeals ....................................................... 1

Statement of Jurisdiction .......................................................... 1

Issues Presented ....................................................................... 2

Statement of the Case and Facts ............................................... 3

Summary of the Argument......................................................... 6

Standard of Review.................................................................... 7

Argument.................................................................................. 8

I.  The Court Should Assess Utah's Laws Banning Prostitution by
    Applying Rational Basis Review......................................... 8

    A. Utah's laws banning prostitution are not subject to strict
       scrutiny because the Constitution does not protect a
       fundamental right to commercial sex. ..........................8

    B. This Court does not use "rational basis plus" and no circuit
       uses a "more searching form of rational basis" to review
       prostitution laws. ...................................................... 13

II.  Utah's Laws Prohibiting Prostitution are Rationally Related to
     Legitimate Government Purposes. .................................... 16

III. Mr. Greer's Equal Protection Claim Fails...................... 21

IV. Mr. Greer's As-Applied Challenge Fails. ....................... 23

V.  Mr. Greer's Judicial Bias Allegation Was Not Preserved and, Even
    if Considered, Would Not Alter the Outcome Below. ..................... 24

    A. Mr. Greer's allegation of judicial bias was not raised  or
       preserved below......................................................... 24

    B. Even accepting Mr. Greer's allegation, arguendo, this
       Court should nevertheless affirm the Magistrate Judge's
       ruling. ....................................................................... 26

VI. Mr. Greer Lacks Standing to Assert Claims on Behalf of Anyone
    Other Than Himself........................................................ 26

VII.The Magistrate Judge Did Not Abuse His Discretion by Partially
    Denying Mr. Greer's Motion to Supplement His Complaint.......... 29

Conclusion ............................................................................ 32

Oral Argument Statement ................................................................. 32

Certificate of Compliance with Rules 32(A) ......................................... 33

ECF Certifications ........................................................................ 34

Certificate of Service ...................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*Allright Colorado, Inc. v. City & Cty. of Denver*,
   937 F.2d 1502 (10th Cir. 1991) .................................................... 17, 18

*American Forest & Paper Ass'n v. U.S. E.P.A.*,
   154 F.3d 1155 (10th Cir. 1998) .......................................................... 27

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
   531 U.S. 356 (2001) ............................................................................ 22

*Carter v. Bigelow*,
   787 F.3d 1269 (10th Cir. 2015) .......................................................... 31

*Central Telecommunications, Inc. v. TCI Cablevision, Inc.*,
   800 F.2d 711 (8th Cir. 1986) .............................................................. 27

*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*,
   555 F.3d 1188 (10th Cir. 2009) ............................................................ 7

*Cleburne v. Cleburne Living Center*,
   473 U.S. 432 (1985) ............................................................................ 22

*Colacucio v. City of Kent*,
   163 F.3d 545 (9th Cir. 1998) .............................................................. 20

*Cook v. Gates*,
   528 F.3d 42 (1st Cir. 2008) .......................................................... 14, 15

*Coyote Publ'g, Inc. v. Miller*,
   598 F.3d, 592 (9th Cir. 2010) ....................................................... 18, 20

*Duncan v. Manager, Dept. of Safety, City & Cty. of Denver*,
   397 F.3d 1300 (10th Cir. 2005) .......................................................... 32

*Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*,
   880 F.3d 450 (9th Cir. 2018) ................................................... 12, 13, 15

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ................................................................ 16

*Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*,
    868 F.3d 1248 (11th Cir. 2017) ...................................... 15, 16

*Gallagher v. Shelton*,
    587 F.3d 1063 (10th Cir. 2009) ............................................ 3

*Green v. Branson*,
    108 F.3d 1296 (10th Cir. 1997) .......................................... 25

*Heller v. Doe by Doe*,
    509 U.S. 312 (1993) ............................................................ 23

*Hinman v. Rogers*,
    831 F.2d 937 (10th Cir. 1987) ............................................ 26

*Hoye v. City of Oakland*,
    653 F.3d 835 (9th Cir. 2011) .............................................. 23

*Hunt v. Wash. State Apple Advert. Com'n*,
    432 U.S. 333 (1977) ...................................................... 27, 28

*IDK, Inc. v. Clark County*,
    836 F.2d 1185 (9th Cir. 1988) ............................................ 10

*iMatter Utah v. Njord*,
    774 F.3d 1258 (10th Cir. 2014) .......................................... 23

*In Re Dora P.*,
    68 A.D.2d 719 (N.Y. App. Div. 1979) .................................. 9

*Lawrence v. Texas*,
    539 U.S. 558 (2003) ...................................................... 11, 12

*Love v. Superior Court*,
    226 Cal. App. 3d 736 (1990) .............................................. 19

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................ 27

*Lyons v. Jefferson Bank & Trust,*
   994 F.2d 716 (10th Cir. 1993) ............................................... 25

*Obergefell v. Hodges,*
   135 S.Ct. 2584 (2015) ................................................... 11, 12

*Petrella v. Brownback,*
   787 F.3d 1242 (10th Cir. 2015) .............................................. 8

*Phelps v. Hamilton,*
   122 F.3d 1309 (10th Cir. 1997) ........................................... 31

*Powers v. Harris,*
   379 F.3d 1208 (10th Cir. 2004) ............................... 13, 14, 16

*Reliable Consultants, Inc. v. Earle,*
   517 F.3d 738 (5th Cir. 2008) .................................. 14, 15, 16

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ............................................... 10, 14

*Sawyer v. Southwest Airlines Co.,*
   145 F. App'x 238 (10th Cir. 2005) ...................................... 25

*SECSYS, LLC v. Vigil,*
   666 F.3d 678 (10th Cir. 2012) .............................................. 22

*Seegmiller v. LaVerkin City,*
   528 F.3d 762 (10th Cir. 2008) .............................................. 17

*Singer v. Wadman,*
   745 F.2d 606 (10th Cir. 1984) .............................................. 26

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) .......................................................... 27

*Tatten v. City and Cty. of Denver,*
   730 F. App'x 620 (10th Cir. 2018) ...................................... 25

*Teigen v. Renfrow*,
   511 F.3d 1072 (10th Cir. 2007) ......................................................... 16

*Tele-Communications, Inc. v. Comm'r*,
   12 F.3d 1005 (10th Cir. 1993) ..................................................... 25, 30

*U.S. v. Rodebaugh*,
   798 F.3d 1281 (10th Cir. 2015) ......................................................... 23

*United States v. Carter*,
   266 F.3d 1089 (9th Cir. 2001) .......................................................... 18

*Walker v. United Parcel Service, Inc.*,
   240 F.3d 1268 (10th Cir. 2001) ..................................................... 7, 30

*Washington v. Davis*,
   426 U.S. 229 (1976) ....................................................................... 21

*Witt v. Dep't of Air Force*,
   527 F.3d 806 (9th Cir. 2008) ............................................................ 14

**Statutes and Constitutional Provisions**

U.S. Const. Amend. XIV ........................................................................ 21

28 U.S.C. §636(c) ................................................................................... 1

28 U.S.C. §636(c)(3) .............................................................................. 1

28 U.S.C. §1291 ..................................................................................... 1

28 U.S.C. §1331 ..................................................................................... 1

Utah Code § 76-10-1302 ......................................................................... 9

Utah Code § 76-10-1304(1) .................................................................. 24

**Rules**

10th Cir. R. 28.1(B) ................................................................................ 2

10th Cir. R. 32(a) ....................................................................... 33

10th Cir. R. 32(b) ....................................................................... 33

Fed.  R. App. P. 29(c)-(d) and 32(a)(7)(B)................................ 33

Fed. R. App. P. 32(a)(5)............................................................. 33

Fed. R. App. P. 32(a)(6)............................................................. 33

Fed. R. App. P. 32(f) ................................................................. 33

Fed. R. Civ. P. 12(b)(6)................................................................ 7

Fed. R. Civ. P. 15 ...................................................................... 31

Fed. R. Civ. P 15(d), (2)............................................................ 31

Fed. R. Civ. P. 73 ........................................................................ 1

Fed. R. Civ. P. 73(c) .................................................................... 1

**Other Authorities**

Melissa Farley, *Prostitution Trafficking, and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*,
18 YALE J.L. & FEMINISM 109 (2006) .................................. 18

Sylvia A. Law*, Commercial Sex: Beyond Decriminalization*,
73 S. CAL. L.REV. 523................................................................ 19

Jeremy B. Smith*, The Flaws of Rational Basis with Bite: Why the Supreme Court Should Acknowledge its Application of Heightened Scrutiny to Classifications based on Sexual Orientation*,
73 FORDHAM L. REV. 2769 (2005) ........................................ 12

## STATEMENT OF PRIOR APPEALS

Appellees are not aware of any prior or related appeals.

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Russell Greer asserted in his Complaint that provisions of the Utah Code violated his constitutional rights. The district court had jurisdiction over those claims based on 28 U.S.C. § 1331. The case was assigned to Magistrate Judge Dustin Pead under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Magistrate Judge dismissed Mr. Greer's Complaint with prejudice on May 8, 2018, and Mr. Greer filed a timely appeal under 28 U.S.C. § 636(c)(3) and Federal Rule of Civil Procedure 73(c). This Court has jurisdiction based on 28 U.S.C. § 1291.

1

## ISSUES PRESENTED

1.    Whether Utah's laws prohibiting "places of prostitution" warrant strict scrutiny or some other heightened form of judicial review? [R. 379-80].[1]

2.    Whether Utah's laws prohibiting "places of prostitution" are rationally related to legitimate government purposes? [R. 379].

3.    Whether Utah's laws prohibiting "places of prostitution" violate the Equal Protection Clause? [R. 382].

4.    Whether Mr. Greer has pleaded a cognizable "as-applied" challenge to Utah's laws prohibiting "places of prostitution"? [R. 376-77].

5.    Whether Mr. Greer's ancillary claims have merit and, if so, whether they could rescue his meritless constitutional claims? [R. 368-70].

---

[1] Citations to the record follow 10th Cir. R. 28.1(B) because there is no appendix.

2

## STATEMENT OF THE CASE AND FACTS

The following facts are taken from the Complaint.[2] Mr. Greer lives in Murray, Utah. [R. 15]. He was born with Mobius Syndrome, a neurological condition that causes facial paralysis and prohibits him from closing his lips or moving his eyes sideways. [R. 15]. His disability causes significant physical and social challenges for him, including dating. [R. 15, 23-24]. Consequently, Mr. Greer has solicited sex workers at brothels in Nevada, where prostitution is legal in two counties, and in Utah, where prostitution is illegal. [R. 15, 24].

Determined to provide everyone with the opportunity for safe and legal "access to intimacy," Mr. Greer decided to open a brothel in Utah. [R. 26]. To obtain a business license, Mr. Greer submitted his licensing paperwork online with the State of Utah and received automatically-generated numbers for his business registration in late 2015. [R. 26, 27]. Mr. Greer soon received notice from Kathy Berg, Director of Utah's Division of Corporations and Commercial Code, that his registration was for "an illegal business purpose" and had been revoked. [R. 27].

---

[2] On review of a dismissal for failure to state a claim, the Court accepts all factual allegations of the Complaint as true. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

On October 18, 2016, Mr. Greer filed his initial Complaint asserting constitutional challenges to Utah's laws prohibiting "places of prostitution" and seeking declaratory and injunctive relief against Defendants Governor Gary Herbert, Utah Attorney General Sean Reyes, and Ms. Berg (collectively, "Appellees") in their official capacities, along with several officials associated with Salt Lake County or Salt Lake City, in their official capacities. [R. 12]. On June 10, 2017, Mr. Greer sought leave to file a Supplemental Complaint to account for intervening legislatively enacted amendments to the relevant statutes and to assert additional facts and causes of action not included in his original Complaint. Mot. for Leave to file Supp. Comp., docket number 47.[3] The Magistrate Judge partially granted Mr. Greer's motion and partially denied it. Ruling & Order, docket number 53. Mr. Greer filed his Supplemental Complaint (hereinafter, "Complaint," unless otherwise noted) on September 12, 2017. [R. 207].[4]

---

[3] Mr. Greer's Motion to Amend Complaint, like his Motion for Leave to file Supplemental Complaint and the Magistrate Judge's Ruling and Order on the same, do not have record citation numbers. Thus, they are cited by reference to their docket number.

[4] Mr. Greer had initially sought to amend his Complaint. *See* Mot. to Amend Comp., docket number 44. In response to the Magistrate Judge's order to file a copy of his proposed Amended Complaint (docket number 46), Mr. Greer instead filed his Motion for Leave to

In relevant part, the Complaint claimed that Utah laws prohibiting brothels—"places of prostitution"—violate the Fourteenth Amendment Due Process and Equal Protection Clauses and the First Amendment. The Defendants moved to dismiss for failure to state a claim upon which relief could be granted. After full briefing and a hearing, the Magistrate Judge dismissed Mr. Greer's claims, finding that Utah's law prohibiting places of prostitution are rationally related to legitimate government purposes and thus do not violate the due process and equal protection clauses; that the laws do not violate constitutional guarantees of free association; that the laws are not unconstitutionally vague; that the laws do not violate Utah's Constitution; and that Mr. Greer lacked standing to assert claims on behalf of individuals who have expressed an interest in working in his proposed brothel or who otherwise work in prostitution. [R. 361-87].[5]

---

Supplement. The Magistrate Judge thus ruled Mr. Greer's Motion to Amend was moot. *See* Docket Text Order, docket number 51.

[5] Mr. Greer has not challenged on appeal the dismissal of his due process right-to-earn-a-living claim, his First Amendment claim, his claim for unconstitutional vagueness, or his claims under the Utah Constitution. So appellees do not expressly address them.

Following the dismissal of his case, Mr. Greer filed this appeal. This Court has dismissed Defendants-Appellees Biskupski, Allred, Yoshinaga, and McAdams from this action by stipulation of the parties.

## SUMMARY OF THE ARGUMENT

The Court should affirm the Magistrate Judge's judgment dismissing Mr. Greer's Complaint for failure to state a claim upon which relief may be granted because (1) strict scrutiny does not apply to Utah's prostitution laws—there is no fundamental right to commercial sex; (2) this Circuit has not adopted a "more searching form" of rational basis review, but even if it had, that standard should not apply to laws prohibiting prostitution; (3) Utah's laws prohibiting prostitution, including "places of prostitution," are rationally related to legitimate government interests; (4) Utah's laws prohibiting prostitution do not implicate the Equal Protection Clause; and (5) Mr. Greer has not pleaded a cognizable "as-applied" challenge to Utah's prostitution laws.

Mr. Greer's ancillary claims also fail. He failed to raise and preserve below an allegation of judicial bias. He lacks standing to assert claims on behalf of anyone other than himself. The Magistrate Judge appropriately denied portions of his Motion for Leave to File a Supplemental Complaint because new factual assertions either

occurred before the date of the original Complaint or were not pled in

such a way that the Magistrate Judge could conclude they occurred

after the date of the original Complaint. Mr. Greer's other proposed

supplements contained legal conclusions, not factual allegations.

Even if any of those ancillary claims had merit, the Court should

nevertheless affirm the Magistrate Judge's judgment. None of the

ancillary claims can save Mr. Greer's meritless constitutional claims.

Thus, there is no relief that could be granted for his ancillary claims.

## STANDARD OF REVIEW

The Court reviews *de novo* a dismissal under Federal Rule of

Civil Procedure 12(b)(6). *See Christy Sports, LLC v. Deer Valley Resort

Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009). The Court's function on

a Rule 12(b)(6) motion is to assess whether there is "plausibility" in

Plaintiff's complaint and whether the factual allegations "raise a right

to relief above the speculative level." *Id.* (internal quotation omitted).

The Court reviews a denial of a Motion for Leave to File a

Supplemental Complaint for abuse of discretion. *See Walker v. United

Parcel Service, Inc.*, 240 F.3d 1268, 1278-79 (10th Cir. 2001).

## ARGUMENT

**I.    The Court Should Assess Utah's Laws Banning Prostitution by Applying Rational Basis Review.**

**A.    Utah's laws banning prostitution are not subject to strict scrutiny because the Constitution does not protect a fundamental right to commercial sex.**

Mr. Greer argues the Court should apply strict scrutiny to Utah's laws prohibiting prostitution generally and brothels in particular. According to Mr. Greer, those laws burden a fundamental due process right to sex. Appellant Br. at 27-28. Mr. Greer's substantive due process claim fails because there is no fundamental right to commercial sex.

The Supreme Court's cases have read the Fourteenth Amendment's Due Process Clause to include a substantive component that extends constitutional protection to certain unenumerated fundamental rights. *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 588 (2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). To qualify as "fundamental," a right must be "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg*, 521 U.S. at 720–21 (internal quotation omitted).

8

Courts apply a heightened degree of scrutiny to laws that implicate those fundamental rights, reviewing such laws to ensure they are narrowly tailored to further a compelling governmental interest. *Id*. at 721,766.

Mr. Greer asserts that the "liberty interests in one's own private sexual conduct" is a fundamental right deserving of strict scrutiny. [R. 35]. But the laws that Mr. Greer challenges do not criminalize private sexual conduct *per se*. Rather, they criminalize the purchase and selling of sex – "engag[ing] in any sexual activity with another individual for a fee." Utah Code § 76-10-1302 *et seq*. Mr. Greer asks this Court to hold that there is a fundamental substantive due process right to purchase and sell sex. No federal court has ever held that there exists a constitutional right to commercial sex and this Court should not be the first to do so.[6]

The Due Process Clause has been the source of protection for "certain kinds of highly personal relationships" and "certain kinds of personal bonds" that "have played a critical role in the culture and

---

[6] The single case Mr. Greer cites for the proposition that the Court should apply strict scrutiny to prostitution laws was from a New York State family court and was overruled by a New York appellate court shortly thereafter. *See In Re Dora P.*, 68 A.D.2d 719 (N.Y. App. Div. 1979).

traditions of the Nation by cultivating and transmitting shared ideals and beliefs." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618-19 (1984).

The relationship between a prostitute and client possesses none of the aspects of the "highly personal relationships" or "personal bonds" referenced by the Court in *Roberts* that are protected by the Due Process Clause. The relationship lasts a short time, and only so long as the client is willing to pay the fee. *See IDK, Inc. v. Clark County*, 836 F.2d 1185, 1193 (9th Cir. 1988) (rejecting challenges to county regulation of escort services). A prostitute has little choice as to which client solicits sex from the prostitute. *See id.* Prostitutes and clients are not involved in procreation, raising and educating children, cohabiting with relatives, or other family activities. *See id.* And a prostitute may be involved with a large number of clients. *See id.* "While we may assume that the relationship between them is cordial and that they share conversation, companionship, and the other activities of leisure, we do not believe that a day, an evening, or even a weekend is sufficient time to develop deep attachments or commitments." *Id.* The relationship between prostitute and client is in fact the opposite of the types of familial relationships protected by the Fourteenth Amendment, and the Court should refuse to extend such protection in this case.

Mr. Greer argues that the legal landscape has changed in the aftermath of the Supreme Court decisions in *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). Specifically, Mr. Greer argues (1) that the Court in *Lawrence* did not apply rational basis to laws implicating private sexual conduct, but used a "more searching form of rational basis"; and (2) that because *Obergefell* rejected Justice O'Connor's concurring opinion in *Lawrence* suggesting that laws limiting marriage to opposite-sex couples would pass constitutional muster, then *Obergefell* must have also rejected dicta from *Lawrence* suggesting that laws prohibiting prostitution also pass constitutional muster.  Appellant Br. at 25-27, 30.

Neither *Lawrence* nor *Obergefell* provide any help, however, for Mr. Greer's arguments. First, the Court in *Lawrence* specifically rejected prostitution as a type of intimate sexual conduct analogous to the conduct at issue in that case. The Court listed several instances where sex would still be subject to legitimate constitutional regulation involving minors, coercion, public conduct, *and prostitution. See Lawrence*, 539 U.S. at 578 (emphasis added). And although there is some scholarly disagreement about the level of scrutiny the Court used

11

in *Lawrence*,[7] the Court used the language of rational basis review when it wrote, "The Texas statute furthers no legitimate state interest." *Id*.

*Obergefell* is even less helpful to Mr. Greer. That case did not examine *any* fundamental right to sex, let alone to prostitution. Rather, it addressed the question of the right to marriage. *Obergefell*, 135 S. Ct. at 2593. Mr. Greer's claim that *Obergefell* somehow "weakened" the statements in *Lawrence* that excluded prostitution from the reach of its holding finds no support in *Obergefell*. Neither sex nor prostitution make an appearance in *Obergefell*. The only section of *Lawrence* called into question by *Obergefell* was Justice O'Connor's non-controlling concurring opinion in which she suggested that state laws reinforcing traditional marriage would pass rational basis review. *See Lawrence*, 539 U.S. at 585.

The Ninth Circuit recently reviewed state laws prohibiting prostitution and found them to be constitutional even in the aftermath of *Lawrence* and *Obergefell*. In *Erotic Serv. Provider Legal Educ. and*

---

[7] *See, e.g.*, Jeremy B. Smith, *The Flaws of Rational Basis with Bite: Why the Supreme Court Should Acknowledge its Application of Heightened Scrutiny to Classifications based on Sexual Orientation*, 73 FORDHAM L. REV. 2769, 2770 (2005) (noting that *Lawrence* added to the confusion in federal law regarding the application of rational basis).

12

*Research Project v. Gascon*, 880 F.3d 450 (9th Cir. 2018), the court

applied rational basis to assess the constitutionality of a California

statute prohibiting prostitution. *Erotic Service*, 880 F.3d at 457. The

court specifically rejected the claim that *Lawrence* created a

fundamental right to commercial sex. *Id*. at 456-57. Using rational

basis, the court upheld California's laws against First and Fourteenth

Amendment challenges. *Id.* at 457-61.

There is no fundamental right to commercial sex under the Due

Process Clause of the Fourteenth Amendment.  The Court should not

recognize one here.

> **B.    This Court does not use "rational basis plus" and no circuit uses a "more searching form of rational basis" to review prostitution laws.**

Alternatively, Mr. Greer asks this Court to apply a "more

searching form of rational basis" to Utah's prostitution laws. Appellant

Br. at 29. He asserts that several cases from other circuits have applied

"rational basis with bite" or "rational basis plus" in similar cases. *Id*.

But this Circuit has not adopted "rational basis plus" in any case, and

no circuit uses a more searching form of rational basis to review laws

prohibiting prostitution.

In *Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004), plaintiffs

asked this Court to apply an "exacting rational-basis standard"

purportedly mandated by the Supreme Court in *Cleburne v. Cleburne Living Center, Inc.*, 472 U.S. 432 (1985). *Powers*, 379 F.3d at 1223. This Court, however, rejected the argument that *Cleburne* mandated a more searching form of rational basis review. *Powers, 379 F.3d* at 1223-24. Rather, the Court stated that no majority of the Tenth Circuit had ever found that the level of review in *Cleburne* differed from the traditional (and deferential) form of rational basis review. *Id.* at 1223.

Even if this Court were inclined to adopt a more searching form of rational basis to review certain kinds of legislation, Mr. Greer has not articulated any reason why such review should apply to laws prohibiting prostitution. The relationship between prostitute and client is not the kind of "highly personal relationship" that has "played a critical role in the culture and traditions of the [n]ation" deserving of any heightened degree of judicial scrutiny. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

Mr. Greer cites to cases from three other circuits to support his argument that a more searching form of rational basis is appropriate for reviewing laws implicating sexual conduct: *Cook v. Gates*, 528 F.3d 42 (1st Cir. 2008); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008); and *Witt v. Dep't of Air Force*, 527 F.3d 806 (9th Cir. 2008).

14

Appellant Br. at 30-31.[8] But none of the those cases involves prostitution or brothels. Rather, *Cook* and *Witt* used a heightened level of scrutiny to examine the military's "Don't Ask, Don't Tell" law preventing homosexual service members from openly serving. Even using a heightened standard of scrutiny, the First Circuit found the law to be constitutional. *Cook*, 528 F.3d at 65. And the Ninth Circuit, after *Witt*, has recently upheld laws prohibiting prostitution using a rational basis standard, as discussed in Part I.A. *See Erotic Serv. Provider Legal Educ. & Research Project*, 880 F.3d at 456-57.

    In *Reliable Consultants*, the Fifth Circuit held unconstitutional a law preventing the sale of sexual toys. 517 F.3d at 747.[9] There the court, like the Supreme Court in *Lawrence*, explicitly stated that the rationale of its ruling did not extend to laws prohibiting prostitution. "The State argues that if this statute . . . is struck down, it is equivalent to extending substantive due process protection to the

---

[8] Other cases mentioned by Mr. Greer on page 30 of his brief purporting to apply "rational basis plus" do not involve sexual conduct at all, let alone prostitution, as Mr. Greer concedes.

[9] A panel of the Eleventh Circuit upheld a similar city ordinance. *See Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 831 F.3d 342 (11th Cir. 2016). The city subsequently repealed the ordinance, rendering the case before the en banc Eleventh Circuit moot. *See Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248 (11th Cir. 2017).

'commercial sale of sex.' Not so." *Id.* at 746. Further, "[t]he sale of a device that an individual may choose to use during intimate conduct with a partner in the home is not the 'sale of sex' (prostitution)." *Id.* The Court concluded "there are justifications for criminalizing prostitution … including promoting public safety and preventing injury and coercion." *Id.*

* * * * *

Because there is no fundamental right to commercial sex, and no other binding or persuasive authority requiring application of some higher form of scrutiny, the correct standard to use when reviewing Utah's statutes prohibiting prostitution and "places of prostitution" is rational basis.

## II.    Utah's Laws Prohibiting Prostitution are Rationally Related to Legitimate Government Purposes.

A statute that does not burden a fundamental right is upheld under rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (statute upheld "if it is rationally related to a legitimate government purpose or end"). To satisfy the rational basis test, the legislation "need only be rationally

16

related to a legitimate government purpose." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (internal quotation omitted). "[R]ational basis review is highly deferential toward the government's actions." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008). The Court "need not satisfy [itself] that the challenged rules will in fact further their articulated purposes; it is sufficient if the legislature could rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502, 1512 (10th Cir. 1991)(quotation omitted).

Mr. Greer, in his Complaint below, alleged that, while the government may have legitimate reasons for prohibiting prostitution generally, there is no rational basis for prohibiting brothels. [R. 35-37]. To support this claim, Mr. Greer makes many policy-based arguments in favor of the legalization and regulation of brothels. *See, e.g.,* Appellant Br. at 32-34. But "[g]overnmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc.*, 937 F.2d at 1512 (internal quotation omitted). The question before the Court is not whether Mr. Greer's or the State's positions are more rational, or even whether "the challenged rules will in fact further their articulated purposes." *Id*. The question for the Court to decide is

17

whether "the legislature could rationally have concluded that the purposes would be achieved." *Id.*

Utah's laws prohibiting prostitution easily pass that standard. Utah's ban on prostitution is rationally related to legitimate government purposes. There are ample foundations upon which Utah could base its prostitution and brothel laws, including the desire to limit human trafficking, reduce violence against women, reduce the transmission of sexually transmitted diseases, and deter the commodification of sex.

There is a link between prostitution and trafficking in women and children. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d, 592, 600 (9th Cir. 2010).; *see also* U.S. Dep't of State, The Link Between Prostitution and Sex Trafficking (Nov. 24, 2004) (O'Grady Decl., Exh. 2); Bureau of Justice Statistics, U.S. Dep't of Justice, Characteristics of Suspected Human Trafficking Incidents, 2008-2010 1, 3 (April 2011) (reporting that 82% of suspected incidents of human trafficking were characterized as sex trafficking, and more than 40% of sex trafficking involved sexual exploitation or prostitution of a child).

Further, prostitution creates a climate conducive to violence against women. *See United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001); Melissa Farley, *Prostitution Trafficking, and Cultural*

18

*Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 YALE J.L. & FEMINISM 109, 111 (2006) (addressing pervasive violence in prostitution and concluding that "[r]egardless of prostitution's status (legal, illegal, zoned or decriminalized) or its physical location (strip club, massage parlor, street, escort/home/hotel), prostitution is extremely dangerous for women."); Sylvia A. Law, *Commercial Sex: Beyond Decriminalization*, 73 S. CAL. L. REV. 523, 533 nn.47-48 (2000) (reporting that a "study of 130 street prostitutes in San Francisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes," and that another study "demonstrate[ed] that violence is pervasive in the lives of all categories of women who sell sex for money").

Prostitution is linked to the transmission of sexually transmitted diseases. *See, e.g., Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (upholding mandatory AIDS testing and counseling for person convicted of soliciting where the Legislature "has determined that those who engage in prostitution activities represent a high-risk group in terms of their own health, in contracting AIDS, and in terms of the health of others, in spreading the virus").

A legislature may rationally conclude that there is a link between prostitution and illegal drug use. *See Colacucio v. City of Kent*, 163 F.3d 545, 554, 557 (9th Cir. 1998) (holding that requirement that nude dancers maintain distance from nightclub patrons served state interest in controlling prostitution and drug sales, and observing that several courts have upheld such requirements for the same dual purpose); Amy M. Young, et al., *Prostitution, Drug Use, and Coping with Psychological Distress*, J. Drug Issues 30(4), 789-800 (2000).

States also have a legitimate interest simply in deterring the commodification of sex. *See Coyote Publ'g, Inc. v. Miller*, 598 F.3d at 603 (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and that restrictions on prostitution are driven by "an objection to their inherent commodifying tendencies – to the buying and selling of things and activities integral to a robust conception of personhood").

Mr. Greer contends that the problems associated with prostitution would be reduced through the legalization, licensing and regulation of brothels. Reasonable minds may differ on whether a licensing and regulation scheme would reduce crime and promote public safety. But the question before this Court is not which policy is

best; it's whether Utah's laws are rationally related to legitimate government purposes. They are.

Utah's legitimate government purposes include reducing and eliminating human trafficking, violence against women, the spread of STDs, and the commodification of sex. The State of Utah has embodied into law measures, including prohibitions on prostitution and "places of prostitution," that are rationally related to furthering these legitimate government interests. This Court should uphold those laws as constitutional.

## III.    Mr. Greer's Equal Protection Claim Fails.

The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State … shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Equal protection requires laws to afford similarly situated people like treatment. A statute does not violate the Equal Protection Clause merely because it has a disparate impact on a class of people. Rather, those challenging a law's constitutionality must demonstrate that a facially neutral law is purposively discriminatory or being applied in a purposively discriminatory way. *See Washington v. Davis*, 426 U.S. 229, 239-242 (1976). Statutes that discriminate against a class based upon

disability are analyzed using a rational basis standard of review. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

Mr. Greer's equal protection claim fails because the laws he challenges do not discriminate on the basis of disability, either expressly or in their application. Even if they did, they would survive constitutional challenge under rational basis review.

Although Mr. Greer concedes Utah's Prostitution laws are neutral and apply to all persons who engage in prostitution, he argues that Utah's laws prohibiting prostitution have a disparate impact on the disabled. Appellant Br. at 32. Even if true, however, they do not violate the Equal Protection Clause because their alleged impact cannot be traced to a discriminatory purpose. [A] discriminatory effect against a group or class may flow from state action . . . but it does not run afoul of the Constitution unless it is an intended consequence of state action." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). Further, "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Because Mr. Greer has not alleged that the legislature intended to discriminate against disabled persons, Mr. Greer's equal protection claim based on the law's

22

alleged disparate impact against disabled persons fails as a matter of law.

Even if this Court were inclined to treat the law's alleged disparate impact on persons with disabilities as raising an equal protection concern, the State has a legitimate purpose in adopting prohibitions on prostitution and brothels, for reasons set forth in Part II. And the laws are rationally related to those legitimate purposes. That the statutes satisfy rational-basis review is sufficient to overcome an equal protection challenge. *See, e.g., Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).

## IV.    Mr. Greer's As-Applied Challenge Fails.

Mr. Greer has not alleged a cognizable as-applied challenge. An as-applied challenge to the constitutional validity of a statute contends that the law is unconstitutional as applied to the litigant's particular activity, even though the law may be capable of valid application to others. *See, e.g., iMatter Utah v. Njord*, 774 F.3d 1258 (10th Cir. 2014). An as-applied challenge necessarily fails when the fact situation alleged "is the core fact situation intended to be covered by [the statute], and it is the same type of fact situation that was envisioned by [the] court when the facial challenge was denied." *Hoye v. City of Oakland*, 653 F.3d 835, 857-58 (9th Cir. 2011); *see also U.S. v.*

23

*Rodebaugh*, 798 F.3d 1281, 1295 (10th Cir. 2015) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

That is the case here. Mr. Greer alleges that Utah's laws prohibiting prostitution are unconstitutional as applied to brothels. Appellant Br. at 20. But the very laws he challenges specifically proscribe places of prostitution, not just prostitution generally. Utah Code § 76-10-1304(1) provides that an individual is guilty of aiding prostitution if he "leases, operates, or otherwise permits a place controlled by the actor . . . to be used for prostitution or the promotion of prostitution . . . ." For this reason, the Court must construe Mr. Greer's "as-applied" challenge to Utah's laws as a facial challenge. His facial challenge to the constitutionality of those laws fails for reasons set forth in Parts I-III.

## V.    Mr. Greer's Judicial Bias Allegation Was Not Preserved and, Even if Considered, Would Not Alter the Outcome Below.

### A.    Mr. Greer's allegation of judicial bias was not raised or preserved below.

Mr. Greer argues for the first time on appeal that the Magistrate Judge should have recused himself due to alleged bias stemming from his religion. Appellant Br. at 16-19. To support this argument, Mr.

24

Greer does not cite any statement in the record but, rather, cites to a magazine profile of the Magistrate Judge that mentions his religion. The magazine profile was published and publicly available in 2015, before Mr. Greer filed his lawsuit in October 2016. Appellant Br. at 17.

Mr. Greer did not file a motion for recusal or otherwise request recusal or raise the issue in the proceedings below. This Court generally will not consider an issue not ruled on below. *See Tele-Communications, Inc. v. Comm'r*, 12 F.3d 1005, 1007 (10th Cir. 1993). Review of issues not raised below would require this Court frequently to remand for additional evidence and would undermine the need for finality in litigation and conservation of judicial resources. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993). This Court has rejected allegations of judicial bias raised for the first time on appeal, especially when the basis for the alleged bias existed before trial. *See, e.g., Sawyer v. Southwest Airlines Co.*, 145 F. App'x 238, 243-44 (10th Cir. 2005) (unpublished); *Tatten v. City and Cty. of Denver*, 730 F. App'x 620, 626 (10th Cir. 2018) (unpublished); *see also, Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (a motion to disqualify is untimely if there is no explanation for delay). This Court should not consider Mr. Greer's allegations of judicial bias because he did not move for recusal or even raise the argument below.

**B.    Even accepting Mr. Greer's allegation, arguendo, this Court should nevertheless affirm the Magistrate Judge's ruling.**

Even if the Court were inclined to consider Mr. Greer's allegations of judicial bias, it should nevertheless affirm the Magistrate Judge's ruling. Under no standard of review could this Court overturn a judge's refusal to recuse himself in this case had the issue been properly raised below and preserved for appeal. A judge's refusal to recuse is reviewed for abuse of discretion. *See Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987). Mr. Greer has not pleaded sufficient facts to support his unsubstantiated allegation of bias. A claim that a judge is biased solely because he is a member of a particular religion is not sufficient grounds for recusal. *See Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984).

**VI.    Mr. Greer Lacks Standing to Assert Claims on Behalf of Anyone Other Than Himself.**

Mr. Greer asserts that he has standing to bring equal protection claims on behalf of others, namely individuals who are or would be interested in working in his proposed brothel. Appellant Br. at 19-20. The Magistrate Judge's ruling that Mr. Greer lacks standing to bring claims on behalf of others was correct and should be affirmed.

Standing consists of three elements: the plaintiff must have suffered: (1) an injury in fact; (2) fairly traceable to the challenged conduct of the defendant; and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An association may bring suit on behalf of its own members only if: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *American Forest & Paper Ass'n v. U.S. E.P.A.*, 154 F.3d 1155, 1158-59 (10th Cir. 1998). Mr. Greer has not identified any association that would satisfy the requirements of associational standing. The relationship of Mr. Greer's proposed business to potential employees is too speculative to support associational standing.

Mr. Greer cites two cases for the proposition that unestablished businesses and associations have standing to assert claims: *Central Telecommunications, Inc. v. TCI Cablevision, Inc.*, 800 F.2d 711 (8th Cir. 1986) and *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333 (1977). But neither of those cases is relevant because neither support Mr. Greer's contention that he, an individual, may assert standing on

27

behalf of other, unnamed parties who may or may not be interested in working in his proposed business organization. *Central Telecommunications*, for example, held that an unorganized business may be able to recover anticipated profits under Missouri law when it proves it was tortiously excluded from the market place. The case did not address the ability of an unorganized business (or association) to assert claims on behalf of employees (or members).

Similarly, *Hunt* is inapposite. There, the Supreme Court held that an established Washington state agency representing the interests of apple growers had standing to challenge a North Carolina statute on Commerce Clause grounds. Applying the three factors of associational standing, the Court found a sufficient nexus between the state agency and the apple growers such that the former could assert claims on behalf of the latter. Here, however, no association is a party to the lawsuit. Mr. Greer's only claim for standing to assert claims on behalf of others is derivative of his proposal to create a business organization in the future; he wishes to represent all those who want to work in his brothel. The law, however, does not allow him to do so.

Finally, even if this Court were inclined to find that Mr. Greer has standing to assert claims on behalf of others, it should nevertheless affirm the Magistrate Judge's decision to dismiss the case because

28

those speculative third parties, like Mr. Greer, have no constitutional right to work in a brothel for the same reasons Mr. Greer has no constitutional right to open one.

## VII. The Magistrate Judge Did Not Abuse His Discretion by Partially Denying Mr. Greer's Motion to Supplement His Complaint.

In the proceedings below, Mr. Greer filed a Motion for Leave to File Supplemental Complaint. Docket number 47.[10] The Magistrate Judge granted the motion in part and denied it in part. Ruling and Order, docket number 53. Mr. Greer here argues he "should have been allowed to amend his Complaint" to clarify any arguments he "may not have listed clearly or coherently." Appellant Br. at 35. Appellees construe this argument as an appeal of the Magistrate Judge's denial of his Motion to Supplement. To the extent Mr. Greer seeks to *amend* his Complaint and not merely *supplement* it, the Court should deny his request because he abandoned his Motion to Amend his Complaint in the proceedings below. He did not attach a copy of his proposed Amended Complaint, and there was no hearing or ruling on that issue other than the Magistrate Judge's determination that his Motion to Amend was mooted by the filing of his Motion to Supplement. *See*

---

[10] See note 3, supra.

Docket Text Order, docket number 51. Thus, there is no appealable issue.[11] *See Tele-Communications, Inc. v. Comm'r*, 12 F.3d 1005, 1007 (10th Cir. 1993) (court will not consider issues raised for the first time on appeal).

This Court reviews the denial of a Motion to Supplement for an abuse of discretion. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). The Court should deny Mr. Greer's request because (1) the Magistrate Judge did not abuse his discretion in partially denying the motion, and (2) Mr. Greer's proposed supplements would not save his Complaint from dismissal for failure to state a claim upon which relief could be granted; to grant his request would be an exercise in futility.

Rule 15(d) of the Federal Rules of Civil Procedure provides that the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence or event *that happened after the date of the pleading to be supplemented*." FRCP 15(d) (emphasis added). Mr. Greer proposed 19 supplements to his Complaint. Of the 19 requests, the Magistrate Judge granted 11 and denied 8. Of the 8 denials, the Magistrate Judge found that the

---

[11] See note 4, *supra*, for the procedural history of Mr. Greer's Motion to Amend.

proposed supplements (1) contained allegations of factual occurrences

that occurred before the date of the original complaint in violation of

Rule 15(d), (2) contained allegations of factual occurrences for which

the court could not determine whether they occurred before the date of

the original complaint, and (3) contained legal arguments that would be

appropriate in the context of a motion, but not in the body of the

pleading. *See* Ruling and Order, docket number 53. The Magistrate

Judge's thorough analysis of Mr. Greer's Motion to Supplement follows

the dictates of Rule 15 and existing caselaw. This Court should disturb

his decision only if it has a "definite and firm conviction that the lower

court made a clear error of judgment or exceeded the bounds of

permissible choice in the circumstances." *Phelps v. Hamilton*, 122 F.3d

1309, 1324 (10th Cir. 1997). Magistrate Judge Pead's ruling was well

within the bounds of permissible choice.

Further, Mr. Greer's proposed supplements that the Magistrate

Judge denied could not save his Complaint from dismissal for failure to

state a claim upon which relief could be granted. In general, the

standard "used by courts in deciding to grant or deny leave to

supplement is the same standard used in deciding whether to grant or

deny leave to amend." *Carter v. Bigelow*, 787 F.3d 1269, 1278 n.6 (10th

Cir. 2015) (internal quotations omitted). Leave to amend or supplement

31

may be denied if such action would be futile. *See Duncan v. Manager, Dept. of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Mr. Greer seeks to declare as unconstitutional Utah's laws prohibiting brothels. Such laws, however, are constitutional, and none of Mr. Greer's proposed supplements change that legal determination. Granting his request would be an exercise in futility.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Magistrate Judge's dismissal of Mr. Greer's Complaint.

## ORAL ARGUMENT STATEMENT

Appellees do not request oral argument.

Respectfully submitted,

 s/ Lance F. Sorenson
Lance F. Sorenson
Assistant Attorney General
Tyler R. Green
Utah Solicitor General
Sean D. Reyes
Utah Attorney General
P.O. Box 140858
160 East 300 South
Salt Lake City, Utah 84114-0858
801-366-0353

Attorneys for Defendants-Appellees
Gary R. Herbert, Sean D. Reyes,
and Kathy Berg

**CERTIFICATE OF COMPLIANCE WITH RULES 32(A)**

1.     This brief complies with the type-volume limitations of Fed.

R. App. P. 29(c)-(d) and 32(a)(7)(B) because:

[x]     this brief contains 6483 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b).

2.  This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and 10th Cir. R. 32(a) and the type-style requirements

of Fed. R. App. P. 32(a)(6) because:

 [x]   this brief has been prepared in a proportionally spaced

typeface using Word in 13-point Century Schoolbook font.


 s/ Lance F. Sorenson

## ECF CERTIFICATIONS

Pursuant to Section II(I) of the Court's CM/ECF User's Manual, the undersigned certifies that:

1.        all required privacy redactions have been made;

2.        hard copies of the foregoing brief required to be submitted to the clerk's office are exact copies of the brief as filed via ECF; and

3.        the brief filed via ECF was scanned for viruses with the most recent version of Microsoft Defender Antivirus, and according to the program is free of viruses.

<u> s/  Lance F. Sorenson </u>

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2018, a true,

correct and complete copy of the foregoing Brief of Appellees was filed

with the Court and served on all counsel of record via the Court's ECF

system and or first class US postage prepaid to the following:

Russell Greer
6337 South Highland Dr.  #209
Holladay, Utah   84121
russmark@gmail.com
*Pro Se Litigant*

       s/ Lance F. Sorenson

# Addendum 1

**IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| **RUSSELL G. GREER,** | |
| **Plaintiffs,** | |
| **v.** | |
| **GARY R. HERBERT, in his individual capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIMS S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake, BEN MCADAMS, in his official capacity as Mayor of the County of Salt Lake, KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for, the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development of the County of Salt Lake,** | **MEMORANDUM DECISION & ORDER** **Case No. 2:16-cv-01067** **Magistrate Judge Dustin Pead** |
| **Defendants.** | |

1

<u>**TABLE OF CONTENTS**</u>

Introduction …………………………………………………………… **3**

Factual Background ……………………………………………………**3**

Utah's Prostitution & Brothel Laws…………………………………………… . **6**

Discussion

    I.    Standing……………………………………………………......**8**

           1.    Standard of Review…………………………………… ..**8**

           2.    No Standing To Enforce The Rights Of Others…………………...**10**

           3.    No Standing For Claims Against Biskupski, Allred, McAdams and Yoshinaga……………………………………………......**11**

                     a. Biskupsk and McAdams…………………………………**11**
                     b. Allred and Yoshinaga……………………………......**12**

           4.    Standing For Claims Against Gill and State Defendants…………**13**

                     a.    Pre-Enforcement Challenge………………………**13**
                     b.    Gill………………………………………**14**
                     c.    Herbert, Reyes and Berg…………………………......**15**

    II.    42 U.S.C. §1983………………………………………………**16**

    III.    Utah's Laws Are Constitutional……………………………………...**17**

           1.    Facial And As-Applied Challenges. …………………………**18**
           2.    Right To Sexual Privacy…………………………………**19**

                     a.    No Fundamental Right …………………………**20**
                     b.    Rationally Related To Legitimate Interest……......**21**

           3.    Equal Protection For Same End Goal Of Intimacy………………**23**
           4.    Right To Engage In Illegal Employment……………………**24**
           5.    First Amendment Free Association………………………**25**
           6.    Article 1 Section 7 of Utah Constitution…………………......**26**
           7.    Vagueness……………………………………….... **27**

    IV.    Ruling & Order…………………………………………**29**

## INTRODUCTION[1]

Russell Godfrey Greer wants to provide everyone with safe and legal "access to intimacy." In order to do so, he seeks to open a Utah brothel called The Mile High Neon. Under Utah's current laws, however, he is prohibited from doing so.[2] Consequently, Greer filed his federal declaratory action challenging the constitutionality of portions of Utah's laws criminalizing prostitution, solicitation and the operation of brothels.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff Russell Greer's (Plaintiff or Greer) amended complaint and viewed in a light most favorable to him.[3]

Plaintiff is a well-educated,[4] twenty-five year old man currently residing in Murray, Utah.[5] He was born with Mobius Syndrome, a neurological condition that causes facial paralysis and prohibits him from closing his lips or moving his eyes sideways.[6] Greer's disability causes

---

[1] All parties in this case have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. Dkt. No. 24. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] *See* Utah Code Ann. §§ 76-10-1302 through 1305 (criminalizing prostitution and solicitation), §47-1-1 (declaring brothels a nuisance).

[3] *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs.,* 633 F.3d 1022, 1025 (10th Cir. 2011) (when considering a motion to dismiss, the court "accepts all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff."); *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002) (the court "must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed") (*citing Swanson v. Bixler*, 750 F.2d 810, 813) (10th Cir. 1984).

[4] In the summer of 2015, Plaintiff graduated from LDS Business College. Prior to graduation, Greer completed an internship in the Litigation Division of the Utah Attorney General's Office. Dkt. No. 55, ¶¶46-48.

[5] Dkt. No. 55, ¶8.

[6] *Id.*

significant physical and social challenges for him. Consequently, in order to "feel loved", Greer

solicits sex workers[7] at brothels in Nevada, where prostitution is legal, and in Utah, where

prostitution is criminalized.[8]

In April of 2013, Greer started visiting brothels in Nevada.[9] He describes his experiences

as "magical" and claims that his time there helped him to "cope with his disability and [ ]

depression."[10] Over time, frequent travel to Nevada became financially prohibitive[11] and Greer

was "forced" to seek companionship in Utah.[12] Prostitution is illegal in Utah and Plaintiff lived

in fear of being victimized,[13] criminally prosecuted and of contracting a sexually transmitted

disease.

Determined to provide everyone with the opportunity for safe and legal "access to

intimacy," Greer decided to open a brothel in Utah called "The Mile High Neon" (TMHN).[14]

Plaintiff outlines TMHN's business plan, design, layout and operational procedures in copious

---

[7] Greer refers to "prostitutes," "escorts," and "sex workers" interchangeably throughout his pleading. While there are subtle nuances that differentiate these terms, for purposes of this opinion, the court broadly defines all prostitutes, escorts and sex workers as individuals "who engages, offers, or agrees to engage in any sexual activity with another individual for a fee, or the functional equivalent of a fee." Utah Code Ann. §76-10-1302(1)(a).

[8] Dkt. No. 55, ¶¶8, 20, 25, 34-36.

[9] Greer visited brothels in or near Elko and Reno, Nevada. Dkt. No. 55, ¶¶36-37.

[10] Dkt. No. 55, ¶¶35, 39.

[11] Greer estimates he spent up to $14,000 at brothels in Nevada. Dkt. No. 55, ¶¶39-40.

[12] Additional reasons for Greer's decision to stop traveling to brothels in Nevada include, a falling out with brothel owner Dennis Hoff and becoming the victim of a $4,000.00 theft. Dkt. No. 55, ¶¶41-44.

[13] Plaintiff claims he has been the victim of fraud when escorts post "fake pictures to lure Greer in and upon meeting, . . . [hold him] under duress to give them the money. Others have been the same girl as advertised, but they do not provide the services they promise." Dkt. No. 55, ¶42.

[14] The name "Mile High Neon" is a combination of "the mile-high club" and the Greek word "porneon," meaning brothel. Dkt. No. 55, ¶¶ 47, 50-52.

detail.[15] In order to obtain a license, Greer submitted his licensing paperwork online with the

State of Utah. On December 29, 2015, Plaintiff's paperwork was approved and he was given

"numbers for his business registration and the appropriate document to file."[16] On January 14,

2016, Greer received notice from Kathy Berg, Director of Utah's Division of Commerce, that his

registration was for "an illegal business purpose" and immediately revoked.[17]

On October 18, 2016, Greer filed his initial complaint.[18] Later, he sought to incorporate

relevant statutory amendments and the court granted Plaintiff leave to amend.[19] Greer filed an

---

[15] Greer explains that the structure will resemble a Greek temple with large columns, marble floors and a wooden front door similar to that found at a "luxury mansion." Dkt. No. 55, ¶¶ 66, 67. A fountain will decorate the main room along with couches, televisions and a non-alcoholic bar. *Id.*,¶ 67. An electronic business directory is located near the front of the building where clients can "click" on the girls' pictures if they are interested in meeting them. *Id.*,¶69. Past the office where financial transactions are conducted, there are approximately ten employee rooms. *Id.,* ¶71. Each room contains a window, bed, television and panic alarm. *Id.* TMHN also has a kitchen area where employees can cook their own meals. *Id.,¶73.*

Plaintiff proposes "innovative" operational procedures for TMHN's employees: weekly sexually transmitted disease inspections, self-defense training, financial planning, and training related to understanding the disabled. *Id.,* ¶¶76-79, 82. All workers are licensed through the sheriff's office and TMHN will pay taxes and donate to local charities. *Id.*, ¶¶83- 84. Potential employees may apply online and TMHN will hire only "the classiest and most beautiful people that have extraordinary personalities and who are not judgmental." *Id.,*¶80. Employees are encouraged to set goals, and every two years Greer will check to see if they are achieving their goals. *Id.* Greer will encourage employees to "go after their dreams," and put them in touch with "talent agents" who can help find other "non-sexual jobs." *Id.* Greer will act as TMHN's legal assistant, but will not own or run the brothel. *Id.,*¶86. Instead, he intends to give his business license to "an educated, beautiful woman in her mid-thirties to forties who has higher education and experience in business." *Id.*

[16] Dkt. No. 55, ¶¶51, 54.

[17] Dkt. No. 55, ¶55.

[18] *See* Dkt No. 1, Dkt. No. 2. Greer's initial pleading also listed Tricia Christie as a plaintiff. Christie did not sign the pleading, or provide a physical address, email, or telephone number. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number . . . ."). Further, as a non-attorney Greer is prohibited from representing Christie in any case. *See* DUCivR 83-1.3(c); *Perry v. Stout,* 20 F. App'x. 780, 782 (10th Cir. 2001) (non-attorney cannot represent a pro se litigant).

amended complaint on September 12, 2017, seeking declaratory and injunctive relief against

Defendants Governor Gary Herbert (Herbert), Utah Attorney General Sean Reyes (Reyes) and

Utah's Director of the Division of Corporations and Commercial Code Kathy Berg (Berg)

(collectively "State Defendants"), Salt Lake District Attorney Sim Gill (Gill), Salt Lake County

Mayor Ben McAdams (McAdams) and Salt Lake Director of Planning Rolen Yoshinaga

(Yoshinaga) (collectively "County Defendants") and Salt Lake City Mayor Jackie Biskupski

(Biskupski) and Salt Lake City Business Licensing Manager James Allred (Allred) (collectively

"City Defendants").[20]

Currently pending before the court are the City, State and County Defendants' motions to

dismiss Greer's amended complaint for failure to demonstrate standing, state a claim or establish

a constitutional violation.[21] Greer did not oppose the City or County Defendants' motions to

dismiss, and the time within which to do so has expired.[22]

## UTAH'S PROSTIUTION & BROTHEL LAWS

Greer seeks a declaration that the following portions of Utah's statutes are

unconstitutional (Utah's Prostitution and Brothel Laws).

---

[19] Dkt. No. 47.

[20] Greer's claims against individual City, County and State Defendants are brought solely in their official capacities. In addition, Greer's amended pleading does not name Christie as a Plaintiff, and therefore she is no longer a party to this action. *See* Dkt. No. 55.

[21] Dkt. No. 56, Dkt. No. 57, Dkt. No. 60.

[22] *See* DUCivR 7-1(b)(3)(A), *see also* DUCivR 7-1(d) ("[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."); *Masero v. Mortgage Elec. Registration Sys.,* 2010 U.S. Dist. LEXIS 128564 * 1 (D. Utah Dec. 2, 2010) (granting motion to dismiss as unopposed pursuant to DUCivR 7-1(d)).

<u>Utah Code Ann. §76-10-1302, Prostitution</u>.
(1) An individual is guilty of prostitution when the individual:
      (b)      takes steps in arranging a meeting through any form
            of advertising, agreeing to meet, and meeting at an
            arranged place for the purpose of sexual activity in exchange
            for a fee or the functional equivalent of a fee;
UCA §76-10-1302(b)

<u>Utah Code Ann. 76-10-1303, Patronizing a prostitute</u>.
(1) An individual is guilty of patronizing a prostitute when the individual:
      (b)      enters or remains in a place of prostitution for the purpose
            of engaging in sexual activity.
UCA §76-10-1303(b).

<u>Utah Code Ann. 76-10-1304, Aiding prostitution</u>.
(1) A person is guilty of aiding prostitution if the person:
      (iii)     leases, operates, or otherwise permits a place controlled
            by the actor, alone of in association with another, to be used
            for prostitution or the promotion of prostitution;
UCA §76-10-1304(1)(iii)

<u>Utah Code Ann. 76-10-1305, Exploiting prostitution</u>.
(1) An individual is guilty of exploiting prostitution if the individual:
      (a)      procures an individual for a place of prostitution; or
      (e)      owns, controls, manages, supervises, or otherwise keeps,
            alone or in association with another, a place of
            prostitution or a business where prostitution occurs
            or is arranged, encouraged, supported, or promoted.
UCA §76-10-1305(1)(a)(e).

<u>Utah Code Ann. 47-1-1, Declared a nuisance—Abatement</u>.
Whoever shall erect, establish, maintain, use, own or lease any building,
structure or place, for the purpose of lewdness, assignation or prostitution
is guilty of nuisance, and such building, structure or place, and the ground
itself, in or upon which such lewdness, assignation or prostitution is
conducted, permitted or carried on, and the furniture, fixtures and musical
instruments therein and the contents thereof are declared a nuisance, and
shall be enjoined and abated as hereinafter provided.
UCA §47-1-1.

7

## DISCUSSION

I.   **STANDING**

  1.   **Standard of Review.**

A threshold issue is whether Greer has standing to bring his claims against Defendants. Standing ensures that federal courts only issue judgments in "cases" and "controversies" in which they have jurisdiction to do so.[23] The burden is on plaintiff to clearly demonstrate the elements of standing for each cause of action,[24] and the court has an "independent obligation" to raise the standing issue "regardless of whether it is challenged by any of the parties."[25] When considering dismissal, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[26]

---

[23] U.S. Const. art. III, §2.

[24] *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007); *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (burden is on plaintiff "clearly to allege fact demonstrating" standing).

[25] *Summers v. Earth Island Inst.,* 555 U.S. 488, 499, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (citations omitted). The court previously issued an Order requesting supplemental briefing on standing, ripeness and the proper analysis for facial versus as-applied challenges. *See* Dkt. No. 34.

[26] *See* Fed. R. Civ. P. 12(b)(1); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed.2d 343 (1975). In general, Rule 12(b)(1) motions for dismissal take two forms:
> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.
*Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).

Article III standing requires a plaintiff to meet the following elements:

> First, the plaintiff must have suffered an invasion of a
> legally-protected interest which is (1) concrete and
> particularized, and (b) actual or imminent, not
> conjectural or hypothetical. Second, there must be a
> causal connection between the injury and conduct
> complaint of---the injury has to be fairly traceable to
> the challenged action of the defendant, and not the result
> of the independent action of some third party not before
> the court. Third, it must be "likely" as opposed to merely
> "speculative," that the injury will be redressed by a
> favorable decision.[27]

In addition to constitutional standing, a plaintiff must also establish prudential standing.

Prudential standing places limits on who may invoke the courts' powers and requires:

> (1) the plaintiff generally must assert his or her own legal
> rights; (2) the court must refrain from adjudicating
> "generalized grievances" most appropriately addressed by
> one of the other branches of government; and (3) the
> plaintiff's complaint must fall within the zone of interests to
> be protected or regulated by the statute or constitutional
> guarantee in question.[28]

When mounting a pre-enforcement claim, plaintiff is not required to "await and undergo

a criminal prosecution" before challenging the statute on constitutional grounds.[29] Rather, a

plaintiff may establish standing prior to enforcement by showing both a future intention to

engage in conduct that is "arguably affected with a constitutional interest, but proscribed by a

statute" and a credible threat of prosecution.[30]

---

[27] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (citations and quotations omitted); *see also Gilbert v. Shalala,* 45 F.3d 1391, 1393-94 (10th Cir. 1995), *cert. denied,* 133 L. Ed. 2d 14, 116 S. Ct. 49 (1995).

[28] *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450-51 (10th Cir. 1994) (citations omitted).

[29] *Babbitt v. United Farm Workers Nat'l. Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979) (*quoting Doe v. Bolton*, 410 U.S. 179, 188, 35 L. Ed. 2d 201, 93 S. Ct. 739) (1973).

[30] *Id.*, *see also Brown v. Herbert*, 850 F. Supp. 2d 1240, 1246 (D. Utah 2012).

2. **Greer Does Not Have Standing To Enforce The Rights Of Individuals Who Choose To Work In Prostitution.**

As a preliminary matter, Greer cannot establish standing to bring his equal protection challenge on behalf of individuals who "choose to work in prostitution."[31] Under the doctrine of prudential standing, Greer cannot bring suit to enforce the rights of others.[32] Moreover, while an association may bring suit on behalf of its members, it can only do so if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit."[33] As an unestablished business owner, Greer does not identify any discernable "association" or "members" who otherwise have standing to sue in their own right.[34] At best, Plaintiff attempts to bring an equal protection claim as a future brothel owner on behalf of future brothel employees.[35] Yet, any currently unknown or potential future relationships are too tenuous to support representational standing and Greer's equal protection claim brought on behalf of unidentified others is dismissed.

---

[31] Dkt. No. 55, ¶¶106-108; *See* Claim 2(B) "Denial of Equal Protection for Those Who Choose to Work In Prostitution."

[32] *See VR Acquisitions, LLC v. Wasatch Cnty.,* 853 F.3d 1142, 1146 (10th Cir. 2017).

[33] *Thiebaut v. Colo. Springs Utils.,* 455 Fed. Appx. 795, 801 (10th Cir. 2011); *see also Summers* 555 U.S. at 498-99; *S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement*, 620 F.3d 1227, 1246 (10th Cir. 2010).

[34]*Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1397-98 (10th Cir. 1992) (citation omitted).

[35] *See* Dkt. No. 55, ¶108 ("The As-Applied challenged laws must be struck down to allow women the right to work in brothels."). Tricia Christie is no longer a party to this lawsuit and Greer may not assert a claim on her behalf.

3.   **Greer Does Not Have Standing To Assert Claims Against City Defendant**
**Biskupski and Allred and County Defendants McAdams and Yoshinaga.**

Greer does not demonstrate standing to bring claims against Defendants Salt Lake

City Mayor Jackie Biskupski, City Business Licensing Manager James Allred, Salt Lake County

Mayor Ben McAdams and County Director of Planning and Development Rolen Yoshinaga.

a.   **Biskupski and McAdams**

The only allegation raised against City Mayor Jackie Biskupski is set forth at paragraph

twelve (12) of the amended pleading and states:

> Defendant Biskupski is the Mayor for the City of Salt Lake
> ("Biskupski"). She is sued in her official capacity only.
> Biskupski, an elected official, exercise the executive and
> administrative powers of the municipality. *Utah Code*
> *10-3b-202(1)(b).*[36]

Likewise, the only mention of Salt Lake County Mayor Ben McAdams is at paragraph

thirteen (13):

> Defendant Ben McAdams is the Mayor for the County of Salt
> Lake ("McAdams"). He is sued in his official capacity only,
> McAdams, an elected official, exercises the executive and
> administrative powers of the municipalities of the County.
> *Utah Code 10-3b-202(1)(b).*[37]

Plaintiff does not raise any substantive claims or assert an injury-in-fact. Absent a

traceable injury, causation and redressability,[38] Plaintiff lacks standing and Biskupski and

Allred's motions to dismiss are granted.

---

[36] Dkt. No. 55, ¶12.

[37] Dkt. No. 55, ¶13. Utah Code §10-3b-202(1)(b) sets forth the general powers of mayors of cities, towns and metro townships, but not for counties.

[38] *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

### b.      Allred and Yoshinaga

The limited allegations raised against City Business Licensing Manager James Allred and

County Development Director Rolen Yoshinaga are found at paragraphs fifteen (15) and sixteen

(16) of the amended pleading:

> Defendant James Allred is the Business Licensing Manager
> for the City of Salt Lake ("Allred"). He is sued in his official
> capacity only. Allred is responsible for overseeing the business
> licensing in Salt Lake City which includes Sexual Oriented
> Businesses (SOBs). *Salt Lake City Code*  5.02.020;
> *Utah Code 10-8-41.5.*
>
> County of Salt Lake ("Yoshinaga"). He is sued in his official
> capacity only. Yoshinaga is responsible for overseeing the
> business licensing in Salt Lake County which includes Sexual
> Oriented Businesses (SOBs). *Salt Lake County Code 5.01.030;
> Utah Code 10-8-41.*[39]

And, additionally at paragraph thirty-three (33):

> Berg, Allred, and Yoshinaga are compelled to not issue business
> licenses for those businesses deemed "illegal" and therefore
> hinders Plaintiff's attempts from obtaining a license to try to
> amend State, County, and City laws surrounding houses of
> prostitution.[40]

Together, these allegations are insufficient to establish standing. In their official

capacities, Allred and Yoshinaga oversee aspects of business licensing for Salt Lake City and

Salt Lake County. Greer, however, does not allege that he applied for, or was denied, a business

license by either. No substantive allegations are raised and there is no concrete or particularized

---

[39] Dkt. No. 55, ¶¶ 15, 16.

[40] Dkt. No. 55, ¶33.

injury alleged.[41] Without an injury, causal connection[42] or redressability, Greer cannot

demonstrate standing and Allred and Yoshinaga's motions to dismiss are granted.

### 4.   Greer Has Standing To Bring Claims Against County Defendant Gill and State Defendants Herbert, Reyes and Berg.

Greer demonstrates standing to bring claims against Defendant Salt Lake

County District Attorney Sim Gill and State Defendants Governor Gary Herbert, Attorney

General Sean Reyes and Director of the Division of Commerce, Kathy Berg.

### a.   Pre-Enforcement Challenge

As discussed, Article III standing limits federal court jurisdiction to clearly defined cases

and controversies where a plaintiff's injury is "actual or imminent, not conjectural or

hypothetical."[43] That said, a plaintiff is not required to "await the consummation of threatened

injury to obtain preventive relief."[44] Indeed, in order to establish injury under a pre-enforcement

challenge to the constitutionality of a criminal statute, a plaintiff must show: "(1) an intention to

engage in a course of conduct arguably affected with a constitutional interest, but proscribed by

[the challenged] statute, and (2) [the existence of] a credible threat of prosecution thereunder."[45]

A credible threat of prosecution exists when the challenged statute prohibits conduct that

---

[41] *Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

[42] *Id.* 137 F.3d at 1202 (standing doctrine requires a "causal connection between the injury and the conduct complaint of" that is "fairly traceable to the actions of the defendant.").

[43] *Lujan,* 504 U.S. at 560.

[44] *Babbit v. UFW Nat'l. Union,* 442 U.S. at 298 (*citing Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S. Ct. 658, 67 L. Ed. 1117 (1923).

[45] *Colo. Outfitters Ass'n. v. Hickenlopper,* 823 F.3d 537, 545 (10th Cir. 2016); *United States v. Supreme Court,* 839 F.3d 888, 901 (10th Cir. 2016) (pet. for cert. filed June 6, 2017) (*citing D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004) (requiring an "objectively justified fear of real consequences").

13

plaintiff "wishes to engage [in], and the state has not disavowed any intention of invoking the . . . provision" against plaintiff.[46]

### b.    Gill[47]

County District Attorney Sim Gill does not dispute that he possess authority to enforce Utah's criminal prostitution laws,[48] and he provides no assurances that Greer will not be prosecuted thereunder.[49] Rather, the thrust of Gill's argument is that any felony prosecution is too speculative to support standing since it would require two prior prostitution convictions, solicitation of a child, or solicitation in unincorporated Salt Lake.[50]

Greer has not been threatened with arrest or prosecution under Utah's Prostitution and Brothel laws. Nonetheless, he asserts an objective fear of prosecution "if he continues to engage in sexual activity for hire."[51] The court lacks information on the regularity of the statutes' enforcement. However, any assertion that enforcement is too speculative is undermined by the

---

[46] *Supreme Court*, 839 F.3d at 901 (*citing Babbitt* 442 U.S. at 298).

[47] *See* Dkt. No. 43 (conceding "Plaintiff may have standing to pursue claims against [Gill] based on fear of arrest and prosecution for soliciting prostitution . . . .").

[48] *See e.g., Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1248 (11th Cir. 1998) ("where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.").

[49]*See Babbitt*, 442 U.S. at 302 (threat of prosecution credible where the state "has not disavowed any intention of invoking the. . . provision" against plaintiff.).

[50] Patronizing a prostitute is a misdemeanor offense prosecuted by the City. UCA §§76-10-1303, 76-10-1308, 10-03-928(2). However, patronizing a prostitute is charged as a felony, and prosecuted by the County District Attorney's Office, if it is a third offense or the prostitute is a minor. *Id.* In addition, the County District Attorney's Office is charged with prosecuting felonies within the county as well as misdemeanors that occur within the unincorporated county. *See* UCA §17-18a-401.

[51] Dkt. No. 55, ¶¶8, 58. Even though Greer has "gone a year" without intimacy, standing can still be established based on a credible threat that "such behavior, if taken in the future, would be prosecuted." *Bronson v. Swenson,* 500 F.3d 1099, 1108 (10th Cir. 2007) (*referencing Medimmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 772-76 , 166 L. Ed. 2d 604 (2007).

absence of any geographical limits on Greer's future "engagements" or solicitations. Absent parameters, it is possible that Greer's engagements will occur in unincorporated Salt Lake, an area where the District Attorney is charged with prosecuting felony and misdemeanor crimes.[52] Accordingly, under the somewhat loosened pre-enforcement requirements Gill has authority to enforce the laws and a credible threat of prosecution exists that is sufficient to support standing.[53]

### c.      Herbert, Reyes and Berg

State Defendants Herbert, Reyes and Berg concede that Greer has standing to bring his claims against them. Berg denied Greer's business registration for TMHN,[54] and Herbert and Reyes are responsible for promulgating and enforcing Utah's Prostitution and Brothel laws. Given the possibility that Greer may engage in the proscribed conduct in the future, a credible threat of enforcement and prosecution exist.

---

[52] *See* UCA §17-18a-401.

[53] In so ruling, the court declines to adopt the State's argument that Greer's case is only "a challenge to the ability to open a brothel and not a challenge to the legality of being able to solicit prostitutes more  generally, . . ."(Dkt. No. 60 at 9.) Indeed, Plaintiff challenges the  constitutionality of Utah Code Ann. §76-10-1302(b) which criminalizes "the generalized legality of prostitution" when meeting at "an arranged place" for the purpose of sexual activity in exchange for a fee or the functional equivalent of a fee. UCA §76-10-1302(b).

Additionally, the court finds Gill's ripeness argument unpersuasive, noting that contingent future events are always at issue in a pre-enforcement matter. *See Thomas v. Anchorage Equal Rights Comm'n.,* 220 F.3d 1134, 1138-39 (9th Cir. 2000) (*stating* "[t]he overlap between [ripeness and standing] has led some legal commentators to suggest that the doctrines are often indistinguishable") (*citing* Erwin Chemerinsky, *A Unified Approach to Justiciability,* 22 Conn. L. Rev. 677, 681 (1990); *see also Awad v. Ziriax,* 670 F.3d 1111, 1124 (10th Cir. 2012) (*quoting Am. Civil Liberties Union v. Johnson,* 194 F.3d 1149, 1154 (10th Cir. 1999) ("If a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.").

[54] *See Kitchen v. Herbert,* 775 F.3d 1193, 1201 (10th Cir. 2014) (holding plaintiffs possessed standing after being denied a license because, in part, the plaintiffs "identified several harms that flow[ed] from th[at] denial."); *see also* Utah Code Ann. §42-2-5.

## II.    42 U.S.C. § 1983

Section 1983 creates a federal cause of action to vindicate violations of constitutional law by individuals acting "under color of state law."[55] Specifically, §1983 provides a remedy against:

> Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State . . . subjects or causes to be subjected . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and Laws . . . .[56]

Standing alone, the statute does not create substantive civil rights. Instead, the statute serves as a procedural mechanism for enforcement of existing federal and constitutional rights.[57]

In the context of a civil rights action against multiple governmental actors, liability is predicated on each defendant's personal involvement in the constitutional violation.[58] It is of particular importance "that the complaint make clear exactly who is alleged to have done what to whom, [in order] to provide each individual with fair notice as to the basis of the claims against him or her."[59] Specifically,

> When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.[60]

---

[55] *See* 42 U.S.C. §1983.

[56] *Id*.; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).

[57] *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992) ("The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

[58] *See Pahls v. Thoms,* 718 F. 3d 1210, 1225-56 (10th Cir. 2013).

[59] *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (*citing Robbins v Oklahoma,* 519 F.3d 1242, 1250 ) (10th Cir. 2008).

[60] *Pahls,* 718 F.3d at 1225-26 (*citing Tomkovich v. Kan. B. of Regents,* 159 F.3d 504, 532-33 (10th Cir. 1998).

16

To survive dismissal for failure to state a claim, a §1983 plaintiff must allege a: "(1) violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."[61]

As set forth herein, Plaintiff does not assert violations of constitutional rights secured under the First, Fifth and Fourteenth Amendments.[62] Because Utah's Prostitution and Brothel laws are constitutional sound, they cannot serve as the grounds for redress of Greer's §1983 claims.[63]

## III.   UTAH'S STATUTES ARE CONSTITUTIONAL

Greer mounts several constitutional challenges to Utah's Prostitution and Brothel laws claiming violations of (1) the right to sexual privacy, (2) equal protection of the laws, (3) the right to earn a living, (4) freedom of association, (5) Article 1, Section 7 of the Utah Constitution, and (6) prohibitions on vagueness.[64]

As explained herein, the challenged provisions are constitutionally sound and Defendants Gill, Herbert, Reyes and Berg's motions to dismiss for failure to state a claim are granted.  In addition, Greer's failure to establish a violation of rights protected under the

---

[61] *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (*citing Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted).

[62] Dkt. No. 55.

[63] *Auvaa v. City of Taylorsville,* 506 F. Supp. 3d 903, 909-10 (D. Utah 2007) (*quoting Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1157) (10th Cir. 2001) (a §1983 plaintiff must "show an affirmative link between a defendant's conduct and a constitutional violation, and that affirmative link must be alleged in the complaint as well as proven at trial.").

[64] *See* Utah Code Ann. §§76-10-1302(1)(b), 76-10-1303(1)(b), 76-10-1304(1)(iii), 76-10-1305(a)(e) and  47-1-1.

Constitution also serves as an alternative holding for granting Defendants Biskupski, McAdams,

Allred and Yoshinaga's motions to dismiss.[65]

### 1. <u>Facial And As-Applied Challenges.</u>

A party may challenge the constitutionality of a statute under a facial challenge, an

as-applied challenge or both.[66] More specifically,

> [a] facial challenge is a head-on attack [on a] legislative judgment,
> an assertion that the challenged statute violates the Constitution in
> all, or virtually all, of its applications.
>
> In contrast, an as applied challenge concedes that the statute may be
> constitutional in many of its applications, but contends that it is not
> so under the particular circumstances of the case.[67]

The distinction between facial and as-applied challenges is murky. One is not always

categorically distinct from the other and the line of demarcation may be fluid.[68] At first blush,

Greer's claims exhibit characteristics of both facial and as-applied challenges; Plaintiff titles his

challenges "As Applied,"[69] yet the body of the claims reference application to "many persons in

Utah."[70]

---

[65] *See supra*, pg. 10-12.

[66] *See Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008).

[67] *United States v. Supreme Court*, 839 F.3d 888, 907 (10th Cir. 2016) (internal citation and quotation omitted); *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n. 5 (10th Cir. 2010) ("[An] 'as applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitution as applied to [particular parties]."); *United States v. Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

[68] *See Am. Fed'n. of State, Cty. & Mun. Emps. Council 79 v. Scott,* 717 F.3d 851, 865 (11th Cir. 2013).

[69] Dkt. No. 55, ¶¶ 90, 96, 98, 103, 105.

[70] Dkt No. 55, ¶¶111, 117.

When characteristics of both challenges are present, the court may consider other guiding tenets.[71] First, labels that "the parties attach to claims are not determinative."[72] Thus, Greer's "as applied" designations are not dispositive of the inquiry. Second, "the court must focus on whether the claim *and the relief therein* extend beyond the plaintiffs' particular circumstances"[73] Third, if the claim and relief extend beyond the plaintiff, "facial standards are applied but only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision."[74]

As set forth below, the court applies the appropriate "analytical construct" in conjunction with its consideration of Greer's constitutional challenges to Utah's Prostitution and Brothel laws.

**2.   Plaintiff's Fourteenth Amendment Substantive Due Process Claim For The Right To Sexual Privacy.**

While labeled "[a]s [a]pplied," Plaintiff actually asserts a violation of "many individuals'" substantive due process rights and raises a facial objection.[75]

The Due Process Clause extends constitutional protections to fundamental rights and freedoms protected under the Bill of Rights.[76] Fundamental rights are "deeply rooted in this

---

[71] *Supreme Court,* 839 F.3d at 914 (10th Cir. 2016).

[72] *Id.* at 914. *See also Doe v. Reed,* 561 U.S. 186, 194, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010) ("The label is not what matters.").

[73] *Id.* (Emphasis added).

[74] *Id.*

[75] Dkt. No. 55, ¶96. *See Discount Tobacco City & Lottery, Inc. v. United States,* 674 F.3d 509, 522 (6th Cir. 2012) (*quoting Reed,* 561 U.S. at 194).

[76] *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (*quoting Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal quotations omitted).

Nation's history and tradition . . . , such that neither liberty nor justice would exist if [the liberties] were sacrificed."[77]

### a.   The Relationship Between Prostitute And Client Is Not A Fundamental Right Protected By The Due Process Clause.

Any fundamental rights analysis involves consideration of plaintiff's "careful description of the asserted fundamental liberty interest" along with its historical roots.[78] Fundamental constitutional protections have been afforded to personal decisions and relationships such as "marriage, procreation, contraception, family relationships, child rearing, and education." [79] Similar protections have not been extended to the relationship between a prostitute and client.

In support of his claim, Greer asserts sex in brothels is deeply rooted in this nation's history.[80] Additionally, Plaintiff points to the "ambiguity" surrounding the Supreme Court's ruling in *Lawrence v. Texas*, striking down Texas' law prohibiting homosexual sodomy.[81] Admittedly, the nature of rights protected under *Lawrence* is imprecise. Nonetheless, the *Lawrence* court acknowledged the case "does not involve . . . prostitution."[82] Further, the Supreme Court's holding has not been interpreted as creating "a liberty interest that invalidates

---

[77] *Id.* 755 at 1208-09 (*citing Glucksberg*, 521 U.S. at 720-21) (quotations omitted).

[78] *Chavez v. Martinez,* 538 U.S. 760, 775-76, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2002).

[79] *Carey v. Population Services International,* 431 U.S. 678, 684-686, 52 L. Ed. 2d 675, 97 S. Ct. 2010 (1977).

[80] Dkt. No. 55, ¶91.

[81] Dkt. No. 61 at 19; *See Lawrence v. Texas,* 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508  (2003).

[82] *Lawrence,* 539 U.S. 558 at  578 .

laws criminalizing prostitution."[83] Without a fundamental liberty interest, rational-basis review applies.[84]

> **b.** **Utah's Laws Criminalizing Prostitution Are Rationally Related To Legitimate Government Interests.**

Under rational review a statute must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[85] Review is highly deferential to state action and the burden is on plaintiff "to negate every conceivable basis which might support" the legislation.[86]

Utah's Prostitution and Brothel laws rationally relate to legitimate governmental interests. In reaching this conclusion, the court takes judicial notice of the harms of prostitution as determined by other federal courts.[87] Legitimate harms of prostitution include an interest in

---

[83] *See Erotic Service Provider Legal Education & Research Project v. Gascon,* 880 F.3d 450, 456 (9th Cir. 2018); *See e.g. Doe v. Jindal,* 851 F. Supp. 2d 995, 1000 n. 11 (E.D. La. 2012) ("*Lawrence* does not speak to the solicitation of sex for money, and has little precedential force here."); *United States v. Thompson,* 458 F. Supp. 2d 730, 732 (N. D. Ind. 2006) ("it would be an untenable stretch to find that *Lawrence* necessarily renders (or even implies) law prohibiting prostitution . . . unconstitutional"); *State v. Thomas,* 891 So. 1223, 1236 (La. 2005) ("[T]he majority opinion in *Lawrence* specifically states the court's decision does not disturb state statutes prohibiting public sexual conduct or prostitution.").

[84] *FCC v. Beach Commc'ns.,* 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (upholding statute under rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *see also Teigen v. Renfrow,* 511 F.3d 1072, 1083 (10th Cir. 2007) (upholding statute that is "rationally related to a legitimate government purpose or end."). If a fundamental liberty interest is involved, strict scrutiny applies; *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

[85] *Beach Commc'ns, Inc.,* 508 U.S. at 313 (1993); *see also Allright Colorado, Inc. v. City & Cty. Of Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted).

[86] *Heller v. Doe,* 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (internal quotation marks omitted).

[87] A court is required to convert a motion to dismiss to a motion for summary judgment if it considers matters that are outside the scope of the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But, a court is not required to convert a motion to summary judgment based upon its consideration of public records for which the court takes judicial notice. *See Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) ("facts subject to

deterring the commodification of sex,[88] along with findings that support a connection between

prostitution and trafficking in women and children,[89] violence against women,[90] illegal drug

use[91] and sexually transmitted diseases.[92]

Greer maintains criminalizing prostitution actually places individuals at greater risk of

contracting a sexually transmitted disease or becoming the victim of a crime, and therefore no

rational basis exists.[93] The issue, however, is not whether Greer's basis or the basis offered by

the State is more rational. Rather, the question is whether Utah's Prostitution and Brothel laws

further a legitimate purpose.[94] Here, they do. Commercial sex is not a fundamental right and

---

judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.); *see also St Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue.").

The State also asks the court to take judicial notice of the fact that forty-nine (49) of the fifty (50) states in the United States have chosen to criminalize prostitution, with only Nevada leaving that decision to the counties to decide.

[88] *See Coyote Publ. Inc. v. Mille,* 598 F.3d 592, 603 (9th Cir. 2010) (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and restrictions on prostitution stem from "an objection to their inherent commodifying tendencies—to the buying and selling of things and activities integral to a robust conception of personhood.").

[89] *See Erotic Serv. Provider,* 880 F.3d at 457 (*citing Coyote Publ'g Inc.,* 598 F.3d at 600 (9th Cir. 2010) and Bureau of Justice Statistics, U.S. Dep't. of Justice, *Characteristics of Suspected Human Trafficking Incidents,* 2008-2010 1, 3 (April 2011).

[90] *See Id.* at 457-58 (*citing United States v. Carter,* 266 F.3d 1089, 1091 (9th Cir. 2001) and *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 n. 47-48 (2000).

[91] *See Id.* at 458 (*citing Colacurio v. City of Kent,* 163 F.3d 545, 554, 556 (9th Cir. 1998) and Amy M. Young, et al., *Prostitution, Drug Use, and Coping with Psychological Distress,* J. Drug issues 30(4), 789-800 (2000).

[92] *Id.* at 458.

[93] Dkt. No. 55, ¶92; Dkt. No. 61 at 10.

[94] *Allright Colorado, Inc.,v. Denver,* 937 F.2d 1502, 1512 (10th Cir. 1991).

Utah's laws prohibiting prostitution and the operation of brothels are supported by a rational basis.

### 3. Claim Two: Plaintiff's Fourteenth Amendment Equal Protection Claim For Same End Goal of Intimacy.

The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[95] Equal protection requires the laws to afford similarly situated people like treatment.[96]

Greer concedes Utah's Prostitution and Brothel laws are neutral and apply to "all persons who engage in prostitution."[97] He argues, however, that the laws have a disparate impact on individuals with physical disabilities in violation of equal protection. Greer asserts disabled people "comprise a higher percentage of patrons who pay for [prostitution] services" and are therefore at a higher risk of being arrested for soliciting prostitutes.[98] As an individual with a disability, Plaintiff's claim contains aspects of both facial and as-applied challenges.[99] Yet, the relief requested affects the statute's application to the physically disabled. Accordingly, facial standards apply but only "to the universe of applications contemplated by plaintiff's claim."[100]

---

[95] U.S. Cons. Amend. XIV.

[96] *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). A statute violates the equal protection clause "if it makes distinctions between the disabled and nondisabled without a rational justification."); *see also Thompson v. Colorado,* 278 F.3d 1020 (10th Cir. 2001) (*citing United States Dep't. of Agric. v. Moreno,* 413 U.S. 528, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973).

[97] Dkt. No. 55, ¶102.

[98] Dkt. No. 55, ¶¶ 102, 105.

[99]*Cmpr.* Dkt. No. 55, ¶103 ("The As Applied sections") *with* Dkt. No. 55, ¶ 102 ("discrimination against disabled people").

[100] *Supreme Court,* 839 F.3d at 913 (10th Cir. 2016).

Assuming, as Greer has alleged, that Utah's Prostitution and Brothel laws have a disproportional effect on the disabled, "a neutral law that disproportionately impacts [a group] does not violate equal protection, . . . , unless that impact can be traced to a discriminatory purpose."[101] Greer does not allege any discriminatory purpose and therefore fails to raise an equal protection violation. And, even if alleged, any discriminatory purpose would need to support the unlikely contention that Utah's legislature enacted statutes prohibiting prostitution and brothels "because of, not merely in spite of" the laws' adverse effects on the disabled."[102] There is no fundamental right to solicit sexual services and Utah's Prostitution and Brothel laws bear a rational relation to legitimate government interests.[103]

### 4.   Claim Three: Violation of Plaintiff's Fourteenth Amendment Substantive Due Process Right To Earn A Living.

Greer's third constitutional challenge alleges Utah's Prostitution and Brothel laws violate the Fourteenth Amendment right to "earn a living through one's chosen livelihood or profession" and to "follow any of the ordinary callings of life; to live and work where one will; and for that purpose enter into all contracts which may be necessary and essential to carrying out these pursuits."[104] Greer mounts a facial challenge on behalf of the "many persons" who seek to earn a living by engaging in the commercial exchange of sex.[105]

---

[101] *United States v. Williams,* 45 F.3d 1481, 1486 (10th Cir. 1995) (*citing United States v. Thurmond,* 7 F.3d 947, 953 (10th Cir. 1993).

[102] *See Thurmond,* 7 F.3d  947, 952 (10th Cir. 1993) (citing *Personnel Adm'r. v. Feeney*, 442 U.S. 256, 272, 99 S. Ct. 2282, 60 L. Ed. 2d 870) (1979).

[103] *Romer v. Evans,* 517 U.S. 620, 631, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996).

[104] Dkt. No. 55, ¶112.

[105] Dkt. No. 55, ¶111.

The language of Plaintiff's challenge is identical to that raised by plaintiffs in the Ninth

Circuit case *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, challenging the

constitutionality of a California statute criminalizing prostitution.[106] While recognizing a

fundamental right to make contracts and earn a living, the Ninth Circuit ultimately concluded

"there is no constitutional right to engage in illegal employment, namely, prostitution" and

Plaintiff's claim fails.[107] Consistent therewith, Greer fails to state a claim for a violation of a

Fourteenth Amendment substantive due process right to earn a living through illegal

employment---prostitution.

### **Claim Four: Violation of Plaintiff's First Amendment Right To Free Association.**

Next, Greer raises a facial attack on Utah's Prostitution and Brothel laws, claiming the

statutes violate "many persons" rights to the freedom of association as secured under the First

Amendment.[108]

"There are two distinct forms of freedom of association: (1) freedom of intimate

association, protected under the Substantive Due Process Clause of the Fourteenth Amendment;

and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the

First Amendment." [109] As an initial matter, Greer does not assert that the association between a

prostitute and client is expressive. Further, Utah's Prostitution and Brothel laws do not

---

[106] *Erotic Service Provider,* 880 F.3d at 454 (*citing* Cal. Penal Code §647(b)).

[107] *Id. at* 459; *see Lowe v. S.E.C.,* 472 U.S. 181, 228, 105 S. Ct. 2557, 86 L. Ed 2d 130 (1985) ("It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose." (internal quotation and citation omitted).

[108] Dkt. No. 55, ¶117. Plaintiff mounts a facial challenge based on his objection to the laws on behalf of "many persons" and not just himself.

[109] *Erotic Service Provider*, (2018) (*citing Roberts v. U.S. Jaycees,* 468 U.S. 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

criminalize associating or meeting with a prostitute; they criminalize paying a prostitute for sex. This association is not protected.  Thus, even though Greer frames his claim as a First Amendment issue, his allegations are actually rooted in a claim for violation of the substantive due process clause protecting "intimate" and highly personal associations.[110] As discussed, Greer's substantive due process claim fails because Utah's Prostitution and Brothel laws do not burden a fundamental right and are supported by a rational basis.[111]

### Claim Five: Violation Of  Article I Section 7 Of The  Utah Constitution

Plaintiff argues the statutes violate Article 1 Section 7 of the Utah Constitution by depriving him of his due process rights.[112]

Like its federal counterpart, Utah's due process clause provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."[113] The Utah Supreme Court interprets the state due process clause consistent with Supreme Court case law interpreting the federal due process clause.[114] Accordingly, this court's analysis of Greer's "federal substantive

---

[110] *See* Dkt. No. 55, ¶116 ("the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships."); *see also* Dkt. No. 55, ¶117 (challenging Utah's Prostitution and Brothel statutes as prohibiting the ability of "many persons in the State of Utah, . . . to enter into and maintain certain intimate and private relationships.").

*See also IDK Inc. v. County of Clark,* 836 F.2d 1185, 1192 (9th Cir. 1988) (noting the Supreme Court typically identifies the source of protection for highly personal relationships as the fourteenth amendment due process clause and not the first amendment freedom to assemble.).

[111] *See IDK,* 836 F.2d at 1193 (holding duration of relationship between prostitute and client does not support an intimate relationship).

[112] Dkt. No. 55, ¶121.

[113] Utah Const. Art. I, §7, *Jensen v. Cunningham,* 2011 UT 17, ¶71, 250 P.3d 465, 483.

[114] *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d 998, 1013 (D. Utah 2016) (*citing Terra Utils. v. Public Serv. Comm'n.,* 575 P.3d 1029 (Utah 1978) ("Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the

due process claim applies with equal force to Plaintiffs' due process claim under the Utah

Constitution" and, as a result, Greer fails to state a claim for relief under Article I Section 7. [115]

## Claim Six: Violation Of Constitutional Prohibition On Vagueness

In 2017, the Utah legislature changed the term "house of prostitution" to "place of

prostitution," which it defines as:

> a place or business where prostitution or promotion of prostitution
> is arranged, regularly carried on, or attempted by one or more
> persons under the control, management, or supervision of another. [116]

Greer asserts the term "place of prostitution" is unconstitutionally vague because it[117]

arbitrarily allows law enforcement "to go after obvious brothels, but not go after legal places that

may be practicing prostitution [i.e. strip clubs, massage parlors etc.] . . . ."[118] Utah Code Ann.

§76-10-1304(1)(iii) is the only criminal statute challenged by Plaintiff that is applicable to

operation of a brothel.[119]

Greer raises his challenge to the constitutionality of the statute in the context

of a pre-enforcement review. Pre-enforcement review amounts to a facial challenge since "no

one has been charged so the court cannot evaluate the statute as applied."[120] Moreover, because

---

federal Constitution, the decisions of the Supreme Court of the United States on the federal due process
clauses are highly persuasive as to the application of that clause of our state Constitution.").

[115] *Disability Law Ctr. v. Utah,* 180 F. Supp. 3d at 1013.

[116] Dkt. No. 55, Utah Code Ann. §76-10-1301(3).

[117] Dkt. No. 55, ¶117.

[118] Dkt. No. 55, ¶127.

[119] The other Utah Prostitution and Brothel statutes pertain to personal solicitation or exploitation
of prostitutes and are not encompassed within Greer's vagueness challenge. *See* UCA §76-13-1302(1)(b),
UCA §76-10-1303(1)(b) and UCA §76-10-1305(1)(a)(e). Moreover, the "definitions" referred to in Title
76 of Utah's Criminal Code do not have any application to Title 47 Nuisances or UCA §41-1-1.

[120] *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988).

Greer's challenge does not implicate any conduct protected under the First Amendment,[121] the statute is reviewed "on its face as unduly vague in violation of due process."[122] To demonstrate that the law is impermissibly vague, it must be "vague in all of its applications."[123]

Vagueness is rooted in the due process clause of the Fifth Amendment which guarantees that "[n]o person shall . . . be deprived of life, liberty or property without due process of law."[124] A statute is impermissibly vague if "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement."[125]  When reviewing a statute for vagueness, "courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution"[126]

---

[121] *See Gaudreau*, at 361 ("[A] statute may be challenged on its face when it threatens to chill constitutionally protected conduct, especially conduct protected by the First Amendment.").

[122] *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L.Ed.2d 362, (1982).

[123] *Id.* at 495; *see Free Speech Coalition v. Gonzales,* 483 F. Supp. 2d 1069, 1078 (D. Colo. 2007) (holding that because the "regulation does not implicate a substantial amount of constitutionally protected conduct, and since it comes in a pre—enforcement context" the *Hoffman Estates* analysis applied); *But see United States v. Moesser,* 2010 U.S. Dist. LEXIS 123271 *33-34 (10th Cir. 2010) ("while the Supreme Court has not expressly overturned its prior rule permitting facial vagueness claims outside of a First Amendment context, it is clear that since Justice Scalia's in-depth discussion of the issue, . . . , the Court has shifted away from allowing such challenges and now favors only permitting facial vagueness challenges when First Amendment protections are involved.")

[124] U.S. Cons. Amend. V.

[125] *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir 2005); *see also United States v. Corrow*, 119 F.3d 796, 802 (10th Cir. 1997).

[126] *United States v. Day,* 223 F. 3d 1225, 1228 (10th Cir. 2000) (*citing Brecheisen v. Mondragon*, 833 F.2d 238, 241 (10th Cir. 1987).

Upon review, the statute is clearly designed to regulate prostitution and includes a specific standard for enforcement; namely, whether the "place" in question is "used for prostitution or the promotion of prostitution."[127] The law provides fair warning of what is proscribed, and in the pre-enforcement context there is no allegation that the statute has been enforced in a discriminatory manner. Further, while a business that holds itself out as a "brothel" may be a more obvious target for prosecution, the statute provides a clear enforcement standard that does not encompass otherwise legal businesses. Consequently, the language of the statute "is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness."[128]

## IV.    RULING & ORDER

At its core, Greer's action stems from an impassioned belief that Nevada's system of regulating prostitution and brothels is superior to Utah's laws criminalizing prostitution. While engaging, Greer's policy based claims do not control and it is not the role of this court "to weigh the wisdom of the legislation."[129] Utah's Prostitution and Brothel laws are rationally related to legitimate governmental interests, and any claim that the laws are antiquated and out of line with popular convictions is a policy based argument that is appropriate for consideration by the legislature, not the courts.

For the reasons set forth in this decision, the City, County and State Defendants' motions are granted, and Greer's amended complaint is dismissed with prejudice.

---

[127] Utah Code Ann. §76-10-1304(1)(iii).

[128] *Hoffman Estates*, 455 U.S. at 503.

[129] *Bensing v. United States,* 551 F.2d 262, 265 (10th Cir. 1977).

**DATED**:  May 8th , 2018.

BY THE COURT:

Dustin B. Pead
U.S. Magistrate Judge